Guy Ruttenberg, Bar No. 207937
guy@ruttenbergiplaw.com
Steve A. Papazian, Bar No. 288097
steve@ruttenbergiplaw.com
RUTTENBERG IP LAW,
A PROFESSIONAL CORPORATION
1801 Century Park East, Suite 1920
Los Angeles, CA 90067
Telephone: (310) 627-2270
Facsimile: (310) 627-2260

*Attorneys for Plaintiff Cadence Design Systems, Inc.*

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CADENCE DESIGN SYSTEMS, INC., *a Delaware Corporation*,<br><br>Plaintiff,<br><br>v.<br><br>SYNTRONIC AB, *a Publikt Aktiebolag*, SYNTRONIC RESEARCH AND DEVELOPMENT USA INC., *a California Corporation*, SYNTRONIC (BEIJING) TECHNOLOGY R&D CENTER CO., LTD., *a Chinese Corporation*,<br><br>Defendants. | Case No. 5:21-cv-3610<br><br>**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES FOR:**<br><br>1. **COPYRIGHT INFRINGEMENT;**<br>2. **CIRCUMVENTION OF COPYRIGHT PROTECTION SYSTEMS;**<br>3. **BREACH OF CONTRACT**<br><br>**DEMAND FOR JURY TRIAL** |

For its complaint, Plaintiff Cadence Design Systems, Inc. ("Cadence") alleges against Defendants Syntronic AB ("Syntronic Sweden"), Syntronic Research and Development USA Inc. ("Syntronic USA"), and Syntronic (Beijing) Technology R&D Center Co., Ltd. ("Syntronic Beijing") (collectively, "Syntronic") as follows:

1. This is an action for copyright infringement, circumvention of copyright protection systems, and breach of contract.

**PARTIES**

2. Plaintiff Cadence is a Delaware corporation with its principal place of business at 2655 Seely Avenue, San Jose, California 95134.

3. Defendant Syntronic AB ("Syntronic Sweden") is a Swedish *Publikt Aktiebolag* with its principal place of business at Utmarksvägen 33C, 802 91 Gävle, Sweden.

4. Defendant Syntronic Research and Development USA Inc. ("Syntronic USA") is a California Corporation with its principal place of business at 5201 Great America Pkwy, Suite 320 Santa Clara, California 95054. Syntronic USA filed its Articles of Incorporation on September 28, 2018, listing Utmarksvägen 33C, 802 91 Gävle, Sweden as its street address.

5. Defendant Syntronic (Beijing) Technology R&D Center Co., Ltd. ("Syntronic Beijing") is a Chinese corporation with its principal place of business at Wangjing Reward Building C1301, Chaoyang District, Beijing, China 100102.

6. On information and belief, Syntronic AB, Syntronic USA, and Syntronic Beijing are a single enterprise and/or alter egos of one another.

7. Syntronic AB, Syntronic USA, and Syntronic Beijing share a unity of interest.

8. Syntronic AB, Syntronic USA, and Syntronic Beijing collectively hold themselves out to the public as a single entity named "Syntronic Group."

9. On information and belief, each of Syntronic AB, Syntronic USA, and Syntronic Beijing are under the same equitable control, *i.e.*, the management of Syntronic AB.

10. Syntronic AB, Syntronic USA, and Syntronic Beijing have overlapping officers and employees.

11. Syntronic AB, Syntronic USA, and Syntronic Beijing view their employees as interchangeable and common between the three companies.

12. For example, Syntronic represents on its website that it comprises 1276 employees without differentiating between Syntronic AB, Syntronic USA, Syntronic Beijing, or any other Syntronic-owned or affiliated entities.

13. Syntronic employees likewise treat Syntronic AB and its affiliates as one and the same.

14. For example, at least one Syntronic employee based in Canada represented that his employer is "based in Sweden."

15. On information and belief, Syntronic AB, Syntronic USA, and Syntronic Beijing organize their business activities by region and business units rather than legal entities.

16. For example, Syntronic officer and employee Zinser Zhao publicly represents that he is "General Manager, Syntronic Asia" and "Responsible for Syntronic China business and operation."

17. Syntronic AB, Syntronic USA, and Syntronic Beijing share offices and/or other business locations. For example, for at least part of the time during which Syntronic committed the wrongful acts described herein, Syntronic USA and Syntronic AB shared an address at Utmarksvägen 33C, 802 91 Gävle, Sweden.

18. Syntronic AB, Syntronic USA, and Syntronic Beijing hold themselves out as a single enterprise. For example, Syntronic refers to itself as a "Global Design House" comprised of various legal entities.

19. Syntronic AB, Syntronic USA, and Syntronic Beijing share a website, namely www.syntronic.com, which is registered to Syntronic AB.

20. Syntronic AB, Syntronic USA, and Syntronic Beijing share a trade name, namely "Syntronic."

21. On information and belief, Syntronic AB, Syntronic USA, and Syntronic Beijing submit financial statements and pay taxes on a consolidated basis.

22. It would be inequitable for Syntronic AB, Syntronic USA, and Syntronic Beijing to hide behind their corporate veils.

23. For example, it would be inequitable for Syntronic AB, Syntronic USA, and Syntronic Beijing to hold themselves out to the public as a single entity (*e.g.*, "Syntronic Group"), disregarding any corporate separateness, and then deny they are one and the same for purposes of avoiding liability and/or frustrating enforcement of any eventual judgment.

24. Syntronic AB, Syntronic USA, and Syntronic Beijing have also acted in bad faith.

25. For example, before bringing suit, Plaintiff contacted Syntronic AB and Syntronic USA to attempt to resolve the claims set forth herein. Counsel for Syntronic AB and Syntronic USA initially engaged with Plaintiff but then referred Plaintiff to Syntronic Beijing. Plaintiff then reached out to Syntronic Beijing, but that entity refuses to engage with Cadence. In essence, Syntronic AB, Syntronic USA, and Syntronic Beijing are engaging in a shell game, attempting to use their legal separateness (which is not recognized by defendants in the regular course of their business) to evade liability and frustrate Plaintiff's efforts to curb pirated use of its software. As set forth below, the defendants also continued their unauthorized infringement and other wrongful conduct well after receiving explicit notice from Cadence.

## **JURISDICTION**

26. This Court has subject matter jurisdiction pursuant to 17 U.S.C. § 501, *et seq.* (copyright infringement), 17 U.S.C. §1201, *et seq.* (circumvention of copyright protection systems under the Digital Millennium Copyright Act), and 28 U.S.C. §§ 1331 (federal questions jurisdiction) and 1338(a). The Court also has supplemental jurisdiction over Count III below, pursuant to 28 U.S.C. §1367(a).

27. This Court has personal jurisdiction over Syntronic.

28. Defendants contractually agreed "to submit to exclusive jurisdiction in the federal and state courts of California, U.S.A. in the event of a dispute" pursuant to the sections 27 and 26 of the Software License and Maintenance Agreements, respectively, attached hereto as Exhibits 1 and 2.

29. Syntronic USA is a California corporation based in Santa Clara, California and subject to general jurisdiction in this State.

30. Defendants Syntronic AB and Syntronic Beijing are subject to jurisdiction as the alter egos of Syntronic USA.

3
COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

31. Defendants Syntronic AB and Syntronic Beijing also regularly conduct business in California.

32. For example, Syntronic claims to "work closely" with existing clients in the Bay Area.

33. Syntronic also claims that it "assists customers in Silicon Valley and beyond."

34. On information and belief, Syntronic has used unauthorized versions of Cadence Software in California and this District.

35. For example, Syntronic USA purports to have "long experience and great skills in schematic and PCB layout design as well as thermal-, signal- and power integrity simulations," allegedly using Cadence's OrCAD and Allegro PCB software programs.

## VENUE

36. Venue is proper in this District pursuant to the terms of the Software License and Maintenance Agreements, attached hereto as Exhibits 1 and 2. Venue is also proper in this District pursuant to 28 U.S.C. § 1400(a) because Syntronic may be found in this District. Venue is also proper in this District pursuant to 28 U.S.C. § 1391(b), (c), and (d) because Syntronic is subject to personal jurisdiction in this District.

## INTRADISTRICT ASSIGNMENT

37. This is an intellectual property action subject to district-wide assignment pursuant to Civil L.R. 3-2(c).

## GENERAL ALLEGATIONS

38. Cadence is a worldwide leader in Electronic Design Automation (EDA) software and engineering services, as well as semiconductor intellectual property. Cadence's custom and analog tools help engineers design the transistors, standard cells, and IP blocks that make up systems on chips. Cadence's offerings allow engineers to design integrated circuits and printed circuit boards, and test and simulate their designs to verify the builds of their circuits.

39. Cadence's design platforms include Allegro, OrCAD, PSpice, Sigrity, and other related software and tools (collectively, the "Cadence Software"). The Cadence Software provides engineers with the ability to design, test, and simulate printed circuit boards customized for their

1  specific needs. Since its founding, Cadence has expended considerable resources further developing
2  and refining this technology to remain at the forefront of the EDA industry.

3  40. Cadence licenses these products throughout the United States, Europe, Asia and other
4  parts of the world.

5  41. Cadence owns a valid Copyrighted Work, entitled Allegro 16.5, which was duly
6  registered with the United States Copyright Office as Copyright Registration No. TX 7-751-386 (the
7  "'386 Registration"). A true and correct copy of the '386 Registration is attached hereto as Exhibit 3.

8  42. Cadence owns a valid Copyrighted Work, entitled Allegro PCB 16.6, which was duly
9  registered with the United States Copyright Office as Copyright Registration No. TX 8-323-840 (the
10 "'840 Registration"). A true and correct copy of the '840 Registration is attached hereto as Exhibit 4.

11 43. Cadence owns a valid Copyrighted Work, entitled Allegro PCB 17.2, which was duly
12 registered with the United States Copyright Office as Copyright Registration No. TX 8-322-031 (the
13 "'031 Registration"). A true and correct copy of the '031 Registration is attached hereto as Exhibit 5.

14 44. Cadence owns a valid Copyrighted Work, entitled Sigrity 2016, which was duly
15 registered with the United States Copyright Office as Copyright Registration No. TX 8-264-236 (the
16 "'236 Registration"). A true and correct copy of the '236 Registration is attached hereto as Exhibit 6.

17 45. Cadence owns a valid Copyrighted Work, entitled Sigrity 2017, which was duly
18 registered with the United States Copyright Office as Copyright Registration No. TX 8-320-010 (the
19 "'010 Registration"). A true and correct copy of the '010 Registration is attached hereto as Exhibit 7.

20 46. Cadence owns a valid Copyrighted Work, entitled OrCAD 16.5, which was duly
21 registered with the United States Copyright Office as Copyright Registration No. TX 8-320-016 (the
22 "'016 Registration"). A true and correct copy of the '016 Registration is attached hereto as Exhibit 8.

23 47. Cadence owns a valid Copyrighted Work, entitled OrCAD 16.6, which was duly
24 registered with the United States Copyright Office as Copyright Registration No. TX 8-320-041 (the
25 "'041 Registration"). A true and correct copy of the '041 Registration is attached hereto as Exhibit 9.

26 48. Cadence owns a valid Copyrighted Work, entitled OrCAD 17.2, which was duly
27 registered with the United States Copyright Office as Copyright Registration No. TX 8-320-040 (the
28 "'040 Registration"). A true and correct copy of the '040 Registration is attached hereto as Exhibit 10.

49. Cadence owns a valid Copyrighted Work, entitled Allegro PCB 17.4, which was duly registered with the United States Copyright Office as Copyright Registration No. TX 8-905-154 (the "'154 Registration"). A true and correct copy of the '154 Registration is attached hereto as Exhibit 11.

50. Cadence owns a valid Copyrighted Work, entitled Clarity 3D Solver 2019, which was duly registered with the United States Copyright Office as Copyright Registration No. TX 8-905-132 (the "'132 Registration"). A true and correct copy of the '132 Registration is attached hereto as Exhibit 12.

**CADENCE'S LICENSE AGREEMENTS AND LICENSE FILES**

51. To protect its software and intellectual property against any unauthorized use, Cadence has made significant investments in technology designed to prevent unauthorized access or use.

52. Cadence typically licenses its proprietary software. The license is issued as a Floating/Concurrent license, whereby the customer purchases a set number of floating seats, which may be occupied by any licensed users as long as the number of concurrent users does not exceed the set number. When a customer purchases a license to the Cadence Software, the customer receives an invoice indicating the type of license that was purchased, as well as a license file.

53. The Cadence Software will not operate unless a user first installs the Cadence License Manager. When using the Cadence Software on a single computer, the user must install the License Manager directly on that computer. If the user intends to use a network license, the user must install the License Manager on a server accessible over the network.

54. The Cadence License Manager cannot be installed unless a user first executes an agreement with Cadence. Specifically, when installing the License Manager, a user is prompted to accept the terms of a Cadence Design Systems, Inc. Software License and Maintenance Agreement ("SLMA").

55. Cadence has incorporated multiple versions of its SLMA into the License Manager installation process.

56. For example, Cadence's Allegro PCB 16.5 and 16.6, both of which were used without authorization by Syntronic, are governed by a Version 16 SLMA ("SLMA v16").

57. For example, Cadence's Allegro PCB 17.2, which was used without authorization by Syntronic, is governed by a Version 17 SLMA ("SLMA v17").

58. True and correct copies of the SLMA v16 and SLMA v17 (collectively, "SLMAs") are attached hereto as Exhibits 1 and 2.

59. The SLMAs state, in part:

> THIS SOFTWARE LICENSE AND MAINTENANCE AGREEMENT ("AGREEMENT") IS A LEGAL DOCUMENT BETWEEN YOU AND CADENCE DESIGN SYSTEMS, INC. ("CADENCE"). PLEASE READ THIS AGREEMENT CAREFULLY BEFORE INSTALLING YOUR CADENCE SOFTWARE ("SOFTWARE"). BY USING THE SOFTWARE, YOU (EITHER AN INDIVIDUAL OR A BUSINESS ENTITY) AGREE TO BE BOUND BY THE TERMS OF THIS AGREEMENT. IF YOU DO NOT WANT TO BE BOUND BY THE TERMS OF THIS AGREEMENT, CADENCE IS UNWILLING TO LICENSE THE SOFTWARE TO YOU, IN WHICH EVENT YOU MUST PROMPTLY RETURN THE SOFTWARE AND ALL ACCOMPANYING ITEMS (INCLUDING MANUALS, BINDERS OR OTHER CONTAINERS, AND ANY OTHER PRINTED MATERIALS) WITHIN 30 DAYS. BY CLICKING YES DURING THE INSTALLATION AND BY USING THE SOFTWARE . . . YOU ACKNOWLEDGE THAT YOU HAVE READ THE AGREEMENT AND ACCEPT ITS TERMS.

60. When attempting to install the License Manager, a user must select "I accept the terms of the license agreement" in order to proceed with installation. If the user does not select the "I accept" option, or if the user selects "I do not accept the terms of the license agreement," the user cannot proceed with installation of the License Manager.

61. After the License Manager has been installed, the program prompts the user to specify the location of a Cadence license file. Alternatively, the user may later configure the appropriate licensing for the Cadence Software by using a License Server Configuration Utility packaged with the Cadence Software.

62. After the user installs the License Manager, the user may then install the Cadence Software on the client desktops or laptops connected to the License Server. The Cadence Software will not operate on those client machines unless the user provides a valid license file issued by Cadence. The license file indicates to the License Manager and the Cadence servers how many

7
COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

licenses are available for use at the client machines, and which Cadence Software and additional functionality the user is permitted to use.

63. When the user installs the Cadence Software, the user must again accept the terms of the SLMAs by selecting the "I accept" option. As before, if the user does not select the "I accept" option, or if the user selects "I do not accept the terms of the license agreement," the user cannot proceed with installation of the Cadence Software.

64. To protect its software and intellectual property against any unauthorized use, Cadence also has made significant investments in technological measures designed to track unauthorized use.

65. These measures transmit data to Cadence whenever they detect unauthorized alterations or uses of the product, such as when a user bypasses a technological measure by using counterfeit license files or when a user alters the Cadence Software by circumventing the license mechanism.

66. The Cadence Software also includes other technological measures to verify that the Cadence Software is used according to an appropriate license.

**SYNTRONIC'S INFRINGEMENT AND UNAUTHORIZED ACCESS**

67. Syntronic purports to be a global design services firm engaged in, *inter alia*, system design (HW/SW/mechanics), hardware design (digital, analogue, radio / microwave, PCB layout), ASIC design, verification, and other related activities.

68. Syntronic has repeatedly obtained, copied and used the Cadence Software without authorization from Cadence.

69. Syntronic has unlawfully copied, reproduced, and used the Cadence Software without a valid license file and without authorization from Cadence.

70. By installing and using the Cadence License and the Cadence Software, Syntronic accepted the terms of the SLMAs and agreed to be bound by the terms of the SLMAs.

71. On information and belief, after installing the Cadence Software, Syntronic uses "cracked" license files to access and use the Cadence Software.

72. Under the SLMAs, Syntronic agreed "to take all reasonable steps and to exercise due diligence to protect the Product from unauthorized reproduction, publication, or distribution."

Syntronic further agreed that it would "have a reasonable mechanism in place to ensure that the Software may not be used or copied by unlicensed persons."

73. On information and belief, Syntronic has altered and/or "cracked," and/or used altered and/or "cracked" versions of the Cadence License Manager and/or Cadence Software that circumvent technological measures.

74. On information and belief, Syntronic has also tampered with files during installation of the Cadence License Manager and/or Cadence Software and otherwise used altered data files for installing the Cadence License Manager and/or Cadence Software, including using "cracked" versions of the license and/or using counterfeit license files.

75. By obtaining, copying, installing, and/or using "cracked" versions of the Cadence License Manager and/or Cadence Software and/or "cracked" licenses, Syntronic circumvents technological measures that control access to a copyrighted work protected under the Copyright Act.

76. On information and belief, Syntronic also conspires with others to use and obtain unauthorized software license files from a source other than Cadence and/or to circumvent Cadence's technological measures.

77. On information and belief, Syntronic knowingly obtains, downloads, copies, installs and/or otherwise uses unauthorized versions of the Cadence License Manager and/or Cadence Software, including using websites and internet service providers known to traffic in illegal content.

78. By installing the Cadence Software using the counterfeit license files and subsequently using the Cadence software without authorization, Syntronic breached the terms of the agreed upon SLMAs by allowing the Cadence Software to be used or copied by unlicensed persons, and by failing to take reasonable steps and exercise due diligence to protect the Cadence Software from unauthorized reproduction, publication, or distribution.

79. Further, each copy of the Cadence Software includes additional Product Options, which are available at additional cost for higher levels of design functionality. These options are locked unless they are purchased by the customer, in which case Cadence provisions a license file that enables the user to access the corresponding portions of the license.

80. However, when the Cadence License Manager and/or Cadence Software is "cracked," or when "cracked" license files are used, the license protections for the Product Options are bypassed and all Options are unlocked, thus allowing a user to obtain any Product Options it desires without having to pay for those Options.

81. By using "cracked" versions of the Cadence License Manager and/or Cadence Software and/or "cracked" license files, Syntronic circumvents additional technological measures that prevent users from accessing additional copyrighted Product Options that would otherwise require an independent purchase to use.

82. By using the Cadence Software without authorization and by circumventing Cadence technological measures, Syntronic has also violated Cadence's registered copyright and avoided paying Cadence at least $8.3 million dollars in license fees.

83. Through the use of its technological measures, Cadence compiled a list of over 64 machines that were using Cadence Software without having a valid License issued by Cadence. These technological measures identified multiple instances where these machines installed, uninstalled, or used Cadence Software.

84. The information these machines transmitted to Cadence indicate that Syntronic devices and accounts were responsible for a significant number of unauthorized uses of the Cadence Software.

85. For example, the domain "syntronic.net," among others, are linked to the machines bypassing technological measures in the Cadence Software.

86. Further, email addresses ending with the extension "@syntronic.com" and "@china.syntronic.net," among others, are also linked to the machines bypassing technological measures in the Cadence Software.

87. The domains "syntronic.net" and "syntronic.com" belong to and/or are otherwise associated with Syntronic.

88. Similarly, email addresses ending with the extension "@syntronic.com" are associated with Syntronic.

89. Email addresses ending with the extension "@china.syntronic.net" are also associated with Syntronic.

90. Various Syntronic computers with machine names such as "SYNTRONIC0748," among others, are also linked to the machines bypassing technological measures in the Cadence Software.

91. Syntronic's unlawful conduct not only harms Cadence, but it also harms Cadence's customers. Namely, Cadence's customers who pay for Cadence Software are forced to compete with Syntronic, which unlawfully uses the software without payment. By eliminating this cost item, Syntronic is able to compete unfairly with law-abiding competitors who pay for software.

92. Thus, Syntronic irreparably harmed Cadence's long-term market share and reputation.

## CADENCE INFORMS SYNTRONIC OF ITS UNAUTHORIZED ACTIVITES

93. On February 5, 2020, Cadence informed Syntronic that Cadence has evidence showing Syntronic has used unlicensed or "cracked" versions of Cadence Software.

94. On February 12, 2020, Mikael Åhlén, Senior Vice President Operational Development for Syntronic, emailed Cadence, stating Syntronic was investigating "if the listed Mac-addresses are link to computers owned by Syntronic."

95. Cadence responded to Mr. Åhlén the same day (February 12, 2020), proposing to schedule a conference call and offering to, *inter alia*, "address your questions regarding more information related to those [offending] machines during the call."

96. Mr. Åhlén never responded to Cadence's February 12, 2020 communication.

97. Cadence sent a further communication to Syntronic on April 20, 2020 through outside counsel.

98. This time, on May 21, 2020, Jesper Gullberg, Strategic Projects at Syntronic, responded, claiming Syntronic was "looking into this and will get back to [Cadence] within short [sic]."

99. Mr. Gullberg, Syntronic's outside counsel at Carr & Ferrell, and Plaintiff's counsel conferred on June 1, 2020 to discuss Syntronic's unauthorized use. During that conference,

1  Syntronic's counsel represented that Syntronic was further investigating Plaintiff's claims and agreed
2  to have a further conference with Cadence one week later.

3      100.    However, both Mr. Gullberg and Syntronic's counsel at Carr & Ferrell later declined
4  to participate in a second conference.

5      101.    Instead, Cadence received a letter from Björn Jansson, the CEO of Syntronic, who
6  insisted that Cadence communicate directly with Syntronic Beijing.

7      102.    On July 6, 2020, Cadence contacted Syntronic Beijing. Cadence received no response.

8      103.    On July 24, 2020, Cadence again contacted Syntronic's counsel at Carr & Ferrell.

9      104.    Syntronic's counsel also failed to respond to the July 24, 2020 communication.

10     105.    On September 24, 2020, Cadence again wrote to Syntronic, enclosing a draft of this
11 Complaint.

12     106.    On September 29, 2020, Zinser Zhao of Syntronic Beijing sent Cadence an email,
13 stating that "[i]f you or your company representative can come to Beijing and communicate, you are
14 welcomed."

15     107.    Cadence responded to Mr. Zhao's email on October 14, 2020, again proposing that the
16 parties speak over the phone (traveling to China during the COVID-19 pandemic is not practicable).

17     108.    Neither Mr. Zhao nor anyone else from Syntronic responded to Cadence's October 14,
18 2020 message.

19     109.    Syntronic did not cease its unauthorized use of Cadence Software after Cadence
20 provided notice on February 5, 2020.

21     110.    To the contrary, Syntronic has continued using Cadence Software without
22 authorization, including as late as April 2021.

## COUNT I

(Copyright Infringement under 17 U.S.C. § 501)

25     111.    Cadence incorporates and realleges by reference paragraphs 1 through 110 above as if
26 set forth in full herein.

27     112.    Cadence is the owner of various valid Copyrighted Works, including those registered
28 under the '386 Registration, the '840 Registration, '031 Registration, '236 Registration, '010

Registration, '016 Registration, '041 Registration, '040 Registration, '154 Registration, and '132 Registration.

113. Cadence has complied with all statutory formalities required by the Copyright Act to maintain the validity of its copyrights in its Copyright Works, including as reflected in its copyright registrations attached as Exhibits 3 through 12.

114. On multiple occasions Syntronic has downloaded, modified, used, and/or otherwise copied and installed Cadence Software without permission or authorization from Cadence, including copies of Cadence's Copyrighted Works registered under the '386 Registration, the '840 Registration, '031 Registration, '236 Registration, '010 Registration, '016 Registration, '041 Registration, '040 Registration, '154 Registration, and '132 Registration.

115. Syntronic's unauthorized use and/or duplication of Cadence's copyrighted software constitutes direct and contributory copyright infringement under 17 U.S.C. § 501.

116. Syntronic is also liable for vicarious infringement.

117. The individuals who downloaded, modified, used, and/or otherwise copied and installed Cadence Software without permission or authorization from Cadence are subject to the control of Syntronic, and Syntronic directly benefits from their direct infringement.

118. Individuals who downloaded, modified, used and/or otherwise copied and installed Cadence Software without permission or authorization from Cadence have "@syntronic.com" email addresses and certain infringing machines have the name "Syntronic" in their name.

119. On information and belief, Syntronic directly benefits from its infringing activity by, *inter alia*, using Cadence Software to offer services to its clients without paying license fees to Cadence.

120. Syntronic's actions in violation of the Copyright Act have been knowing and willful.

121. For example, Syntronic has continued its unauthorized use of Cadence Software after Cadence first provided notice of Syntronic's infringement, including as late as April 2021.

122. Syntronic's conduct is causing, and is likely to continue to cause, irreparable harm to Cadence and its customers, and Syntronic's unlawful conduct will continue to cause such irreparable

injury unless Syntronic is enjoined by this Court. Cadence has no adequate remedy at law. Cadence is entitled to preliminary and permanent injunctive relief pursuant to 17 U.S.C. § 502.

123. As a result of Syntronic's wrongful actions, Cadence has suffered damages in an amount to be proven at trial, including at least $8.3 million dollars in unpaid licenses. Cadence is entitled to its actual damages and Syntronic's profits or, alternatively, statutory damages, as well as its costs, attorneys' fees and interest.

**COUNT II**

(Circumvention of Copyright Protection Systems under 17 U.S.C. § 1201)

124. Cadence incorporates and realleges by reference paragraphs 1 through 123 above as if set forth in full herein.

125. The Cadence License Manager and Cadence Software employ technological mechanisms that effectively provide security controlled access to the work and copyright protections.

126. On information and belief, Syntronic has modified the Cadence License Manager and/or Cadence Software and/or knowingly used copies of Cadence Software that had been tampered and or "cracked" to circumvent Cadence's License Manager and other access control mechanisms. Syntronic made these modifications to the Cadence License Manager and/or Cadence Software, and/or knowingly used copies of Cadence Software or Cadence's License Manager that had been tampered or "cracked," in order to bypass the required entry and/or use of a valid license file and to circumvent the technological measures controlling access to Cadence Software, enabling Syntronic to bypass Cadence's security access mechanisms and copyright protections in the Cadence Software in violation of 17 U.S.C. § 1201(a)(1).

127. On information and belief, Syntronic's actions have been and continue to be willful.

128. On information and belief, Syntronic also materially contributes to the circumvention of the technological measures by obtaining, downloading, and copying unauthorized versions of the Cadence License Manager and/or Cadence Software from websites and internet service providers known to traffic in illegal content, and is therefore also contributorily liable for the circumvention of Cadence's technological measures.

129. Syntronic is also vicariously liable for circumvention of Cadence's technological measures.

130. The individuals who circumvented Cadence's copyright protection mechanisms are subject to the control of Syntronic and Syntronic directly benefits from their direct infringement.

131. Individuals who circumvented Cadence's copyright protection mechanisms have "@syntronic.com" email addresses and certain infringing machines have the name "Syntronic" in their name.

132. On information and belief, Syntronic directly benefits from this circumvention by, *inter alia*, using Cadence Software to offer services to its clients without paying license fees to Cadence.

133. Syntronic's conduct is causing, and is likely to continue to cause, irreparable harm to Cadence and its customers, and Syntronic's unlawful conduct will continue to cause such irreparable injury unless Syntronic is enjoined by this Court. Cadence has no adequate remedy at law. Cadence is entitled to preliminary and permanent injunctive relief pursuant to 17 U.S.C. § 1203.

134. As a result of Syntronic's wrongful actions, Cadence has suffered damages in an amount to be proven at trial. Cadence is entitled to its actual damages and Syntronic's profits or, alternatively, statutory damages in an amount up to $2500 per act of circumvention, device, product, component, offer, or performance of service, as well as its costs, attorneys' fees and interest.

### COUNT III

(Breach of Contract)

135. Cadence incorporates and realleges by reference paragraphs 1 through 134 above as if set forth in full herein.

136. Syntronic agreed to the terms of the SLMA v16 and SLMA v17 by clicking "I accept the terms of the license agreement" in order to proceed with installation of the License Manager and the Cadence Software.

137. Cadence substantially performed its obligations that are conditions precedent (if any) under the SLMAs and any nonperformance was excused.

138. Syntronic breached at least Section 3 of both SLMAs by copying, sharing, and using the Cadence Software without authorization from Cadence, by bypassing the license file entry and not using valid license files, by taking actions to circumvent the entry of license file information, by continuing to use the Cadence software for commercial purposes without any valid license, by installing the Cadence software on its computers without authorization, and by not paying a licensing fee.

139. Cadence was damaged as a result of Syntronic's breaches. For example, Syntronic's breach deprived Cadence of substantial license fees.

140. Cadence is entitled to injunctive relief and recovery of its attorneys' fees, costs and interest.

## **PRAYER FOR RELIEF**

WHEREFOR, Plaintiff Cadence prays that this Court provide relief by:

a. Preliminarily and permanently enjoining and restraining each of Syntronic AB, Syntronic USA, and Syntronic Beijing, as well as their officers, directors, agents, employees, and all other individuals, firms, corporations, associations, and partnerships affiliated, associated, or acting in concert with them from using the Cadence Software or any other Cadence software to which they hold no valid license;

b. Awarding Cadence compensatory and actual damages;

c. Ordering each of Syntronic AB, Syntronic USA, and Syntronic Beijing to provide an accounting of its profits;

d. Awarding Cadence its actual damages plus Syntronic's profits under the Copyright Act, or, at the election of Cadence, statutory damages for Syntronic's copyright infringement;

e. Awarding Cadence its actual damages plus Syntronic's profits, or, at the election of Cadence, statutory damages for Syntronic's copyright infringement pursuant to 17 U.S.C. § 1203(c)(1);

f. Increasing the award damages because of Syntronic's willful infringement and/or circumvention;

g. Requiring each of Syntronic AB, Syntronic USA, and Syntronic Beijing to deliver upon oath, to be impounded during the pendency of this action, all infringing copies of Cadence's copyrighted works, any unauthorized software used to circumvent the licensing restrictions on the Cadence Software, and any products produced, designed, or manufactured, in part or in whole, with or in conjunction with the Cadence software; and that an order of impoundment and/or seizure in respect of the foregoing be issued out of this Court in the manner provided by the Copyright Act and by the United States Supreme Court Copyright Practice Rules (1909); and that at the conclusion of this action, the Court shall order all such materials so held to be surrendered to Cadence or to be destroyed under a Writ of Destruction issued under 17 U.S.C. § 503, whichever shall seem to this Court to be most just and proper;

h. Awarding Cadence restitution;

i. Awarding Cadence its attorneys' fees and costs;

j. Awarding Cadence prejudgment and post-judgment interest;

k. Awarding Cadence such other and further relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Cadence demands a jury trial on all issues triable by a jury.

DATED: May 13, 2021    By:    */s/ Guy Ruttenberg*

Guy Ruttenberg
Steve Papazian
RUTTENBERG IP LAW, A PROFESSIONAL CORPORATION
1801 Century Park East, Suite 1920
Los Angeles, CA 90067
Telephone: (310) 627-2270
Facsimile: (310) 627-2260
guy@ruttenbergiplaw.com
steve@ruttenbergiplaw.com

*Attorneys for Plaintiff*