1   EDWARD P. SANGSTER, Bar No. 121041
    edward.sangster@klgates.com
2   JASON N. HAYCOCK, Bar No. 278983
    jason.haycock@klgates.com
3   **K&L GATES LLP**
    Four Embarcadero Center, Suite 1200
4   San Francisco, CA 94111
    Telephone: +1 415 882 8200
5   Facsimile: +1 415 882 8220

6   JEFFREY C. JOHNSON, *pro hac vice* to be submitted
    jeff.johnson@klgates.com
7   PAUL J. BRUENE, *pro hac vice* to be submitted
    paul.bruene@klgates.com
8   **K&L GATES LLP**
    925 Fourth Avenue, Suite 2900
9   Seattle, WA 98104
    Telephone: + 1 206 623 7580
10  Facsimile: + 1 206 623 7022

11  *Attorneys for Defendants Syntronic AB, Syntronic Research and*
    *Development USA Inc., and Syntronic (Beijing) Technology R&D*
12  *Center Co., LTD.*

13              IN THE UNITED STATES DISTRICT COURT

14              NORTHERN DISTRICT OF CALIFORNIA

15              SAN FRANCISCO DIVISION

16

17  CADENCE DESIGN SYSTEMS, INC., *a*          Case No. 5:21-cv-3610-SI
    *Delaware Corporation*,
18                                             **NOTICE OF MOTION AND MOTION TO**
                  Plaintiff,                   **QUASH SERVICE OF SUMMONS AND**
19                                             **DISMISS COMPLAINT FOR (1)**
                                               **DEFECTIVE SERVICE; (2) LACK OF**
20        v.                                   **PERSONAL JURISDICTION; AND (3)**
                                               **FAILURE TO STATE A CLAIM;**
21  SYNTRONIC AB, *a Publikt Aktiebolag*,      **ALTERNATIVELY, MOTION FOR**
    SYNTRONIC RESEARCH AND                     **MORE DEFINITE STATEMENT;**
22  DEVELOPMENT USA INC., *a California*       **MEMORANDUM OF POINTS AND**
    *Corporation*, SYNTRONIC (BEIJING)         **AUTHORITIES**
23  TECHNOLOGY R&D CENTER CO., LTD., *a*
    *Chinese Corporation*,                     Judge:  Hon. Susan Illston
24                                             Hearing Date:  August 13, 2021
                  Defendants.                  Hearing Time:  10:00 a.m.
25                                             San Francisco Courthouse, Courtroom 1, 17th
                                               Floor
26

27

28

1

## NOTICE OF MOTION AND MOTION

2      **PLEASE TAKE NOTICE THAT,** pursuant to Local Civil Rule 7-2, on August 13, 2021, at

3  10:00 a.m. before the Honorable Susan Illston in Courtroom 1, 17th Floor, of the United States District

4  Court for Northern District of California in the San Francisco Courthouse at 450 Golden Gate Avenue,

5  San Francisco, CA 94102, Defendants Syntronic AB, Syntronic Research and Development USA Inc.

6  ("Syntronic USA"), and Syntronic (Beijing) Technology R&D Center Co., LTD. ("Syntronic

7  Beijing") (collectively "Defendants") will and hereby do move for an order quashing service,

8  dismissing for lack of personal jurisdiction, dismissing for failure to state a claim, and/or, alternatively,

9  requiring a more definite statement, based on the following grounds.

10      First, Syntronic Beijing moves pursuant to Federal Rule of Civil Procedure 12(b)(5) to quash

11  service because Plaintiff purported to effect service by delivering summons to Syntronic USA, where

12  Syntronic USA is not an agent of and has no authority to accept service on behalf of Syntronic Beijing.

13      Second, Syntronic AB and Syntronic Beijing move pursuant to Federal Rule of Civil Procedure

14  12(b)(5) for dismissal based on lack of personal jurisdiction because neither entity has sufficient

15  contacts with the forum, Plaintiff has not and cannot plausibly allege alter ego, and Plaintiff failed to

16  plead facts plausibly alleging that either entity agreed to a forum selection clause.

17      Third, Syntronic USA, joined by Syntronic AB and Syntronic Beijing without waiving

18  challenges to service and personal jurisdiction, move pursuant to Federal Rule of Civil Procedure

19  12(b)(6) for dismissal for failure to state a claim because Plaintiff failed to plausibly allege copyright

20  violations within the United States and improperly lumped all Defendants together without identifying

21  which Defendant is alleged to have committed which act.

22      Finally, Defendants move in the alternative pursuant to Federal Rule of Civil Procedure 12(e)

23  for a more definite statement definitively stating whether copyright violations occurred within the

24  United States and specifically identifying which Defendant committed which act.

25      This motion is based on this Notice of Motion and Motion, the Memorandum of Points and

26  Authorities, the Declarations and Exhibits attached thereto, all records and papers filed in this action,

27  and on such oral argument and submissions that may be presented at or before the hearing.

28

MOTION TO QUASH, TO DISMISS, OR FOR MORE DEFINITIVE STATEMENT; CASE NO.
21-CV-3610-SI

504894333.5

# TABLE OF CONTENTS

**Page**

I.    STATEMENT OF THE ISSUES TO BE DECIDED.............................................. 1

II.   INTRODUCTION .................................................................................................. 1

III.  FACTUAL BACKGROUND................................................................................. 3

      A.    CADENCE'S SUBSTANTIVE ALLEGATIONS ...................................... 3

      B.    ALLEGATIONS OF PERSONAL JURISDICTION OVER SYNTRONIC AB
            AND SYNTRONIC BEIJING...................................................................... 4

V.    ARGUMENT ......................................................................................................... 5

      A.    THE COURT SHOULD QUASH SERVICE ON SYNTRONIC BEIJING............... 5

            1.    CADENCE BEARS THE BURDEN OF PROVING PROPER SERVICE.... 5

            2.    CADENCE HAS NOT PROPERLY SERVED SYNTRONIC BEIJING ...... 6

      B.    CADENCE FAILED TO ALLEGE CONTACTS SUFFICIENT TO
            ESTABLISH PERSONAL JURISDICTION OVER SYNTRONIC AB OR
            SYNTRONIC BEIJING.................................................................................. 7

            1.    NEITHER SYNTRONIC AB NOR SYNTRONIC BEIJING IS
                  SUBJECT TO GENERAL JURISDICTION..................................... 8

                  A.    CADENCE FAILED TO ADEQUATELY PLEAD GENERAL
                        JURISDICTION ................................................................. 9

                  B.    THERE IS NO GENERAL JURISDICTION BASED ON ALTER
                        EGO .................................................................................. 10

                        I.    DEFENDANTS' DECLARATIONS REFUTE
                              CADENCE'S ALLEGATIONS ........................... 11

                        II.   CADENCE FAILED TO MEET ITS PRIMA FACIE
                              BURDEN .............................................................. 13

            2.    NEITHER SYNTRONIC AB NOR SYNTRONIC BEIJING IS
                  SUBJECT TO SPECIFIC JURISDICTION ................................. 15

      C.    CADENCE FAILED TO STATE A PLAUSIBLE CLAIM AGAINST ANY
            DEFENDANT................................................................................................ 17

            1.    CADENCE FAILED TO PLAUSIBLY ALLEGE COPYRIGHT ACT
                  VIOLATIONS IN THE UNITED STATES................................. 18

            2.    CADENCE FAILED TO STATE PLAUSIBLE CLAIMS BY
                  INDISCRIMINATELY LUMPING ALL DEFENDANTS TOGETHER.... 21

                  A.    CADENCE FAILED TO STATE A PLAUSIBLE COPYRIGHT
                        CLAIM.............................................................................. 22

# TABLE OF CONTENTS
(continued)

**Page**

B.    CADENCE FAILED TO STATE A PLAUSIBLE BREACH OF CONTRACT CLAIM ........................................................................ 23

VI.    CONCLUSION ............................................................................................. 25

1

2

# TABLE OF AUTHORITIES

3

**Page(s)**

4

**Cases**

5

*Adobe Systems Incorporated v. Blue Source Group, Inc.*,
   125 F. Supp. 3d 945 (N.D. Cal. 2015) ...............................................................22, 23

6

7

*Affordable Aerial Photography, Inc. v. Modern Living Real Estate, LLC*,
   2019 WL 3716775 (S.D. Fla. Aug. 7, 2019)...............................................24

8

9

*Alamilla v. Hain Celestial Group, Inc.*,
   30 F. Supp. 3d 943 (N.D. Cal. 2014) ...............................................................25

10

*Allarcom Pay Television, Ltd. v. Gen. Instrument Corp.*,
   69 F.3d 381 (9th Cir. 1995) ...............................................................19

11

12

*American Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*,
   94 F.3d 586 (9th Cir. 1996) ...............................................................15

13

14

*Arasan Chip Sys*., *Inc*. *v. Sonix Tech. Co*.,
   No. 509-CV-02172 JF PVT, 2010 WL 890424 (N.D. Cal. Mar. 8, 2010) ...............................6

15

*Asahi Metal Indus. Co. Ltd. v. Super. Ct. of Cal., Solano Cty*.,
   480 U.S. 102 (1987)...............................................................8

16

17

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...............................................................18, 19, 21

18

19

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...............................................................18

20

*Blantz v. Dept. of Corrections and Rehabilitation*,
   727 F. 3d 917 (9th Cir. 2013) ...............................................................21

21

22

*Bristol-Myers Squibb Co. v. Superior Court*,
   137 S. Ct. 1773 (2017)...............................................................8, 9, 16, 17

23

24

*Brockmeyer v. May*,
   383 F.3d 798 (9th Cir. 2004) ...............................................................6

25

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985)...............................................................8

26

27

*China Tech. Global Corp. v. Fuller, Tubb, Pomeroy & Stokes*,
   2005 WL 1513153 (N.D. Cal. June 27, 2005) ...............................................................9

28

504894333.5

*Corcoran v. CVS Health Corp.*,
    169 F. Supp. 3d 970 (N.D. Cal. Mar. 14, 2016) ...........................................................10, 11, 14

*Danjaq, S.A. v. MGM/UA Comms., Co.*,
    773 F. Supp. 194 (C.D. Cal. 1991) ...........................................................................................20

*Data Disc., Inc. v. Sys. Tech. Assocs., Inc.*,
    557 F.2d 1280 (9th Cir. 1977) ....................................................................................................8

*Doe v. Geller*,
    533 F. Supp. 2d 996 (N.D. Cal. 2008) ......................................................................................19

*Doe v. Unocal Corp.*,
    248 F.3d 915 (9th Cir. 2001) ....................................................................................................11

*Forest v. Equitable Life Assurance Society of U.S.*,
    Case No. 99-cv-5173-SI, 2001 WL 1338809 (N.D. Cal. June 12, 2001) ...............................15

*Fredianelli v. Jenkins*,
    931 F. Supp.2d 1001 (N.D. Cal. 2013) .....................................................................................25

*Gen–Probe, Inc. v. Amoco Corp.*,
    926 F.Supp. 948 (S.D. Cal. 1996) ............................................................................................22

*Gerritsen v. Warner Bros. Ent., Inc.*,
    116 F. Supp. 3d 1104 (C.D. Cal. 2015) ....................................................................................15

*Gravely Motor Plow & Cultivator Co. v. H.V. Carter Co., Inc.*,
    193 F.2d 158 (9th Cir.1951) ........................................................................................................7

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*,
    328 F.3d 1122 (9th Cir. 2003) ..................................................................................................15

*Hemlock Hat Company, Inc. v. Diesel Power Gear, LLC*,
    Case No. 19-cv-02422-AJB-AHG, 2020 WL 7013585 (S.D. Cal. Nov. 25, 2020)................23

*Holland Am. Line Inc. v. Wartsila N. Am., Inc.*,
    485 F.3d 450 (9th Cir. 2007) ....................................................................................................18

*Iglesia Ni Cristo v. Cayabyab*,
    Case No. 18-cv-00561-BLF, 2018 WL 4674603 (N.D. Cal. Sept. 26, 2018) .........................23

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945)....................................................................................................................8

*In re iPhone Application Litig.*,
    No. 11–MD–02250–LHK, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011)............................23

*Khachatryan v. Toyota Motor Sales USA, Inc.*
   578 F. Supp. 2d 1224 (C.D. Cal. 2008) .................................................................7

*Litecubes, LLC v. Northern Light Products, Inc.*,
   523 F. 3d 1353 (Fed. Cir. 2008).......................................................................19

*Lynwood Investments Cy Limited v. Konovalov*,
   Case No. 20-CV-03778-LHK, 2021 WL 1164838 (N.D. Cal. Mar. 25, 2021) .....................23

*Mandani v. Volkswagen Group of Am.*, *Inc.*,
   2019 WL 652867 (N.D. Cal. Feb. 15, 2019) ...........................................................25

*McBride v. Fannie Mae*,
   2016 WL 3019308 (E.D. Cal. May 26, 2016) .........................................................24

*McHenry v. Renne*,
   84 F. 3d 1172 (9th Cir. 1996) ......................................................................19, 22

*Menzel v. Scholastic, Inc.*,
   2018 WL 1400386 (N.D. Cal. March 19, 2018)......................................................21

*Monkton Ins. Servs., Ltd. v. Ritter*,
   768 F.3d 429 (5th Cir. 2014) ..........................................................................9

*Moody v. Charming Shoppes of Delaware, Inc.*,
   2008 WL 2128955 (N.D. Cal. May 20, 2008) .......................................................14

*Nat'l Auto Lenders, Inc. v. SysLOCATE, Inc.*,
   686 F. Supp. 2d 1318 (S.D. Fla. 2010) ...............................................................25

*New Name, Inc. v. Walt Disney Co.*,
   2007 WL 5061697 (C.D. Cal. Dec. 3, 2007) ........................................................20

*Olson v. Federal Election Comm'n*
   (D DC 2009) 256 FRD 8 ................................................................................5

*Omni Capital Int'l v. Rudolf Wolff & Co.*,
   484 U.S. 97 (1987)........................................................................................5

*Payoda, Inc. v. Photon Infotech, Inc.*,
   Case No. 14-cv-04103-BLF, 2015 WL 4593911 (N.D. Cal. July 30, 2015)...........................14

*Ranza v. Nike, Inc.*,
   793 F.3d 1059 (9th Cir. 2015) .......................................................................10

*Rearden LLC v. Walt Disney Company*,
   293 F. Supp. 3d 963 (N.D. Cal. 2018) ...........................................................20, 21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Sandoval v. Ali*,
  34 F. Supp. 3d 1031 (N.D. Cal. 2014) ......................................................................13, 14

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004) ...................................................................................7

*Scott v. Breeland*,
  792 F.2d 925 (9th Cir. 1986) ...................................................................................8

*Shropshire v. Canning*,
  2011 WL 90136 (N.D. Cal. Jan. 11, 2011) ................................................................20

*Shropshire v. Canning*,
  809 F.Supp.2d 1139 (N.D. Cal. 2011) ......................................................................19

*Sieg v. Karnes*,
  693 F.2d 803 (8th Cir.1982) ....................................................................................5

*Smith v. Bank of Am.*,
  2016 WL 7444879 (C.D. Cal. May 11, 2016) ...........................................................24

*Snukal v. Flightways Mfg. Inc.*,
  23 Cal. 4th 754 (2000) .............................................................................................17

*Sonora Diamond Corp. v. Superior Court*,
  83 Cal.App.4th 523 (2000) .......................................................................................16

*Soo Park v. Thompson*,
  851 F.3d 910 (9th Cir. 2017) ....................................................................................20

*Sound N Light Animatronics Co., LTD. v. Cloud*
  *b, Inc.*, 2016 WL 7635950, at *5 (C.D. Cal. Nov. 10, 2016) ....................................20

*Stevens v. Sec. Pac. Nat. Bank*,
  538 F.2d 1387 (9th Cir. 1976) ..................................................................................6

*Stewart v. Screen Gems–EMI Music, Inc.*,
  81 F.Supp.3d 938 (N.D. Cal. 2015) ...........................................................10, 14, 15

*Title Guarantee & Trust Co. v. Hammond Lumber Co.*,
  62 Cal. App. 245 (1923) ...........................................................................................17

*Toho-Towa Co., Ltd. v. Morgan Creek Productions, Inc.*,
  217 Cal. App. 4th 1096 (2013) .................................................................................10

*U.S. v. Bestfoods*,
  524 U.S. 51 (1998)....................................................................................................10

*U.S. v. Pangang Group Co., Ltd.*,
　879 F. Supp. 2d 1052 (N.D. Cal. 2012) .........................................................................14

*Uniloc 2017 LLC v. H&R Block, Inc.*,
　No. 19 Civ. 1149, 2019 WL 8219781 (C.D. Cal. Dec. 23, 2019) ...................................16

*Vander Music v. Azteca Int'l Corp.*,
　2011 WL 13177301 (C.D. Cal. Jan. 21, 2011) ...............................................................20

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,
　486 U.S. 694 (1988)...........................................................................................................6

*Way v. Mueller Brass Company*,
　840 F.2d 303 (5th Cir.1988) ..............................................................................................5

*Williams v. Yamaha Motor Co. Ltd.*,
　851 F.3d 1015 (9th Cir. 2017) .........................................................................................16

*Yount v. Acuff Rose-Opryland*,
　103 F.3d 830 (9th Cir. 1996) .....................................................................................19, 21

**Statutes**

28 U.S.C. § 1367(c)(3)..............................................................................................................22

California Code of Civil Procedure § 416.10(b) ........................................................................7

Uniform Electronic Transactions Act, Cal. Civil Code section 1633.1 *et seq.*............................17

**Other Authorities**

Fed. R. Civ. P. 4(h)(1)................................................................................................................6

Fed. R. Civ. P. 4(e)(1)................................................................................................................6

Fed. R. Civ. P. 4 .........................................................................................................................5

Fed. R. Civ. P. 8 ..................................................................................................................23, 25

Fed. R. Civ. P. 8(a)(2)..........................................................................................................22, 24

Fed. R. Civ. P. 12(b)(2)...............................................................................................................2

Fed. R. Civ. P. 12(b)(5).............................................................................................................1, 5

Fed. R. Civ. P. 12(b)(6).................................................................................................2, 18, 19

Fed. R. Civ. P. 12(e) ........................................................................................3, 4, 19, 22

Fed. R. Civ. P. 8(a) and 12(e) ...................................................................................................22

Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil and
    Commercial Matters, Nov. 15, 1965 (Hague Service Convention) [1969] 20
    U.S.T. 361, T.I.A.S. No. 6638 ..................................................................................6

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    STATEMENT OF THE ISSUES TO BE DECIDED

3       1.      Whether the Court should quash the purported service of summons on Syntronic

4    (Beijing) Technology R&D Center Co., LTD. ("Syntronic Beijing") when the summons was

5    delivered to Syntronic Beijing's sister corporation.

6       2.      Whether the Court should dismiss Syntronic AB and Syntronic Beijing for lack of

7    personal jurisdiction where Cadence failed to sufficiently allege that Defendants were alter egos of

8    each other, and failed to allege which Defendant agreed to a purported forum selection clause; and,

9       3.      Whether the Court should dismiss the entire Complaint for failure to state a claim,

10    where Cadence failed to plausibly allege Copyright Act violations within the United States, which

11    Defendant purportedly infringed which copyrighted works, and which Defendant purportedly

12    breached a valid license agreement.

13    ## II.    INTRODUCTION

14       This is an action for copyright infringement and breach of contract.  Plaintiff Cadence Design

15    Systems, Inc. ("Plaintiff" or "Cadence") alleges that three affiliated corporations, Defendants

16    Syntronic AB, Syntronic Research and Development USA Inc. ("Syntronic USA"), and Syntronic

17    Beijing (collectively "Defendants") infringed copyrighted software and breached license agreements

18    by obtaining, copying and using unauthorized copies of that software.  Defendants move to dismiss.

19       First, Syntronic Beijing moves to quash the purported service of summons pursuant to Rule

20    12(b)(5).  Cadence attempted to serve the summons on Syntronic Beijing, a Chinese corporation, by

21    delivering the summons to the agent for service of process of Syntronic USA.  However, Syntronic

22    USA and Syntronic Beijing are separate corporations.  Syntronic Beijing does not own or control

23    Syntronic USA.  It has not designated Syntronic USA or any other agent to accept service of process

24    in California.  Some cases have permitted service of foreign corporate defendants by permitting

25    service on a domestic, wholly-owned *subsidiary* when it acts as the parent's "general manager," but

26    no case has permitted service on a corporate affiliate that lacked ownership and control over the U.S.

27    affiliate.  Because Syntronic USA is not Syntronic Beijing's "general manager," Cadence has not

28

1

504894333.5

properly served a summons on Syntronic Beijing.

Second, Syntronic Beijing and Syntronic AB move to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2).  Neither Syntronic AB nor Syntronic Beijing has purposely availed itself of the laws of California, and neither has sufficient, minimum contacts with California to justify the exercise of personal jurisdiction.  Cadence has made boilerplate alter ego allegations, but those allegations are not sufficient to make a prima facie showing to pierce the corporate veils, and Cadence has not plausibly alleged any facts that would establish personal jurisdiction of the foreign corporations without piercing the corporate veil.  Cadence also failed to identify which specific Defendant purportedly signed the license agreement containing a forum-selection provision, and it failed to even provide executed copies of the purported agreements.

Third, Syntronic USA, joined by Syntronic AB and Syntronic Beijing in the alternative, move to dismiss pursuant to Rule 12(b)(6) because the Copyright Act does not apply to extraterritorial conduct, and Cadence has not properly alleged that any copyright violations occurred in the United States.  Cadence alleges that its sophisticated licensing software meticulously tracks which computers are using unauthorized copies of the computers and that it identified over sixty-four computers that used unlicensed software, and therefore Cadence **knows** where any copyright violations occurred.  However, Cadence cleverly resorts to alleging "on information and belief" that some violations occurred in the United States.  Conclusory allegations based on nothing more than "information and belief" will not suffice to plausibly allege a claim.  A party cannot allege essential facts on information and belief when other allegations demonstrate that it would have actual knowledge, if the facts were true.  Cadence also failed to plead the identity of the Defendant(s) that purportedly breached the license agreements, which is insufficient as a matter of law.

Lastly, the flaws in Cadence's pleadings are deliberately artful.  Cadence drafted a shotgun complaint that improperly conflates allegations against the three separate entities, in order to camouflage fatal defects in its claims.  For example, Cadence deliberately avoids alleging which entity, or entities, entered into and purportedly breached the software license agreements.  Cadence attached two unsigned exemplars of "click wrap" agreements, but no indication that anyone acting

2

MOTION TO QUASH, TO DISMISS, OR FOR MORE DEFINITIVE STATEMENT; CASE NO. 21-CV-3610-SI

with authority to bind any of the Syntronic entities agreed to the "click wrap" terms.  This omission is both glaring and material, because the *only* basis for exercising jurisdiction over the foreign entities would be acceptance of a forum selection clause.  Cadence does not allege or attach any documentation showing a commercial relationship with any of the named defendants.  Cadence failed to allege which entity infringed on the copyrights, and where those infringements occurred— even though its other allegations demonstrate that it could plead those facts if it chose to do so.  Therefore, in the alternative, all three Defendants move for a more definite statement pursuant to Rule 12(e) so that they can determine what each entity is accused of doing.

### III.    FACTUAL BACKGROUND

#### A.    Cadence's Substantive Allegations

Cadence is an engineering services and software company that purports to own a number of copyrighted works for software.  Compl., ¶¶ 38, 41-50.  It generally alleges that "Syntronic" – defined to include all three Defendants without distinction – accessed and used unlicensed versions of copyrighted software.  According to Cadence, this resulted in damages of at least $8.3 million dollars.  *Id.* at ¶¶ 114, 123, 126, 134, 138, 139.  It asserts three claims for (1) copyright infringement, (2) circumvention of copyright protection systems, and (3) breach of contract.  *Id.* at ¶ 1.

For copyright infringement, Cadence alleges that "Syntronic" "has downloaded, modified, used, and/or otherwise copied and installed Cadence Software without permission or authorization from Cadence[,]" constituting "direct and contributory copyright infringement[.]"  *Id*. at ¶¶ 114, 115.  For circumvention of copyright protection systems, Cadence alleges that "Syntronic" created or used "cracked" software files, which would allegedly allow "Syntronic" to bypass the required entry and/or use of a valid license file.  *Id.* at ¶ 126.

Cadence alleges that it knows about these purported copyright violations because it uses technology that tracks unauthorized use of its software.  *Id.* at ¶¶ 64-66.  This tracking technology purportedly allows Cadence to identify specific machines that use its software without a license.  *Id.* at ¶ 83-90.  Cadence claims to have identified over sixty-four specific "Syntronic" machines that allegedly used the unlicensed software.  *Id.* at ¶ 83.

3

504894333.5

1    Despite this tracking technology and the supposed identification of sixty-four specific

2    machines, Cadence failed to definitively plead copyright violations within the United States. *Id.* at ¶

3    34.  Instead, Cadence asserted only a single allegation "[o]n information and belief," that

4    "Syntronic" "has used unauthorized versions of Cadence Software in California and this District."

5    *Id.*  Cadence also failed to plead the identity of the specific Defendant(s) alleged to have used the

6    copyrighted software and alleged to have circumvented copyright protection systems. *Id.* at ¶¶ 111-

7    134.

8        For breach of contract, Cadence alleges that "Syntronic" entered into and breached two

9    different versions of a click-wrap Software License and Maintenance Agreement (SLMA), attached

10   as Exhibits 1 and 2 to the Complaint. *Id.* at ¶¶  28, 136, 138.  As with its copyright claims, however,

11   Cadence failed to plead the identity of the "Syntronic" entity that purportedly entered into and

12   breached the SLMAs. *Id.*  To the extent Cadence has a contract actually signed on behalf of one of

13   the Defendants, it failed to attach it to the Complaint.  Compl., Exs. 1, 2.

14        **B.**   **Allegations of Personal Jurisdiction Over Syntronic AB and Syntronic Beijing**

15        Syntronic AB is a Swedish corporation.  Syntronic Beijing is a Chinese corporation.

16   Cadence alleges two grounds for personal jurisdiction over those entities.[1]  First, that "Defendants"

17   agreed to a forum selection clause in the SLMAs.  Compl., ¶ 28.  Cadence failed to plead the identity

18   of the Defendant(s) that allegedly entered into the SLMA and agreed to the forum selection clause.

19   *Id.*

20        Second, Cadence alleges that Syntronic AB and Syntronic Beijing are subject to personal

21   jurisdiction as the alter egos of Syntronic USA.  *Id.* at ¶ 30.  Cadence relies on approximately eight

22   factual allegations to support its contention:  (1) Defendants hold themselves out as the "Syntronic

23   Group" and/or a "Global Design House;" (2) Defendants are under common equitable control; (3)

24   Defendants have overlapping officers and directors; (4) Defendants view their employees as

25   interchangeable and one employee in Canada allegedly represented that his employer is "based in

26

27   _____

     [1] Syntronic USA does not contest personal jurisdiction.

28
                                          4

Sweden;" (5) Defendants organize their business activities by region and business units rather than by legal entities; (6) Defendants, for at least some period, shared offices or other business locations; (7) Defendants share a website; and (8) Defendants submit financial statements and pay taxes on a consolidated basis. *Id.* at ¶¶ 6-21.

Cadence alleges it would be inequitable for Defendants to "hide behind" their corporate separateness because they allegedly hold themselves out as "Syntronic Group" and respecting corporate separateness would frustrate enforcement of any judgment. *Id.* at ¶¶ 22-23. It further alleges that Defendants acted in bad faith because after discussions with Syntronic AB and Syntronic USA, those entities directed Cadence to Syntronic Beijing, which purportedly "refuses to engage with Cadence." *Id.* at ¶¶ 24-25. According to Cadence, this constitutes a "shell game." *Id.* at ¶ 25.

# V.    ARGUMENT

## A.    The Court Should Quash Service on Syntronic Beijing[2]

### 1.    Cadence Bears the Burden of Proving Proper Service

A motion to dismiss under Rule 12(b)(5) permits a challenge to the method of service attempted by the plaintiff. *See Olson v. Federal Election Comm'n* (D DC 2009) 256 FRD 8, 9, fn. 3. "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). Strict compliance is required with the rules governing manner of service. It is well recognized that a "defendant's actual notice of the litigation ... is insufficient to satisfy Rule 4's requirements." *Way v. Mueller Brass Company*, 840 F.2d 303, 306 (5th Cir.1988); *see also Sieg v. Karnes*, 693 F.2d 803, 807 (8th Cir.1982).

If service is challenged, the plaintiff bears the burden of establishing proper service. *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004). Upon a finding of improper

---

[2] Although Syntronic AB does not contest service in light of California case law regarding parent-subsidiary relationships in the service context, it contests and does not concede that Syntronic USA is an agent for service or that Syntronic USA acts or serves as an agent of Syntronic AB in any capacity. Declaration of Björn Jansson on behalf of Syntronic AB in Support of Motion to Dismiss ("Jansson Decl."), ¶ 24.

1    service, it is within the district court's sound discretion to determine whether to quash service of

2    process or to dismiss the case. *Stevens v. Sec. Pac. Nat. Bank*, 538 F.2d 1387, 1389 (9th Cir.

3    1976); *Arasan Chip Sys., Inc. v. Sonix Tech. Co.*, No. 509-CV-02172 JF PVT, 2010 WL 890424, at

4    *1 (N.D. Cal. Mar. 8, 2010).

5                    **2.    Cadence has not Properly Served Syntronic Beijing**

6           As of the filing of this brief, Cadence has not filed a proof of service.  However, in response

7    to an inquiry, Cadence's counsel stated that it claimed to have served Syntronic Beijing by

8    delivering the summons to the agent for service of process of Syntronic *USA*.  Because the purported

9    service occurred in the United States, the Convention on Service Abroad of Judicial and

10   Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965 (Hague Service

11   Convention)[3] does not apply.  *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 700,

12   (1988).

13          The question, therefore, is whether Cadence could validly serve Syntronic Beijing by

14   delivering the summons to the agent for service of Syntronic USA.  The answer is "no."

15   A foreign corporation, such as Syntronic Beijing, must be served "in a judicial district of the United

16   States: (A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or (B) by delivering a

17   copy of the summons and of the complaint to an officer, a managing or general agent, or any other

18   agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1).

19   Rule 4(e)(1) provides that process may be served in accordance with "state law for serving a

20   summons in an action brought in courts of general jurisdiction in the state where the district court is

21   located or where service is made."  Fed.R.Civ.P. 4(e)(1).

22          Syntronic Beijing does no business in California, and it has not designated Syntronic USA

23   (or anyone else) to accept service of process in the United States.  Declaration of Zinser Zhao on

24   behalf of Syntronic (Beijing) Technology R&D Center Co., LTD in Support of Motion to Dismiss

25

26

27   _____

     [3] [1969] 20 U.S.T. 361, T.I.A.S. No. 6638

28                                                    6

("Zhao Decl."), ¶¶ 5, 24.  Syntronic USA does not act as an agent for Syntronic Beijing in any capacity.  *Id.*

Service on a subsidiary does not effect service on a corporate parent.  *Gravely Motor Plow & Cultivator Co. v. H.V. Carter Co., Inc.*, 193 F.2d 158, 161 (9th Cir.1951).  However, California Code of Civil Procedure section 416.10(b) permits service on a party's "general manager."  One line of cases has upheld service on a wholly-owned subsidiary where that subsidiary could be regarded as a "general manager" for the parent under California law.  *See, e.g., Khachatryan v. Toyota Motor Sales USA, Inc.* 578 F. Supp. 2d 1224 (C.D. Cal. 2008).  But *Khachatryan* and the cases it relies on are distinguishable.

In *Khachatryan*, the parent company owned and fully controlled the United States subsidiary.  The domestic subsidiary effectively carried on business that the corporate parent could have carried on in the United States through a branch office, used the parent's intellectual property, and gave the corporate parent "substantially the business advantages that it would have enjoyed if it conducted business" in the state itself.  *Id.* at 1227, citing *Sims v. Nat'l Engineering Co.*, 221 Cal. App.2d 511, 515 (1963).

In contrast, Syntronic USA is not a subsidiary of Syntronic Beijing, and Syntronic USA does not carry on Syntronic Beijing's business here.  Although they are corporate affiliates, Syntronic Beijing lacks the control that was present in *Khachatryan* and the California cases that it relied on.  Syntronic USA does not act as Syntronic Beijing's agent in California.  No case has upheld service on a sister corporation or other entity that was not acting as the foreign corporation's agent in California.  Therefore, the Court should quash service of the summons on Syntronic Beijing.

**B.    Cadence Failed to Allege Contacts Sufficient to Establish Personal Jurisdiction over Syntronic AB or Syntronic Beijing**

"Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate."  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  To satisfy this burden, "the plaintiff cannot 'simply rest on the bare allegations of its complaint.'"  *Id.* (citation omitted).  Rather, where, as here,

7

the defendant has submitted evidence controverting the plaintiff's allegations, the plaintiff must

"'come forward with facts, by affidavit or otherwise, supporting personal jurisdiction.'" *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (citation omitted); *see also Data Disc., Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977) ("we may not assume the truth of allegations in a pleading which are contradicted by affidavit").

A plaintiff's burden is particularly high where the plaintiff is seeking to establish personal jurisdiction over a party from a foreign country. *See, e.g., Asahi Metal Indus. Co. Ltd. v. Super. Ct. of Cal., Solano Cty.*, 480 U.S. 102, 114 (1987) ("The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders."). The Due Process Clause of the U.S. Constitution protects non-residents from being bound by judgments of a forum with which they have no meaningful contacts. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). Due process, therefore, requires that a non-resident defendant have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945).

Such "minimum contacts" must satisfy one of two requirements. First, where a defendant's contacts are so "continuous and systematic" as to render it essentially at home in the forum state, a court is said to have general jurisdiction over the defendant. *Daimler*, 134 S. Ct. at 761. Second, if a defendant's contacts are not sufficiently "continuous and systematic" to exercise general jurisdiction, a defendant may still be subject to specific jurisdiction, but only with respect to claims that relate to or arise out of the defendant's alleged activities in the forum. *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017).

### 1.    Neither Syntronic AB nor Syntronic Beijing is subject to General Jurisdiction

"[O]nly a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Daimler*, 134 S. Ct. at 760 (citation omitted). In *Daimler*, the Court held that the "paradigm all-purpose forums" in which a corporation will be considered "at home," and

MOTION TO QUASH, TO DISMISS, OR FOR MORE DEFINITIVE STATEMENT; CASE NO. 21-CV-3610-SI

504894333.5

subject to general jurisdiction, are limited to the "corporation's place of incorporation and principal place of business." *Id*. The Court cautioned that only in an "*exceptional case*" will "a corporation's operations in a forum other than its formal place of incorporation or principal place of business … be so substantial and of such a nature as to render the corporation at home in that State." *Id*. at 761 n. 19 (emphasis added); *see also Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) (observing that after *Daimler*, "it is … *incredibly difficult* to establish general jurisdiction in a forum other than the place of incorporation or principal place of business.") (emphasis added).

a.    Cadence failed to adequately plead general jurisdiction

Cadence does not expressly allege general jurisdiction over Syntronic AB or Syntronic Beijing. But Cadence must concede that neither entity is "at home" in this forum, acknowledging that Syntronic AB is a "Swedish *Publikt Aktiebolag* with its principal place of business at Utmarksvägen 33C, 802 91 Gävle, Sweden" and that Syntronic Beijing "is a Chinese corporation with its principal place of business at Wangjing Reward Building C1301, Chaoyang District, Beijing, China 100102." Dkt. 1 at ¶¶ 3, 5.

The complaint is otherwise devoid of any allegations, let alone factually supported ones, regarding any "continuous and systematic" contacts with the forum. Those words do not even appear in the pleadings. Instead, Cadence alleges only in conclusory fashion that "Syntronic AB and Syntronic Beijing also regularly conduct business in California." *Id.* at ¶ 31. That bare assertion is insufficient. *China Tech. Global Corp. v. Fuller, Tubb, Pomeroy & Stokes*, 2005 WL 1513153, at *1 (N.D. Cal. June 27, 2005) (to establish personal jurisdiction a plaintiff must "demonstrate *facts* that if true would support jurisdiction over the defendant…the court need not assume the truth of mere conclusory allegations") (emphasis added). It is also factually inaccurate, as neither Defendant conducts business in California and neither Defendant is even registered to do business in any state in the United States. *See* Jansson Decl., ¶ 5; Zhao Decl., ¶ 5 (explaining that neither entity conducts business, provides goods or services, or is even registered to do business in the United States).

Cadence's remaining allegations merely conflate the Defendants. After alleging that "Syntronic *AB* and Syntronic *Beijing*" regularly conduct business in California, Cadence switches to

9

1    alleging in the very next paragraph that "Syntronic" does business in the Bay Area and Silicon

2    Valley. *Id*. at ¶¶ 32-33. The only Defendant that does business in California is Syntronic USA, not

3    Syntronic AB or Syntronic Beijing. Jansson Decl., ¶ 5; Zhao Decl., ¶ 5.

4               b.     There is no general jurisdiction based on alter ego

5       Cadence alleges that Syntronic AB and Syntronic Beijing are subject to personal jurisdiction

6    as the alter egos of Syntronic USA.[4] *Id.* at ¶ 30.

7       "It is a general principle of corporate law deeply ingrained in our legal system that a

8    corporation is not liable for the acts of its subsidiaries." *U.S. v. Bestfoods*, 524 U.S. 51, 61 (1998).

9    Piercing the corporate veil to hold one entity liable for the acts of another is an extreme remedy,

10    which courts use sparingly. *Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 983 (N.D. Cal.

11    Mar. 14, 2016).

12       To establish alter-ego, a plaintiff must show that "(1) there is a unity of interest and

13    ownership between the corporations such that their separate personalities do not actually exist, and

14    (2) treating the corporations as separate entities would result in injustice." *Id*. (citing *Ranza v. Nike,*

15    *Inc*., 793 F.3d 1059, 1073 (9th Cir. 2015)).[5] The first prong requires "a showing that the parent

16    controls the subsidiary to such a degree as to render the latter the mere instrumentality of the

17    former." *Ranza*, 793 F.3d 1073 (internal quotations omitted). That requires such "pervasive control"

18    by the parent corporation, that it can only be met where the parent corporation "dictates every facet

19    of the subsidiary's business—from broad policy decisions to routine matters of day-to-day

20

---

21    [4] Cadence does not clearly state whether its alter ego theory is with respect to general or specific
jurisdiction. Compl., ¶ 30 (alleging only that "Syntronic AB and Syntronic Beijing are subject to

22    *jurisdiction* as the alter egos of Syntronic USA.") (emphasis added). It appears to be the former,
based on the preceding paragraph that Syntronic USA is "subject to general jurisdiction." *Id.* at ¶ 29.

23    In a similar case in this District, where it was also unclear, the Court analyzed the alter ego question
under general jurisdiction. *Stewart v. Screen Gems–EMI Music, Inc.*, 81 F.Supp.3d 938, 953, 953

24    n.4 (N.D. Cal. 2015). Cadence cannot establish alter ego under either theory of jurisdiction.

25    [5] The same basic test applies to Cadence's "single enterprise" theory. *See Toho-Towa Co., Ltd. v.
Morgan Creek Productions, Inc.*, 217 Cal. App. 4th 1096, 1108-09 (2013) (explaining that "[i]n

26    California, common principles apply regardless of whether the alleged alter ego is based on piercing
the corporate veil to attach liability to a shareholder or to hold a corporation liable as part of a single

27    enterprise[,]" and proceeding to cite the general alter ego factors as informing the single business
enterprise analysis).

28

MOTION TO QUASH, TO DISMISS, OR FOR MORE DEFINITIVE STATEMENT; CASE NO.
21-CV-3610-SI

504894333.5

operation." *Id*. "Total ownership and shared management personnel are alone insufficient to

establish the requisite level of control." *Id*. (citing *Harris Rutsky & Co. Ins. Servs. v. Bell &*

*Clements Ltd*., 328 F.3d 1122, 1135 (9th Cir. 2003)). Additionally, Cadence cannot meet the first

prong merely showing "an active parent corporation involved directly in decision-making about its

subsidiaries' holdings" where the corporations "observe all of the corporate formalities necessary to

maintain corporate separateness." *Doe v. Unocal Corp*., 248 F.3d 915, 928 (9th Cir. 2001).

Courts generally consider nine factors when assessing the first prong of the alter

ego test:

> [1] the commingling of funds and other assets of the entities, [2] the holding out
> by one entity that it is liable for the debts of the other, [3] identical equitable
> ownership of the entities, [4] use of the same offices and employees, [5] use of
> one as a mere shell or conduit for the affairs of the other, [6] inadequate
> capitalization, [7] disregard of corporate formalities, [8] lack of segregation of
> corporate records, and [9] identical directors and officers.

*Corcoran*, 169 F. Supp. 3d at 983 (internal citations omitted).

Cadence's alter ego allegations fail for two reasons.  First, Defendants present declarations

refuting those allegations and demonstrating that that Cadence cannot meet the alter ego factors.

Second, Cadence's the alter ego allegations are insufficient as a matter of law.

> i.    *Defendants' declarations refute Cadence's allegations*

Defendants are concurrently filing declarations demonstrating their separate legal existence.

Defendants were separately formed and filed appropriate paperwork according to the laws of

their respective jurisdictions.  Jansson Decl., ¶ 2; Declaration of Björn Östlund on behalf of

Syntronic Research and Development USA Inc. in Support of Motion to Dismiss ("Östlund Decl."),

¶ 2; Zhao, ¶ 2.  They adopted and follow Bylaws and adhere to corporate formalities, including

holding regular meetings of the boards of directors and maintaining minutes of those meetings in

separate minute books.  Jansson Decl., ¶ 13; Östlund Decl., ¶ 10 ; Zhao Decl., ¶ 13.

Syntronic AB is the parent of both Syntronic USA and Syntronic Beijing, but Syntronic USA

owns no interest in Syntronic AB or in Syntronic Beijing, and Syntronic Beijing owns no interest in

Syntronic AB or in Syntronic USA.  Jansson Decl., ¶ 7; Östlund Decl., ¶ 5; Zhao Decl., ¶ 7.

11

MOTION TO QUASH, TO DISMISS, OR FOR MORE DEFINITIVE STATEMENT; CASE NO.
21-CV-3610-SI

504894333.5

Syntronic AB has no involvement in the daily decision-making and operations of either Syntronic USA or Syntronic Beijing.  Jansson Decl., ¶ 14; Östlund Decl., ¶ 11; Zhao Decl., ¶ 14.  The day-to-day decision-making authority, including all hiring and firing decisions, is vested exclusively with the management of Syntronic USA and Syntronic Beijing, respectively.  *Id.*

There is zero overlap in officers among the three Defendants.  Jansson Decl., ¶ 8; Östlund Decl., ¶ 6; Zhao Decl., ¶ 9.  The three boards of directors are not identical, and there is only minimal overlap with only Björn Jansson, as representative of the parent company, sitting on the board of all three companies and Monica Jansson sitting on the board of two companies (Syntronic AB and Syntronic Beijing).  Jansson Decl., ¶ 8; Östlund Decl., ¶ 6; Zhao Decl., ¶¶ 8, 9.

There is zero overlap in employees among the three Defendants. Jansson Decl., ¶ 9; Östlund Decl., ¶ 7; Zhao Decl., ¶ 10.  Each Defendant is responsible for and manages its own payroll, and each Defendant pays its own employees out of its own accounts.  *Id.*  No Defendant pays the salaries of any other Defendant's employees.  *Id.*

Defendants do not share office space.  Jansson Decl., ¶ 3; Östlund Decl., ¶ 3; Zhao Decl., ¶ 3.  They maintain separate principal places of business.  *Id.*  No Defendant uses the office space of any other Defendant for any aspect of its operations.  *Id.*  Each entity is responsible for its own lease.  *Id.*

Defendants do not comingle theirs funds.  Jansson Decl., ¶¶ 10, 11, 16; Östlund Decl., ¶¶ 8, 9, 13; Zhao Decl., ¶¶ 11, 12, 16.  Each Defendant maintains its own separate bank account to which no other Defendant has direct access.  Jansson Decl., ¶ 10; Östlund Decl., ¶ 8; Zhao Decl., ¶ 11.  There is no single account to which two or more of the Defendants have direct access.  Jansson Decl., ¶¶ 10, 11; Östlund Decl., ¶¶ 8, 9; Zhao Decl., ¶¶ 11, 12.  Syntronic AB and Syntronic Beijing do not even have bank accounts in the United States.  Jansson Decl., ¶¶ 10, 12; Zhao Decl., ¶ 11.  Each Defendant regularly audits its financial information, and Defendants retain different accounting firms for company-level audits.  Jansson Decl., ¶ 16; Östlund Decl., ¶ 13; Zhao Decl., ¶ 16.

Defendants do not hold themselves out as liable for or guaranteeing the debts of on another.  Jansson Decl., ¶ 17; Östlund Decl., ¶ 14; Zhao Decl., ¶ 17.  There are no indemnity or guarantee agreements between Defendants.  Jansson Decl., ¶ 18; Östlund Decl., ¶ 17; Zhao Decl., ¶ 20.  Any

12

1    loans between Defendants have been appropriately documented. Jansson Decl., ¶¶ 19, 20; Östlund

2    Decl., ¶ 16; Zhao Decl., ¶ 19.

3                    ii.    *Cadence failed to meet its prima facie burden*

4           Cadence failed to address most of the relevant factors and provided only conclusory and

5    unsupported allegations for the factors it did address. *See, e.g.*, Dkt. 1 (Compl.), at ¶ 10 ("Syntronic

6    AB, Syntronic USA, and Syntronic Beijing have overlapping officers and employees."). Those

7    conclusory allegations are insufficient. *See Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1040 (N.D. Cal.

8    2014) ("Conclusory allegations of 'alter ego' status are insufficient to state a claim.") (citations

9    omitted). Moreover, each of Cadence's approximately eight purported "factual" allegations are

10   deficient as a matter of law. *Id.* at ¶¶ 6-21.

11          First, Cadence's allegation in paragraphs 8, 15, 18, and 19, that Defendants hold themselves

12   out on a shared website as a "Global Design House" or the "Syntronic Group" or as organizing some

13   of their business activities regionally is insufficient, and this District has repeatedly rejected such

14   arguments. *See Corcoran*, 169 F. Supp. 3d at 984 (collecting cases and explaining that "courts

15   recognize that separate corporate entities presenting themselves as one online does not rise to the

16   level of unity of interest required to show companies are alter egos."); *Payoda, Inc. v. Photon

17   Infotech, Inc.*, Case No. 14-cv-04103-BLF, 2015 WL 4593911, *1, *3 (N.D. Cal. July 30, 2015)

18   (granting motion to dismiss and rejecting argument that defendants "hold themselves out to the

19   public to be the same entity on their website" as indicative of alter ego relationship); *Moody v.

20   Charming Shoppes of Delaware, Inc.*, 2008 WL 2128955, at *3 (N.D. Cal. May 20, 2008)

21   ("[g]eneric language on [a company's] website and in its press releases simply do not rise to the day-

22   to-day control required to impute the subsidiary's contacts to the parent"). To the extent Cadence

23   relies these allegations as supporting an assertion that Defendants are not separate legal entities, that

24   assertion is also factually inaccurate. Jansson Decl., ¶ 2; Östlund Decl., ¶ 2; Zhao Decl., ¶ 2.

25          Second, Cadence's allegation in paragraph 9 that Defendants are under common equitable

26   ownership is insufficient, particularly where Cadence failed to sufficiently plead other alter ego

27   factors. *See Screen Gems–EMI Music, Inc.*, 81 F. Supp. 3d at 956 (explaining that "it is well-settled

28
                                                    13
     ──────────────────────────────────────────────────────────────
     MOTION TO QUASH, TO DISMISS, OR FOR MORE DEFINITIVE STATEMENT; CASE NO.
                                  21-CV-3610-SI

that common ownership is not dispositive[,]" and granting motion to dismiss in part upon finding that common equitable ownership, *even when coupled with two other factors that weighed in favor of alter ego*, was insufficient); *Sandoval*, 34 F.Supp.3d at 1040 ("Common ownership alone is insufficient to disregard the corporate form.").

Third, Cadence's allegations in paragraphs 10, and 11 that Defendants have overlapping officers, directors, and "interchangeable" employees is insufficient. *See, e.g., U.S. v. Pangang Group Co., Ltd.*, 879 F. Supp. 2d 1052, 1067 (N.D. Cal. 2012) (the fact that a subsidiary's board of directors included representatives from parent companies "is not sufficient to establish the requisite control to establish an alter-ego relationship"); *Corcoran*, 169 F. Supp. 3d at 983-984 (finding allegations insufficient where parent and wholly owned subsidiary "had overlapping officers and directors"). "[C]ourts generally presume that directors can and do 'change hats' to represent each corporation separately, despite their overlapping obligations as officers or directors for more than one entity." *Screen Gems-EMI Music, Inc.*, 81 F. Supp. 3d at 956. Indeed, the only overlapping directors between Defendants are Bjorn Jansson and Monica Jansson, both representatives of the corporate parent, Syntronic AB, which is entirely appropriate. *See Gerritsen v. Warner Bros. Ent., Inc.*, 116 F. Supp. 3d 1104, 1138-39 (C.D. Cal. 2015) ("it is considered a normal attribute of ownership that officers and directors of the parent serve as officers and directors of the subsidiary."). Each subsidiary also has at least one director who is not employed by the parent. Östlund Decl., ¶ 6; Zhao Decl., ¶ 8. Moreover, there are no overlapping officers or employees among the three Defendants. Östlund Decl., ¶¶ 6, 7; Jansson Decl., ¶¶ 8, 9; Zhao Decl., ¶¶ 9, 10.

Fourth, Cadence's allegation in paragraph 17 that, "for at least part of the time," Defendants shared office space is also insufficient. *See, e.g.*, *Gerritsen v. Warner Bros. Entm't Inc*, 116 F. Supp. 3d 1104, 1140 (C.D. Cal. 2015) ("the fact that a parent and subsidiary share the same office location, or the same website and telephone number, does not necessarily reflect an abuse of the corporate form and existence of an alter ego relationship."); *Harris Rutsky*, 328 F.3d at 1135 (facts showing that parent wholly owned subsidiary, parent and subsidiary shared the same officers and directors, co-employed staff, and shared physical office space did not satisfy first prong of alter ego test).

14

Moreover, as a matter of fact, each Defendant maintains a separate principal place of business and Defendants do not share a single office.  Östlund Decl., ¶ 3; Jansson Decl., ¶ 3; Zhao Decl., ¶ 3.

Fifth, Cadence's allegations in paragraph 21 that Defendants submit financial statements and/or pay taxes on a consolidated basis is insufficient.  *See American Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 591 (9th Cir. 1996) (finding no alter ego and explaining that consolidated tax returns "hardly demonstrates" domination of subsidiary by parent); *Forest v. Equitable Life Assurance Society of U.S.*, Case No. 99-cv-5173-SI, 2001 WL 1338809, *9 (N.D. Cal. June 12, 2001) (citing California authority for the proposition that allegations or evidence of consolidated financial statements falls "woefully short of the showing on which alter ego normally rests") (citations omitted); *see also Uniloc 2017 LLC v. H&R Block, Inc.*, No. 19 Civ. 1149, 2019 WL 8219781, at *2 (C.D. Cal. Dec. 23, 2019) ("courts in this District have concluded that consolidated financial statements are insufficient to satisfy the alter ego test").  Moreover, Defendants retain *separate* accounting firms to conduct company-level audits of their financial records.  Östlund Decl., ¶ 13; Jansson Decl., ¶ 16; Zhao Decl., ¶ 16.

Finally, Cadence also failed to sufficiently plead the inequitable result prong.  Cadence's allegations in paragraph 23 that refusal to pierce the corporate veil would "frustrate[e] enforcement of any eventual judgment" is insufficient as a matter of law.  *See, e.g.*, *Sonora Diamond Corp. v. Superior Court*, 83 Cal.App.4th 523, 539 (2000) ("[d]ifficulty in enforcing a judgment or collecting a debt does not satisfy" the inequitable result prong).  And Cadence's allegations in paragraphs 24 and 25 that Syntronic AB and Syntronic USA referred Cadence to Syntronic Beijing, which allegedly "refused to engage with" Cadence, does not demonstrate a "shell game."  It demonstrates the proper functioning of separate legal entities.

### 2.    Neither Syntronic AB nor Syntronic Beijing is Subject to Specific Jurisdiction

To establish "specific jurisdiction" over a non-resident defendant, a plaintiff must demonstrate that: (1) the defendant either "purposefully direct[ed]" its activities or "purposefully avail[ed]" itself of the benefits afforded by the forum's laws; (2) the claim "arises out of or relates to

15

the defendant's forum-related activities"; and (3) the exercise of jurisdiction "comports with fair play and substantial justice, i.e., it is reasonable." *Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1023 (9th Cir. 2017) (citation omitted); *see also Bristol-Myers Squibb*, 137 S. Ct. at 1781 ("In order for a court to exercise specific jurisdiction … there must be an 'affiliation between the forum and the underlying controversy, principally [an] activity or an occurrence that takes place in the forum State. When there is no such connection, specific jurisdiction is lacking ….") (citation omitted).  Plaintiff appears to assert only one theory of specific jurisdiction based on an alleged forum selection clause.[6]

Specifically, Cadence alleges that "Defendants" agreed to a forum selection clause in the click-wrap SLMAs.  Compl., ¶ 28.  Cadence failed to allege *which* Defendant purportedly agreed to the terms of the SLMA and, thus, the forum selection clause, and failed to even attach executed agreements or any other documentation evidencing a commercial relationship of any kind with any of the Defendants.  *Id.*

Notwithstanding Cadence's odd refusal to identify the specific alleged Syntronic entity, there is no evidence that *any* Defendant agreed to a forum selection clause.  Each Defendant conducted an investigation and found no evidence of the SMLAs between Cadence and any of the Syntronic entities.  Östlund Decl., ¶¶ 18-20; Jansson Decl., ¶¶ 21-23; Zhao Decl., ¶¶ 21-23.  No Defendant agreed to any forum selection clause.  *Id.*

Furthermore, only persons having actual or ostensible authority could enter into a contract that would bind Syntronic AB or Syntronic Beijing, and thereby "accept" the forum selection clause. *See Title Guarantee & Trust Co. v. Hammond Lumber Co.*, 62 Cal. App. 245, 254-55 (1923) ("[A] corporation is not bound by any act or acts of its officers or employees unless they are by the corporation vested with general authority to transact any and all of the business falling within the scope of its corporate purposes, or vested with special authority, through formal action of its board

---

[6] Indeed, since Cadence failed to definitively plead copyright violations in the United States, it cannot meet the second prong of the specific jurisdiction test, that the claim "arises out of or relates to the defendant's forum-related activities" because there appear to be no forum-related activities.

16

of directors, to do some particular act within the limits of its charter powers, or unless the corporation has held such officers or employees out to the public as possessing authority to act for it according to the general usage, practice, and course of its business."); *Snukal v. Flightways Mfg. Inc.*, 23 Cal. 4th 754, 779 (2000) ("At common law, the party seeking to enforce a contract with a corporation generally has the burden of establishing the contracting officer's authority to bind the corporation.").[7]

Defendants also found no evidence that any employee with authority to bind the company entered into or clicked on any SMLA. Östlund Decl., ¶¶ 18-20; Jansson Decl., ¶¶ 21-23; Zhao Decl., ¶¶ 21-23. Each Defendant adheres to an IT/Information Security Policy that prohibits its employees from using unlicensed software or cracked licenses. *Id.* That policy requires that all software used in the course of employment must be licensed and *approved* by the Defendant. *Id.* None of Defendants' employees received approval to click on or enter into the SLMAs. *Id.* At most, then, Cadence appears to be relying on one or more rogue employees who may or may not have clicked on a click-wrap SLMA without authorization, without authority to bind Defendants, and in violation of the IT/Information Security Policy. That is insufficient to bind Defendants to a forum-selection clause and cannot provide a basis for jurisdiction. *See Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 458 (9th Cir. 2007) (forum selection clause "may give rise to waiver of objections to personal jurisdiction" but only "provided that the defendant agrees to be so bound").

## C. Cadence Failed to State a Plausible Claim Against Any Defendant[8]

To survive a motion to dismiss under Rule 12(b)(6), plaintiffs must allege "enough facts to

---

[7] Even if the Uniform Electronic Transactions Act, Cal. Civ. Code section 1633.1 *et seq.* ("UETA") applied to transactions involving Swedish and Chinese corporations, UETA does not address the issue of authority to bind a corporation. Before UETA even applies, a plaintiff must show that the parties – Syntronic AB and Syntronic Beijing – agreed to conduct a transaction electronically. Civ. Code section 1633.5(b). The evidence presented in declarations in support of this motion demonstrates that there was no such intent on the part of either corporation.

[8] Without waiving their challenges to service personal jurisdiction, Syntronic AB and Syntronic Beijing join in this argument in the alternative. Defendants note that, as a matter of judicial economy, until and unless Cadence is able to plead copyright violations within the United States, it may not be necessary for the Court to analyze the jurisdictional arguments specific to Syntronic AB and Syntronic Beijing.

17

1    state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

2    (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more

3    than a sheer possibility that a Defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

4    (2009). Plaintiffs must allege facts sufficient to "raise a right to relief above the speculative level."

5    *Twombly*, 550 U.S. at 544, 555.  "A pleading that offers 'labels and conclusions' or 'a formulaic

6    recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting

7    *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of

8    'further factual enhancement.'" *Id*. (quoting *Twombly*, 550 U.S. at 557).

9         Alternatively, Defendants may move for a more definite statement under Rule 12(e) where a

10   complaint fails "to say which wrongs were committed by which defendants" and instead relies on

11   vague references to all "defendants."  *McHenry v. Renne*, 84 F. 3d 1172, 1179 (9th Cir. 1996).

12                   **1.    Cadence Failed to Plausibly Allege Copyright Act Violations in the**
                              **United States**
13

14        "It is axiomatic that United States copyright law does not apply extraterritorially." *Yount v.*

15   *Acuff Rose-Opryland*, 103 F.3d 830, 835 (9th Cir. 1996) (citing 3 David Nimmer & Melville B.

16   Nimmer, Nimmer on Copyright, § 17.02 (1996)); *see also Doe v. Geller*, 533 F. Supp. 2d 996, 1003

17   (N.D. Cal. 2008) ("United States copyright laws do not apply extraterritorially.").  "[I]n order for

18   U.S. copyright law to apply, at least one alleged infringement must be completed entirely within the

19   United States, and [] mere authorization of extraterritorial infringement [is] not a completed act of

20   infringement in the United States." *Allarcom Pay Television, Ltd. v. Gen. Instrument Corp.*, 69 F.3d

21   381, 387 (9th Cir. 1995).[9]

22        Not once did Cadence definitively allege copyright violations within the United States.

23   Instead, Cadence offered only a single, carefully-crafted allegation, asserting "*[o]n information and*

---

[9] Although arguably implicating the Court's subject-matter jurisdiction, courts typically review the territoriality requirement under Rule 12(b)(6).  *See, e.g.*, *Litecubes, LLC v. Northern Light Products, Inc.*, 523 F. 3d 1353, 1368 (Fed. Cir. 2008) (reviewing the case law, including Ninth Circuit authority, and explaining that territoriality should be reviewed as an element of a copyright claim under Rule 12(b)(6)); *Shropshire v. Canning*, 809 F.Supp.2d 1139, 1144 (N.D. Cal. 2011).

18

*belief*," that "Syntronic" – without distinction as to which entity – "has used unauthorized versions of Cadence Software in California and in this District." Compl., ¶ 34 (emphasis added). This is deficient for at least two reasons.

First, the allegation is nothing more than a threadbare, conclusory recital. Cadence offers no factual support or examples that would nudge this bare assertion "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680 (quoting *Twombly*, 550 U.S. at 570). The territoriality requirement is an essential element of Cadence's claim and it failed to plead it properly. *See Shropshire v. Canning*, 2011 WL 90136, at *3-4 (N.D. Cal. Jan. 11, 2011) (dismissing allegations that the defendant created a video in Canada using copyrighted material and "the Court can discern no act of infringement that occurred entirely within the United States."); *Sound N Light Animatronics Co., LTD. v. Cloud b, Inc.*, 2016 WL 7635950, at *5 (C.D. Cal. Nov. 10, 2016) (dismissing copyright infringement counterclaims because the counter-plaintiff "does not plausibly allege that infringing products were distributed within the United States"); *Danjaq, S.A. v. MGM/UA Comms., Co.*, 773 F. Supp. 194, 202-03 (C.D. Cal. 1991) (dismissing copyright infringement suit for failure to state a claim on multiple grounds, including "the undisputed axiom that the United States' copyright laws do not operate extraterritorially" and so allegations of performing copyrighted James Bond films on European television without authorization "easily lends itself to resolution on a motion to dismiss"); *Vander Music v. Azteca Int'l Corp.*, 2011 WL 13177301, at *3-4 (C.D. Cal. Jan. 21, 2011) (dismissing claims for direct and contributory copyright infringement where all the complained-of acts took place in Mexico and so Plaintiff failed "to state a cognizable claim for copyright infringement"); *New Name, Inc. v. Walt Disney Co.*, 2007 WL 5061697, at *2-4 (C.D. Cal. Dec. 3, 2007) (dismissing a copyright infringement claim for selling t-shirts with allegedly copyrighted images on them because the only plausible allegations of infringement concerned sales in Canada, and allegations of United States infringement were speculative and implausible).

Second, although *Twombly/Iqbal* does not prevent a plaintiff from pleading facts "upon information and belief," it does impose limitations. Specifically, a plaintiff may plead "on information and belief" only where "the facts are peculiarly within the possession and control of the

19

504894333.5

defendant," or where "the belief is based on factual information that makes the inference of culpability plausible." *See, e.g.*, *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017); *Rearden LLC*, 293 F. Supp. 3d at 976.

Here, Cadence leaves no doubt that "the facts are peculiarly within" its *own possession*, not Defendants', and that Cadence has *actual knowledge* whether there were copyright violations in the United States.  Cadence pleaded at-length about the tracking technology embedded in its software, alleging that it has "made significant investments in technological measures designed to track unauthorized use."  Compl., ¶ 64.  "These measures transmit data to Cadence whenever they detect unauthorized alterations or uses of the [software] product[.]"  *Id.* at ¶ 65.  Additionally, "[t]he Cadence Software also includes other technological measures to verify that the Cadence Software is used according to an appropriate license."  *Id.* at ¶ 66.  Cadence even claims to have identified "over 64 machines that were" allegedly "using Cadence Software" without authorization.  *Id.* at ¶ 83.

If there is evidence of copyright violations in the United States, Cadence has it, and it could have and should have definitively alleged accordingly.  It failed to do so.  Indeed, despite claiming to have identified "over 64 machines" allegedly "using Cadence Software" without authorization, Cadence failed to allege that even *a single one* of those machines was using that software within the United States.  *Id.* at ¶ 83.

This pleading deficiency is particularly worthy of dismissal in light of the fact that Cadence has tactically lumped all of the Defendants together and avoided identifying which Defendant purportedly did what and when.  If there has been no domestic use of the software, let alone unauthorized use, it would be highly inappropriate for Cadence to conceal and artfully plead around that fact.  *E.g.*, *Yount*, 103 F.3d at 835.

Regardless, asserting a single conclusory allegation "on information and belief" – particularly where Cadence has actual knowledge and where the "information" upon which Cadence can form its "belief" is uniquely within its own possession – is insufficient.  *See Iqbal*, 556 U.S. at 680 (quoting *Twombly*, 550 U.S. at 570); *Blantz v. Dept. of Corrections and Rehabilitation*, 727 F. 3d 917, 926-27 (9th Cir. 2013) (rejecting conclusory allegations based "on information and belief");

MOTION TO QUASH, TO DISMISS, OR FOR MORE DEFINITIVE STATEMENT; CASE NO. 21-CV-3610-SI

504894333.5

*Menzel v. Scholastic, Inc.*, 2018 WL 1400386, at *2 (N.D. Cal. March 19, 2018) (dismissing a copyright claim for failing to plausibly allege infringement and noting that "conclusory allegation based on information and belief remains insufficient under *Iqbal/Twombly*…[an] allegation made on information and belief must still be based on factual information that makes the inference of culpability plausible").[10]

Alternatively, Defendants request that the Court order Cadence to provide a more definite statement pursuant to Rule 12(e), definitively alleging copyright violations within the United States and identifying which Defendant purportedly committed those violations and when.  *See Renne*, 84 F.3d at 1174-75 (affirming dismissal under Rules 8(a) and 12(e) where, among other things, plaintiff asserted various claims "without any specification of which of the twenty named defendants or John Does is liable for which of the wrongs.").

### 2.    Cadence Failed to State Plausible Claims by Indiscriminately Lumping All Defendants Together

"As a general rule, when a pleading fails 'to allege what role each Defendant played in the alleged harm,' this 'makes it exceedingly difficult, if not impossible, for individual Defendants to respond to Plaintiffs' allegations'"  *Adobe Systems Incorporated v. Blue Source Group, Inc.*, 125 F. Supp. 3d 945, 964 (N.D. Cal. 2015) (citing *In re iPhone Application Litig.*, No. 11–MD–02250–LHK, 2011 WL 4403963, at *8 (N.D. Cal. Sept. 20, 2011)); *see also Gen–Probe, Inc. v. Amoco Corp.*, 926 F.Supp. 948, 961 (S.D. Cal. 1996) (stating "confusion of which claims apply to which defendants would require that the complaint be dismissed with leave to file an amended complaint.").  Accordingly, a complaint which merely "lump[s] together . . . multiple defendants in one broad allegation fails to satisfy [the] notice requirement of Rule 8(a)(2)."  *Gen–Probe*, 926 F. Supp. at 961 (citing  *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988)).  Instead, a

---

[10] Defendants request that the Court dismiss Cadence's breach of contract claim for separate and independent reasons.  Regardless, to the extent Cadence is unable to allege domestic violations of the Copyright Act, there would be no federal claim and no basis for supplemental jurisdiction over Cadence's state law claim.  Defendants request that the Court decline to exercise supplemental jurisdiction without an underlying federal claim.  28 U.S.C. § 1367(c)(3).

21

504894333.5

1  plaintiff "must identify what action each Defendant took that caused Plaintiffs' harm, without resort

2  to generalized allegations against Defendants as a whole." *Adobe Systems Incorporated*, 125 F.

3  Supp. 3d at 964  (quoting *In re iPhone*, 2011 WL 4403963, at *3).

4          a.     <u>Cadence failed to state a plausible copyright claim</u>

5        Cadence failed to identify what action each Defendant took.  On the very first page of the

6  Complaint Cadence defines all three Defendants as, collectively, "Syntronic" and proceeds to

7  ambiguously allege throughout the Complaint that "Syntronic" or "Defendants" committed

8  copyright infringement, circumvention of copyright protection systems, and breach of contract.

9        For example, in Paragraph 82 Cadence alleges that "[b]y using the Cadence Software without

10  authorization and by circumventing Cadence technological measures, *Syntronic* has [] violated

11  Cadence's registered copyright . . . ."  Compl., ¶ 82 (emphasis added).  Similarly, in Paragraph 116

12  Cadence alleges that "*Syntronic* is also liable for vicarious infringement" and in Paragraph 120

13  Cadence alleges that "*Syntronic's* actions in violation of the Copyright Act have been knowing and

14  willful."  *Id.* at ¶¶ 136, 139 (emphases added).  This makes it impossible to determine which

15  Defendant Cadence alleges to have directly, vicariously, or knowingly committed copyright

16  infringement.

17        Courts in this district and circuit have routinely dismissed these types of complaints as failing

18  to meet Rule 8.  *See, e.g.*, *Lynwood Investments Cy Limited v. Konovalov*, Case No. 20-CV-03778-

19  LHK, 2021 WL 1164838, *16 (N.D. Cal. Mar. 25, 2021) (dismissing copyright claims where

20  plaintiff failed to "identify which defendants allegedly infringed its copyright" and "lump[ed] all the

21  defendants together without stating which entity or person copied the work."); *Hemlock Hat

22  Company, Inc. v. Diesel Power Gear, LLC*, Case No. 19-cv-02422-AJB-AHG, 2020 WL 7013585,

23  *6 (S.D. Cal. Nov. 25, 2020) (dismissing, among other claims, common law copyright infringement

24  claims for "improper lumping of all defendants together" where the complaint alleged that

25  "Defendants copied, used, and/or reproduced copyrighted Design on the Infringing Hat, which it

26  sold to customers via the Diesel Online Store[.]"); *Iglesia Ni Cristo v. Cayabyab*, Case No. 18-cv-

27  00561-BLF, 2018 WL 4674603, *7 (N.D. Cal. Sept. 26, 2018) (dismissing copyright claims that

28                22

generically asserted that "Defendants" infringed copyrighted works but "[did] not identify which Defendant is alleged to have infringed which particular copyright.").

In fact, at least one federal district court rejected a nearly identical approach to pleading a copyright claim as Cadence attempts here.  In *Affordable Aerial Photography, Inc. v. Modern Living Real Estate, LLC*, the court dismissed a copyright claim because, as in this case, the complaint "'assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions . . . .'"  2019 WL 3716775, at *2 (S.D. Fla. Aug. 7, 2019) (quoting *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015)).  As in this case, the plaintiff made various allegations against "Defendant" and failed to "identify the acts through which" the two separate defendants "each allegedly infringed upon Plaintiff's copyrights."  *Id.*  And as in this case, the plaintiff "confusingly conflate[d] the [multiple] defendants," prompting the court to grant the defendants' motion to dismiss, finding that the allegations were insufficient under FRCP 8(a)(2).  The court likewise rejected plaintiff's attempt to rely on alter ego allegations to save its defective pleadings.  *Id.* at *4 (reiterating that, despite allegations of alter ego and vicarious liability, "Plaintiff has not alleged any underlying facts that would lead to the inference that [liability] is plausible.").

    b. <u>Cadence failed to state a plausible breach of contract claim</u>

First, Cadence's breach of contract claim fails for the same reasons as above.  Rather than identify which Defendant(s) entered into a breached the license agreements, Cadence again indiscriminately and improperly lumps Defendants together as "Syntronic."  *See* Dkt. No. 1 (Compl.), ¶ 70 (" . . . *Syntronic* accepted the terms of the [licenses] and agreed to be bound by the terms of the [licenses]; ¶ 136 ("*Syntronic* agreed to the terms of the [licenses]…); ¶ 138 ("*Syntronic* breached at least Section 3 of [the licenses]…").  That is insufficient.  *See, e.g.*, *Smith v. Bank of Am.*, 2016 WL 7444879, at *2 (C.D. Cal. May 11, 2016) (dismissing breach of contract claim under Rule 8 because "the allegations in the Complaint state that 'Defendants' committed the allegedly improper acts, but the Complaint does not clearly delineate which Defendants committed which act"); *McBride v. Fannie Mae*, 2016 WL 3019308, at *3 (E.D. Cal. May 26, 2016) (dismissing

23

1  claims for breach of contract for, among other reasons, "lump[ing] defendants together and fail[ing]

2  to distinguish adequately claims and alleged wrongs among defendants" and thereby violating Rule

3  8); *Mandani v. Volkswagen Group of Am.*, *Inc*., 2019 WL 652867, at *3 (N.D. Cal. Feb. 15, 2019)

4  (dismissing claims for breach of a warranty against two defendants where the plaintiff "lumped"

5  them with a third defendant and only pled wrongdoing by the third defendant).

6        Moreover, these allegations appear to be factually impossible, or at least implausible,

7  because they are contradicted by the documents attached to Cadence's pleadings.  There are only

8  two "click-wrap" agreements attached to the Complaint.  Compl., Exs. 1, 2.  Clearly, at least one of

9  the three Defendants did not enter into an agreement, so Cadence's pleadings are factually

10  inaccurate.  And since the exhibits are unexecuted, it is impossible to determine which "Syntronic"

11  allegedly "clicked" and purportedly "agreed to the terms of the [Licenses]…".  Compl., ¶ 136. *See*

12  *Alamilla v. Hain Celestial Group, Inc.*, 30 F. Supp. 3d 943, 944 (N.D. Cal. 2014) ("Courts need not

13  accept as true allegations contradicting documents that are referenced in the complaint") (quoting

14  *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008)).

15        Second, even if Cadence had identified which Defendant is supposed to have agreed to the

16  license, it failed to allege who purportedly accepted the terms of the SLMA or any other contract that

17  this person or persons had the authority, actual or otherwise, to bind any of the Syntronic entities.

18  *See Fredianelli v. Jenkins*, 931 F. Supp.2d 1001, 1017-19 (N.D. Cal. 2013) (under California law an

19  agent may only bind a principal to a contract if he has actual or ostensible authority to do so); *Nat'l*

20  *Auto Lenders, Inc. v. SysLOCATE, Inc.*, 686 F. Supp. 2d 1318, 1321-22 (S.D. Fla. 2010) (finding

21  that two employees accepting "click-to-accept" agreements did not bind their employer because they

22  lacked authority to enter into the agreements).

23

24

25

26

27  ///

28

1  VI.    **CONCLUSION**

2          Based on the foregoing, Defendants respectfully request that the Court dismiss the entire

3  Complaint for failure to state a claim, dismiss Syntronic AB and Syntronic Beijing for lack of

4  personal jurisdiction, and dismiss Syntronic Beijing for ineffective service.

5

6          Dated: July 8, 2021              By:        _/s/ Jason N. Haycock_

7
                                                   Edward P. Sangster
8                                                  edward.sangster@klgates.com
                                                   Jason N. Haycock
9                                                  jason.haycock@klgates.com
                                                   **K&L GATES LLP**
10                                                 4 Embarcadero Center, Suite 1200
                                                   San Francisco, CA 94111-5994
11                                                 jason.haycock@klgates.com
                                                   415.882.8200 t
12                                                 415.882.8220 f

13
                                                   Jeffrey C. Johnson
14                                                 jeff.johnson@klgates.com
                                                   Paul J. Bruene
15                                                 paul.bruene@klgates.com
                                                   **K&L GATES LLP**
16                                                 925 Fourth Avenue, Suite 2900
                                                   Seattle, WA 98104-1158
17                                                 206.623.7580 t
                                                   206.623.7022 f
18                                                 (*pro hac vice to be submitted*)
19
                                                   *Attorneys for Defendants Syntronic AB, Syntronic*
20                                                 *Research and Development USA Inc., and Syntronic*
21                                                 *(Beijing) Technology R&D Center Co., LTD.*

22

23

24

25

26

27

28
                                                   25
504894333.5