Guy Ruttenberg, Bar No. 207937
guy@ruttenbergiplaw.com
Steve A. Papazian, Bar No. 288097
steve@ruttenbergiplaw.com
RUTTENBERG IP LAW,
A PROFESSIONAL CORPORATION
1801 Century Park East, Suite 1920
Los Angeles, CA 90067
Telephone: (310) 627-2270
Facsimile: (310) 627-2260

*Attorneys for Plaintiff Cadence Design Systems, Inc.*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CADENCE DESIGN SYSTEMS, INC., *a Delaware Corporation*,<br><br>Plaintiff,<br><br>v.<br><br>SYNTRONIC AB, *a Publikt Aktiebolag*, SYNTRONIC RESEARCH AND DEVELOPMENT USA INC*., a California Corporation*, SYNTRONIC (BEIJING) TECHNOLOGY R&D CENTER CO., LTD*., a Chinese Corporation*,<br><br>Defendants. | Case No. 3:21-cv-3610-SI<br><br>**REPLY IN SUPPORT OF PLAINTIFF CADENCE DESIGN SYSTEMS INC.'S MOTION FOR ALTERNATIVE SERVICE UNDER FED. R. CIV. P. 4(f)(3)**<br><br>Date:          August 27, 2021<br>Time:         10:00 AM<br>Judge:        Hon. Susan Illston |

## I. INTRODUCTION

All requirements for alternative service under Rule 4(f)(3) are clearly met. No one genuinely disputes that, under controlling law, email service on Defendants' counsel would comply with due process requirements and would not violate the Hague Convention. There is also no question that Syntronic Beijing already has notice: not only has Syntronic Beijing already appeared, but it has even filed an opposition *to this motion*. Syntronic Beijing fails to rebut Plaintiff's showing of the key elements of alternative service. Instead, Syntronic Beijing relies on a single outlier case where another court declined to authorize service via email to defendants *in China*. Here, Plaintiff asks the Court to authorize service via email on Syntronic Beijing's counsel *in the United States*. Court after court has held that such service is entirely appropriate under Rule 4(f)(3) and does not conflict with the Hague Convention.

Even though the Ninth Circuit has instructed that there is "no hierarchy" among the different methods of service, Syntronic Beijing insists that it can only be served through the Hague Convention. Notably, the Hague Convention was intended to "simplify[] and expedit[e] the procedure" for service of documents and to ensure that judicial documents are "brought to the notice of the addressee in sufficient time." *Convention on Service Abroad and Extrajudicial Documents in Civil and Commercial Matters*, Nov. 15, 1965, T.I.A.S. No. 6638 (Feb. 10, 1969). Forcing Plaintiff to serve Syntronic Beijing through the Hague Convention serves no legitimate purpose here.

More fundamentally, Defendants have a "duty to avoid unnecessary expenses in serving the summons," Fed. R. Civ. P. 4(d)(1), but seem intent on doing exactly the opposite—quibbling with controlling Ninth Circuit precedent, misstating other case law, and ignoring this Court's prior rulings in nearly identical situations. Plaintiff believes it has already served Syntronic Beijing through its alter ego, but because Defendant Syntronic challenges that service (and refuses to authorize its counsel to accept service), Plaintiff has now requested alternative service under Rule 4(f)(3) to avoid further delay. Alternative service is appropriate.

1

REPLY IN SUPPORT OF MOTION FOR ALTERNATIVE SERVICE

## II. ARGUMENT

### A. Service Via U.S.-Based Counsel Is Not Prohibited by International Agreement.

As Plaintiff explained in its motion, neither the Hague Convention nor any other international agreement applies to service on a foreign defendant's domestic agent—including its U.S.-based counsel of record. This simple proposition is supported by U.S. Supreme Court case law and myriad district court opinions, including from this Court. *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 707 (1988) (The "only transmittal to which the Convention applies is a transmittal abroad that is required as a necessary part of service."); *Updateme Inc. v. Axel Springer SE*, No. 17-CV-05054-SI, 2018 WL 306682, at *3 (N.D. Cal. Jan. 5, 2018) ("Service upon a foreign defendant's United States-based counsel is a common form of service ordered under Rule 4(f)(3) . . . and nothing in the Hague Convention prohibits such service.") (citing *Richmond Techs., Inc. v. Aumtech Bus. Sols.*, No. 11-CV-02460-LHK, 2011 WL 2607158, at *12 (N.D. Cal. July 1, 2011); *Gen. Star Indem. Co. v. First Am. Title Ins. Co. of Napa*, No. 20-CV-03210-TSH, 2020 WL 8614189, at *3 (N.D. Cal. Sept. 25, 2020) ("Relevant here, service on U.S.-based counsel is not barred by the Hague Convention.").

Even so, Syntronic Beijing argues that email service on counsel would implicate and violate the Hague Convention, citing *Facebook, Inc. v. 9 Xiu Network (Shenzehn) Tech. Co., Ltd*, 480 F. Supp. 3d 977, 980 (N.D. Cal. 2020). But the facts in *Facebook* are importantly very different. In that case, the plaintiff sought to email defendants **directly in China**, not through U.S.-based agents. *Id.* at 982-83. The court there concluded that since China did not expressly agree to service by email, alternative service was improper. *Id.* at 984. Here, Syntronic's Beijing's counsel is located **in San Francisco**. Thus, no judicial documents need be served **in China**. *Schlunk*, 486 U.S. at 707 ("Whatever internal, private communications take place between the agent and a foreign principal are beyond the concerns of this case."). Furthermore, in the *Facebook* case, none of the defendants had appeared, raising issues of notice and due process that are nonexistent here. *Facebook*, 480 F. Supp. 3d 980-82.

Nevertheless, Syntronic Beijing then uses the *Facebook* decision—an outlier of outliers—to take aim at the Ninth Circuit's decision in *Rio Props., Inc. v. Rio Int'l. Interlink*, 284 F.3d 1007,

1016-17 (9th Cir. 2002) and urge this Court to impose a hierarchy of service methods under Rule 4(f).  (Opp. at 4-5). The Ninth Circuit has obviously considered and soundly rejected this argument: "RII argues that Rule 4(f) should be read to create a hierarchy of preferred methods of service of process . . . . We find no support for RII's position." *Rio*, 284 F.3d at 1014-15.

Still unsatisfied, Syntronic Beijing then tries to dismiss the *Rio* holding as *dicta* because the defendant in that case was located in Costa Rica, which is not a party to the Hague Convention.  But the holding in *Rio* is not limited to cases in which the Hague Convention does not apply.  On the contrary, it clearly construed Rule 4(f) and reasoned that all three alternatives under Rule 4(f) stand on equal footing: "[b]y all indications, court-directed service under Rule 4(f)(3) is as favored as service available under Rule 4(f)(1) or Rule 4(f)(2)." *Id.* at 1015.  The Court should decline Syntronic's Beijing's invitation to stray from binding Ninth Circuit precedent. *See Nuance Comm'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222 at 1238-40 (Fed. Cir. 2010) (applying *Rio* and reversing district court's decision denying alternative service under Rule 4(f)(3)).

Diving yet deeper into the weeds, Syntronic Beijing then cites a law review article advocating the Hague-first approach.  With all due respect to the professor, Cadence is reluctant to academically debate the holdings of clear, binding precedent.  Suffice it to say for now that the professor's opinion incorrectly assumes that the Hague Convention applies in all instances in which a party in a signatory country is served (irrespective of the location of service).  It does not. As the Supreme Court noted in *Schlunk*, the Hague Convention does not apply to every instance in which a party in a signatory country is served. *Schlunk*, 486 U.S. at 699.

Notably, courts in this District continue to authorize service in the manner requests here.[1]  Neither the law review article nor the *Facebook* decision have caused prevailing Rule 4(f)(3) doctrine in this District to waiver in the slightest.

---

[1] *See, e.g.*, *Reflex Media, Inc. v. SuccessfulMatch.com*, No. 20-CV-06393-JD, 2021 WL 275545, at *2 (N.D. Cal. Jan. 27, 2021) ("There is no hierarchy of procedures, as Successful Match U.S. suggests, that requires plaintiffs to attempt service through the Hague Convention or other means before seeking an order under Rule 4(f)(3)."); *Gen. Star Indem. Co. v. First Am. Title Ins. Co. of Napa*, No. 20-CV-03210-TSH, 2020 WL 8614189, at *5 (N.D. Cal. Sept. 25, 2020) ("Contrary to Venuta's argument, First American is not required to show that it attempted service through the Hague Convention and did not succeed, or that Venuta has evaded or is likely to evade personal service, to obtain an order under Rule 4(f)(3).").

Syntronic Beijing then advances a highly misleading account of the Advisory Committee Notes on Rule 4, quoting a snippet that says "use of the Convention procedures, when available, is mandatory." (Opp. at 4). But the full text of the quoted passage from the Notes says "Use of the Convention procedures, when available, is mandatory *if documents must be transmitted abroad to effect service*." Again, Cadence asks the Court to authorize service on Syntronic Beijing's agent *in the United States*. No documents would be *transmitted abroad* as part of the service. Syntronic Beijing likewise purports to quote the text of the Hague Convention in its statement that "the 'Convention shall apply in all' applicable cases.'" This tautological sentence again omits the key text from the Convention: "The present Convention shall apply in all cases, in civil or commercial matters, where there is occasion to *transmit* a judicial or extrajudicial document *for service abroad*." 20 U.S.T., at 362. In each case, the language omitted by Syntronic Beijing directly disproves its argument.

As a last resort, Syntronic Beijing argues, as a matter of policy, that the requested service would unwisely "blow a hole through the middle of Rule 4." (Opp. at 6). Syntronic Beijing has it backwards. "[T]he core function of service is to supply notice of the pendency of a legal action, in a manner and at a time that affords the defendant a fair opportunity to answer the complaint and present defenses and objections." *Henderson v. U.S.*, 517 U.S. 654, 672 (1996). Ordering alternative service under Rule 4(f)(3) simply dispenses with the fiction of needing to provide cumbersome, time-consuming, and expensive notice to a defendant that has already appeared before the court. As Judge Donato aptly observed in a recent decision ordering alternative service: "If there is one thing the modern rules of procedure make clear, it is that the days of playing games with service are over." *Reflex Media*, 2021 WL 275545, at *2.

In short, service of process on Syntronic Beijing through its U.S.-based counsel is not prohibited by any international agreement.

**B. Service on Defendant's U.S.-Based Counsel Comports with Due Process.**

"To comport with traditional notions of due process, notice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Cheetah Mobile, Inc. v. APUS Grp.*, No. 15-CV-

4

02363-HSG, 2016 WL 4036098, at *2 (N.D. Cal. July 28, 2016) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). As Plaintiff explained in its moving papers, there is no question that service on Syntronic Beijing's counsel is reasonably calculated to apprise it of the pendency of this action and present its objections. Indeed, both ends of have already been accomplished—Syntronic Beijing has already appeared in this litigation and presented its objections (and continues to do so here). (*See generally* Dkt. No. 12).

Without citing any authority, Defendants urge the Court to adopt a different test for due process, arguing that "Plaintiff's request does not comport with due process because Plaintiff has not attempted service through the Hague Convention." (Opp. at 1). This is not the test for due process and, as explained above, service under the Hague Convention is not required in any event.

Syntronic Beijing also suggests that e-mail service on its counsel must comport with "California's long-arm statute or other California law." (Opp. at 5). To the extent this argument is based on the Supreme Court's decision in *Schlunk*, it is clearly misplaced. The German defendant in *Schlunk* was served under Illinois law for an action in Illinois State Court, which the Court found does not implicate the Hague Convention because it did not involve service of judicial documents abroad. 486 U.S. at 707. Nothing in *Schlunk* suggests that **only** state-law service falls outside of the Hague Convention. Further, *Schlunk* did not involve email service and certainly did not require that alternative service comply with state long-arm statutes and service provisions. Consistent with Rule 4, a plaintiff can serve process under state *or* Federal law. *See, e.g.*, Fed. R. Civ. P. 4(e)(1), 4(h).

Even if California law somehow did apply, Syntronic Beijing grossly misrepresents the state of that law. For example, Syntronic Beijing claims *Lebel v. Mai*, 210 Cal. App. 4th 1154, 1660 rejected "plaintiff's request for alternative service" but there was not even a request for alternative service in that case. In *Lebel*, the plaintiff argued the English defendant need not be served under the Hague Convention because the plaintiff was unaware of the defendant's address in England. *Id.* at 1161. Article 1 of the Hague Convention states that the "Convention shall not apply where the address of the person to be served with the document is not known." *Id.* However, the court there found that the plaintiff was willfully ignorant of the defendant's address, and, if such conduct was

5
REPLY IN SUPPORT OF MOTION FOR ALTERNATIVE SERVICE

permitted to meet the exception, would "all but eviscerate[e] application of the treaty" and "not have been the intent of the drafters or any signatory states." *Id.* at 1162. Syntronic Beijing tries to tie this soundbite to "alternative service" but it relates to a totally different issue.[2]

Syntronic Beijing also argues that service on its attorneys would be improper because they "are not Syntronic Beijing's registered agents for service of process." (Opp. at 6). This argument has been rejected by courts time and again. *Products and Ventures Intl. v. Axus Stationary (Shanghai) Ltd.*, No. 16- CV-00669-YGR, 2017 WL 1378532, at *4 (N.D. Cal. Apr. 11, 2017) (ordering service under Rule 4(f)(3) and rejecting argument that law firm was "not authorized to accept service on behalf of any of the Foreign Defendants"); *Brown v. China Integrated Energy, Inc.*, 285 F.R.D. 560, 565–66 (C.D. Cal. 2012) ("Due process does not require that the individuals served on behalf of foreign defendants have represented them or been authorized to accept service on their behalf."); *Feyko v. Yuhe Intern., Inc.*, No. CV 11-05511 DDP PJWX, 2013 WL 5142362, at *2 (C.D. Cal. Sept. 12, 2013) ("[T]he authority-to-accept-service requirement does not necessarily apply in the Rule 4(f)(3) context. Indeed, the whole point of a 4(f)(3) motion is to decide whether the Court, not anyone else, should authorize service.").

The requested alternative plainly comports with due process.

**C. The Facts and Circumstances Here Warrant Alternative Service.**

The facts in this case strongly merit alternative service. Like in the *Updateme* case, Plaintiff has already served discovery, and Syntronic suggests more pleading-stage motion practice is forthcoming. 2018 WL 306682 at *3. Likewise, Syntronic Beijing and the undisputedly already-served defendants share counsel and, according to Plaintiff, operate as a single enterprise. *Id.* As Defendant Syntronic US has not challenged service or jurisdiction, this case will proceed. It makes little sense to leave Syntronic Beijing behind.

---

[2] Syntronic Beijing also cites *Lebel* for its statement that "[s]ubstituted service is valid only if a good faith, reasonable effort at personal service on the party to be served is first attempted." But even this non sequitur is incorrect. While substitute service on an *individual* under California law requires reasonable diligence, there is no such requirement on a *corporation*. *See* Cal. Code Civ. P. §§ 415.20(a), 416.20; *see, e.g., Zond, LLC v. Fujitsu Semiconductor Ltd.*, 53 F. Supp. 3d 394, 399 (D. Mass. 2014) (under California law, substitute service *on a corporation* "does not require a plaintiff to attempt personal service with reasonable diligence before electing substitute service").

Further, although Syntronic's Beijing's first motion to quash service was denied as moot (Dkt. No. 30), counsel for Syntronic suggests it will be re-raising the issue. Plaintiff contends that it already served Syntronic Beijing via service on its alter ego, but in order to resolve that issue the parties will likely need to conduct discovery and ask the Court to resolve factual disputes at this preliminary stage or, alternatively, seek deferral of that issue until trial. *See* Fed. R. Civ. P. 12(i); Langer *v. Beverly Hills Suites LLC*, No. 220CV02715JWHMAAX, 2020 WL 6489313, at *4 (C.D. Cal. Oct. 21, 2020). Plaintiff submits the better course is to authorize alternative service—which would moot Syntronic Beijing's challenges to services, so that the case can proceed.

## III.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests an order authorizing it to serve Syntronic Beijing through its United States-based counsel at K&L Gates pursuant to Fed. R. Civ. P. 4(f)(3).

DATED:  August 7, 2021       By:    */s/ Steve Papazian*

Guy Ruttenberg
Steve Papazian
RUTTENBERG IP LAW, A PROFESSIONAL CORPORATION
1801 Century Park East, Suite 1920
Los Angeles, CA 90067
Telephone: (310) 627-2270
Facsimile: (310) 627-2260
guy@ruttenbergiplaw.com
steve@ruttenbergiplaw.com

*Attorneys for Plaintiff*