EDWARD P. SANGSTER, Bar No. 121041
edward.sangster@klgates.com
JASON N. HAYCOCK, Bar No. 278983
jason.haycock@klgates.com
**K&L GATES LLP**
Four Embarcadero Center, Suite 1200
San Francisco, CA 94111
Telephone: +1 415 882 8200
Facsimile: +1 415 882 8220

JEFFREY C. JOHNSON, *pro hac vice*
jeff.johnson@klgates.com
PAUL J. BRUENE, *pro hac vice*
paul.bruene@klgates.com
**K&L GATES LLP**
925 Fourth Avenue, Suite 2900
Seattle, WA 98104
Telephone: + 1 206 623 7580
Facsimile: + 1 206 623 7022

*Attorneys for Defendants Syntronic AB, Syntronic Research and Development USA Inc., and Syntronic (Beijing) Technology R&D Center Co., LTD.*

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CADENCE DESIGN SYSTEMS, INC., *a Delaware Corporation*,<br><br>            Plaintiff,<br><br>vs.<br><br>SYNTRONIC AB, *a Publikt Aktiebolag*, SYNTRONIC RESEARCH AND DEVELOPMENT USA INC., *a California Corporation*, SYNTRONIC (BEIJING) TECHNOLOGY R&D CENTER CO., LTD., *a Chinese Corporation*,<br><br>            Defendants. | Case No.: 5:21-cv-3610-SI<br><br>**NOTICE OF MOTION AND MOTION TO QUASH SERVICE OF SUMMONS AND DISMISS FIRST AMENDED COMPLAINT FOR (1) DEFECTIVE SERVICE; (2) LACK OF PERSONAL JURISDICTION; AND (3) FAILURE TO STATE A CLAIM; ALTERNATIVELY, MOTION FOR MORE DEFINITE STATEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Judge:  Hon. Susan Illston<br>Hearing Date:   September 17, 2021<br>Hearing Time:  10:00 a.m.<br>San Francisco Courthouse, Courtroom 1, 17th Floor |

### NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE THAT,** pursuant to Local Civil Rule 7-2, on September 17, 2021, at 10:00 a.m. before the Honorable Susan Illston in Courtroom 1, 17th Floor, of the United States District Court for Northern District of California in the San Francisco Courthouse at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Syntronic AB, Syntronic Research and Development USA Inc. ("Syntronic USA"), and Syntronic (Beijing) Technology R&D Center Co., LTD. ("Syntronic Beijing") (collectively "Defendants") will and hereby do move for an order quashing service, dismissing for lack of personal jurisdiction, dismissing for failure to state a claim, and/or, alternatively, requiring a more definite statement, based on the following grounds.

First, Syntronic Beijing moves pursuant to Federal Rule of Civil Procedure 12(b)(5) to quash service because Plaintiff purported to effect service by delivering summons to Syntronic USA, where Syntronic USA is not an agent of and has no authority to accept service for Syntronic Beijing.

Second, Syntronic AB and Syntronic Beijing move pursuant to Federal Rule of Civil Procedure 12(b)(5) for dismissal based on lack of personal jurisdiction because neither entity has sufficient contacts with the forum and Plaintiff's various theories of personal jurisdiction fail.

Third, Syntronic USA, joined by Syntronic AB and Syntronic Beijing without waiving challenges to service and personal jurisdiction, move pursuant to Federal Rule of Civil Procedure 12(b)(6) for dismissal for failure to state a claim because Plaintiff failed to plausibly allege copyright violations within the United States and improperly lumped all Defendants together without identifying which Defendant is alleged to have committed which act.

Finally, Defendants move in the alternative pursuant to Federal Rule of Civil Procedure 12(e) for a more definite statement definitively stating whether copyright violations occurred within the United States and specifically identifying which Defendant committed which act.

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Declarations and Exhibits attached thereto, all records and papers filed in this action, and on such oral argument and submissions that may be presented at or before the hearing.

# TABLE OF CONTENTS

Page

I.    STATEMENT OF THE ISSUES TO BE DECIDED...................................................... 1

II.    INTRODUCTION ...................................................... 1

III.    FACTUAL BACKGROUND ...................................................... 3

    A.    Cadence's Substantive Allegations ...................................................... 3

    B.    Allegations of Personal Jurisdiction Over Syntronic AB and Syntronic Beijing ......... 4

IV.    THE COURT SHOULD QUASH SERVICE ON SYNTRONIC BEIJING .......................... 5

    A.    Cadence Bears the Burden of Proving Proper Service ...................................................... 5

    B.    Cadence has not Properly Served Syntronic Beijing ...................................................... 5

V.    CADENCE FAILED TO ALLEGE CONTACTS TO ESTABLISH PERSONAL
    JURISDICTION OVER SYNTRONIC AB OR SYNTRONIC BEIJING .............................. 7

    A.    Neither Syntronic AB nor Syntronic Beijing is Subject to General Jurisdiction.......... 8

        1.    Cadence failed to adequately plead general jurisdiction................................... 8

        2.    There is no general jurisdiction based on alter ego ........................................... 9

    B.    Neither Syntronic AB nor Syntronic Beijing is Subject to Specific Jurisdiction ....... 15

        1.    Cadence failed to adequately allege a binding forum selection clause........... 16

        2.    Cadence failed to adequately allege "purposeful direction" to this forum ..... 17

VI.    CADENCE FAILED TO STATE ANY PLAUSIBLE CLAIMS........................................... 19

    A.    Cadence Failed to Plausibly Allege Copyright Violations in the United States......... 19

    B.    Cadence Improperly Lumped All Defendants Together............................................. 22

        1.    Cadence failed to identify which Defendant violated the Copyright Act ....... 22

        2.    Cadence failed to identify which Defendant breached of valid contract ........ 24

VII.    CONCLUSION ...................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adobe Systems Incorporated v. Blue Source Group, Inc.*,
125 F. Supp. 3d 945 (N.D. Cal. 2015) ................................................................. 23

*Affordable Aerial Photography, Inc. v. Modern Living Real Estate, LLC*,
2019 WL 3716775 (S.D. Fla. Aug. 7, 2019) ......................................................... 24

*Allarcom Pay Television, Ltd. v. Gen. Instrument Corp.*,
69 F.3d 381 (9th Cir. 1995) .......................................................................... 19, 21

*American Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*,
94 F.3d 586 (9th Cir. 1996) .................................................................................. 14

*Apple Inc. v. Allan & Associates Limited*,
445 F.Supp.3d 42 (N.D. Cal. 2020) ..................................................................... 15

*Asahi Metal Indus. Co. Ltd. v. Super. Ct. of Cal., Solano Cty.*,
480 U.S. 102 (1987) ............................................................................................... 7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................. 19, 20, 21

*Axiom Foods, Inc. v. Acerchem International, Inc.*,
874 F.3d 1064 (9th Cir. 2017) ........................................................................ 17, 18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................................. 19

*Bristol-Myers Squibb Co. v. Superior Court*,
137 S. Ct. 1773 (2017) ..................................................................................... 8, 15

*Brockmeyer v. May*,
383 F.3d 798 (9th Cir. 2004) ................................................................................. 5

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) ............................................................................................... 7

*Cadence Design Systems, Inc. v. Pounce Consulting, Inc.*,
Case No. 17-cv-04732-PJH, Dkt. No. 1 ............................................................... 21

*China Tech. Global Corp. v. Fuller, Tubb, Pomeroy & Stokes*,
2005 WL 1513153 (N.D. Cal. June 27, 2005) ....................................................... 9

*Corcoran v. CVS Health Corp.*,
169 F. Supp. 3d 970 (N.D. Cal. Mar. 14, 2016) ................................... 9, 10, 12, 13

iii

*Danjaq, S.A. v. MGM/UA Comms., Co.*,
    773 F. Supp. 194 (C.D. Cal. 1991)................................................................... 22

*Data Disc., Inc. v. Sys. Tech. Assocs., Inc.*,
    557 F.2d 1280 (9th Cir. 1977)........................................................................... 7

*Doe v. Geller*,
    533 F. Supp. 2d 996 (N.D. Cal. 2008) ............................................................. 19

*Forest v. Equitable Life Assurance Society of U.S.*,
    Case No. 99-cv-5173-SI, 2001 WL 1338809 (N.D. Cal. June 12, 2001) ............................ 14

*Fredianelli v. Jenkins*,
    931 F. Supp.2d 1001 (N.D. Cal. 2013) ............................................................. 25

*Gen–Probe, Inc. v. Amoco Corp.*,
    926 F.Supp. 948 (S.D. Cal. 1996)..................................................................... 23

*Gerritsen v. Warner Bros. Ent., Inc.*,
    116 F. Supp. 3d 1104 (C.D. Cal. 2015) ............................................................. 14

*Gravely Motor Plow & Cultivator Co. v. H.V. Carter Co., Inc.*,
    193 F.2d 158 (9th Cir.1951)............................................................................. 6

*Harris Rutsky & Co. Ins. Serv. v. Bell & Clements*,
    328 F. 3d 1122 (9th Cir. 2003)........................................................................... 14

*Hemlock Hat Company, Inc. v. Diesel Power Gear, LLC*,
    Case No. 19-cv-02422-AJB-AHG, 2020 WL 7013585 (S.D. Cal. Nov. 25, 2020)............... 23

*Holland Am. Line Inc. v. Wartsila N. Am., Inc.*,
    485 F.3d 450 (9th Cir. 2007)........................................................................... 17

*Iglesia Ni Cristo v. Cayabyab*,
    Case No. 18-cv-00561-BLF, 2018 WL 4674603 (N.D. Cal. Sept. 26, 2018)........................ 24

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945)......................................................................................... 8

*Khachatryan v. Toyota Motor Sales USA, Inc.*
    578 F. Supp. 2d 1224 (C.D. Cal. 2008) ......................................................... 6, 7

*Litecubes, LLC v. Northern Light Products, Inc.*,
    523 F. 3d 1353 (Fed. Cir. 2008)....................................................................... 19

*Lynwood Investments Cy Limited v. Konovalov*,
    Case No. 20-CV-03778-LHK, 2021 WL 1164838 (N.D. Cal. Mar. 25, 2021) ..................... 23

*Mandani v. Volkswagen Group of Am., Inc.*,
    2019 WL 652867 (N.D. Cal. Feb. 15, 2019) ....................................................... 25

**MOTION TO QUASH, TO DISMISS, OR FOR MORE DEFINITIVE STATEMENT; CASE NO. 21-CV-3610-SI**

*Maple Leaf Adventures. Corp. v. Jet Tern Marine Co., Ltd.*,
    Case No. 15-cv-2504-AJB-BGS, 2016 WL 3063956 (S.D. Cal. Mar. 11, 2016) ................... 12

*McBride v. Fannie Mae*,
    2016 WL 3019308 (E.D. Cal. May 26, 2016) ....................................................................... 25

*McHenry v. Renne*,
    84 F. 3d 1172 (9th Cir. 1996) ................................................................................... 19, 22

*MLC Intellectual Property, LLC v. Micron Technology, Inc.*,
    Case No. 19-cv-03345-EMC, 2019 WL 4963253 (N.D. Cal. Oct. 8, 2019) ......................... 12

*Monkton Ins. Servs., Ltd. v. Ritter*,
    768 F.3d 429 (5th Cir. 2014) ...................................................................................... 8

*Moody v. Charming Shoppes of Delaware, Inc.*,
    2008 WL 2128955 (N.D. Cal. May 20, 2008) ...................................................................... 13

*Nat'l Auto Lenders, Inc. v. SysLOCATE, Inc.*,
    686 F. Supp. 2d 1318 (S.D. Fla. 2010) .............................................................................. 25

*New Name, Inc. v. Walt Disney Co.*,
    2007 WL 5061697 (C.D. Cal. Dec. 3, 2007) ...................................................................... 22

*Olson v. Federal Election Comm'n*
    (D DC 2009) 256 FRD 8 ................................................................................................. 5

*Omni Capital Int'l v. Rudolf Wolff & Co.*,
    484 U.S. 97 (1987) ......................................................................................................... 5

*Payoda, Inc. v. Photon Infotech, Inc.*,
    Case No. 14-cv-04103-BLF, 2015 WL 4593911 (N.D. Cal. July 30, 2015) ......................... 13

*Ranza v. Nike, Inc.*,
    793 F.3d 1059 (9th Cir. 2015) ......................................................................... 10, 13, 15

*Sandoval v. Ali*,
    34 F. Supp. 3d 1031 (N.D. Cal. 2014) ......................................................................... 12, 13

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) ....................................................................................... 7

*Scott v. Breeland*,
    792 F.2d 925 (9th Cir. 1986) ....................................................................................... 7

*Shropshire v. Canning*,
    2011 WL 90136 (N.D. Cal. Jan. 11, 2011) ...................................................................... 21

*Shropshire v. Canning*,
    809 F.Supp.2d 1139 (N.D. Cal. 2011) ...................................................................... 19, 21

**MOTION TO QUASH, TO DISMISS, OR FOR MORE DEFINITIVE STATEMENT; CASE NO. 21-CV-3610-SI**

*Sieg v. Karnes*,
    693 F.2d 803 (8th Cir.1982)................................................................................ 5

*Smith v. Bank of Am.*,
    2016 WL 7444879 (C.D. Cal. May 11, 2016) ................................................. 24

*Snukal v. Flightways Mfg. Inc.*,
    23 Cal. 4th 754 (2000) .................................................................................... 16

*Sonora Diamond Corp. v. Superior Court*,
    83 Cal.App.4th 523 (2000) ............................................................................. 15

*Sound N Light Animatronics Co., LTD. v. Cloud*
    *b, Inc.*, 2016 WL 7635950, at *5 (C.D. Cal. Nov. 10, 2016)........................... 21

*Stevens v. Sec. Pac. Nat. Bank*,
    538 F.2d 1387 (9th Cir. 1976).......................................................................... 5

*Stewart v. Screen Gems-EMI Music, Inc.*,
    81 F. Supp. 3d 938 (N.D. Cal. 2015) ............................................................. 13

*Title Guarantee & Trust Co. v. Hammond Lumber Co.*,
    62 Cal. App. 245 (1923)................................................................................. 16

*Toho-Towa Co., Ltd. v. Morgan Creek Productions, Inc.*,
    217 Cal. App. 4th 1096 (2013) ....................................................................... 10

*U.S. v. Bestfoods*,
    524 U.S. 51 (1998).......................................................................................... 9

*U.S. v. Pangang Group Co., Ltd.*,
    879 F. Supp. 2d 1052 (N.D. Cal. 2012) ......................................................... 13

*Uniloc 2017 LLC v. H&R Block, Inc.*,
    No. 19 Civ. 1149, 2019 WL 8219781 (C.D. Cal. Dec. 23, 2019)..................... 14

*Vander Music v. Azteca Int'l Corp.*,
    2011 WL 13177301 (C.D. Cal. Jan. 21, 2011) ............................................... 22

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,
    486 U.S. 694 (1988)........................................................................................ 6

*Way v. Mueller Brass Company*,
    840 F.2d 303 (5th Cir.1988)............................................................................ 5

*In re Western States Wholesale Natural Gas Litigation*,
    605 F.Supp.2d 1118 (D. Nev. 2009) ............................................................... 14

*Williams v. Yamaha Motor Co. Ltd.*,
    851 F.3d 1015 (9th Cir. 2017)......................................................................... 15

**MOTION TO QUASH, TO DISMISS, OR FOR MORE DEFINITIVE STATEMENT; CASE NO. 21-CV-3610-SI**

*Yount v. Acuff Rose-Opryland*,
　103 F.3d 830 (9th Cir. 1996) ................................................................................................. 19

**Statutes**

28 U.S.C. § 1367(c)(3) ........................................................................................................... 22

Cal. Civ. Code § 1633.5(b) .................................................................................................... 16

Uniform Electronic Transactions Act, Cal. Civ. Code section 1633.1 *et seq.* ............................ 16

**Other Authorities**

Fed. R. Civ. P. 4(h)(1) ............................................................................................................. 6

Fed. R. Civ. P. 4(e)(1) ............................................................................................................. 6

Fed. R. Civ. P. 8(a)(2) .................................................................................................. 22, 23, 24

Fed. R. Civ. P. 12(b)(2) ........................................................................................................... 2

Fed. R. Civ. P. 12(b)(5) ........................................................................................................ 1, 5

Fed. R. Civ. P. 12(b)(6) ..................................................................................................... 2, 19

Fed. R. Civ. P. 12(e) ..................................................................................................... 3, 19, 22

**MOTION TO QUASH, TO DISMISS, OR FOR MORE DEFINITIVE STATEMENT; CASE NO. 21-CV-3610-SI**

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    STATEMENT OF THE ISSUES TO BE DECIDED

3

    1.      Whether the Court should quash the purported service of summons on Syntronic

4

(Beijing) Technology R&D Center Co., LTD. ("Syntronic Beijing") when the summons was

5

delivered to Syntronic Beijing's sister corporation;

6

    2.      Whether the Court should dismiss Syntronic AB and Syntronic Beijing for lack of

7

personal jurisdiction where both entities lack minimum contacts with the forum and Cadence

8

otherwise failed to plausibly allege any viable theory of personal jurisdiction and "come forward with

9

facts, by affidavit or otherwise, supporting personal jurisdiction" in response to the motions to

10

dismiss; and,

11

    3.      Whether the Court should dismiss the entire First Amended Complaint for failure to

12

state a claim, where Cadence failed to plausibly allege Copyright Act violations within the United

13

States, which Defendant purportedly infringed which copyrighted works, and which Defendant

14

purportedly breached a valid license agreement.

15

## II.    INTRODUCTION

16

    This is an action for copyright infringement and breach of contract.  Plaintiff Cadence Design

17

Systems, Inc. ("Plaintiff" or "Cadence") filed a First Amended Complaint after Defendants moved,

18

each on different grounds, to quash service or dismiss the original complaint.  In its First Amended

19

Complaint, Cadence alleges that three affiliated corporations, Defendants Syntronic AB, Syntronic

20

Research and Development USA Inc. ("Syntronic USA"), and Syntronic Beijing (collectively

21

"Defendants") infringed copyrighted software and breached license agreements by obtaining, copying

22

and using unauthorized copies of that software.  Cadence's pleadings remain deficient and

23

Defendants again move to dismiss.

24

    First, Syntronic Beijing moves to quash the purported service of summons pursuant to Rule

25

12(b)(5).  Cadence attempted to serve the summons on Syntronic Beijing, a Chinese corporation, by

26

delivering the summons to the agent for service of process of Syntronic USA.  However, Syntronic

27

USA and Syntronic Beijing are separate corporations.  Syntronic Beijing does not own or control

28

Syntronic USA.  It has not designated Syntronic USA or any other agent to accept service of process

1

in California.  Some cases have permitted service of foreign corporate defendants by permitting

service on a domestic, wholly-owned *subsidiary* when it acts as the parent's "general manager," but

no case has permitted service on a corporate affiliate that lacked ownership and control over the U.S.

affiliate.[1]

      Second, Syntronic Beijing and Syntronic AB move to dismiss for lack of personal jurisdiction

pursuant to Rule 12(b)(2).  As demonstrated in declarations submitted with this motion, neither

Syntronic AB nor Syntronic Beijing have sufficient minimum contacts with the California to justify

the exercise of personal jurisdiction under any theory, and not one of Cadence's various theories can

overcome those declarations.  Cadence's alter ego theory of personal jurisdiction fails both because it

fails to allege a *prima facie* case, and because Cadence cannot overcome Defendants' declarations,

which demonstrate that Defendants are in fact three separate and independent legal entities.

Cadence's forum-selection clause theory of personal jurisdiction fails because Cadence fails to

identify which Defendant purportedly entered the click-wrap agreement containing a forum-selection

clause, and Syntronic AB's and Syntronic Beijing's investigations revealed that neither agreed to a

forum selection clause.  Cadence's "purposeful direction" theory of personal jurisdiction fails

because the Ninth Circuit has held that mere knowledge of plaintiff's domicile, its ownership of

copyrighted works, and foreseeable harm in the forum is alone insufficient to establish jurisdiction.

      Third, Syntronic USA, joined by Syntronic AB and Syntronic Beijing in the alternative, move

to dismiss pursuant to Rule 12(b)(6) because the Copyright Act does not apply to extraterritorial

conduct, and Cadence has not plausibly alleged that any copyright violations occurred in the United

States.  Cadence alleges that its sophisticated licensing software meticulously tracks which computers

are using unauthorized copies of the software and that it identified over sixty-four computers that

used unlicensed software, and therefore Cadence **knows** where any purported copyright violations

occurred.  Yet, in both its initial and amended pleadings Cadence has avoided definitively and

plausibly alleging copyright violations within the United States.  In its current twenty-seven page,

215 paragraph amended complaint, Cadence relies on a single, one-sentence, conclusory paragraph

---

[1] Tacitly conceding this point, Cadence moved for an order granting alternative service on July 19, 2021.  Dkt. No. 22.  However, the Court had not ruled on that motion as of the filing of this motion.

1  that computers "associated with" a Syntronic domain "used, accessed, and/or copied" Cadence

2  software at "multiple IP addresses in California[.]"  That paragraph is vague, ambiguous, and devoid

3  of the requisite factual support to plausibly allege the necessary territoriality requirement.

4          Finally, Defendants move for a more definite statement pursuant to Rule 12(e) so they can

5  determine what each entity is actually accused of doing.  Cadence drafted a shotgun complaint that

6  improperly conflates allegations against the three separate entities, in order to camouflage fatal

7  defects in its claims.  For example, Cadence deliberately avoids alleging which entity purportedly

8  infringed on the copyrights, and where those infringements occurred—even though its other

9  allegations demonstrate without a doubt that it possesses that information.  Cadence deliberately

10 avoids alleging which entity, or entities, entered into and purportedly breached the software license

11 agreements.  This omission is both glaring and material, because the *only* possible basis for

12 exercising jurisdiction over the foreign entities would be acceptance of a forum selection clause.

13 Therefore, at a minimum, the Court should order Cadence to file an amended complaint clarifying

14 which defendants allegedly did what.

15 **III.     FACTUAL BACKGROUND**

16         On July 8, 2021, Defendants moved to dismiss Cadence's original complaint.  Dkt. No. 12.

17 Cadence declined to defend its pleadings and instead filed a First Amended Complaint on July 28,

18 2021.  Dkt. No. 26 (First Amended Complaint) ("FAC").  The First Amended Complaint attempts to

19 address the deficiencies in Cadence's original complaint, but the substantive allegations are

20 essentially the same.

21         **A.     Cadence's Substantive Allegations**

22         Cadence is an engineering services and software company that purports to own a number of

23 copyrighted works for software.  Dkt. No. 26 (FAC), ¶¶ 84, 87-96.  It generally alleges that

24 "Syntronic" – defined to include all three Defendants without distinction – accessed and used

25 unlicensed versions of copyrighted software.  *Id.* at ¶ 115.  According to Cadence, this resulted in

26 damages of at least $8.3 million dollars.  *Id.* at ¶ 137.  It asserts claims for (1) copyright infringement,

27 (2) circumvention of copyright protection systems, and (3) breach of contract.  *Id.* at ¶ 1.

28         For copyright infringement, Cadence alleges that "Syntronic" "has downloaded, modified,

used, and/or otherwise copied and installed Cadence Software without permission or authorization from Cadence[,]" constituting "direct and contributory copyright infringement[.]"  *Id.* at ¶¶ 175, 176. For circumvention of copyright protection systems, Cadence alleges that "Syntronic" created or used "cracked" software files, which would allegedly allow "Syntronic" to bypass the required entry and/or use of a valid license file.  *Id.* at ¶ 187.

Cadence alleges that it knows about these purported copyright violations because it uses technology that tracks unauthorized use of its software.  *Id.* at ¶¶ 111-113.  This tracking technology purportedly allows Cadence to identify specific machines that use its software without a license.  *Id.* at ¶¶ 138-145.  Cadence claims to have identified over sixty-four specific "Syntronic" machines that allegedly used the unlicensed software.  *Id.* at ¶ 138.

Despite this tracking technology and the supposed identification of sixty-four specific machines, Cadence failed to clearly plead copyright violations within the United States.  *Id.* at ¶ 116. Instead, Cadence asserted only a single, ambiguously-worded allegation that, "Computers associated with the domain '@syntronic.com' have used, accessed, and/or copied 'cracked' Cadence Software at multiple IP addresses in California, including after Cadence first provided notice to Defendants of their unauthorized use of Cadence Software"  *Id.*  Cadence failed to plead the IP addresses referenced in that paragraph, and failed to identify the specific Defendant(s) alleged to have used the copyrighted software.  *Id.*

For breach of contract, Cadence alleges that "Syntronic" entered into and breached two different versions of a click-wrap Software License and Maintenance Agreement (SLMA), attached as Exhibits 1 and 2 to the Complaint.  *Id.* at ¶¶ 198, 213.  As with its copyright claims, Cadence failed to plead the identity of the "Syntronic" entity that purportedly entered into the SLMAs or even the location (e.g., the IP address) of the computer that purportedly clicked  SLMAs.  *Id.*

**B.    Allegations of Personal Jurisdiction Over Syntronic AB and Syntronic Beijing**

Syntronic AB is a Swedish corporation.  Dkt. No. 26 (FAC), ¶ 3.  Syntronic Beijing is a Chinese corporation.  *Id.* at ¶ 5.  Unable to identify a single clear basis for personal jurisdiction over these entities, Cadence tries a number of different theories.

First, Cadence alleges that Syntronic AB and Syntronic Beijing are subject to general personal

1  jurisdiction as alter egos of Syntronic USA. *Id.* at ¶ 66.  Next, Cadence attempts a theory that

2  "Syntronic," including all three "Defendants" agreed to a forum selection clause in the two SLMAs

3  or, alternatively, that "Syntronic" approved or ratified the SLMAs.  *Id.* at ¶¶ 59-60.  Finally, Cadence

4  shifts to a "purposeful direction" theory, alleging that Syntronic AB and Syntronic Beijing are subject

5  to specific jurisdiction because they knew Cadence is located in California, knew that Cadence

6  owned the copyrighted works, and thus could foresee harm in California.  *Id.* at ¶¶ 68-73.

7  **IV.    THE COURT SHOULD QUASH SERVICE ON SYNTRONIC BEIJING[2]**

8      **A.    Cadence Bears the Burden of Proving Proper Service**

9      A motion to dismiss under Rule 12(b)(5) permits a challenge to the method of service

10  attempted by the plaintiff.  *See Olson v. Federal Election Comm'n*, 256 FRD 8, 9, 9 n.3 (D. D.C.

11  2009).  "Before a federal court may exercise personal jurisdiction over a defendant, the procedural

12  requirement of service of summons must be satisfied." *Omni Capital Int'l v. Rudolf Wolff & Co.*, 484

13  U.S. 97, 104 (1987). Strict compliance is required with the rules governing manner of service. It is

14  well recognized that a "defendant's actual notice of the litigation ... is insufficient to satisfy Rule 4's

15  requirements." *Way v. Mueller Brass Company*, 840 F.2d 303, 306 (5th Cir. 1988); *see also Sieg v.*

16  *Karnes*, 693 F.2d 803, 807 (8th Cir. 1982).  If service is challenged, the plaintiff bears the burden of

17  establishing proper service.  *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004).  Upon a finding

18  of improper service, it is within the district court's discretion to quash service of process or to dismiss

19  the case.  *Stevens v. Sec. Pac. Nat. Bank*, 538 F.2d 1387, 1389 (9th Cir. 1976).

20      **B.    Cadence has not Properly Served Syntronic Beijing**

21      As of the filing of this brief, Cadence has not filed a proof of service.  However, in response

22  to an inquiry, Cadence's counsel stated that it claimed to have served Syntronic Beijing by delivering

23  the summons to the agent for service of process of Syntronic *USA.*  As set forth in its Opposition to

24  Cadence's Motion for Alternative Service, Dkt. 29, Syntronic Beijing contends that Cadence must

25

26  _____

27  [2] Although Syntronic AB does not contest service in light of California case law regarding parent-subsidiary relationships in the service context, it contests and does not concede that Syntronic USA is an agent for service or that Syntronic USA acts or serves as an agent of Syntronic AB in any

28  capacity.  Declaration of Björn Jansson on behalf of Syntronic AB in Support of Motion to Dismiss ("Jansson Decl."), ¶ 24.

**MOTION TO QUASH, TO DISMISS, OR FOR MORE DEFINITIVE STATEMENT; CASE NO. 21-CV-3610-SI**

1    comply with the Hague Service Convention applies, but even assuming Cadence's position that it

2    does not, the question is whether Cadence could validly serve Syntronic Beijing by delivering the

3    summons to the agent for service of Syntronic USA.  The answer is "no."

4            A foreign corporation, such as Syntronic Beijing, must be served "in a judicial district of the

5    United States: (A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or (B) by

6    delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or

7    any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P.

8    4(h)(1). Rule 4(e)(1) provides that process may be served in accordance with "state law for serving a

9    summons in an action brought in courts of general jurisdiction in the state where the district court is

10   located or where service is made." Fed. R. Civ. P. 4(e)(1).

11           Syntronic Beijing does no business in California, and it has not designated Syntronic USA (or

12   anyone else) to accept service of process in the United States.  Declaration of Zinser Zhao on behalf

13   of Syntronic (Beijing) Technology R&D Center Co., LTD in Support of Motion to Dismiss ("Zhao

14   Decl."), ¶¶ 5, 24.  Syntronic USA does not act as an agent for Syntronic Beijing in any capacity.  *Id.*

15           Service on a subsidiary does not effect service on a corporate parent.  *Gravely Motor Plow &*

16   *Cultivator Co. v. H.V. Carter Co., Inc.*, 193 F.2d 158, 161 (9th Cir.1951).  However, California Code

17   of Civil Procedure section 416.10(b) permits service on a party's "general manager."  One line of

18   cases has upheld service on a wholly-owned subsidiary where that subsidiary could be regarded as a

19   "general manager" for the parent under California law.  *See, e.g., Khachatryan v. Toyota Motor Sales*

20   *USA, Inc.* 578 F. Supp. 2d 1224 (C.D. Cal. 2008).  But *Khachatryan* and the cases it relies on are

21   distinguishable.

22           In *Khachatryan*, the parent company owned and fully controlled the United States subsidiary.

23   The domestic subsidiary effectively carried on business that the corporate parent could have carried

24   on in the United States through a branch office, used the parent's intellectual property, and gave the

25   corporate parent "substantially the business advantages that it would have enjoyed if it conducted

26   business" in the state itself.  *Id.* at 1227, citing *Sims v. Nat'l Engineering Co.*, 221 Cal. App.2d 511,

27   515 (1963).

28           In contrast, Syntronic USA is not a subsidiary of Syntronic Beijing, and Syntronic USA does

1   not carry on Syntronic Beijing's business here.  Although they are corporate affiliates, Syntronic

2   Beijing lacks the control that was present in *Khachatryan* and the California cases that it relied on.

3   Syntronic USA does not act as Syntronic Beijing's agent in California.  No case has upheld service

4   on a sister corporation or other entity that was not acting as the foreign corporation's agent in

5   California.  Therefore, the Court should quash service of the summons on Syntronic Beijing.

6   **V.    CADENCE FAILED TO ALLEGE CONTACTS TO ESTABLISH PERSONAL**

7   **JURISDICTION OVER SYNTRONIC AB OR SYNTRONIC BEIJING**

8       "Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the

9   plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred*

10  *Martin Motor Co*., 374 F.3d 797, 800 (9th Cir. 2004).  To satisfy this burden, "the plaintiff cannot

11  'simply rest on the bare allegations of its complaint.'"  *Id*. (citation omitted).  Rather, where, as here,

12  the defendant has submitted evidence controverting the plaintiff's allegations, the plaintiff must

13  "'come forward with facts, by affidavit or otherwise, supporting personal jurisdiction.'" *Scott v.*

14  *Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (citation omitted); *see also Data Disc., Inc. v. Sys. Tech.*

15  *Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977) ("we may not assume the truth of allegations in a

16  pleading which are contradicted by affidavit").

17      A plaintiff's burden is particularly high where the plaintiff is seeking to establish personal

18  jurisdiction over a party from a foreign country. *See, e.g., Asahi Metal Indus. Co. Ltd. v. Super. Ct. of*

19  *Cal., Solano Cty*., 480 U.S. 102, 114 (1987) ("The unique burdens placed upon one who must defend

20  oneself in a foreign legal system should have significant weight in assessing the reasonableness of

21  stretching the long arm of personal jurisdiction over national borders.").  The Due Process Clause of

22  the U.S. Constitution protects non-residents from being bound by judgments of a forum with which

23  they have no meaningful contacts. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).  Due

24  process, therefore, requires that a non-resident defendant have "certain minimum contacts with [the

25  forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and

26  substantial justice.'" *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945).

27      Such "minimum contacts" must satisfy one of two requirements. First, where a defendant's

28  contacts are so "continuous and systematic" as to render it essentially at home in the forum state, a

7

court is said to have general jurisdiction over the defendant. *Daimler*, 134 S. Ct. at 761. Second, if a defendant's contacts are not sufficiently "continuous and systematic" to exercise general jurisdiction, a defendant may still be subject to specific jurisdiction, but only with respect to claims that relate to or arise out of the defendant's alleged activities in the forum. *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017).

### A.    Neither Syntronic AB nor Syntronic Beijing is Subject to General Jurisdiction

"[O]nly a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Daimler*, 134 S. Ct. at 760 (citation omitted). In *Daimler*, the Court held that the "paradigm all-purpose forums" in which a corporation will be considered "at home," and subject to general jurisdiction, are limited to the "corporation's place of incorporation and principal place of business." *Id.* Alternatively, a corporation may be subject to general jurisdiction in a state other than its place of incorporation or principal place of business where that corporation's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Id.* at 754. However, "it is … *incredibly difficult* to establish general jurisdiction in a forum other than the place of incorporation or principal place of business." *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 411-12, 418 (1984) (emphasis added)).

### 1.    Cadence failed to adequately plead general jurisdiction

First, Cadence concedes that neither entity is "at home" in this forum, acknowledging that Syntronic AB is a "Swedish *Publikt Aktiebolag* with its principal place of business at Utmarksvägen 33C, 802 91 Gävle, Sweden" and that Syntronic Beijing "is a Chinese corporation with its principal place of business at Wangjing Reward Building C1301, Chaoyang District, Beijing, China 100102." Dkt. No. 26 (FAC), ¶¶ 3, 5.

Second, the First Amended Complaint is devoid of any allegations, let alone factually supported ones, regarding any "continuous and systematic" contacts with the forum. Those words do not even appear in the pleadings. Instead, Cadence alleges only in conclusory fashion that "Syntronic AB and Syntronic Beijing also regularly conduct business in California and purposefully avail themselves of the privilege of conducting activities in this forum." *Id.* at ¶ 74. That bare assertion is

insufficient. *China Tech. Global Corp. v. Fuller, Tubb, Pomeroy & Stokes*, 2005 WL 1513153, at *1 (N.D. Cal. June 27, 2005) (to establish personal jurisdiction a plaintiff must "demonstrate *facts* that if true would support jurisdiction over the defendant…the court need not assume the truth of mere conclusory allegations") (emphasis added).  It is also factually inaccurate, as neither Defendant conducts business in California and neither Defendant is even registered to do business in any state in the United States.  *See* Jansson Decl., ¶ 5; Zhao Decl., ¶ 5 (explaining that neither entity conducts business, provides goods or services, or is even registered to do business in the United States).

Cadence's remaining allegations merely attempt to conflate the Defendants and are in fact based on its alter ego allegations, discussed in the next section.  After alleging that "Syntronic AB and Syntronic Beijing" regularly conduct business in California, Cadence switches to alleging in the very next paragraph that "Syntronic" does business in the Bay Area and Silicon Valley.  *Id*. at  ¶¶ 75-76.  Of course, the only Defendant that does business in California is Syntronic USA, not Syntronic AB or Syntronic Beijing.  Jansson Decl., ¶ 5; Zhao Decl., ¶ 5.

### 2.    There is no general jurisdiction based on alter ego

Cadence's primary theory of general jurisdiction is based on allegations of alter ego; specifically, that Syntronic AB and Syntronic Beijing are subject to general jurisdiction because they are purportedly alter egos of Syntronic USA.  Dkt. No. 26 (FAC), ¶ 66 ("Syntronic, including Defendants Syntronic AB and Syntronic Beijing, are subject to general jurisdiction as the alter egos of Syntronic USA.").

"It is a general principle of corporate law deeply ingrained in our legal system that a corporation is not liable for the acts of its subsidiaries." *U.S. v. Bestfoods*, 524 U.S. 51, 61 (1998). Piercing the corporate veil to hold one entity liable for the acts of another is an extreme remedy, which courts use sparingly. *Corcoran v. CVS Health Corp*., 169 F. Supp. 3d 970, 983 (N.D. Cal. Mar. 14, 2016).

To establish alter-ego, a plaintiff must show that "(1) there is a unity of interest and ownership between the corporations such that their separate personalities do not actually exist, and (2) treating the corporations as separate entities would result in injustice." *Id*. (citing *Ranza v. Nike, Inc*., 793

F.3d 1059, 1073 (9th Cir. 2015)).[3]  The first prong requires "a showing that the parent controls the

subsidiary to such a degree as to render the latter the mere instrumentality of the former." *Ranza*, 793

F.3d 1073 (internal quotations omitted).  That requires such "pervasive control" by the parent

corporation, that it can only be met where the parent corporation "dictates every facet of the

subsidiary's business—from broad policy decisions to routine matters of day-to-day operation." *Id*.

Courts generally consider nine factors when assessing the first prong of the alter ego test:

> [1] the commingling of funds and other assets of the entities, [2] the holding out by one entity that it is liable for the debts of the other, [3] identical equitable ownership of the entities, [4] use of the same offices and employees, [5] use of one as a mere shell or conduit for the affairs of the other, [6] inadequate capitalization, [7] disregard of corporate formalities, [8] lack of segregation of corporate records, and [9] identical directors and officers.

*Corcoran*, 169 F. Supp. 3d at 983 (internal citations omitted).

The second prong requires a showing that "failure to disregard [their separate identities]

would result in fraud or injustice."  *Ranza*, 793 F.3d at 1073.

Cadence's alter ego theory fails for two reasons.  First, Defendants are submitting declarations

demonstrating that Cadence cannot meet the alter ego factors.  Second, regardless of those

declarations, Cadence failed to make even a *prima facie* case because its alter ego allegations are

insufficient as a matter of law.

a.    Defendants' declarations refute Cadence's allegations

Defendants are concurrently filing declarations demonstrating their separate legal existence.

Defendants were separately formed and filed appropriate paperwork according to the laws of

their respective jurisdictions.  Jansson Decl., ¶ 2; Declaration of Björn Östlund on behalf of Syntronic

Research and Development USA Inc. in Support of Motion to Dismiss ("Östlund Decl."), ¶ 2; Zhao,

¶ 2.  They adopted and follow Bylaws and adhere to corporate formalities, including holding regular

meetings of the boards of directors and maintaining minutes of those meetings in separate minute

---

[3] The same basic test applies to Cadence's "single enterprise" theory.  *See Toho-Towa Co., Ltd. v. Morgan Creek Productions, Inc.*, 217 Cal. App. 4th 1096, 1108-09 (2013) (explaining that "[i]n California, common principles apply regardless of whether the alleged alter ego is based on piercing the corporate veil to attach liability to a shareholder or to hold a corporation liable as part of a single enterprise[,]" and proceeding to cite the general alter ego factors as informing the single business enterprise analysis).

**MOTION TO QUASH, TO DISMISS, OR FOR MORE DEFINITIVE STATEMENT; CASE NO. 21-CV-3610-SI**

books.  Jansson Decl., ¶ 13; Östlund Decl., ¶ 10 ; Zhao Decl., ¶ 13.

Syntronic AB is the parent of both Syntronic USA and Syntronic Beijing, but Syntronic USA owns no interest in Syntronic AB or in Syntronic Beijing, and Syntronic Beijing owns no interest in Syntronic AB or in Syntronic USA.  Jansson Decl., ¶ 7; Östlund Decl., ¶ 5; Zhao Decl., ¶ 7. Syntronic AB has no involvement in the daily decision-making and operations of either Syntronic USA or Syntronic Beijing.  Jansson Decl., ¶ 14; Östlund Decl., ¶ 11; Zhao Decl., ¶ 14.  The day-to-day decision-making authority, including all hiring and firing decisions, is vested exclusively with the management of Syntronic USA and Syntronic Beijing, respectively.  *Id.*

There is zero overlap in officers among the three Defendants.  Jansson Decl., ¶ 8; Östlund Decl., ¶ 6; Zhao Decl., ¶ 9.  The three boards of directors are not identical, and there is only minimal overlap with only Björn Jansson, as representative of the parent company, sitting on the board of all three companies and Monica Jansson sitting on the board of two companies (Syntronic AB and Syntronic Beijing).  Jansson Decl., ¶ 8; Östlund Decl., ¶ 6; Zhao Decl., ¶¶ 8, 9.

There is zero overlap in employees among the three Defendants. Jansson Decl., ¶ 9; Östlund Decl., ¶ 7; Zhao Decl., ¶ 10.  Each Defendant is responsible for and manages its own payroll, and each Defendant pays its own employees out of its own accounts.  *Id.*  No Defendant pays the salaries of any other Defendant's employees.  *Id.*

Defendants do not share office space.  Jansson Decl., ¶ 3; Östlund Decl., ¶ 3; Zhao Decl., ¶ 3. They maintain separate principal places of business.  *Id.*  No Defendant uses the office space of any other Defendant for any aspect of its operations.  *Id.*  Each entity is responsible for its own lease.  *Id.*

Defendants do not comingle theirs funds.  Jansson Decl., ¶¶ 10, 11, 16; Östlund Decl., ¶¶ 8, 9, 13; Zhao Decl., ¶¶ 11, 12, 16.  Each Defendant maintains its own separate bank account to which no other Defendant has direct access.  Jansson Decl., ¶ 10; Östlund Decl., ¶ 8; Zhao Decl., ¶ 11.  There is no single account to which two or more of the Defendants have direct access.  Jansson Decl., ¶¶ 10, 11; Östlund Decl., ¶¶ 8, 9; Zhao Decl., ¶¶ 11, 12.  Syntronic AB and Syntronic Beijing do not even have bank accounts in the United States.  Jansson Decl., ¶¶ 10, 12; Zhao Decl., ¶ 11.  Each Defendant regularly audits its financial information, and Defendants retain different accounting firms for company-level audits.  Jansson Decl., ¶ 16; Östlund Decl., ¶ 13; Zhao Decl., ¶ 16.

1    Defendants do not hold themselves out as liable for or guaranteeing the debts of on another.

2    Jansson Decl., ¶ 17; Östlund Decl., ¶ 14; Zhao Decl., ¶ 17.  There are no indemnity or guarantee

3    agreements between Defendants.  Jansson Decl., ¶ 18; Östlund Decl., ¶ 17; Zhao Decl., ¶ 20.  Any

4    loans between Defendants have been appropriately documented.  Jansson Decl., ¶¶ 19, 20; Östlund

5    Decl., ¶ 16; Zhao Decl., ¶ 19.

6                           b.    Cadence failed to meet its prima facie burden

7        Regardless of Defendants' declarations demonstrating their legal separateness, Cadence failed

8    to plead even a *prima facie* case of alter ego.  Cadence's various conclusory and unsupported

9    allegations of alter ego – *e.g.*, Dkt. No. 26 (FAC), ¶ 7("Syntronic AB, Syntronic USA, and Syntronic

10   Beijing share a unity of interest.") – are insufficient as a matter of law.  *See Sandoval v. Ali*, 34 F.

11   Supp. 3d 1031, 1040 (N.D. Cal. 2014) ("Conclusory allegations of 'alter ego' status are insufficient

12   to state a claim.") (citations omitted).  Moreover, each of Cadence's purported "factual" allegations

13   of alter ego are likewise deficient as a matter of law.  *Id.* at ¶¶ 6-21.

14       First, Cadence dedicates the overwhelming majority of its alter ego allegations to a smattering

15   of assertions that Defendants share a website or market themselves under a common brand or as a

16   "Global Design House" or the "Syntronic Group" or as "*one* Syntronic" or as having offices and

17   operations worldwide or some variation of the foregoing.  Dkt. No. 26 (FAC), ¶¶ 8-15, 29, 31-43, 46,

18   47.  Courts in the Ninth Circuit flatly reject these types of allegations as insufficiently demonstrative

19   of alter ego.  *See, e.g.*, *Corcoran*, 169 F. Supp. 3d at 984 (collecting cases and explaining that "courts

20   recognize that separate corporate entities presenting themselves as one online does not rise to the

21   level of unity of interest required to show companies are alter egos."); *MLC Intellectual Property,*

22   *LLC v. Micron Technology, Inc.*, Case No. 19-cv-03345-EMC, 2019 WL 4963253, *12 (N.D. Cal.

23   Oct. 8, 2019) (allegations that "Micron and its subsidiaries present themselves to the public as a

24   single entity under the 'Micron' brand name" was insufficient to plausibly plead alter ego); *Maple*

25   *Leaf Adventures. Corp. v. Jet Tern Marine Co., Ltd.*, Case No. 15-cv-2504-AJB-BGS, 2016 WL

26   3063956, at *4, 8 (S.D. Cal. Mar. 11, 2016) (finding inadequate evidence of an alter ego relationship

27   where the subsidiary held itself out as "Selene Ocean Trawlers," the same name under which the

28   parent corporation did business; the "About Selene" section was exclusively devoted to the parent

corporation's history; the subsidiary's website held itself out as the factory direct representative for the parent corporation's products; the parent corporation's CEO was listed first on the subsidiary's website; and the parent corporation advertised the subsidiary's opening); *Payoda, Inc. v. Photon Infotech, Inc.*, Case No. 14-cv-04103-BLF, 2015 WL 4593911, *1, *3 (N.D. Cal. July 30, 2015) (granting motion to dismiss and rejecting argument that defendants "hold themselves out to the public to be the same entity on their website" as indicative of alter ego relationship); *Moody v. Charming Shoppes of Delaware, Inc*., 2008 WL 2128955, at *3 (N.D. Cal. May 20, 2008) ("[g]eneric language on [a company's] website and in its press releases simply do not rise to the day-to-day control required to impute the subsidiary's contacts to the parent").

Second, Cadence's allegation that Defendants are under common equitable ownership is insufficient.  Dkt. No. 26 (FAC), ¶ 16; *see, e.g.*, *Stewart v. Screen Gems-EMI Music, Inc.*, 81 F. Supp. 3d 938, 956 (N.D. Cal. 2015) (explaining that "it is well-settled that common ownership is not dispositive[,]" and granting motion to dismiss in part upon finding that common equitable ownership, *even when coupled with two other factors that weighed in favor of alter ego*, was insufficient); *Sandoval*, 34 F.Supp.3d at 1040 ("Common ownership alone is insufficient to disregard the corporate form.").

Third, Cadence's allegations that Defendants have overlapping officers, directors, and "interchangeable" employees also are insufficient.  Dkt. No. 26 (FAC), ¶¶ 18-24; *see, e.g., Ranza v. Nike, Inc.*, 793 F.3d 1059, 1074 (9th Cir. 2015) ("Some employees and management personnel move between the entities, but that does not undermine the entities' formal separation."); *U.S. v. Pangang Group Co., Ltd*., 879 F. Supp. 2d 1052, 1067 (N.D. Cal. 2012) (the fact that a subsidiary's board of directors included representatives from parent companies "is not sufficient to establish the requisite control to establish an alter-ego relationship"); *Corcoran*, 169 F. Supp. 3d at 983-984 (finding allegations insufficient where parent and wholly owned subsidiary "had overlapping officers and directors"). "[C]ourts generally presume that directors can and do 'change hats' to represent each corporation separately, despite their overlapping obligations as officers or directors for more than one entity." *Screen Gems-EMI Music, Inc.*, 81 F. Supp. 3d at 956.  Indeed, the only overlapping directors between Defendants are Bjorn Jansson and Monica Jansson, both representatives of the corporate

parent, Syntronic AB, which is entirely appropriate.  *See Gerritsen v. Warner Bros. Ent., Inc.*, 116 F. Supp. 3d 1104, 1138-39 (C.D. Cal. 2015) ("it is considered a normal attribute of ownership that officers and directors of the parent serve as officers and directors of the subsidiary.").

Fourth, Cadence's allegations that, "for at least part of the time," Defendants shared office space also fail.  Dkt. No. 26 (FAC), ¶¶ 44-45; *see, e.g.*, *Harris Rutsky & Co. Ins. Serv. v. Bell & Clements*, 328 F. 3d 1122, 1135 (9th Cir. 2003) (facts showing that parent wholly owned subsidiary, parent and subsidiary shared the same officers and directors, co-employed staff, and shared physical office space did not satisfy first prong of alter ego test); *Gerritsen v. Warner Bros. Entm't Inc*, 116 F. Supp. 3d 1104, 1140 (C.D. Cal. 2015) ("the fact that a parent and subsidiary share the same office location, or the same website and telephone number, does not necessarily reflect an abuse of the corporate form and existence of an alter ego relationship.").

Fifth, Cadence's allegations that Defendants submit financial statements and/or pay taxes on a consolidated basis likewise fail.  Dkt. No. 26 (FAC), ¶ 48; *see American Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 591 (9th Cir. 1996) (finding no alter ego and explaining that consolidated tax returns "hardly demonstrates" domination of subsidiary by parent); *Forest v. Equitable Life Assurance Society of U.S.*, Case No. 99-cv-5173-SI, 2001 WL 1338809, *9 (N.D. Cal. June 12, 2001) (citing California authority for the proposition that allegations or evidence of consolidated financial statements falls "woefully short of the showing on which alter ego normally rests") (citations omitted); *see also Uniloc 2017 LLC v. H&R Block, Inc.*, No. 19 Civ. 1149, 2019 WL 8219781, at *2 (C.D. Cal. Dec. 23, 2019) ("courts in this District have concluded that consolidated financial statements are insufficient to satisfy the alter ego test").

Sixth, so too do Cadence's allegations that Defendants are undercapitalized because Syntronic AB has "transferred" funds to its subsidiaries.  Dkt. No. 26 (FAC), ¶¶ 49-51; *see, e.g.*, *In re Western States Wholesale Natural Gas Litigation*, 605 F.Supp.2d 1118, 1133 (D. Nev. 2009) (a parent's documented financing to its subsidiaries is not indicative of an alter ego relationship).

And seventh, the Ninth Circuit has specifically rejected allegations regarding common human resource policies as not indicative of alter ego.  Dkt. No. 26 (FAC), ¶¶ 15, 27-28; *see Ranza*, 793 F.3d at 1074 (rejecting as probative of alter ego that the parent established general human-resources

1  policies that the subsidiary had to follow).

2      Finally, Cadence also failed to plausibly plead the inequitable result prong.  The gist of

3  Cadence's allegations are that it would be inequitable for Defendants to "hold themselves out . . . as

4  **one** Syntronic" and rely on their corporate separateness "for purposes of evading liability."  Dkt. No.

5  26 (FAC), ¶¶ 52-53.  As courts recognize, this is merely an artful way of pleading that refusal to

6  pierce the corporate veil would result in unjust enrichment or complicate collecting a judgment,

7  neither of which is sufficient as a matter of law.  *See Apple Inc. v. Allan & Associates Limited*, 445

8  F.Supp.3d 42 (N.D. Cal. 2020) (characterizing similar allegations that defendant would "escape

9  personal debts" if the veil was not pierced as an insufficient allegation of unjust enrichment); *See,*

10  *e.g.*, *Sonora Diamond Corp. v. Superior Court*, 83 Cal.App.4th 523, 539 (2000) ("[d]ifficulty in

11  enforcing a judgment or collecting a debt does not satisfy" the inequitable result prong).  Moreover,

12  "and most damning" to its "evading liability" theory, Cadence never once alleges that any liable

13  Defendant cannot answer Cadence's claims or pay a judgment.  *Apple Inc.*, 445 F. Supp. 3d at 56.

14      Cadence also alleges that Defendants "acted in bad faith" because Syntronic AB and

15  Syntronic USA referred Cadence to Syntronic Beijing, which allegedly "refused to engage with"

16  Cadence.  Dkt. No. 26 (FAC), ¶¶ 55-56.  This, according to Cadence, demonstrates a "shell game."

17  *Id.*  It does not.  In fact, it demonstrates the proper functioning of separate legal entities.

18      **B.    Neither Syntronic AB nor Syntronic Beijing is Subject to Specific Jurisdiction**

19      To establish "specific jurisdiction," a plaintiff must demonstrate that: (1) the defendant either

20  "purposefully direct[ed]" its activities or "purposefully avail[ed]" itself of the benefits afforded by the

21  forum's laws; (2) the claim "arises out of or relates to the defendant's forum-related activities"; and

22  (3) the exercise of jurisdiction "comports with fair play and substantial justice, i.e., it is reasonable."

23  *Williams v. Yamaha Motor Co. Ltd*., 851 F.3d 1015, 1023 (9th Cir. 2017) (citation omitted); *see also*

24  *Bristol-Myers Squibb*, 137 S. Ct. at 1781 ("In order for a court to exercise specific jurisdiction …

25  there must be an 'affiliation between the forum and the underlying controversy, principally [an]

26  activity or an occurrence that takes place in the forum State. When there is no such connection,

27  specific jurisdiction is lacking ….") (citation omitted).

28

**MOTION TO QUASH, TO DISMISS, OR FOR MORE DEFINITIVE STATEMENT; CASE NO. 21-CV-3610-SI**

### 1.    Cadence failed to adequately allege a binding forum selection clause

Cadence alleges that "Syntronic," including "each of the three Defendants," agreed to a forum selection clause in click-wrap SLMAs.  FAC., ¶ 59.  Defendants submit evidence to the contrary. Each Defendant conducted an investigation and found no evidence of any authorized or ratified SLMA between Cadence and any of the Defendants.  Östlund Decl., ¶¶ 18-20; Jansson Decl., ¶¶ 21-23; Zhao Decl., ¶¶ 21-23.  No Defendant agreed to any forum selection clause.  *Id.*

Furthermore, only persons having actual or ostensible authority could enter into a contract that would bind Syntronic AB or Syntronic Beijing and thereby "accept" the forum selection clause. *See Title Guarantee & Trust Co. v. Hammond Lumber Co.*, 62 Cal. App. 245, 254-55 (1923) ("[A] corporation is not bound by any act or acts of its officers or employees unless they are by the corporation vested with general authority to transact any and all of the business falling within the scope of its corporate purposes, or vested with special authority, through formal action of its board of directors, to do some particular act within the limits of its charter powers, or  unless the corporation has held such officers or employees out to the public as possessing authority to act for it according to the general usage, practice, and course of its business."); *Snukal v. Flightways Mfg. Inc.*, 23 Cal. 4th 754, 779 (2000) ("At common law, the party seeking to enforce a contract with a corporation generally has the burden of establishing the contracting officer's authority to bind the corporation.").[4]

On that point, Cadence alleges only "on information and belief" that "representatives of Syntronic with authority to bind Syntronic, including for each of the three Defendants, approved and/or ratified the use of Cadence Software, including the agreement to submit to jurisdiction in California." Dkt. No. 26 (FAC), ¶ 60.  Again, Cadence is mistaken and Defendants submit evidence to the contrary.  As part of their investigation, Defendants also found no evidence that any employee with authority to bind the company entered into or clicked on any SLMA.  Östlund Decl., ¶¶ 18-20; Jansson Decl., ¶¶ 21-23; Zhao Decl., ¶¶ 21-23.

---

[4] Even if the Uniform Electronic Transactions Act, Cal. Civ. Code section 1633.1 *et seq.* ("UETA") applied to transactions involving Swedish and Chinese corporations, UETA does not address the issue of authority to bind a corporation.  Before UETA even applies, a plaintiff must show that the parties – Syntronic AB and Syntronic Beijing – agreed to conduct a transaction electronically.  Civ. Code section 1633.5(b).  The evidence presented in declarations in support of this motion demonstrates that there was no such intent on the part of either corporation.

In fact, each Defendant adheres to an IT/Information Security Policy that prohibits its employees from using unlicensed software or cracked licenses. *Id.* That policy requires that all software used in the course of employment must be licensed and *approved* by the Defendant. *Id.* None of Defendants' employees received approval to click on or enter into any SLMA. *Id.* At most, then, Cadence appears to be relying on one or more rogue employees who may or may not have clicked on a click-wrap SLMA without authorization, without authority to bind Defendants, and in violation of the IT/Information Security Policy. That is insufficient to bind Defendants to a forum-selection clause and cannot provide a basis for jurisdiction. *See Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 458 (9th Cir. 2007) (forum selection clause "may give rise to waiver of objections to personal jurisdiction" but only "provided that the defendant agrees to be so bound").

### 2.    Cadence failed to adequately allege "purposeful direction" to this forum

Finally, Cadence attempts to plead specific jurisdiction under a "purposeful direction" theory. *See Axiom Foods, Inc. v. Acerchem International, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017) (outlining the general "purposeful direction" or "effects test" elements: "[t]he defendant must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.") (internal citations omitted). Cadence first recites the elements in threadbare conclusory fashion, alleging that "Syntronic AB and Syntronic Beijing committed an intentional act directed to this forum," that their purported "misconduct and/or infringement was expressly aimed at this forum[,]" and that they knew this "would foreseeably harm Cadence in California where Cadence is located." FAC, ¶¶ 68, 70, 73.

In support of these rote recitations, Cadence relies on allegations that Cadence "specifically informed Defendants" in February 2020 that Cadence is located in California, and that "Defendants" nonetheless purportedly "continued willfully using Cadence's software" which, according to Cadence, would "foreseeably harm Cadence in California where Cadence is located." *Id.* at ¶¶ 71-73. That is insufficient as a matter of law.

The Ninth Circuit's decision in a similar copyright infringement case is instructive and controlling. In *Axiom Foods, Inc.*, Appellants (a California corporation and an Arizona corporation, both doing business in California) relied on a nearly identical and outdated theory of specific

jurisdiction.  Appellants alleged that Acerchem International, Inc., a Chinese entity, and its

subsidiary, Acerchem UK Limited, a United Kingdom entity, infringed their copyrighted logos by

incorporating them into a newsletter promoting Acerchem UK's competing products. 874 F.3d at

1067.  At least fifty-five of the newsletter's 343 recipients had business located in California.  *Id.* at

1070.

Appellants argued that they satisfied the "purposeful direction" test relying on "the strength of

their own forum connections, coupled with evidence suggesting Acerchem UK knew of those

connections and Appellants' ownership of the logos' copyrights."[5]  *Id.* at 1069.  The Ninth Circuit

disagreed, explaining that Supreme Court precedent requires more:

> In  *Walden*, the Supreme Court rejected our conclusion that the defendants' knowledge
> of [the plaintiffs'] strong forum connections, plus the "foreseeable harm" the plaintiffs
> suffered in the forum, comprised sufficient minimum contacts.  The Court found that
> our approach "impermissibly allow[ed] a plaintiff's contacts with the defendant and
> forum to drive the jurisdictional analysis."

> *Id.* at 1069-70 (citing *Walden v. Fiore*, 571 U.S. 277 (2014) (internal citations omitted).

Instead, the inquiry requires the Court to look at "the *defendant's* 'own contacts' with the forum, *not*

*to the defendant's knowledge of a plaintiff's connections to a forum*."  *Id.* at 1070 (emphasis added).

The Ninth Circuit affirmed the district court's dismissal for lack of personal jurisdiction,

focusing on the fact Acerchem UK conducted no business in California and citing the Supreme Court

for the proposition that "[t]he foreseeability of injury in a forum 'is not a 'sufficient benchmark' for

exercising personal jurisdiction.'"  *Id.* at 1070-71 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S.

462, 474 (1985)).

The Court should reach the same outcome here.  Like Acerchem UK, Sytnronic AB and

Syntronic Beijing do not have sufficient contacts with the United States.  They conduct no business in

the U.S., sell no services or goods here, hold no property, have no bank accounts, have never initiated

any lawsuits in any U.S. court, and are not even registered to conduct business in any one of the

---

[5] While there was some dispute as to whether Acerchem UK had knowledge of the copyrights, and
the district court failed to hold an evidentiary hearing, the Ninth Circuit found that the district court
should have resolved that dispute in Appellants favor, but that the district's error was not dispositive
because "Acerchem UK lacked sufficient minimum contacts with California to comply with the
requirements of due process, which renders this aspect of the case moot."  *Axiom Foods, Inc.*, 874
F.3d at 1069 n.3

United States.

## VI.    CADENCE FAILED TO STATE ANY PLAUSIBLE CLAIMS[6]

To survive a motion to dismiss under Rule 12(b)(6), plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "Facial plausibility" requires the plaintiff to allege facts that add up to "more than a sheer possibility that a Defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiffs must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 544, 555.

Alternatively, Defendants may move for a more definite statement under Rule 12(e) where a complaint fails "to say which wrongs were committed by which defendants" and instead relies on vague references to all "defendants."  *McHenry v. Renne*, 84 F. 3d 1172, 1179 (9th Cir. 1996).

### A.    Cadence Failed to Plausibly Allege Copyright Violations in the United States

"It is axiomatic that United States copyright law does not apply extraterritorially." *Yount v. Acuff Rose-Opryland*, 103 F.3d 830, 835 (9th Cir. 1996) (citing 3 David Nimmer & Melville B. Nimmer, Nimmer on Copyright, § 17.02 (1996)).  "[I]n order for U.S. copyright law to apply, at least one alleged infringement must be completed entirely within the United States, and [] mere authorization of extraterritorial infringement [is] not a completed act of infringement in the United States." *Allarcom Pay Television, Ltd. v. Gen. Instrument Corp.*, 69 F.3d 381, 387 (9th Cir. 1995).[7]

Despite two opportunities, not once has Cadence been able to plausibly and definitively allege copyright violations within the United States.  Cadence's failure to plausibly plead completed acts of infringement in the United States is particularly telling in light of evidence that the only Defendant

---

[6] Without waiving their challenges to service and personal jurisdiction, Syntronic AB and Syntronic Beijing join in this argument in the alternative. Defendants note that, as a matter of judicial economy, until and unless Cadence is able to plead copyright violations within the United States, it may not be necessary for the Court to analyze the jurisdictional arguments specific to Syntronic AB and Syntronic Beijing.

[7] Although arguably implicating the Court's subject-matter jurisdiction, courts typically review the territoriality requirement under Rule 12(b)(6).  *See, e.g.*, *Litecubes, LLC v. Northern Light Products, Inc.*, 523 F. 3d 1353, 1368 (Fed. Cir. 2008) (reviewing the case law, including Ninth Circuit authority, and explaining that territoriality should be reviewed as an element of a copyright claim under Rule 12(b)(6)); *Shropshire v. Canning*, 809 F.Supp.2d 1139, 1144 (N.D. Cal. 2011).

19

1    who conducts business in the United States is Syntronic USA, which does not even have employees

2    who use any Cadence software as part of their employment.  Östlund Decl., ¶ 21.

3        Cadence alleges that "[c]omputers associated with the domain '@syntronic.com' have used,

4    accessed, and/or copied 'cracked' Cadence Software at multiple IP addresses in California[.]"  FAC,

5    ¶ 116.[8]  But an allegation based solely on computers that are "*associated with* @syntronic.com

6    domain" is impermissibly vague.  That could refer to absolutely any computer that sends or receives

7    an email from a @syntronic.com domain.  It clearly does not logically follow that a computer

8    "associated with" a Syntronic domain is in fact a computer belonging to "Syntronic," and no

9    Defendant can be liable for non-Syntronic, third-party computers or conduct.

10       The remainder of the allegation is impermissibly ambiguous.  It is unclear whether Cadence is

11   alleging that the "cracked" *Cadence Software* is "at IP addresses in California," or whether the

12   *computers* that purportedly "used, access, and/or copied" "cracked" Cadence Software are "at IP

13   addresses in California."  Either construction fails.

14       First, if Cadence is alleging that the *computers* are "at IP addresses in California," that

15   threadbare recital is "devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (quoting

16   *Twombly*, 550 U.S. at 557).  Tellingly, Cadence could have and would have bolstered its conclusory

17   allegations with the requisite factual support, if such support existed.  But for a second time, and

18   despite alleging the existence of sophisticated tracking technology that provides such information,

19   Dkt. No. 26 (FAC), ¶¶ 97, 111-113, it declined to do so.  For example, despite referencing "multiple"

20   purported "IP Addresses" in California, Cadence failed to provide a single one.  If one of the

21   computers that purportedly "used, accessed, and/or copied 'cracked' Cadence Software" truly did so

22   within the United States, the IP address information would have identified down to the city where in

23   the United States the purported copyright violation occurred.  Cadence failed to plead it.

24       Second, if Cadence is alleging that the "cracked" *Cadence Software* is "at IP addresses in

25   California," that is insufficient to plausibly establish the territoriality requirement—*i.e.*, "*an entire,

26   completed act* of copyright infringement in the United States."  *Allarcom*, 69 F.3d at 387 (emphasis

27

28
_____

[8] Cadence alleges nearly identical substantive allegations in paragraphs 116, and 117.

20

added).  That is, if the *computer* that allegedly "used, accessed and/or copied" the Cadence Software was located outside of the United States, then no completed act of infringement occurred within the United States.  *See id.* (holding that U.S. copyright law did not apply where the copyrighted works were broadcast from the U.S. to Canada because "infringement was only completed in Canada once the signal was received and viewed."); *Shropshire v. Canning*, 809 F. Supp. 2d 1139, 1146 (N.D. Cal. 2011) (explaining that "acts beginning in the United States but culminating overseas are considered to be under the purview of the copyright laws in the country of destination...").

        Ultimately, Cadence fails to allege facts that would nudge its vague and ambiguous assertion of Copyright Act violations within the United States "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680 (quoting *Twombly*, 550 U.S. at 570).  The territoriality requirement is an essential element of Cadence's claim and Cadence failed to plead it properly.  *See Shropshire v. Canning*, 2011 WL 90136, at *3-4 (N.D. Cal. Jan. 11, 2011) (dismissing copyright claim in part where "the Court can discern no act of infringement that occurred entirely within the United States."); *Sound N Light Animatronics Co., LTD. v. Cloud b, Inc.*, 2016 WL 7635950, at *5 (C.D. Cal. Nov. 10, 2016) (dismissing copyright infringement counterclaims because the counter-plaintiff "does not plausibly allege that infringing products were distributed within the United States"); *Danjaq, S.A. v. MGM/UA Comms., Co.*, 773 F. Supp. 194, 202-03 (C.D. Cal. 1991) (dismissing copyright infringement suit for failure to state a claim on multiple grounds, including "the undisputed axiom that the United States' copyright laws do not operate extraterritorially" and so allegations of performing copyrighted James Bond films on European television without authorization "easily lends itself to resolution on a motion to dismiss"); *Vander Music v. Azteca Int'l Corp.*, 2011 WL 13177301, at *3-4 (C.D. Cal. Jan. 21, 2011) (dismissing claims for direct and contributory copyright infringement where all the complained-of acts took place in Mexico and so Plaintiff failed "to state a cognizable claim for copyright infringement"); *New Name, Inc. v. Walt Disney Co.*, 2007 WL 5061697, at *2-4 (C.D. Cal. Dec. 3, 2007) (dismissing a copyright infringement claim for selling t-shirts with allegedly copyrighted images on them because the only plausible allegations of infringement concerned sales in Canada, and allegations of United States infringement were speculative and implausible).

1    Alternatively, Defendants request that the Court order Cadence to provide a more definite

2    statement pursuant to Rule 12(e), definitively alleging copyright violations within the United States

3    and providing the requisite factual allegations, such as IP addresses, that support the plausibility of

4    such an allegation, as well as identifying which Defendant purportedly committed those violations

5    and when. *See Renne*, 84 F.3d at 1174-75 (affirming dismissal under Rules 8(a) and 12(e) where,

6    among other things, plaintiff asserted various claims "without any specification of which of the

7    twenty named defendants or John Does is liable for which of the wrongs.").[9]

8        **B.    Cadence Improperly Lumped All Defendants Together**

9        "As a general rule, when a pleading fails 'to allege what role each Defendant played in the

10   alleged harm,' this 'makes it exceedingly difficult, if not impossible, for individual Defendants to

11   respond to Plaintiffs' allegations'" *Adobe Systems Incorporated v. Blue Source Group, Inc.*, 125 F.

12   Supp. 3d 945, 964 (N.D. Cal. 2015) (citing *In re iPhone Application Litig.*, No. 11–MD–02250–

13   LHK, 2011 WL 4403963, at *8 (N.D. Cal. Sept. 20, 2011)); *see also Gen–Probe, Inc. v. Amoco*

14   *Corp.*, 926 F.Supp. 948, 961 (S.D. Cal. 1996) (stating "confusion of which claims apply to which

15   defendants would require that the complaint be dismissed with leave to file an amended complaint.").

16   Accordingly, a complaint which merely "lump[s] together . . . multiple defendants in one broad

17   allegation fails to satisfy [the] notice requirement of Rule 8(a)(2)." *Gen–Probe*, 926 F. Supp. at 961

18   (citing *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988)).  Instead, a plaintiff "must

19   identify what action each Defendant took that caused Plaintiffs' harm, without resort to generalized

20   allegations against Defendants as a whole." *Adobe Systems Incorporated*, 125 F. Supp. 3d at 964

21   (quoting *In re iPhone*, 2011 WL 4403963, at *3).

22       **1.    Cadence failed to identify which Defendant violated the Copyright Act**

23       On the very first page of the First Amended Complaint Cadence defines all three Defendants

24   as, collectively, "Syntronic" and proceeds to ambiguously allege throughout the pleading that

---

[9] Defendants request that the Court dismiss Cadence's breach of contract claim for separate and
independent reasons.  Regardless, to the extent Cadence is unable to allege domestic violations of the
Copyright Act, there would be no federal claim and no basis for supplemental jurisdiction over
Cadence's state law claim.  Defendants request that the Court decline to exercise supplemental
jurisdiction without an underlying federal claim.  28 U.S.C. § 1367(c)(3).

**MOTION TO QUASH, TO DISMISS, OR FOR MORE DEFINITIVE STATEMENT; CASE NO. 21-CV-3610-SI**

"Syntronic" or "Defendants" committed copyright infringement, circumvention of copyright protection systems, and breach of contract. *See, e.g.*, Dkt. No. 26 (FAC), ¶ 137 ("[b]y using the Cadence Software without authorization and by circumventing Cadence technological measures, *Syntronic* has [] violated Cadence's registered copyright . . . ."), ¶ 177 ("*Syntronic* is also liable for vicarious infringement"), ¶ 181 (Syntronic's actions . . . have been knowing and willful.") (emphases added). This makes it impossible to determine which Defendant Cadence alleges to have directly, vicariously, or knowingly committed copyright infringement. This is particularly important as to Syntronic USA, which does not have employees that use Cadence software. Östlund Decl., ¶ 21.

Courts in this district and circuit dismiss these types of complaints as failing to satisfy Rule 8. *See, e.g., Lynwood Investments Cy Limited v. Konovalov*, Case No. 20-CV-03778-LHK, 2021 WL 1164838, *16 (N.D. Cal. Mar. 25, 2021) (dismissing copyright claims where plaintiff failed to "identify which defendants allegedly infringed its copyright" and "lump[ed] all the defendants together without stating which entity or person copied the work."); *Hemlock Hat Company, Inc. v. Diesel Power Gear, LLC*, Case No. 19-cv-02422-AJB-AHG, 2020 WL 7013585, *6 (S.D. Cal. Nov. 25, 2020) (dismissing, among other claims, common law copyright infringement claims for "improper lumping of all defendants together" where the complaint alleged that "Defendants copied, used, and/or reproduced copyrighted Design on the Infringing Hat, which it sold to customers via the Diesel Online Store[.]"); *Iglesia Ni Cristo v. Cayabyab*, Case No. 18-cv-00561-BLF, 2018 WL 4674603, *7 (N.D. Cal. Sept. 26, 2018) (dismissing copyright claims that generically asserted that "Defendants" infringed copyrighted works but "[did] not identify which Defendant is alleged to have infringed which particular copyright.").

In fact, at least one federal district court rejected a nearly identical approach to pleading a copyright claim as Cadence attempts here. In *Affordable Aerial Photography, Inc. v. Modern Living Real Estate, LLC*, the court dismissed a copyright claim because, as in this case, the complaint "'assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions . . . .'" 2019 WL 3716775, at *2 (S.D. Fla. Aug. 7, 2019) (quoting *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015)). As in this case, the plaintiff made various allegations against "Defendant" and failed to "identify the acts

23

through which" the two separate defendants "each allegedly infringed upon Plaintiff's copyrights." *Id.* And as in this case, the plaintiff "confusingly conflate[d] the [multiple] defendants," prompting the court to grant the defendants' motion to dismiss, finding that the allegations were insufficient under FRCP 8(a)(2). The court likewise rejected plaintiff's attempt to rely on alter ego allegations to save its defective pleadings. *Id.* at *4 (reiterating that, despite allegations of alter ego and vicarious liability, "Plaintiff has not alleged any underlying facts that would lead to the inference that [liability] is plausible.").

### 2.    Cadence failed to identify which Defendant breached of valid contract

Cadence's breach of contract claim fails for the same reasons as above. Rather than identify which Defendant(s) entered into a breached the license agreements, Cadence again indiscriminately and improperly lumps Defendants together as "Syntronic." *See* Dkt. No. 26 (FAC), ¶ 125 (" . . . *Syntronic* accepted the terms of the [licenses] and agreed to be bound by the terms of the [licenses]; ¶ 198 ("*Syntronic* agreed to the terms of the SLMA…); ¶ 213 ("*Syntronic* breached at least Section 3 of [the licenses]…"). That is insufficient. *See, e.g.*, *Smith v. Bank of Am.*, 2016 WL 7444879, at *2 (C.D. Cal. May 11, 2016) (dismissing breach of contract claim under Rule 8 because "the allegations in the Complaint state that 'Defendants' committed the allegedly improper acts, but the Complaint does not clearly delineate which Defendants committed which act"); *McBride v. Fannie Mae*, 2016 WL 3019308, at *3 (E.D. Cal. May 26, 2016) (dismissing claims for breach of contract for, among other reasons, "lump[ing] defendants together and fail[ing] to distinguish adequately claims and alleged wrongs among defendants" and thereby violating Rule 8); *Mandani v. Volkswagen Group of Am., Inc.*, 2019 WL 652867, at *3 (N.D. Cal. Feb. 15, 2019) (dismissing claims for breach of a warranty against two defendants where the plaintiff "lumped" them with a third defendant and only pled wrongdoing by the third defendant).

Second, even if Cadence had identified which Defendant is supposed to have agreed to the license, it failed to allege who purportedly accepted the terms of the SLMA or any other contract that this person or persons had the authority, actual or otherwise, to bind any of the Syntronic entities. *See Fredianelli v. Jenkins*, 931 F. Supp.2d 1001, 1017-19 (N.D. Cal. 2013) (under California law an agent may only bind a principal to a contract if he has actual or ostensible authority to do so); *Nat'l*

---

24

1  *Auto Lenders, Inc. v. SysLOCATE, Inc.*, 686 F. Supp. 2d 1318, 1321-22 (S.D. Fla. 2010) (finding that

2  two employees accepting "click-to-accept" agreements did not bind their employer because they

3  lacked authority to enter into the agreements).

4  **VII.    CONCLUSION**

5        Based on the foregoing, Defendants respectfully request that the Court dismiss the entire

6  Complaint for failure to state a claim, dismiss Syntronic AB and Syntronic Beijing for lack of

7  personal jurisdiction, and dismiss Syntronic Beijing for ineffective service.

8  Dated:  August 11, 2021              By:    */s/ Jason N. Haycock*                          

9
                                    Edward P. Sangster
10                                  edward.sangster@klgates.com
                                    Jason N. Haycock
11                                  jason.haycock@klgates.com
                                    **K&L GATES LLP**
12                                  4 Embarcadero Center, Suite 1200
                                    San Francisco, CA 94111-5994
13                                  jason.haycock@klgates.com
                                    415.882.8200 t
14                                  415.882.8220 f

15
                                    Jeffrey C. Johnson
16                                  jeff.johnson@klgates.com
                                    Paul J. Bruene
17                                  paul.bruene@klgates.com
                                    **K&L GATES LLP**
18                                  925 Fourth Avenue, Suite 2900
                                    Seattle, WA 98104-1158
19                                  206.623.7580 t
                                    206.623.7022 f
20                                  (*pro hac vice*)
21
                                    *Attorneys for Defendants Syntronic AB,*
22                                  *Syntronic Research and Development USA Inc.,*
                                    *and Syntronic (Beijing) Technology R&D*
23                                  *Center Co., LTD.*
24

25

26

27

28

**MOTION TO QUASH, TO DISMISS, OR FOR MORE DEFINITIVE STATEMENT; CASE NO. 21-CV-3610-SI**