1  EDWARD P. SANGSTER, Bar No. 121041
   edward.sangster@klgates.com
2  JASON N. HAYCOCK, Bar No. 278983
   jason.haycock@klgates.com
3  **K&L GATES LLP**
   Four Embarcadero Center, Suite 1200
4  San Francisco, CA 94111
   Telephone: +1 415 882 8200
5  Facsimile: +1 415 882 8220

6  JEFFREY C. JOHNSON, *pro hac vice* to be submitted
   jeff.johnson@klgates.com
7  PAUL J. BRUENE, *pro hac vice* to be submitted
   paul.bruene@klgates.com
8  **K&L GATES LLP**
   925 Fourth Avenue, Suite 2900
9  Seattle, WA 98104
   Telephone: + 1 206 623 7580
10 Facsimile: + 1 206 623 7022

11 *Attorneys for Defendants Syntronic AB, Syntronic Research and*
   *Development USA Inc., and Syntronic (Beijing) Technology R&D*
12 *Center Co., LTD.*

13              IN THE UNITED STATES DISTRICT COURT

14                NORTHERN DISTRICT OF CALIFORNIA

15                   SAN FRANCISCO DIVISION

16

17 CADENCE DESIGN SYSTEMS, INC., *a*
   *Delaware Corporation*,                        Case No. 5:21-cv-3610-SI
18
                Plaintiff,                         **DECLARATION OF ZINSER ZHAO ON**
19                                                 **BEHALF OF SYNTRONIC (BEIJING)**
           v.                                      **TECHNOLOGY R&D CENTER CO., LTD**
20                                                 **IN SUPPORT OF DEFENDANTS'**
   SYNTRONIC AB, *a Publikt Aktiebolag*,           **MOTION TO DISMISS**
21 SYNTRONIC RESEARCH AND
   DEVELOPMENT USA INC., *a California*
22 *Corporation*, SYNTRONIC (BEIJING)             Judge: Hon. Susan Illston
   TECHNOLOGY R&D CENTER CO., LTD., *a*           Hearing Date: August 13, 2021
23 *Chinese Corporation*,                          Hearing Time: 10:00 a.m.
                                                  San Francisco Courthouse, Courtroom 1, 17th
24              Defendants.                        Floor

25

26

27

28

   DECLARATION OF ZINSER ZHAO IN SUPPORT OF MOTION TO DISMISS; CASE NO. 21-
                                CV-3610-SI

I, Zinser Zhao, declare as follows:

1.      I am the General Manager of Syntronic (Beijing) Technology R&D Center Co., LTD ("Syntronic Beijing"). I submit this declaration in support of Defendants' motion to dismiss. I have personal knowledge of the facts set forth herein and if called as a witness, I could and would competently testify thereto.

2.      Syntronic Beijing is a Chinese corporation, organized under Chinese law, and formed in approximately 2005. Attached hereto as **Exhibit 1** is a true and correct copy of Syntronic Beijing's Articles of Incorporation.

3.      Syntronic Beijing maintains its principal place of business at Wangjing Reward Building C1301, Chaoyang District, Beijing, China 100102. Neither Syntronic AB nor Syntronic Research and Development USA Inc. ("Syntronic USA") use this office for any aspect of their operations. There are no other offices that Syntronic Beijing shares with either Syntronic AB or Syntronic USA. Syntronic Beijing has no office in the United States, and it does not lease or own property in the United States.

4.      Syntronic Beijing's general business is providing certain software and electronic design services within China and it operates separately and independently from Syntronic AB and Syntronic USA.

5.      Syntronic Beijing does not conduct business in the United States. It does not sell products or provide services in the United States. Syntronic Beijing is not registered to do business in any state within the United States.

6.      Syntronic Beijing has never initiated any lawsuit in the United States.

7.      Syntronic AB is the parent company of Syntronic Beijing. But Syntronic USA has no ownership interest in Syntronic Beijing, and Syntronic Beijing has no ownership interest in either Syntronic AB or Syntronic Beijing.

8.      Syntronic Beijing's board has three directors: myself, Björn Jansson, as a representative of the parent company, Syntronic AB, and Monica Jansson.

9.      No officers of Syntronic Beijing are also officers or directors of Syntronic AB or

1

DECLARATION OF ZINSER ZHAO IN SUPPORT OF MOTION TO DISMISS; CASE NO. 21-CV-3610-SI

1   Syntronic USA. No officers of Syntronic AB or Syntronic USA are also officers of Syntronic

2   Beijing.

3        10.    Syntronic Beijing employs approximately ninety-six employees. Syntronic Beijing

4   maintains its own payroll and pays its employees out of its own accounts. Syntronic Beijing alone is

5   responsible for paying its employees. Neither Syntronic AB nor Syntronic USA pays the salaries of

6   any Syntronic Beijing employee. Moreover, not one of Syntronic Beijing's employees is also an

7   employee of either Syntronic AB or Syntronic USA.

8        11.    Syntronic Beijing maintains its own independent bank account China. Syntronic

9   Beijing is the only entity or person with authority to withdraw funds from its bank account. No

10  person at either Syntronic AB or Syntronic USA has direct signatory authority to withdraw funds

11  from Syntronic Beijing's bank account.

12       12.    Syntronic Beijing does not comingle any of its funds with any other entity, including

13  Syntronic AB or Syntronic USA. In fact, there is not even a single account to which Syntronic

14  Beijing has access and to which either Syntronic AB or Syntronic USA also has access.

15       13.    Syntronic Beijing maintains and respects corporate formalities. It adopted and

16  follows Bylaws. It holds regular meetings of its board of directors and maintains a regular corporate

17  minutes book containing the written minutes of its proceedings. These books and records are kept

18  and maintained separate and apart from the books and records of Syntronic AB and Syntronic USA.

19       14.    Even though Syntronic AB is the parent company, it has no involvement in the day-

20  to-day operations of Syntronic Beijing. Syntronic Beijing's management, primarily myself, is

21  ultimately responsible for all decision-making on daily operations. I am ultimately responsible for

22  all hiring and firing decisions and, subject to board approval, there is no limit to my signatory

23  authority to sign contracts on behalf of Syntronic Beijing. Similarly, Syntronic Beijing's employees

24  ultimately report to me and Syntronic Beijing's management, and do not directly report to anyone at

25  either Syntronic AB or Syntronic USA.

26       15.    Since its formation and at all subsequent times in conducting its operations, Syntronic

27  Beijing maintained and maintains adequate capital to meet its obligations in the ordinary course of

28

2

DECLARATION OF ZINSER ZHAO IN SUPPORT OF MOTION TO DISMISS; CASE NO. 21-CV-3610-SI

its business. Moreover, the value of Syntronic Beijing's assets exceeds its current liabilities.

16.     Syntronic Beijing has its financial information regularly audited by an independent auditor. The decision on which accounting firm to retain is made independently by Syntronic Beijing's management. In fact, for company-level auditing and accounting, Syntronic Beijing uses a separate accounting and auditing firm than the firms used by Syntronic AB or Syntronic USA.

17.     Neither Syntronic AB nor Syntronic USA holds itself out as responsible for the debts or obligations of Syntronic Beijing. Likewise, Syntronic Beijing does not hold itself out as responsible for the debts or obligations of Syntronic AB or Syntronic USA.

18.     All contracts binding or obligating Syntronic Beijing are signed on behalf of Syntronic Beijing only, and neither Syntronic AB nor Syntronic USA sign or guarantee any such contracts.

19.     Any loans from Syntronic AB to Syntronic Beijing were properly documented either in loan agreements, inter-company accounts, books and records, and/or financial statements.

20.     There are no indemnity or guarantee agreements between Syntronic Beijing and either Syntronic AB or Syntronic USA.

21.     After conducting a diligent search and investigation, Syntronic Beijing was unable to locate evidence that it entered into, "clicked," or signed the click-wrap Software License and Maintenance Agreements (SLMA), attached as Exhibits 1 and 2 to the Second Amended Complaint.

22.     Syntronic Beijing is unable to locate evidence that any employee with authorization and authority to bind the company entered into or signed the click-wrap SLMAs, attached as Exhibits 1 and 2 to the Second Amended Complaint.

23.     Syntronic Beijing adheres to an IT/Information Security Policy that expressly prohibits its employees from using unlicensed software or using cracked licenses. To obtain access to software, employees must first seek approval. No Syntronic Beijing employee has sought and received approval to license and/or use any Cadence software at issue in the Second Amended Complaint.

24.     Syntronic Beijing has no designated agent for service in the United States, and it has

DECLARATION OF ZINSER ZHAO IN SUPPORT OF MOTION TO DISMISS; CASE NO. 21-CV-3610-SI

not designated or authorized Syntronic USA as an agent for service.  Syntronic USA does not act as an agent for Syntronic Beijing in any capacity.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: July 7, 2021

Zinser Zhao

DECLARATION OF ZINSER ZHAO IN SUPPORT OF MOTION TO DISMISS; CASE NO. 21-CV-3610-SI

504895198.1

# EXHIBIT 1

Revision B

新拓尼克（北京）科技研发中心有限公司
章程

二〇〇五年九月

第一章  总则 ........................................................................................1

第二章  宗旨和经营范围 ........................................................................2

第三章  投资总额与注册资本 ................................................................3

第四章  公司的权力 ................................................................................3

第五章  董事会 ........................................................................................5

第六章  经营管理 ....................................................................................6

第七章  税务、财务和外汇管理 ............................................................7

第八章  银行贷款 ....................................................................................8

第九章  利润分配 ....................................................................................9

第十章  劳动管理 ....................................................................................9

第十一章  工会组织 ..............................................................................10

第十二章  保险 ......................................................................................10

第十三章  权益转让 ..............................................................................10

第十四章  期限、终止与清算 ..............................................................11

第十五章  规章制度 ..............................................................................12

第十六章  附则 ......................................................................................12

Revision B

## 第一章 总则

第一条 根据《中华人民共和国外资企业法》及中国其它有关法律、法规，瑞典新拓尼克有限公司（下称"投资方"）拟在北京市朝阳区望京开发区设立独资经营企业"新拓尼克（北京）科技研发中心有限公司"（下称"公司"）。为此，特制定本章程。

第二条 公司中文名称为：新拓尼克（北京）科技研发中心有限公司
公司英文名称为：Syntronic (Beijing) Technology R&D Centre Co Ltd
公司法定地址为：
北京市朝阳区望京开发区利泽中园2区爱慕大厦A座401号

第三条 投资方系依瑞典法律在瑞典合法注册的法人。
其法定名称为： 新拓尼克有限公司 (Syntronic AB)
法定地址为： 965 邮箱
801 33 耶夫勒市
瑞典
法定代表人： Bjorn Lennart Christer Jansson （中文译名：伯恩·杨森）
国籍： 瑞典（护照号：45523696）
职务： 董事长兼首席执行官

第四条 投资方的责任只限于其对公司注册资本的投资金额。公司的债权人仅对公司的资产有追索权，而不得向投资方索取。

第五条 公司应根据中国法律具有法人资格。

第六条 公司为投资方按照外资企业法和本章程成立的外国独资有限责任公司。公司受中国法律管辖和保护，其一切活动遵守中国的法律、法令和有关条例的规定。

Revision B

## 第二章　宗旨和经营范围

**第七条**　公司的宗旨是：

新拓尼克有限公司于 1983 年成立于瑞典斯德哥尔摩，以其竞争力和优质的服务，向顾客提供电子、机电产品和软件研发领域的专业服务。新拓尼克有限公司在几个主要工业领域的广泛经验使其拥有广泛的顾客基础。在过去的几年中，中国吸引了全球主要的研发公司来中国投资。新拓尼克公司注意到了这个趋势并看到了广阔的前景，新拓尼克将结合有才能的员工和世界市场上最新的技术为这些公司提供支持。新拓尼克现在的一些客户已在中国发展，并希望能够在中国继续并拓宽与新拓尼克公司的合作。

新拓尼克有限公司将在北京建立一个高水平的研发中心，初期计划运营二十（20）年。作为科技研发公司，公司的顾客主要来自电信行业，以及其他与电子业相关的行业。

**第八条**　公司的经营范围为：

从事电子、机电产品及软件的研究和开发，转让研发技术成果；提供技术咨询，技术服务和技术培训。生产电子专用设备，测试仪器和软件，销售自产产品。

**第九条**　公司将主要服务于中国市场。由董事会或董事会授权经营层自行决定为中国市场和/或国际市场提供研发服务和产品。

**第十条**　依据一个单独的技术合同，公司应从投资方处获得不断更新的专有技术；投资方是这些专有技术的唯一和法定的拥有者以及这些专有技术的相关所有权利的所有者。

2

Revision B

## 第三章  投资总额与注册资本

**第十一条**  公司的投资总额为二百万美元 (USD2,000,000)，注册资本为二百万美元(USD2,000,000)，相当于投资总额的 100%。

**第十二条**  投资方以美元现金，设备和专有技术出资。其中：美元现金一百二十六万元（USD1,260,000）；设备三十四万美元(USD340,000)；专有技术四十万美元(USD400,000)。

**第十三条**  首期的投资金额应不少于公司注册资本总额的百分之十五（15%），并在工商局颁发公司的营业执照之日起的九十（90）天内缴付。董事会决定入资进度。最后一期出资将在营业执照签发之日起二十四个月（24个月）内缴清。

**第十四条**  任何以现金缴付的出资额应在有关现金金额存入公司名下的银行帐户之日方可视为正式缴纳。任何以设备，仪器和其他办公设备形式出资的，应在物权及损失风险转至公司之日方可视为正式缴纳。出资均按缴款当日中国人民银行公布的基准汇率折算。

**第十五条**  公司应请一名在中国注册的独立会计师就投资方对公司注册资本的投资进行验资，并出具验资报告。公司在收取验资报告后向投资方出具出资证明书，并报原审批机关及工商行政管理部门备案。

**第十六条**  公司投资总额和注册资本的调整，应由董事会一致通过，报原审批机关批准，并向工商行政管理机关办理变更登记手续。

## 第四章  公司的权力

**第十七条**  公司在中国具有法人资格。为达到其主要宗旨,公司应有权在中国已颁布的法律、法规和法令、公司经批准的经营范围允许的范围内,从事所有和必要的活动,包括(但不限于)下列各活动。这些活动应根据本章程的有关规定及董事会的有关决定进行：

3

(a) 雇用、酬报、处分和解雇高级职员、经理以及其它职工；

(b) 从事研究、发展和实验工作；

(c) 在中国境内和境外按照中国的法律程序购买、租赁或以其他方式设立、收购、维持及经营办事处、设施、分公司、附属公司及场地；

(d) 与中国境内外任何个人、公司、企业、经济组织或实体或代理机构订立并履行有关合同；

(e) 购置、租赁或以其他方式合法收购各类财产；

(f) 出售、租赁和以其他方式处置公司经营所不再需要的设备及其他资产；

(g) 购买或以其它方式取得公司经营必需或有用的各类服务；

(h) 获取并处理专利品、专利权、版权、发明、商标、工艺、许可使用权、技术、专有技术及其他工业和知识产权；

(i) 经有关部门批准，与中国境内外金融机构保持各种银行业务关系；

(j) 处理争议并参与各类有关法律诉讼；

(k) 进行年度利润分配，并在需要时采取弥补亏损的措施；

(l) 经董事会批准将公司的收入进行投资；

(m) 购买公司经营过程中可能需要的保险；

Revision B

(n)　　在中国国内外聘请律师、会计师、代理人、顾问、咨询人、建筑师、工程师、承包商及其他该类人士，为公司提供协助；

(o)　　公司期限终止时，进行解散和财产处置；及

(p)　　广泛地从事达到公司宗旨所必需或需要的所有其他合法事项。

## 第五章　董事会

第十八条　董事会有管理公司业务的权利，并为最高的权力机构，决定本公司的一切重大问题。公司营业执照签发之日即为董事会成立之日。

第十九条　董事会由三(3)人组成，设董事长一名，董事会成员由投资方委派。董事、董事长每届任期四(4)年，经委派方继续委派可以连任。投资方可以增减、更换董事会成员，但须经审批机关批准才能生效。

第二十条　董事长是本公司的法定代表人，董事长应在董事会授权范围内履行其职责。董事长因故不能履行其职责时，董事长应授权董事会的另一名成员或公司的总经理或董事长认为合适的其他人员作为公司的法定代表人。

第二十一条　董事会会议每年至少召开一次，由董事长召集并主持会议。经三分之一以上的在职董事书面提议，董事长应召开董事会特别会议。

第二十二条　董事可以亲自、派代理人出席或通过电话出席董事会会议和在会议上投票。董事会的任何成员可以通过电话会议或参加会议的所有人士可以相互听到对方的其它通讯设备参加会议，以如此方式参加会议应构成亲自出席该会议。

5

Revision B

第二十三条　所有董事会会议的法定人数应为至少二（2）名董事出席。董事可亲自或委派代表出席。每名董事享有一票表决权，经法定人数投多数票应构成董事会的行为。

第二十四条　董事因故不能参加董事会会议的，该董事可书面通知董事长，并委派代表代其出席会议，并在会上投票。经正式通知出席董事会会议的董事如未能出席该会议，且未有委派代表，则应视为该董事丧失出席该会议并在会议上投票的权利。

第二十五条　下列事项需要由出席董事会会议的董事一致通过决定：
      1、公司章程的修改；
      2、公司的终止解散；
      3、公司注册资本的调整；
      4、公司的分立及与其他经济组织的合并；
      5、董事会认为须由董事一致通过的事项。

第二十六条　每次董事会会议均应详细记录，并由出席会议的全体董事签字。会议记录由公司存档备查。

第二十七条　董事为公司服务不应从公司收取报酬（董事兼任公司高级职员或雇员除外）。董事出席董事会会议发生的合理开支应视作公司经常性支出。

第二十八条　总经理可被邀请列席董事会会议，除非其本身亦为董事或经书面委托代表董事出席，否则其不应有投票权。

## 第六章　经营管理

第二十九条　公司实行董事会领导下的总经理负责制，设总经理一人。总经理和其他高级管理职员由董事会聘任，其任期由董事会决定。总经理和其他高级职员可以连任。

Revision B

第三十条　　总经理直接对董事会负责，执行董事会各项决议；组织和领导本公司的运作。总经理的职权范围由董事会讨论决定。

第三十一条　公司的部门及部门结构设置由总经理制定方案，由董事会决定。

第三十二条　公司的总工程师负责所有有关研发，生产，以及总经理所指派的事项。

第三十三条　公司的总会计师负责公司的簿记和会计工作，准备中国各政府部门所需的报告，以及总经理所指派的事项。

第三十四条　除非经董事会批准，高级管理人员不得在其他经济组织兼任经营性职位。

第三十五条　董事会可根据中国法律和聘用合同的规定将总经理或高级管理人员免职。

## 第七章　税务、财务和外汇管理

第三十六条　公司依照中国法律和有关税收的规定以人民币缴纳各种税金。公司在成立后向相关税务机关申请，要求其确认给予公司的免税，减税和其它优惠待遇。

第三十七条　本公司职工收入按照《中华人民共和国个人所得税法》缴纳个人所得税。

第三十八条　公司的总会计师应依据《中华人民共和国企业会计制度》、国际上普遍接受的会计原则（"国际会计原则"）和章程的规定制定公司会计制度及程序。

第三十九条  公司的会计年度为公历年制，即公历一月一日到十二月三十一日止。第一个会计年度自营业执照签发之日起至同年十二月三十一日止。公司最后一个会计年度始于终止或清算之年的一月一日，终于终止或清算之日。

第四十条    公司的所有记录，发票，收据和账簿用中文和英文书写及保存。

第四十一条   公司采用人民币为记账本位币。人民币同其它货币折算，按实际发生之日中国人民银行公布的基准汇率计算。兑换实际损益作为损益列帐。

第四十二条   公司应根据中国适用的法律法规在境内银行开立外汇账户和人民币的账户。

第四十三条   每一营业年度的首两(2)个月，由总经理组织编制上一年度的资产负债表、损益计算书和利润分配方案，提交董事会会议审查。公司聘请在中国注册的独立审计师审查、稽核年度报告，并将审查结果报告董事会。

第四十四条   公司的外汇事宜，依照中国有关外汇管理的法规办理。

## 第八章 银行贷款

第四十五条   经董事会批准，公司可向中国银行及/或任何认可的外国及中国金融机构申请贷款。

# 第九章　　利润分配

第四十六条　　公司从缴纳所得税后的利润中提取储备基金、企业发展基金和职工奖励及福利基金。具体比例由董事会根据《外资企业法实施细则》和中国其他有关法律法规，及公司的实际业务和财务状况决定。

第四十七条　　公司依法缴纳公司所得税并提取第四十六条规定的各项基金后剩余的利润，根据董事会的决定分配给投资方。

第四十八条　　除非董事会另有决定，公司税后利润余额每年分配一次。如公司承接了上一年的亏损，则首先应将本年度的利润用于弥补亏损，上一年的亏损获得完全弥补后方可分配利润。公司保留的利润与去年结转的利润可与本年度的可分配利润一起分配。

# 第十章　　劳动管理

第四十九条　　公司有招聘和解雇职工的自主权。总经理应依照中国有关法律，法规和董事会通过的章程做出与招聘或解雇雇员有关的决定。

第五十条　　公司应根据国家有关法律、法规与职工个人签订个人劳动合同。每位职工在加入公司之前均应签署个人劳动合同。所有中国雇员薪金以人民币支付。劳动合同应按要求报有关劳动管理部门批准和备案。

第五十一条　　公司职工的工资以及福利标准，参照中国有关规定，根据公司具体情况，由董事会确定，并在劳动合同中具体规定。

第五十二条　　公司雇员应遵守公司的规章制度。

# 第十一章　工会组织

第五十三条　公司的职工有权依照《中华人民共和国工会法》的规定，建立工会组织，开展工会活动。

第五十四条　公司工会代表并依法保护雇员的利益，开展文化教育和文体活动，并教育雇员遵守劳动纪律，努力完成公司的各项经济任务。

第五十五条　工会代表有权以不投票的身份列席讨论有关劳动事宜的董事会会议。

第五十六条　如法律如有规定，公司每月按企业职工实发工资总额的一定比例拨交工会经费。由本企业工会按照中华全国总工会有关工会经费管理办法使用。

# 第十二章　保险

第五十七条　公司在中国注册的公认可靠的保险公司投保，投保险别、保险价值、保期等按照保险公司的规定由董事会决定办理。

# 第十三章　权益转让

第五十八条　投资方可向任何第三方转让、出售或以其他方法处置其拥有的公司注册资本的全部或部分权益。

第五十九条　公司的业务、合约责任、其他业务的履行均不受投资方转让、出售或其他方式处置其权益的影响。

第六十条　对于任何按本章规定转让、出售或其他方式处置公司注册资本的权益应呈交审批机关批准。在收到审批机关的批准证书后，公司应在工商局办理变更所有权登记的手续。

Revision B

## 第十四章　期限、终止与清算

第六十一条　公司的经营期限为二十(20)年，从营业执照签发之日起计算。

第六十二条　若投资方决定延长经营期限，应在公司期满前并至少提前六个月，向原审批机关提出书面申请。经审批机构批准并在原登记机构办完登记手续后方能延长期限。

第六十三条　除经营期满外，因下列原因董事会可决定提前终止公司：
1. 经营不善，严重亏损，投资方决定解散；
2. 因自然灾害、战争等不可抗力而遭受严重损失，无法继续经营；
3. 破产；
4. 违反中国法律、法规，危害社会公共利益被依法撤销；
5. 本章程规定的其他解散事由已经出现。

第六十四条　公司经营期满或提前终止，董事会应通过决议以清算公司，制定清算程序和原则，组织清算委员会，并将建议报主管部门核准。清算委员会由公司的法定代表人，一名公司债权人代表及一名有关政府机构的代表组成，并聘请在中国注册的会计师和律师参与。

第六十五条　清算委员会应对公司资产、债权和债务进行全面清查，编制资产负债表和财产目录，载明资产价值和估值的基础、制定清算方案，并提呈董事会批准。

第六十六条　在清算期间，清算委员会应在任何法律诉讼中代表公司。

第六十七条　清算费用从企业现存财产中优先支付。

第六十八条　清算委员会应按照有关法律和规定处理公司的剩余财产。清算委员会清偿了公司的所有税款和债务后，将公司所剩资产分配给投资方。

Revision B

第六十九条　本公司清算结束后，清算委员会应及时向董事会提交清算完成报告。经董事会批准后，报告应提交审批机关。公司应当向工商行政管理机关办理注销登记手续，缴销营业执照并对外公告公司的解散。

第七十条　若公司破产，应参照中国有关法律、法规对公司进行清算。

## 第十五章　　规章制度

第七十一条　公司通过董事会应制订下列规章制度：

    1、经营管理制度，包括所属各个管理部门的职权与工作程序；
    2、员工手册；
    3、财务制度；
    4、公司解散时的清算程序；
    5、其他必要的规章制度。

## 第十六章　　附则

第七十二条　本章程由中文和英文写成，每种文本各签署（5）份。

第七十三条　本章程及其附件的订立、效力、履行和解释适用中国的有关法律法规。如果某一特定事宜，中国未颁布法律，则参照国际惯例。

第七十四条　本章程经中华人民共和国政府有关审批机关批准后开始生效。本章程须经董事会决议及投资方批准后方可修改。任何修改须经审批机关批准后才能生效。

Revision B

第七十五条 本章程任何条款如无效，均不影响任何其他条款的有效性。

第七十六条 本章程由投资方法定代表人于 2005 年 9 月 14 日签署。

Bjorn Lennart Christer Jansson    （伯恩 · 杨森）

新拓尼克有限公司（瑞典）

法定代表人