# RUTTENBERG IP LAW
### A PROFESSIONAL CORPORATION

1801 Century Park East, Suite 1920, Los Angeles, CA 90067
Tel: (310) 627 2270 Fax: (310) 627 2260

---

August 24, 2021

Hon. Susan Illston
United States District Court - Northern District of California
San Francisco Courthouse, Courtroom 1 - 17th Floor
450 Golden Gate Ave., San Francisco, CA 94102

**Re:**   *Cadence Design Systems, Inc. v. Syntronic AB., et al.*
          Case No. 3:21-cv-3610-SI – Opposition to Defendants' Motion to Stay Discovery

Dear Judge Illston:

I represent Plaintiff Cadence Design Systems, Inc. ("Cadence") in the above-referenced matter. I submit this letter brief in opposition to Defendants' Motion to Stay Discovery. (Dkt. No. 40). Syntronic does not come close to meeting its "heavy burden of making a strong showing of why discovery should be stayed." *Onn v. Carnival Corp.*, No. 20-cv-07929, 2021 WL 1267264 *1 (N.D. Cal. April 6, 2021). The motion should be denied.[1]

**Background**. Cadence is an industry leader in electronic design automation software. (Dkt. No. 26, FAC ¶¶ 84-85). Through its technological measures, Cadence has detected widespread and persistent pirated use of its software by Syntronic at IP addresses in the United States, China, and elsewhere. (*Id.* ¶¶ 114-147). At least 64 different Syntronic computers have used more than $8.3 million in Cadence Software without permission. (*Id.* ¶ 138). For over a year, Cadence tried engaging with Syntronic about this software piracy—including by providing Syntronic a list of 64 offending computers (including MAC addresses). (*Id.* ¶¶ 148-171). Syntronic gave Cadence the run-around.

After Cadence served all three Defendants at their Silicon Valley address, Syntronic obtained a lengthy extension and then moved to dismiss. (Dkt. Nos. 10, 12). The motion was without merit, but Cadence amended its Complaint to moot the arguments. Syntronic simply renewed the motion, asserting nearly identical arguments. (Dkt. No. 32).

Syntronic is trying to play a shell game. For example, despite publicly touting that they are "One Syntronic"—and even attributing their success to operating as a single enterprise— Defendants argue that service on Syntronic Beijing is improper, and that neither Syntronic Beijing nor Syntronic AB is subject to jurisdiction. For these challenges, Syntronic submitted three highly factual declarations regarding its offices, operations, ownership, board of directors, officers, employees, payroll, bank accounts, board minutes, accounting books, authority to sign contracts,

---

[1] We are not sure Syntronic's Motion qualifies as a discovery motion, but we never "declined to participate in a joint statement." Rather, Syntronic offered us only two to three days to do so. Further, given that Syntronic seeks substantive relief (as opposed to just discovery), Cadence respectfully requests leave to respond in three pages (as opposed to two pages).

Hon. Susan Illston
August 24, 2021, Page | 2

capital reserves, financial audits, inter-company indemnification, loan agreements, inter-company accounts, financial statements, and the alleged results of an investigation into use of Cadence Software. (*See generally* Dkt. Nos. 33-35). Also, despite advertising for engineers who can use Cadence's Software, Syntronic claims that the 64+ individuals who signed agreements consenting to jurisdiction when installing the Software lacked authority to bind the companies. (*Id.*)

These factual assertions are highly suspect so Cadence promptly served discovery, including document requests directed at the documents specifically referenced in Defendants' declarations, the details of Defendants' investigations, the identity of the Syntronic personnel who used Cadence Software, and an inspection of the machines at issue. Despite putting this information at issue, Defendants now seek to block this discovery, in essence, asking the Court to accept their questionable assertions as gospel without any discovery or cross-examination. Indeed, even in the absence of any order from the Court, the moving Defendants have interposed boilerplate objections and refused to answer any discovery requests. Likewise, although Defendants claim "Plaintiff will receive discovery" from Syntronic USA, thus far that entity has largely objected and refuses to produce information within its full possession, custody or control.

**Argument and Legal Standard**. Controlling law does not support the draconian result requested by Syntronic. To stay discovery, Defendants must do ***significantly*** more than point to pending motions on the docket (which is all they have done). "Courts in this district have applied a two-pronged test to determine whether discovery should be stayed pending resolution of a dispositive motion." *Onn*, 2021 WL 1267264 at *1 (emphasis added). While the first prong asks whether there is a pending dispositive motion, the second prong asks "whether the pending motion can be decided absent additional discovery." *Id.* "Under Ninth Circuit law, a party seeking a stay of discovery carries the ***heavy burden*** of making a ***strong showing*** why discovery should be denied." *Id.* Here, Defendants have not even acknowledged—much less, met—their "heavy burden."

First, Plaintiff needs discovery to respond to Defendants' various factual assertions on authority and alter ego. Court after court has held that discovery into such allegations is appropriate before ruling on a motion to dismiss for lack of jurisdiction.[2] The Ninth Circuit has held that denying such discovery is reversible error. *Harris Rutsky*, 328 F.3d at 1135; *Twentieth Century Fox Int'l Corp. v. Scriba*, 385 F. App'x 651, 653 (9th Cir. 2010); *Sonneveldt v. Mazda Motor of Am., Inc.*, No. 819CV01298JLSKES, 2020 WL 9312379, at *7 (C.D. Cal. Apr. 22, 2020) ("The Ninth Circuit instructs that jurisdictional discovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary."). For that reason alone, a stay would be improper.

Second, before granting a stay of discovery, courts will take a "peek" at the underlying motion. *Onn,* 2021 WL 1267264 at *1. Here, Syntronic's challenges are unlikely to prevail. For example:

- Cadence alleges that Syntronic consented to jurisdiction in the process of installing the pirated software. (FAC ¶ 59). In its motion, Syntronic contends that its

---

[2] *See, e.g.*, *MMCA Grp., Ltd. v. Hewlett-Packard Co.*, No. C-06-7067 MMC, 2007 WL 2572220, at *1 (N.D. Cal. Sept. 5, 2007); *Circle Click Media LLC v. Regus Mgmt. Grp. LLC*, No. 12-04000 SC, 2013 WL 57861, at *5 (N.D. Cal. Jan. 3, 2013); *Powerteq, LLC v. Moton*, No. C-15-2626 MMC, 2016 WL 80558, at *2 (N.D. Cal. Jan. 7, 2016).

- engineers who used the software did so without authority to bind the company. But public records show that Syntronic specifically solicits engineers who are versatile with Cadence's software. (FAC ¶ 61). Syntronic does not dispute those allegations, which means they must be accepted as true for purposes of the pending motion. *See Avaya Inc. v. Pearce*, No. 19-CV-00565-SI, 2019 WL 6311383, at *5 (N.D. Cal. Nov. 25, 2019). Coupled with the sheer volume of infringement from 64 different machines, Syntronic's argument does not hold water.
- Further, given that Syntronic has not stopped this infringing conduct—which persists despite notice by Cadence—Syntronic has also ratified the consent of its employees. (FAC ¶¶ 207-211).
- Cadence alleges that Syntronic purposefully directed its actions towards Cadence here in California and has additional contacts (*id.* ¶¶ 67-74), which further supports a finding of jurisdiction.
- Cadence alleges that the US subsidiary (located here in Silicon Valley) is an alter ego of the Swedish and Chinese defendants. (*Id.* ¶¶ 6-56). Indeed, Syntronic also holds itself out as a single enterprise.[3]
- At a minimum, Syntronic's challenges to jurisdiction (and service) are intertwined with the merits and should be deferred for trial. *See* Fed. R. Civ. Proc. 12(i).

Thus, Syntronic has not shown that a stay of discovery is warranted here.

Syntronic is likewise not entitled to a stay based on its motion to quash. Cadence has already served Syntronic Beijing through its alter ego and submitted proofs of service. (*See* Dkt. Nos. 22-4, 22-8). Service through an alter ego is appropriate. *See Russell v. Invech Inc.*, No. 519CV01074FMOSHK, 2020 WL 6820805, at *4 (C.D. Cal. Oct. 26, 2020). Merely filing a motion to quash service is ***not*** sufficient to stay discovery.[4] And the only case cited by Defendants for this proposition is easily distinguishable—in *Hardy v. Global Options Servs., Inc.*, 2013 WL 6059154, *1 (D. Nev. Nov. 14, 2013), the court stayed discovery ***after*** it quashed service of process. That obviously has not happened here.

Ultimately, Syntronic's "Motion for a Protective Order" is designed to secure an unfair advantage. In fact, Syntronic USA has served affirmative discovery requests (including its own RFAs, RFPs and Interrogatories) seeking information related to the claims against the other companies—even while they are hiding behind their corporate veils to evade discovery. Plaintiff respectfully requests that the Court deny Defendants' motion to stay discovery.

---

[3] Plaintiff has extensively alleged alter ego. (*See, e.g.*, Dkt. No. 26 (FAC) ¶¶ 10-14 (Syntronic "Group CEO" and other executives hold defendants out as "one Syntronic"), 17-21 (share offices, officers and directors), 25-26 (commingle their assets through intercompany accounts), 27 (operate under a single HR policy), 34 (defendants organize their activity by region, not legal entities), 46-47 (share website and trade name), 48 (submit financial statements and pay taxes on consolidated basis), 50 (provide funds to pay wages of each other's employees)); *see Daewoo Elecs. Am. Inc. v. Opta Corp.*, No. C 13-1247 JSW, 2013 WL 3877596, at *5 (N.D. Cal. July 25, 2013) ("Some courts have held that the pleading of at least two factors in support of a unity of interests satisfies these elements."); *Updateme Inc. v. Axel Springer SE*, No. 17-CV-05054-SI, 2018 WL 1184797, at *10 (N.D. Cal. Mar. 7, 2018) ("In determining whether a unity of interest exists, a court need not find that every factor is present.").

[4] Syntronic's gamesmanship does not comport with its "duty to avoid unnecessary expenses of serving the summons" per Rule 4(d)(1).

Hon. Susan Illston
August 24, 2021, Page | 4

        Best regards,

        */s/ Guy Ruttenberg*

        Guy Ruttenberg
        Ruttenberg IP Law, A Professional Corporation