Guy Ruttenberg, Bar No. 207937
guy@ruttenbergiplaw.com
Steve A. Papazian, Bar No. 288097
steve@ruttenbergiplaw.com
RUTTENBERG IP LAW,
A PROFESSIONAL CORPORATION
1801 Century Park East, Suite 1920
Los Angeles, CA 90067
Telephone: (310) 627-2270
Facsimile: (310) 627-2260

*Attorneys for Plaintiff Cadence Design Systems, Inc.*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CADENCE DESIGN SYSTEMS, INC., *a Delaware Corporation*,<br><br>Plaintiff,<br><br>v.<br><br>SYNTRONIC AB, *a Publikt Aktiebolag*, SYNTRONIC RESEARCH AND DEVELOPMENT USA INC*., a California Corporation*, SYNTRONIC (BEIJING) TECHNOLOGY R&D CENTER CO., LTD*., a Chinese Corporation*,<br><br>Defendants. | Case No. 3:21-cv-3610-SI<br><br>**PLAINTIFF CADENCE DESIGN SYSTEMS INC.'S OPPOSITION TO DEFENDANTS' MOTION TO QUASH SERVICE OF SUMMONS, MOTION TO DISMISS FIRST AMENDED COMPLAINT, AND MOTION FOR MORE DEFINITE STATEMENT**<br><br>Date:          September 17, 2021<br>Time:          10:00 AM<br>Judge:         Hon. Susan Illston |

## TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................................. 1

II. FACTUAL BACKGROUND ............................................................................................... 2

    A.   The Parties .................................................................................................................. 2

    B.   Syntronic's Unauthorized Use of Cadence Software ................................................ 2

    C.   The Parties' Pre-Litigation Discussions .................................................................... 3

    D.   Relevant Procedural Posture ...................................................................................... 4

    E.   Defendants Fail to Produce Discovery ...................................................................... 5

III. ARGUMENT ........................................................................................................................ 5

    A.   Plaintiff's Service on Syntronic Beijing Is Valid Under California and
           Federal Law. ............................................................................................................. 5

    B.   Syntronic AB and Syntronic Beijing Are Subject to Personal Jurisdiction ............. 7

           1.   Syntronic AB and Syntronic Beijing Consented to Personal Jurisdiction
               By Entering the Software License and Maintenance Agreements ................... 8

           2.   Syntronic AB and Syntronic Beijing Purposefully Directed Their
               Activities at California. ................................................................................... 12

           3.   Syntronic AB and Syntronic Beijing Are Subject to General
               Jurisdiction as the Alter Egos of Syntronic US. ............................................ 17

           4.   If Necessary, the Court Should Defer the Issue of Jurisdiction to Trial
               and/or Allow Plaintiff to Take Jurisdictional Discovery. .............................. 22

    C.   Plaintiff Has Sufficiently Alleged Causes of Action for Copyright
           Infringement and Breach of Contract. ...................................................................... 22

           1.   Cadence Sufficiently Alleged Claims for Copyright Infringement. .............. 22

           2.   Cadence Did Not Improperly "Lump" All Defendants Together. ................. 23

    D.   Defendants Fail to Show the Court Should Order a More Definite
           Statement .................................................................................................................. 25

IV. CONCLUSION ................................................................................................................... 25

## TABLE OF AUTHORITIES

**Cases**

*Adobe Sys. Inc. v. Blue Source Group, Inc.*,

    125 F. Supp. 3d 945 (N.D. Cal. 2015) ................................................................. 13, 24

*Adobe Sys. Inc. v. Nwubah*,

    No. 18-CV-06063-LHK, 2020 WL 3432639, (N.D. Cal. June 23, 2020) ................................... 23

*Affordable Aerial Photography, Inc. v. Mod. Living Real Est., LLC*,

    No. 19-CV-80488, 2019 WL 3716775 (S.D. Fla. Aug. 7, 2019) ........................................ 24

*Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*,

    94 F.3d 586, (9th Cir. 1996) ........................................................................... 20

*Amini v. Pro Custom Solar LLC*,

    No. SACV172244JVSSKX, 2018 WL 6133632 (C.D. Cal. Aug. 13, 2018) ........................ 14, 15

*Autodesk, Inc. v. RK Mace Eng'g, Inc.*,

    No. C-03-5128 VRW, 2004 WL 603382 (N.D. Cal. Mar. 11, 2004) ..................................... 16

*Avaya Inc. v. Pearce*,

    No. 19-CV-00565-SI, 2019 WL 6311383 (N.D. Cal. Nov. 25, 2019) ................................. passim

*Axiom Foods, Inc. v. Acerchem International, Inc.*,

    874 F.3d 1064 (9th Cir. 2017) ........................................................................... 14

*Ballard v. Savage*,

    65 F.3d 1495 (9th Cir. 1995) ........................................................................... 7, 17

*Bureerong v. Uvawas*,

    922 F.Supp. 1450 (C.D.Cal.1996) ........................................................................ 25

*Certified Bldg. Prod., Inc. v. N.L.R.B.*,

    528 F.2d 968 (9th Cir. 1976) ............................................................................. 7

*City & Cty. of San Francisco v. Purdue Pharma L.P.*,

    491 F. Supp. 3d 610 (N.D. Cal. 2020) ................................................................. 18, 21

*CollegeSource, Inc. v. AcademyOne, Inc.*,

    653 F.3d 1066 (9th Cir. 2011) ..................................................................... 12, 13, 16

i

*Corcoran v. CVS Health Corp.*,

    169 F. Supp. 3d 970 (N.D. Cal. 2016) ................................................................ 20

*Daewoo Elecs. Am. Inc. v. Opta Corp.*,

    No. C 13-1247 JSW, 2013 WL 3877596 (N.D. Cal. July 25, 2013) ........................ 17

*Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*,

    840 F.2d 685, (9th Cir. 1988) ........................................................................ 5, 6

*Dole Foods Co., Inc. v. Watts*,

    303 F.3d 1104 (9th Cir. 2002) ....................................................................... 12

*Espinosa v. Bluemercury, Inc.*,

    No. 16-CV-07202-JST, 2017 WL 1079553 (N.D. Cal. Mar. 22, 2017). ................... 24

*Espinosa v. U.S. Aid Funds, Inc.*,

    553 F.3d 1193 (9th Cir. 2008) ......................................................................... 6

*F.D.I.C. v. Cashman*,

    No. C 11-03334 SI, 2011 WL 6002611 (N.D. Cal. Nov. 30, 2011) ........................ 25

*Focht v. Sol Melia S.A.*,

    C-10-0906 EMC, 2010 WL 3155826 (N.D. Cal. Aug. 9, 2010) ............................. 22

*Forest v. Equitable Life Assurance Socity of U.S.*,

    No. C99-5173 SI, 2001 WL 1338809 (N.D. Cal. June 12, 2001) .......................... 21

*Gerritsen v. Warner Bros. Ent. Inc.*,

    116 F. Supp. 3d 1104 (C.D. Cal. 2015) ........................................................... 21

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*,

    328 F.3d 1122 (9th Cir. 2003) ................................................................... 20, 22

*Hemlock Hat Co., Inc. v. Diesel Power Gear, LLC*,

    No. 19-CV-02422-AJB-AHG, 2020 WL 7013585 (S.D. Cal. Nov. 25, 2020) ........... 24

*Howard v. Everex Sys., Inc.*,

    228 F.3d 1057 (9th Cir. 2000) ....................................................................... 17

*Iglesia Ni Cristo v. Cayabyab*,

    No. 18-CV-00561-BLF, 2018 WL 4674603 (N.D. Cal. Sept. 26, 2018) .................. 24

ii

TABLE OF AUTHORITIES

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prod. Liab. Litig.*,

    295 F. Supp. 3d 927 (N.D. Cal. 2018) ................................................................ 24

*In re W. States Wholesale Nat. Gas Litig.*,

    605 F. Supp. 2d 1118 (D. Nev. 2009) ................................................................. 21

*Khachatryan v. Toyota Motor Sales USA, Inc.*,

    578 F. Supp. 2d 1224 (C.D. Cal. 2008) .................................................................. 6

*Langer v. Beverly Hills Suites LLC*,

    No. 220CV02715JWHMAAX, 2020 WL 6489313 (C.D. Cal. Oct. 21, 2020) ............................. 7

*Lynwood Invs. Cy Ltd. v. Konovalov*,

    No. 20-CV-03778-LHK, 2021 WL 1164838 (N.D. Cal. Mar. 25, 2021) ................................ 24

*M/S Bremen v. Zapata Off–Shore Co.*,

    407 U.S. 1 (1972) ......................................................................................... 8

*Madsen v. Buffum*, No. ED1201605MWFSPX,

    2013 WL 12139139 (C.D. Cal. July 17, 2013) ......................................................... 22

*Maple Leaf Adventures Corp. v. Jet Tern Marine Co.*,

    No. 15-CV-02504-AJB-BGS, 2016 WL 3063956 (S.D. Cal. Mar. 11, 2016) ............................ 20

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,

    647 F.3d 1218 (9th Cir. 2011) ......................................................................... 13

*McHenry v. Renne*,

    84 F.3d 1172 (9th Cir. 1996) .......................................................................... 24

*MLC Intell. Prop., LLC v. Micron Tech., Inc.*,

    No. 19-CV-03345-EMC, 2019 WL 4963253 (N.D. Cal. Oct. 8, 2019) .............................. 20, 24

*Moody v. Charming Shoppes of Delaware, Inc.*,

    No. C 07-06073 MHP, 2008 WL 2128955 (N.D. Cal. May 20, 2008) ................................. 20

*Nat'l Equip. Rental, Ltd. v. Szukhent*,

    375 U.S. 311, 316 (1964) ................................................................................ 8

*Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. Louisiana Hydrolec*,

    854 F.2d 1538, 1544 (9th Cir. 1988) ................................................................... 21

*Panavision Int'l, L.P. v. Toeppen*,
  141 F.3d 1316 (9th Cir. 1998) ................................................................................. 16

*Payoda, Inc. v. Photon Infotech, Inc.*,
  No. 14-CV-04103-BLF, 2015 WL 4593911 (N.D. Cal. July 30, 2015) ..................... 20

*Pena v. Valo*,
  563 F. Supp. 742 (C.D. Cal. 1983) ........................................................................... 22

*Ranza v. Nike, Inc.*,
  793 F.3d 1059 (9th Cir. 2015) ................................................................................. 20

*Russell v. Invech Inc.*,
  No. 519CV01074FMOSHK, 2020 WL 6820805 (C.D. Cal. Oct. 26, 2020) ................. 7

*S.E.C. v. Homa*,
  No. 99 C 6895, 2006 WL 3267645 (N.D. Ill. Nov. 6, 2006) ..................................... 17

*S.E.C. v. Internet Sols. for Bus. Inc.*,
  509 F.3d 1161 (9th Cir. 2007) ................................................................................... 6

*Sandoval v. Ali*,
  34 F. Supp. 3d 1031 (N.D. Cal. 2014) ..................................................................... 20

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004) ................................................................................... 12

*Stewart v. Screen Gems-EMI Music, Inc.*,
  81 F. Supp. 3d 938 (N.D. Cal. 2015) ....................................................................... 20

*StreetScenes v. ITC Ent. Grp., Inc.*,
  103 Cal. App. 4th 233 (2002) ................................................................................... 11

*Symantec Corp. v. Acronis, Inc.*,
  No. C 12-05331 SI, 2013 WL 496290 (N.D. Cal. Feb. 7, 2013) ................................. 6

*Tresona Multimedia LLC v. Legg*,
  No. CV-14-02141-PHX-DGC, 2015 WL 470228 (D. Ariz. Feb. 4, 2015) ................... 8

*Twitter, Inc. v. Skootle Corp.*,
  No. C 12-1721 SI, 2012 WL 2375486 (N.D. Cal. June 22, 2012) ............................... 8

TABLE OF AUTHORITIES

*U.S. v. Pangang Grp. Co.*,

    879 F. Supp. 2d 1052 (N.D. Cal. 2012) ....................................................... 20

*UMG Recordings, Inc. v. BCD Music Grp., Inc.*,

    No. CV 07-05808 SJO-FFM, 2011 WL 798901 (C.D. Cal. Feb. 25, 2011) ................................. 20

*Uniloc 2017 LLC v. H&R Block, Inc.*,

    No. SACV191149JVSKESX, 2019 WL 8219781 (C.D. Cal. Dec. 23, 2019)............................ 21

*United Rentals (N. Am.), Inc. v. Avcon Constructors, Inc.*,

    No. 1:12-CV-01656, 2014 WL 1270423 (E.D. Cal. Mar. 26, 2014) ........................................... 11

**State Statutes**

Cal. Civ. Code § 2310 .................................................................................................................... 10

Cal. Civ. Code § 2317 .................................................................................................................... 11

**Federal Rules**

Fed. R. Civ. P. 12(i) ................................................................................................................. 7, 22

Fed. R. Civ. P. 4(d)(1) .................................................................................................................... 7

**State Rules**

Cal. Code Civ. Proc. § 416.10(b) .................................................................................................... 6

## I.    **INTRODUCTION**

Plaintiff Cadence Design Systems, Inc. ("Cadence") is an industry leader in advanced software products used to design, build, and test highly sophisticated electronic systems.  It is in the software business; not the litigation business.  Thus, when Cadence learned of Syntronic's wide-spread use of pirated software, Cadence spent well over a year trying to get Syntronic to pay for licenses and stop infringing.  Cadence even sent Syntronic detailed evidence identifying 64 of its machines that have used millions of dollars of software.  Even so, Syntronic refused to provide a substantive response or meaningfully engage.  And now, months into this litigation, Syntronic continues to run from the substance of this dispute, raising every pleading-stage argument it possibly can, all without merit.

*First*, despite appearing in this litigation (after being served and receiving an extension), Syntronic Beijing insists it was improperly served and claims it should receive process under the Hague Convention.  Service was not only proper, but it unquestionably reached this Defendant.  In any event, the Court can order alternative service on this Defendant, if necessary.

*Second*, Syntronic AB and Syntronic Beijing challenge personal jurisdiction, but fail to recognize that they expressly consented to jurisdiction in this forum through the click-wrap licenses they executed when installing Cadence software (on 64 machines).  They are also subject to jurisdiction as alter egos of Syntronic US and have purposefully availed themselves of this forum through their targeted actions.  Moreover, in yet a further attempt to evade the merits, Defendants submit declarations purporting to dispute Plaintiff's alter ego allegations and other jurisdictional arguments while, at the same time, refusing to produce any discovery on these assertions.  They have now helped themselves to a "stay" of discovery, refusing to provide any discovery pending resolution of their motion.  At a minimum, the jurisdictional issues are intertwined with the merits, and the Court should defer jurisdiction until trial so Plaintiff can conduct discovery.

*Third*, Syntronic attacks the sufficiency of Cadence's detailed allegations, claiming (without supporting authority) that somehow notice pleading requires Cadence to specify the IP addresses at which Syntronic used Cadence Software.  It does not.  Defendants also complain that Cadence improperly "lumped" them together for certain allegations in the operative pleadings.  But as

1

explained below, Syntronic lumps itself together in nearly every facet of its operation and its "Group CEO" claims Defendants operate as a single enterprise.  Notice pleading does not require Cadence to treat Defendants differently than they treat themselves.

The Court should reject Defendants' motion, so this litigation can move forward.

## II.    FACTUAL BACKGROUND

### A.  The Parties

Cadence is a worldwide leader in Electronic Design Automation Software and engineering services, as well as semiconductor technology based in Silicon Valley.  (Dkt. No. 26, FAC ¶¶ 2, 84).  Its tools help engineers design the transistors, standard cells, and IP blocks that make up systems on chips.  (*Id.* ¶ 84).  Cadence offers various software programs in this area, including Allegro, OrCAD, PSpice, Sigrity, and other related software and tools ("Cadence Software") that allows engineers to design, test, and simulate printed circuit boards customized for their specific needs.  (*Id.* ¶ 85).  Cadence owns valid copyrights protecting its software.  (*Id.* ¶¶ 87-96).

Defendants Syntronic AB, Syntronic US, and Syntronic Beijing purport to be a "Global Design House" that, among other things, provides hardware design services (*Id.* ¶ 9, 114). Together, Defendants publicly hold themselves out as the "Syntronic Group" or "Syntronic" and claim to operate as "one Syntronic globally" (*id.* ¶¶ 8, 10).  Their "Group CEO" (Björn Jansson) sits on the board of each entity and publicly touts that the reason for "our success is that we work as *one* Syntronic globally."  (*Id.* ¶ 11-12).  Cadence sets forth extensive, detailed allegations showing that Defendants are alter egos, much of which they do not purport to controvert.  (*Id.* ¶¶ 6-56).

### B.  Syntronic's Unauthorized Use of Cadence Software

To protect its valuable software, Cadence maintains a "phone-home" data tracking system under which data is transmitted to Cadence when unauthorized alterations or uses of its software or products are detected.  (*Id.* ¶¶ 111-13; Declaration of Brian Alfaro ("Alfaro Decl.") ¶ 10).  Upon such an event, several different types of technical data are transmitted to Cadence, including a computer's name (*i.e.*, "hostname"), company domain, (*e.g.* "syntronic.com"), internet protocol address (*i.e.*, "IP address"), MAC addresses (unique hardware serial numbers), and other information.  (FAC ¶¶ 116-121; Alfaro Decl. ¶¶ 10-11).

Cadence's phone-home technology has detected unauthorized use of its software on at least 64 different machines associated with Syntronic.  (FAC ¶ 138).  As Mr. Alfaro explains, the evidence closely ties the offending machines to Syntronic and strongly indicates widespread, organizational use.  (*Id.* ¶ 14).  Many of these machines are associated with the domains "syntronic.com," "china.syntronic.net," and "syntronicab.onmicrosft.com," which belong to Defendants.  (*Id.* ¶ 17; FAC ¶¶ 140-41).  The offending machines have "phoned-home" from a variety of locations, including at IP addresses in the United States, China, and elsewhere.  (Alfaro Decl. ¶ 18).

Publicly available materials also confirm Defendants' use Cadence Software.  For example, although none of them purchased a valid license, Defendants solicit and recruit employees with skills in Cadence software.  (FAC ¶ 61).  A recent job posting by Syntronic for a PCB Layout Engineer in Beijing required applicants to have "[p]roven skills in Cadence Allegro for creating layouts."  (Ex. A).  Syntronic's "Group CEO" admits that Syntronic engineers in China use Cadence Software "on behalf of a main customer."  (FAC ¶ 123).  Syntronic has never provided evidence that any of these uses are covered by a valid license.  (*Id.* ¶ 124).

Further, every person who installs Cadence Software must execute an online Software License and Maintenance Agreement ("SLMA").  (FAC ¶¶ 97-110; Alfaro Decl. ¶ 3). If a user does not accept the terms, that person cannot install Cadence Software.  (FAC ¶¶ 101, 107, 110; Alfaro Decl. ¶¶ 3-9).  The Defendants entered two versions of these SLMAs, each providing that the user "submit[s] to exclusive jurisdiction in the federal and state courts of California, U.S.A. in the event of a dispute."  (Dkt. No. 26-1 § 27; Dkt. No. 26-2 § 26).

**C.  The Parties' Pre-Litigation Discussions**

Cadence informed Defendants of their unauthorized use of its software on February 5, 2020.  (FAC ¶ 148).  One week later, Mikael Åhlén, Senior Vice President Operational Development for Syntronic, emailed Cadence, stating Syntronic was investigating "if the listed Mac-addresses are link to computers owned by Syntronic."  (*Id.* ¶ 149).  Syntronic failed to follow-up.  (*Id.* ¶¶ 150-51).

On April 20, 2020, Cadence sent a letter through counsel, setting forth a list of 64 different machines detected by Cadence's phone-home system, including MAC addresses, hostnames, and

computer domains for these machines. (*Id.* ¶¶ 150-154; Ex. B). Yet another Syntronic representative responded, promising to "look[] into this and will get back to you within short [sic]," although he never did. (FAC ¶¶ 155-57). Instead, Defendants' "Group CEO" referred Cadence to Mr. Zinzer Zhao in Syntronic's China office, who initially failed to respond for months, until Cadence followed with a draft Complaint on September 24, 2020. (*Id.* ¶¶ 160, 164). Even then, Syntronic refused to speak over the phone or exchange emails on the topic, insisting Cadence "can come to Beijing and communicate." (*Id.* ¶ 164). Cadence made further efforts to reach out to Syntronic's various representatives and invited a discussion, but Defendants never responded. (*Id.* ¶¶ 165-67).

Defendants have never substantively responded to the detailed infringement evidence provided by Cadence. Even today, Defendants have not confirmed whether "the listed Mac-addresses are link[ed] to computers owned by Syntronic," as Syntronic had promised to do.

**D. Relevant Procedural Posture**

As such, Cadence filed suit against Defendants on May 13, 2021, alleging causes of action for copyright infringement, circumvention of copyright protection mechanisms, and breach of contract. (*See generally* Dkt. No. 1). Cadence served all three Defendants, who then requested (and Cadence stipulated to) a one-month extension. (Dkt. No. 10).

On July 8, 2021, Defendants filed a twenty-five page motion seeking to quash service on Syntronic Beijing, to dismiss for lack of personal jurisdiction over Syntronic Beijing and Syntronic AB for lack of jurisdiction, and to dismiss for failure to state a claim. (Dkt. No. 12). That motion had no merit, but Cadence opted to moot the motion through filing a First Amended Complaint. (Dkt. No. 26). Cadence also filed a motion for alternative service under Rule 4(f)(3), seeking to motion any questions concerning service on Syntronic's Beijing. (*See* Dkt. No. 22). That motion is fully submitted and set for hearing on September 17, 2021. (Dkt. No. 38).

Two weeks after Cadence filed its FAC, Defendants renewed their three-tiered motion, raising nearly identical arguments challenging service, jurisdiction, and the sufficiency of Cadence's allegations. (Dkt. No. 32). In support of both their first and second motion, Defendants submitted three declarations from the alleged heads of each Defendant, testifying on a wide array of

4

1    matters, from Defendants' bank accounts, corporate books and minutes, intercompany agreements,

2    investigation into Cadence's claims, and a host of other issues.  (*See* Dkt. Nos. 33-35).

3    **E.  Defendants Fail to Produce Discovery**

4        Given these declarations, Plaintiff promptly served RFAs, RFPs and Interrogatories on each

5    Defendant.  (Exs. C-E).  Rather than produce discovery, Defendants Syntronic AB and Syntronic

6    Beijing filed a last-minute "discovery motion" seeking to ***stay*** discovery—including on their long

7    list of factual assertions—until after the instant motion is decided.  (Dkt. Nos. 40, 42).  Syntronic

8    US provided a small number of responses to Plaintiff's RFAs and claims it will produce documents,

9    although it has thus far failed to do so.  (Ex. F).  Cadence has also requested an inspection of the

10   computers using pirated software.  (Ex. G).

11   **III.    ARGUMENT**

12   **A.  Plaintiff's Service on Syntronic Beijing Is Valid Under California and Federal Law.**

13       Although Defendant Syntronic Beijing has appeared in this litigation, it oddly moves to

14   quash service under Rule 12(b)(5) and insists on litigating service *ad naseum*.  As Plaintiff

15   explained in its motion for alternative service, it makes little sense to require Plaintiff to send

16   process overseas or engage in other cumbersome service where Syntronic Beijing is already here

17   and represented by counsel. For that reason alone, the Court should grant alternative service, which

18   as Cadence explains, is strongly justified under the facts of this case.  (*See* Dkt. Nos. 22, 31).

19   Alternatively, the Court should deny the instant motion on the merits and allow the case to proceed

20   as the service on Syntronic Beijing was proper.

21        "Rule 4 is a flexible rule that should be liberally construed so long as a party receives

22   sufficient notice of the complaint." *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*,

23   840 F.2d 685, 688 (9th Cir. 1988) (citation omitted).  Only substantial compliance is required and

24   "the rules are to be applied in a manner that will best effectuate their purpose of giving the

25   defendant adequate notice." *Id.*  Rule 4(h)(1)(B) provides that a corporation can be served by

26   delivering process to "an officer, a managing or general agent."  Under this Rule, "[s]ervice can be

27   made to any representative so integrated with the organization that he will know what to do with the

28   papers." *Symantec Corp. v. Acronis, Inc.*, No. C 12-05331 SI, 2013 WL 496290, at *6 (N.D. Cal.

5

Feb. 7, 2013) (citation omitted). The same is true for service under California law, which allows for service on a "general manager." Cal. Code Civ. Proc. § 416.10(b). "A signed return of service constitutes prima facie evidence of valid service which can be overcome only by strong and convincing evidence." *S.E.C. v. Internet Sols. for Bus. Inc.*, 509 F.3d 1161, 1166 (9th Cir. 2007).

Here, Plaintiff has submitted two proofs of service from a registered process server showing delivery of process on an individual named Matt Flores at Defendants' Santa Clara office. (Dkt. No. 22-4). Plaintiff also served this process on an individual named Carlos Paz of CT Corporation (a common registered agent), who accepted the papers. (Dkt. No. 22-8). Whether viewed as service through Mr. Flores, Mr. Paz, or Syntronic US, this service was evidently effected on an agent sufficiently integrated within Syntronic Beijing's organization as that entity undeniably received notice of the service. Tellingly, even though Syntronic Beijing has had these affidavits for weeks (*see* Dkt. Nos. 22-4, 22-8), they fail to address them in the slightest. And there is no mystery about how Syntronic Beijing received the served process—Defendants are alter egos and, at a minimum, all directed by Mr. Jansson. (Dkt. No. 34 ¶ 8). Due process is unquestionably met where, as here, a defendant has actual notice of this litigation and service. *Espinosa v. U.S. Aid Funds, Inc.*, 553 F.3d 1193, 1203 (9th Cir. 2008) ("Because due process does not require actual notice, it follows a fortiori that actual notice satisfies due process.").

Defendants do not dispute any of these core facts, but claim "strict compliance" with Rule 4 is required and service was improper because "Syntronic Beijing does no business in California, and it has not designated USA (or anyone else) to accept service of process in the United States." (Brf. at 6). But there are no such requirements: "service of process is not limited solely to officially designated officers, managing agents, or agents appointed by law for the receipt of process." *Direct Mail*, 840 F.2d 685. Indeed, Defendants themselves cite authority showing that service is proper on an ***undesignated*** agent and then fail to distinguish that same authority. (*See* Brf. at 6-7 (citing *Khachatryan v. Toyota Motor Sales USA, Inc.*, 578 F. Supp. 2d 1224 (C.D. Cal. 2008)). For example, although the domestic agent in *Khachatryan* was the subsidiary of the party served, nothing in that case requires that particular corporate relationship. On the contrary, *Khachatryan*

OPPOSITION TO MOTION TO DISMISS

1    stands for the basic proposition that a foreign affiliate can be a "general manager" under Cal. Civ.

2    Code § 410(b).  *Id.* at 1226-27.

3        Further, service was properly effected on Syntronic Beijing through its alter ego Syntronic

4    US.  (*See infra* Section III.B.3).  *See Russell v. Invech Inc.*, No. 519CV01074FMOSHK, 2020 WL

5    6820805, at *4 (C.D. Cal. Oct. 26, 2020); *Vizio, Inc. V. LeEco V. LTD.*, No. SA CV 17-1175-DOC

6    (JPRx), 2018 WL 5303078, at *21 (C.D. Cal. July 27, 2018) ("[A]lter ego theory is relevant to both

7    service of process and personal jurisdiction."); *Certified Bldg. Prod., Inc. v. N.L.R.B.*, 528 F.2d 968,

8    969 (9th Cir. 1976).  As discussed *infra*, Syntronic US and Syntronic Beijing are alter egos.  And to

9    the extent the Court finds a more robust factual record is needed to decide the alter ego question,

10   Plaintiff requests that the service issue also be deferred until trial so it can conduct discovery on

11   these allegations, which are intertwined with the merits.  *See* Fed. R. Civ. P. 12(i); *see Langer v.*

12   *Beverly Hills Suites LLC*, No. 220CV02715JWHMAAX, 2020 WL 6489313, at *4 (C.D. Cal. Oct.

13   21, 2020).

14       In any event, to moot all of these issues, the Court can and should grant Plaintiff's motion

15   for alternative service on Syntronic Beijing.  (*See* Dkt. No. 22).  Either way, the Court should put an

16   end to Defendants' service games.  *See* Fed. R. Civ. P. 4(d)(1) ("An individual, corporation, or

17   association . . . has a duty to avoid unnecessary expenses of serving the summons.").

18       **B.  Syntronic AB and Syntronic Beijing Are Subject to Personal Jurisdiction.**

19       When, as here, a district court is presented with a Rule 12(b)(2) motion without an evidentiary

20   hearing, a plaintiff need only make "a *prima facie* showing of jurisdictional facts to withstand the

21   motion to dismiss."  *Avaya Inc. v. Pearce*, No. 19-CV-00565-SI, 2019 WL 6311383, at *5 (N.D. Cal.

22   Nov. 25, 2019) (citing *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995)).  "That is, the plaintiff

23   need only demonstrate facts that if true would support jurisdiction over the defendant."  *Ballard*, 65

24   F.3d at 1498.  Undisputed allegations in a complaint are taken as true unless controverted with

25   evidence and "conflicts between the facts contained in the parties' affidavits must be resolved in the

26   plaintiff's favor."  *Avaya*, 2019 WL 6311383 at *5 (citations omitted).

27       Here, Plaintiff's allegations and evidence establish a *prima facie* showing of personal

28   jurisdiction over both Syntronic AB and Syntronic Beijing on several different bases.  ***First***,

7

1  Defendants contractually consented to jurisdiction. **Second**, Defendants purposefully targeted their

2  misconduct at this forum. **Third**, Syntronic Beijing and Syntronic AB are alter egos of Syntronic US.

3  **Fourth**, at a minimum, Syntronic's arguments are intertwined with the merits and the issue should be

4  deferred pending further discovery for trial.

5                    1.   Syntronic AB and Syntronic Beijing Consented to Personal Jurisdiction By

6                         Entering the Software License and Maintenance Agreements.

7          Long-settled law provides that "parties to a contract may agree in advance to submit to the

8  jurisdiction of a given court." *Nat'l Equip. Rental, Ltd. v. Szukhent,* 375 U.S. 311, 316 (1964). "Forum

9  selection clauses are prima facie valid and should not be set aside unless the party challenging their

10 enforcement can show that they are unreasonable under the circumstances." *Twitter, Inc. v. Skootle*

11 *Corp.*, No. C 12-1721 SI, 2012 WL 2375486, at *4 (N.D. Cal. June 22, 2012). In other words, a

12 "contract clause that designates a particular forum is presumptively valid." *Tresona Multimedia LLC*

13 *v. Legg*, No. CV-14-02141-PHX-DGC, 2015 WL 470228, at *12 (D. Ariz. Feb. 4, 2015) (online user

14 agreement with forum selection clause sufficient to make *prima facie* showing of personal

15 jurisdiction). "The party challenging a forum selection clause bears a 'heavy burden of proof' and

16 must 'clearly show that enforcement would be unreasonable and unjust.'" *Id.* (citing *M/S Bremen v.*

17 *Zapata Off–Shore Co.,* 407 U.S. 1, 10, 17 (1972)).

18         Here, in order to access Cadence Software, Defendants first executed an online Software

19 License and Maintenance Agreement ("SLMA"). (*See* FAC ¶¶ 100-107; *see also* Alfaro Decl. ¶¶ 3-

20 9). Indeed, Defendants executed SLMAs on at least **64 machines**. (FAC ¶ 138; Alfaro Decl. ¶¶ 3-

21 9). Each of those SLMAs contained a forum selection clause consenting to jurisdiction in the United

22 States. (*See* FAC ¶ 59; Dkt. No. 26-1 § 27 ("You agree to submit to exclusive jurisdiction in the

23 federal and state courts of California, U.S.A. in the event of a dispute."); Dkt. No. 26-2 § 26 (same)).

24 As explained by Mr. Alfaro, Syntronic machines in Beijing and machines with the term "syntronicab"

25 in their domain installed this software and necessarily agreed to the terms of the SLMAs. (Alfaro

26 Decl. ¶¶ 3-9, 17-18). (Alfaro Decl. ¶¶ 14-18). These factual allegations are not only uncontroverted,

27 but they are supported by affirmative evidence.

28

OPPOSITION TO MOTION TO DISMISS

In the face of this evidence, Defendants contest that the individuals who entered the agreements had authority to bind the corporations. Defendants raise these allegations, even while refusing to disclose the identity or role of the various employees who installed this software or the manner in which the software was installed and used.[1] (Brf. at 15-17). This argument fails for several reasons.

**Actual Authority**. Strong circumstantial evidence suggests that the individuals who entered the SLMAs had *actual* authority to do so. For example, Plaintiff alleges (and Defendants do not dispute) that: (i) several infringing machines have the username "Administrator," (FAC ¶ 200), (ii) use of "cracked" versions of Cadence Software is widespread and used on at least *64* different machines—*i.e.,* this is not just a rogue employee or two (*id.* ¶ 201), and (iii) Defendants explicitly solicit employees who have experience in Cadence Software although they lack any valid licenses (*id.* ¶ 202-03; *see also* Ex. A).

Before filing suit—more than 16 months ago—Cadence provided Defendants with a list of those 64 machines, including their MAC addresses and hostnames (*e.g.,* "SYNTRONIC0748"). (FAC ¶ 154; *see also* Ex. B). Defendants have never substantively responded to those allegations, nor do they address those allegations in their current motion to dismiss. Instead, Defendants' representatives bury their heads in the sand and plead ignorance. (*See* Dkt. Nos. 34 ¶ 21 ("After conducting a diligent search and investigation, Syntronic AB was *unable to locate any evidence* that it entered into, 'clicked,' or signed [the SLMAs]."), 35 ¶ 21 (same for Syntronic Beijing)). Conspicuously absent is any discussion of these 64 machines: Which employees have used those machines? What is their title and job description? What are they using the pirated Cadence Software for? Does Syntronic concede that these 64 machines are Syntronic computers? If so, has Syntronic inspected those machines? How did these employees manage to install pirated software on Syntronic's machines, and who authorized them to do so? Syntronic's triumvirate of CEOs (Ostlund, Jansson and Zhao) simply do not say.

---

[1] As Mr. Alfaro explains, Syntronic can use the information already provided by Cadence to identify the specific machines and employees at issue. (Alfaro Decl. ¶¶ 20-25).

9

Defendants also argue (without evidence) that perhaps "one or more rogue employees" may have executed the SLMA and, if they did so, it was outside the scope of their authority because Defendants' IT Policy (which has not been produced) supposedly prohibits use of unlicensed software. But this is not a case of one bad apple—the whole bunch is rotten. It is uncontroverted that at least *64* different agents of Syntronic downloaded and used cracked software, entering into the SLMAs. (FAC ¶ 201). Many of these machines have hostnames with an identical naming convention, which is a strong indicator of sanctioned, corporate activity. (*See* Alfaro Decl. ¶ 14 (data shows Syntronic machines with hostnames of C0675, C0676, C0677, C0678, etc.)). This evidences a ***rogue organization, not a rogue employee***. And an IT policy that prohibits employees from illegal activity is not a get-out-of-jail free card for the organization. Under Defendants' logic, they could write a policy against "illegal conduct" and then never be liable for the illegal acts of their agents. Of course, they cite no authority for this overreaching argument, which particularly rings hollow where there is widespread, organizational infringement and no evidence that the alleged IT policy is enforced.

Likewise unaddressed (and uncontroverted) by Defendants are the various job postings for engineers who are familiar with Cadence Software. (*See, e.g.* FAC ¶¶ 30, 61; Ex. A). Indeed, there is little doubt that Defendants actually use Cadence Software (and thereby consent to jurisdiction here.) In their pre-suit communications, Defendants even ***admitted*** that their engineers use Cadence Software, but purported to have a license from an undisclosed "customer." (FAC ¶ 123). Yet, Defendants never provided evidence of that purported license—and they do not mention that theory in their current motion. Regardless of who supplied the software, it was not authorized by Cadence.

**Ratification.** Even if Defendants could somehow show that Cadence software was installed on 64 of their machines without authority, Cadence has also alleged an ***uncontroverted***, prima facie case that Defendants ratified their agents' execution of the SLMAs. (FAC ¶¶ 207-211). Under California law,[2] a principal ratifies an act of its agent "by accepting or retaining the benefit of the act, with notice thereof." Cal. Civ. Code § 2310. "[R]atification may be proved by circumstantial as well

---

[2] Defendants cite California law on the question of authority to bind. (*See, e.g.*, Brf. at 16). Plaintiff agrees that California law applies to the breach of contract claim and related issues in this litigation. (*See* Dkt. No. 26-1 § 27 ("This Agreement is governed by the procedural and substantive laws of the State of California, U.S.A."); Dkt. No. 26-2 § 26 (same)).

as direct evidence" and if an agent exceeds his actual authority "it is the duty of the principal to repudiate the act as soon as he is fully informed of what has been thus done in his name else he will be bound by the act as having ratified it by implication." *StreetScenes v. ITC Ent. Grp., Inc.*, 103 Cal. App. 4th 233, 242 (2002) (citations omitted; cleaned up).  Here, Plaintiff alleges that (i) Syntronic employees downloaded "cracked" Cadence Software on machines associated with the @syntronic.com domain, which necessarily requires execution of the SLMA (FAC ¶¶ 100-107, 208), (ii) Cadence provided notice of the execution of the SLMAs on several occasions, including by sending Defendants a draft complaint on September 24, 2020 (*id.* ¶¶ 163, 209; Ex. H), and (iii) Defendants continued using Cadence Software after receiving notice of the SLMAs (FAC ¶¶ 170, 210-11; Alfaro Decl. ¶ 13).  Additionally, Plaintiff alleges (and Defendants do not controvert) that Defendants solicit employees to use Cadence Software.  (FAC ¶¶ 202-03).  Defendants have even admitted using the Cadence Software for customer projects.  (FAC ¶ 123). These uncontroverted allegations are sufficient to establish ratification.  *See United Rentals (N. Am.), Inc. v. Avcon Constructors, Inc.*, No. 1:12-CV-01656, 2014 WL 1270423, at *6 (E.D. Cal. Mar. 26, 2014) (principal's use of rented equipment and retention of benefit of using equipment sufficient to show ratification of rental agreement).

**Ostensible Authority.** Cadence has also alleged an uncontroverted, prima facie case that Defendants' agents had ostensible authority to enter into the SLMAs.  "Ostensible authority is such as a principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess."  Cal. Civ. Code § 2317.  Plaintiff alleges in its FAC that (i) Syntronic intentionally and/or carelessly created the impression that its agents had authority to enter into the SLMAs by permitting them to download Cadence Software on machines associated with the @syntronic.com domain and other identifying information (FAC ¶ 205; *see also* Alfaro Decl. ¶ 15 (hostname including "SYNTRONIC")), and (ii) it was reasonable for Cadence to believe these individuals were authorized agents of Syntronic, including because Syntronic solicits employees who can use Cadence Software (FAC ¶¶ 202, 206).  Defendants do not even attempt to controvert these allegations, which must be taken as true.

In sum, Defendants fail to overcome the presumption of validity of the forum selection clause. Jurisdiction over Defendants Syntronic Beijing and Syntronic AB is appropriate on this basis alone.

2.  Syntronic AB and Syntronic Beijing Purposefully Directed Their Activities at California.

In addition to consenting to personal jurisdiction in this forum, Defendants Syntronic AB and Syntronic Beijing are also subject to jurisdiction based on their uncontroverted actions.  Specific jurisdiction is analyzed under a three-prong test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011).  If a plaintiff makes a prima facie showing of the first two prongs, "the burden shifts to [defendants] to set forth a compelling case that the exercise of jurisdiction would not be reasonable."  *Id.* (citations omitted). Here, Syntronic Beijing and Syntronic AB purposefully directed their activities to this forum.

**Purposeful Direction.**  "The exercise of specific jurisdiction over a defendant is proper when the defendant has purposefully directed activity at the forum state or has purposefully availed oneself of doing business in the forum state."  *Avaya Inc. v. Pearce*, No. 19-CV-00565-SI, 2019 WL 6311383, at *7 (N.D. Cal. Nov. 25, 2019).  "A defendant purposefully directs activity at the forum state when the defendant '(1) has committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm the defendant knows is likely to be suffered in the forum state.'" *Id.* (citing *Dole Foods Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)).  Here, all three elements of the Ninth Circuit's purposeful direction test are met.

Defendants Committed an Intentional Act. "An 'intentional act' refers to 'an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act.'" *Avaya*, 2019 WL 6311383 at *7 (citing *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)).  Here, Plaintiff alleges that Syntronic AB and

Syntronic Beijing "repeatedly obtained, copied and used Cadence Software without authorization from Cadence." (FAC ¶ 115). Syntronic's "Group CEO" and director of all Defendants admits that "we work with Cadence software in projects performed on behalf of a main customer." (*Id.* ¶ 123). This alone is sufficient to meet the "intentional act" requirement.

Defendants Expressly Aimed Their Activities at This Forum. "The second prong of the purposeful direction analysis is whether defendants expressly aimed acts at the forum state." *Avaya*, 2019 WL 6311383 at *7. This subfactor is met where "a plaintiff files suit in its home state against an out-of-state defendant and alleges that defendant intentionally infringed its intellectual property rights knowing the plaintiff was located in the forum state." *Adobe Sys. Inc. v. Blue Source Group, Inc.*, 125 F. Supp. 3d 945, 961 (N.D. Cal. 2015) (citations omitted).

Here, Plaintiff has alleged that Syntronic Beijing and Syntronic AB willfully infringed its copyrights and circumvented its copyright protection mechanisms knowing that Cadence is located in California. For example, Defendants admit that they use Cadence Software although they have never provided evidence of a valid license to do so. (*See* FAC ¶¶ 123-24). Cadence also sent Defendants several communications (including a draft complaint) detailing that (i) Cadence is headquartered in San Jose, CA, and (ii) Defendants are unlawfully using Cadence Software. (*Id.* ¶¶ 163; Ex. H at Draft Complaint ¶ 2; Ex. I). Even so, Defendants continued using Cadence Software without a valid license. (*See* FAC ¶¶ 169-170; Alfaro Decl. ¶ 13). This is sufficient to meet the express aiming requirement. *Avaya*, 2019 WL 6311383 at *8.

Harm Was Foreseeable in California. "The third prong of the purposeful direction analysis is whether defendants are alleged to have caused harm that they knew is likely to be suffered in the forum state." *Avaya*, 2019 WL 6311383 at *8. Under Ninth Circuit precedent, "a corporation can suffer harm both where the bad acts occurred and where the corporation has its principal place of business." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1231 (9th Cir. 2011); *CollegeSource*, 653 F.3d at 1079 ("We have repeatedly held that a corporation incurs economic loss, for jurisdictional purposes, in the forum of its principal place of business."). Here, as mentioned, Defendants knew Cadence is located in San Jose, California and willfully infringed their

OPPOSITION TO MOTION TO DISMISS

IP rights (among other things)—harm was unquestionably foreseeable in California. (FAC ¶¶ 114-147).

Defendants Have Additional Contacts in California. Citing *Axiom Foods, Inc. v. Acerchem International, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017), Defendants argue Plaintiff's purposeful direction allegations rely on an "outdated theory of specific jurisdiction." Not so. District courts (including this Court) continue to apply the purposeful direction test for copyright infringement actions. *See, e.g.*, *Avaya*, 2019 WL 6311383, at *6-*11; *Amini v. Pro Custom Solar LLC*, No. SACV172244JVSSKX, 2018 WL 6133632, at *5 (C.D. Cal. Aug. 13, 2018). Indeed, *Axiom* itself held individualized targeting remains relevant to the specific jurisdiction analysis. 874 F.3d at 1070. In any event, *Axiom* is readily distinguishable.

In *Axiom*, the plaintiff sued two defendants (based in China and the UK) in California for copyright infringement based on a single marketing email sent from the UK. *Id.* at 1066. The majority of the email recipients were in Western Europe and "no more than ten . . . were physically located in California." *Id.* at 1070. Even with the benefit of jurisdictional discovery, the Plaintiff still failed to demonstrate any contacts beyond the ten alleged email recipients and there was no dispute that the UK company "conducts no business in California." *Id.* at 1070. On this record, the Ninth Circuit affirmed the district court's dismissal of the UK defendant for failing to have sufficient contacts with the forum.

Here, by contrast, Plaintiff alleges (and submits evidence showing) much more than the fortuitous distribution of a single email to California recipients. Rather, Plaintiff alleges software piracy on a massive scale. Further, not only did the moving Defendants enter agreements with Cadence governed by California law (*see supra*), but Cadence alleges and submits evidence that Defendants have used Cadence Software without authorization in California. (FAC ¶¶ 116-17; Alfaro Decl. ¶¶ 18). Cadence further alleges (for its DMCA claim) that Defendants circumvented technological measures located in California. (FAC ¶¶ 187-88). No case stands for the proposition that a California-based software company cannot sue a foreign actor for such massive and on-going infringement directed to this forum.

OPPOSITION TO MOTION TO DISMISS

Additionally, contrary to the conclusory declaration of Syntronic's "Group CEO," Björn Jansson, publicly available evidence shows that Syntronic AB employs hardware designers here in the United States—for example, Syntronic AB's website advertises job postings in Santa Clara, CA for "Syntronic" and separate jobs for "Syntronic USA." (*See* Papazian Decl. ¶ 11; Ex. J). The Facebook page for Syntronic AB corroborates this evidence—the page content (primarily managed in Sweden (*see* Exs. K-L; Papazian Decl. ¶¶ 12-13)—touts that it is "pursu[ing] the American dream at our R&D facility in Santa Clara," claiming "[o]ur highly qualified American team assists customers in Silicon Valley and beyond." (Ex. M). Likewise, Syntronic USA's job postings claim its California-based teams work "in a team with engineers from other Syntronic sites" including Sweden and China. (Ex. N). Indeed, neither Syntronic AB nor Syntronic Beijing purports to contradict Cadence's allegation that they "'work closely' with existing clients in the Bay Area."[3] (FAC ¶ 75).

In short, Syntronic Beijing and Syntronic AB have significantly more contacts in California than the UK defendant in *Axiom*. *See Amini*, 2018 WL 6133632 at *5 (distinguishing *Axiom* because, *inter alia*, defendant there targeted California for developing sales leads).

**Plaintiff's Claims Arise Out of Defendants' Forum-Related Conduct.** "A plaintiff's claim arises out of or relates to the defendant's forum-related activity when the plaintiff would not have been injured 'but for' the conduct that the defendant directed at the forum state." *Avaya*, 2019 WL 6311383 at *8. "In copyright infringement actions, if the defendant's infringing conduct harms the plaintiff in the forum, this element is satisfied." *Id.* (citation omitted). As discussed *supra*, Defendants' willful copyright infringement harmed Cadence in this forum by depriving Cadence of licensing revenue, market share, reputation and undermining its relationships with paying customers who compete with Syntronic. (FAC ¶¶ 137, 146-47, 184). Defendants likewise circumvent technological measures located here. (FAC ¶¶ 187-88). This element is satisfied.

---

[3] All three declarations submitted by Defendants' representatives carefully tip-toe around this point and appear to be written by attorneys—*e.g.*, all have nearly verbatim assertions and structures and even the same typos (*e.g.*, referring to a non-existent "Second Amended Complaint"). (*See* Dkt. Nos. 33-35). For example, on behalf of Syntronic Beijing, Mr. Zhao declares that "Syntronic Beijing does not conduct business *in* the United States," "does not sell products or provide services *in* the United States." (Dkt. No. 35 ¶ 5). Mr. Zhao is silent on whether Syntronic Beijing works from China on projects *for* California-based clients with Syntronic's California-based teams.

**Exercising Jurisdiction Over Syntronic AB and Syntronic Beijing Is Reasonable.** As mentioned, Syntronic AB and Syntronic Beijing have the burden to "present a compelling case" that the exercise of jurisdiction would be unreasonable and violate due process. *CollegeSource*, 653 F.3d at 1079. Courts consider seven different factors in assessing this factor:

> (1) the extent of the defendant's purposeful interjection into the forum state's affairs, (2) the burden on the defendant of defending in the forum, (3) the extent of conflict with the sovereignty of the defendant's home state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to the plaintiff's interests in convenient and effective relief, and (7) the existence of an alternative forum.

*Avaya*, 2019 WL 6311383 at *9 (cleaned up).

Despite having the burden, Defendants do not address any of these factors. Briefly, Defendants interjected themselves in California by using Cadence's copyrighted software (including in California), there is minimal burden on Defendants in this forum (*e.g.*, they already have counsel and their alter ego/sister company is located in Santa Clara, California),[4] this action does not interfere with the sovereignty of any other country, "California has a strong interest in providing redress for the injuries a plaintiff has suffered as a result of a defendant's alleged willful copyright infringement,"[5] this forum will efficiently resolve the parties' controversy (*e.g.*, Cadence's claims against the moving Defendants will efficiently proceed alongside their alter ego/sister company Syntronic US), this forum is important to Plaintiff as it is located here and key activities took place in this forum, and Plaintiff is not aware of an alternative forum to hear this dispute against the three Defendants. (FAC ¶¶ 2, 114-147.)

                              *        *        *

In sum, Defendants have purposefully directed their activities to this forum and are, at a minimum, subject to specific jurisdiction on that basis.

---

[4] "[U]nless the inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction." *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998).

[5] *Autodesk, Inc. v. RK Mace Eng'g, Inc.*, No. C-03-5128 VRW, 2004 WL 603382, at *8 (N.D. Cal. Mar. 11, 2004)

3.  <u>Syntronic AB and Syntronic Beijing Are Subject to General Jurisdiction as the</u>
<u>Alter Egos of Syntronic US.</u>

The contacts of one alter ego can be imputed to another alter ego for purposes of establishing personal jurisdiction. *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1069 (9th Cir. 2000). Further, where one defendant waives jurisdiction or fails to dispute jurisdiction, its alter egos are equally subject to jurisdiction. *See, e.g.*, *S.E.C. v. Homa*, No. 99 C 6895, 2006 WL 3267645, at *8 (N.D. Ill. Nov. 6, 2006) ("CVII is the alter ego of Mr. Pollock, over whom the Court has already found personal jurisdiction exists"). Given the extensive allegations and evidence showing that all Defendants operate as a single entity and are otherwise alter egos, jurisdiction of Syntronic US operates as jurisdiction over Syntronic Beijing and Syntronic AB.

"To prove an alter ego relationship exists, a plaintiff must show: (1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice." *Updateme Inc. v. Axel Springer SE*, No. 17-CV-05054-SI, 2018 WL 1184797, at *9 (N.D. Cal. Mar. 7, 2018). While a large number of factors are relevant to the "unity of interest" prong, to find a prima facie case "a court need not find that every factor is present." *Id.*; *see also Daewoo Elecs. Am. Inc. v. Opta Corp.*, No. C 13-1247 JSW, 2013 WL 3877596, at *5 (N.D. Cal. July 25, 2013) ("Some courts have held that the pleading of at least two factors in support of a unity of interests satisfies these elements.").

**All Three Defendants Share a Unity of Interest.**  As noted *supra*, at this stage, Plaintiff need only establish a prima facie case through uncontroverted allegations and, if necessary, the submission of evidence. *Avaya* 2019 WL 6311383 at *5; *Ballard*, 65 F.3d at 1498. Here, Defendants fail to controvert any of the following facts, which alone are sufficient to establish a prima facie case for a unity of interest:

<u>All three Defendants hold themselves out as a single enterprise</u>.  Björn Jansson publicly identifies himself as "Group CEO" of all Syntronic entities (FAC ¶ 11) and Defendants collectively refer to themselves as "Syntronic," "Syntronic Group," and "Syntronic – Global Design House" (*id.* ¶¶ 8-9).  Several executives, including Mr. Jansson, publicly tout that Defendants are a single enterprise and claim that "we work as *one* Syntronic."  (*Id.* ¶¶ 12-13 (emphasis in original)).  Mr.

17

Zhao of Syntronic Beijing and "other executives at Syntronic refer to the unity of Syntronic legal entities as 'One Syntronic.'" (*Id.* ¶¶ 14-15); *City & Cty. of San Francisco v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610, 636 (N.D. Cal. 2020) ("Teva Ltd. depicts itself as 'One global brand, One story, One Teva.'"). Further, Defendants collectively represent that they have over a thousand employees without differentiating between "Syntronic AB, Syntronic USA, Syntronic Beijing, or any other Syntronic-owned or affiliated entities" (FAC ¶ 23), and these employees "treat Syntronic AB and its affiliates as one and the same" (*id.* ¶ 24).

All three Defendants are subject to the same equitable control. Syntronic AB controls the board of each of Syntronic Beijing and Syntronic US through its representatives Monica Jansson and "Group CEO" Björn Jansson. (FAC ¶¶ 19-20; Dkt. No. 34 ¶ 8). All three Defendants operate under the same corporate policies, including their alleged "IT/Information Security Policy" and human resource policies. (FAC ¶ 27; Dkt. No. 33 ¶ 20; Dkt. No. 34 ¶ 23; Dkt. No. 35 ¶ 23). As further evidence of control, Syntronic US lists the address for Syntronic AB as its "main business or headquarters" in at least one filing with the State of Michigan. (FAC ¶ 17). Likewise, the alleged President of Syntronic US, was also an officer at Syntronic Beijing and Syntronic AB. (FAC ¶ 21). Because of this integration and control, "Syntronic AB, Syntronic USA, and Syntronic Beijing submit financial statements and pay taxes on a consolidated basis."[6] (FAC ¶ 48).

Syntronic US and Syntronic Beijing share office space and are conduits for the affairs of Syntronic AB. Plaintiff also submits evidence showing that Syntronic US and Syntronic Beijing were created to "expand" "Syntronic's" presence in North America and China, respectively. (Exs. O, P). Syntronic AB refers to Syntronic Beijing as one of its "branches" in China and lists Syntronic Beijing as part of its "expansion strategy." (Ex. P; *see also* Dkt. No. 35 at 9 (Syntronic AB is founder of Syntronic Beijing); FAC ¶ 17 (Syntronic AB listed as "main business or headquarters" for Syntronic US); Dkt. No. 14 at 7 (Syntronic AB address listed as address office address of Syntronic US in Articles of Incorporation)). Syntronic represents that Syntronic Beijing's office and design center offers a "Relaxed Nordic working environment." (FAC ¶ 29).

---

[6] Syntronic's executives claim that each company performs a "company-level" audit with different auditors, but do not dispute that they collectively are audited in a single audit.

OPPOSITION TO MOTION TO DISMISS

1    _Commingling of Assets and Responsibility for Debts_.  Defendants do not contest that they

2    share a name and website.  (FAC ¶¶ 46-47).  Further, Syntronic AB and Syntronic Beijing maintain

3    inter-company accounts.  (FAC ¶ 26; Dkt. No. 34 ¶ 20).  Defendants also do not contest that they

4    commingle employees—for example, the President of Syntronic US is listed as the primary contact

5    on certain websites for Syntronic AB.[7]  (FAC ¶¶ 21-22; Ex. Q).  Likewise, Syntronic AB does not

6    controvert Plaintiff's allegations that Syntronic AB transfers funds to Syntronic US to make payroll,

7    and that "Syntronic AB has made various transfers of funds and capital when needed to pay debts and

8    obligations of Syntronic Beijing."  (FAC ¶¶ 50-51).  On the contrary, Defendants' "Group CEO"

9    admits that Syntronic AB has recently helped Syntronic US with its cash flow. (Dkt. No. 34 ¶ 19).[8]

10   Against these allegations, Defendants make a number of conclusory statements about how

11   they supposedly respect corporate formalities and maintain arms-length relationships, parroting the

12   alter ego factors in the negative.  (_See, e.g._, Dkt. No. 34 ¶ 11 ("Syntronic AB does not comingle any

13   of its funds . . .")).  Tellingly, however, Defendants have failed to substantiate any of these various

14   assertions in the discovery process—_e.g._, Cadence served discovery requests on Defendants' various

15   sworn assertions and rather than produce the discovery, Syntronic US has merely provided objections

16   and Syntronic Beijing and Syntronic AB altogether refuse to participate.  (_See_ Dkt. No. 40).  At least

17   one Syntronic witness has already walked back several of his sworn assertions.  (_See_ Dkt. No. 41).

18   But more fundamentally, Defendants attack on Plaintiff's allegations ring particularly hollow

19   in light of their suppression of any supporting facts or discovery.  For example, Defendants cite

20   several cases for the proposition that courts "flatly reject" public representations and statements about

21   defendants operating as a single enterprise.  (_See_ Brf. at 12).  Not only is that assertion overreaching,

22   _see Purdue Pharma_, 491 F. Supp. 3d at 636, but Defendants cannot refuse to produce discovery and

23   then blame Plaintiff for only citing publicly available information.  The uncontroverted allegations

24

---

25   [7] Defendants' declarants claim there are no individuals _**employed**_ by multiple defendants, but they
26   do not dispute that individuals _**perform work**_ for multiple Defendants.  (_See, e.g._, Dkt. No. 34 ¶ 9).
     [8] Syntronic's "Group CEO" states in his declaration that "[t]here are no indemnity or guarantee
27   agreements between Syntronic AB and either Syntronic USA or Syntronic Beijing," but stops short
     of saying that Syntronic AB does not guarantee obligations between Syntronic USA and/or
28   Syntronic Beijing vis-à-vis third parties.  (_See_ Dkt. No. 34 ¶ 18).

here are also far more probative than anything in the case law cited by Defendants—their "Group CEO" publicly touts that Defendants are successful because they are a single enterprise, a far cry from the facts in Defendants' case law. *Cf. Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 984 (N.D. Cal. 2016) (plaintiff merely alleged two defendants share a website); *MLC Intell. Prop., LLC v. Micron Tech., Inc.*, No. 19-CV-03345-EMC, 2019 WL 4963253, at *12 (N.D. Cal. Oct. 8, 2019) (plaintiff alleged that defendants operated under the same brand); *Maple Leaf Adventures Corp. v. Jet Tern Marine Co.*, No. 15-CV-02504-AJB-BGS, 2016 WL 3063956, at *7 (S.D. Cal. Mar. 11, 2016) (defendants shared website and one defendant listed as one of four dealers of another defendant); *Payoda, Inc. v. Photon Infotech, Inc.*, No. 14-CV-04103-BLF, 2015 WL 4593911, at *3 (N.D. Cal. July 30, 2015) (bare assertion that defendants' website holds defendant out as being one and the same); *Moody v. Charming Shoppes of Delaware, Inc.*, No. C 07-06073 MHP, 2008 WL 2128955, at *7 (N.D. Cal. May 20, 2008) (only evidence of "generic language" on website).

Defendants then cite a flurry of cases to challenge alter ego, but their contentions are legally and structurally flawed. Although unity of interest is considered under the "totality of the circumstances," *UMG Recordings, Inc. v. BCD Music Grp., Inc.*, No. CV 07-05808 SJO (FFM, 2011 WL 798901, at *2 (C.D. Cal. Feb. 25, 2011), and a plaintiff need ***not*** establish every factor, *Updateme*, 2018 WL 1184797 at *9, Defendants isolate and attack each fact supporting alter ego, claiming that each is alone "insufficient" or "not dispositive." (*See* Brf. at 13:10-16 (arguing common ownership is "not dispositive" and "alone is insufficient to disregard the corporate form")). In doing so, they misapply the doctrine. In any event, the cases cited by Defendants either contradict their position or are readily distinguishable.[9]

_____

[9] *See Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003) (reversing dismissal and ordering jurisdictional discovery); *see also Ranza v. Nike, Inc.*, 793 F.3d 1059, 1074 (9th Cir. 2015) (after jurisdictional discovery, plaintiff presented no evidence); *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 591 (9th Cir. 1996) (after jurisdictional discovery, nothing shown beyond consolidated tax returns and one transaction); *Stewart v. Screen Gems-EMI Music, Inc.,* 81 F. Supp. 3d 938, 956 (N.D. Cal. 2015) (only same ownership and overlapping representatives); *Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1040 (N.D. Cal. 2014) (only conclusory assertions); *U.S. v. Pangang Grp. Co.*, 879 F. Supp. 2d 1052, 1067 (N.D. Cal. 2012) (in criminal espionage case, government failed to show unity of interest based on agency arguments); *Forest v. Equitable Life Assurance Society of U.S.*, No. C99-5173 SI, 2001 WL 1338809, at *9 (N.D.

OPPOSITION TO MOTION TO DISMISS

**Failure to Disregard Defendants' Separate Identities Would Result in Fraud or Injustice.**  Plaintiff has also sufficiently alleged the inequitable result prong of the alter ego test.  For example, Plaintiff alleges that since Defendants hold themselves out as "One Syntronic," it would be inequitable—and sanction a fraud—to now recognize their alleged separateness.  (FAC ¶¶ 53-54).  Indeed, Syntronic is apparently trying to create a business model that places their infringement in China—thereby enabling Syntronic to undercut competitors who pay for their software—so somehow the company should not have to answer for that software piracy.  Likewise, Plaintiff alleges that Defendants are engaging in a bad-faith shell game to frustrate Cadence's ability to curb Defendants' ongoing infringement—*e.g.*, pinning infringement on Syntronic Beijing, who then refuses to engage unless Cadence travels to China amidst the COVID-19 pandemic.  (*Id.* ¶¶ 56, 164-66).  Defendants' shell games establish a prima face case of inequitable result.  *Purdue Pharma*, 491 F. Supp. 3d at 638 (inequitable conduct results where failure to set aside corporate form furthers a shell game); *Updateme*, 2018 WL 1184797 at *9 (same).

Defendants do not controvert any of these facts.  (*See* Brf. at 15).  Instead, they claim it is "damning" that "Cadence never once alleges that any liable Defendant cannot answer Cadence's claims or pay a judgment."  But Cadence alleges that both Syntronic USA and Syntronic Beijing are undercapitalized, which is supported by specific, uncontroverted allegations that Syntronic AB transfers funds to Syntronic US and Syntronic Beijing to pay their employees, as well as debts and obligations.  (FAC ¶¶ 50-51); *see Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. Louisiana Hydrolec*, 854 F.2d 1538, 1544 (9th Cir. 1988) ("[T]he California Supreme Court has held that undercapitalization alone will justify piercing the corporate veil.").

Cadence has established a prima facie case of alter ego.

---

Cal. June 12, 2001) (advertising materials and annual report insufficient on summary judgment); *Uniloc 2017 LLC v. H&R Block, Inc.*, No. SACV191149JVSKESX, 2019 WL 8219781, at *4 (C.D. Cal. Dec. 23, 2019) (consolidated financial statements and public representations alone insufficient for unity of interest); *Gerritsen v. Warner Bros. Ent. Inc.*, 116 F. Supp. 3d 1104, 1142 (C.D. Cal. 2015) (no specific facts alleged); *In re W. States Wholesale Nat. Gas Litig.*, 605 F. Supp. 2d 1118, 1129 (D. Nev. 2009) (out-of-state decision where there was "no evidence in the record" suggesting failure to maintain corporate formalities).

21

4.  <u>If Necessary, the Court Should Defer the Issue of Jurisdiction to Trial and/or Allow Plaintiff to Take Jurisdictional Discovery.</u>

As set forth above, Syntronic AB and Syntronic Beijing are subject to personal jurisdiction based on their contractual consent, their specific activities in this forum, and also their relationship as alter egos of Syntronic US.  Defendants dispute that they are alter egos and dispute that they used Cadence Software (*i.e.*, entered SLMAs consenting to jurisdiction). Under these circumstances, where jurisdictional arguments are intertwined with the merits, the Court should defer the issue of jurisdiction until trial.  Fed. R. Civ. P. 12(i); *Madsen v. Buffum*, No. ED1201605MWFSPX, 2013 WL 12139139, at *4 (C.D. Cal. July 17, 2013): *Pena v. Valo*, 563 F. Supp. 742, 746 (C.D. Cal. 1983).

At a minimum, Plaintiff respectfully requests jurisdictional discovery on Defendants' contacts with California, entry of the SLMAs, and alter ego relationships with Syntronic US.  *See Focht v. Sol Melia S.A.*, C-10-0906 EMC, 2010 WL 3155826, at *1 (N.D. Cal. Aug. 9, 2010) ("Jurisdictional discovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary.") (internal citations omitted).  Indeed, the Ninth Circuit has required jurisdictional discovery where, as here, "[f]urther discovery on this issue might well demonstrate facts sufficient to constitute a basis for jurisdiction." *Harris Rutsky*, 328 F.3d at 1135.

## C.  Plaintiff Has Sufficiently Alleged Causes of Action for Copyright Infringement and Breach of Contract.

Defendants also seek dismissal under Rule 12(b)(6), arguing that Cadence (i) fails to "plausibly allege copyright violations in the United States," and (ii) improperly lumps all Defendants together with respect to its copyright infringement and breach of contract allegations.  Defendants do not challenge Plaintiff's allegations regarding its DMCA claim.  (*See* FAC, Count II).  Defendants' contentions lack merit.

1.  <u>Cadence Sufficiently Alleged Claims for Copyright Infringement.</u>

Plaintiff has more than satisfied the requirements for notice pleading.  To state a claim for copyright infringement, a plaintiff only needs to allege "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  *Adobe Sys. Inc. v. Nwubah*, No. 18-

22

CV-06063-LHK, 2020 WL 3432639, at *12 (N.D. Cal. June 23, 2020). Cadence alleges that it owns several valid copyrights covering its software (FAC ¶¶ 87-96, 173) and "Syntronic's unauthorized use and/or duplication of Cadence's copyrighted software constitutes direct and contributory infringement under 17 U.S.C. § 501 (*id.* ¶ 176). That is sufficient. Further, to the extent necessary, Cadence also alleges that copyright infringement occurred *in the United States*. (FAC ¶¶ 116-17).

Defendants cite no authority requiring Plaintiff to allege in the Complaint the specific IP addresses where the software was used. Even so, Cadence specifically stated that "[c]omputers associated with the domain "@syntronic.com" have used, accessed, and/or copied 'cracked' Cadence Software at multiple IP addresses in California" (*id.*) and alleged that all three Defendants use the "@syntronic.com" domain (*id.* ¶¶ 118). The motion should be denied.[10]

### 2. Cadence Did Not Improperly "Lump" All Defendants Together.

Defendants next complain that Cadence's copyright and contract claims should be dismissed because Cadence "lumped" the Defendants together. This argument, too, lacks merit.

As an initial matter, Plaintiff alleges each claim against each Defendant. To eliminate all doubt, Plaintiff clarifies that each Count is asserted "Against All Defendants." (FAC at 20, 21, 23). Even beyond that, Plaintiff alleges that "[a]ll three Defendants conduct business under the name and mark 'Syntronic' and not their individual legal names." (FAC at 1, n. 1). Cadence alleges extensive, detailed facts showing how, by design, Defendants operate jointly as a single company called "Syntronic." (FAC ¶¶ 8-56). Likewise, Cadence alleges that aspects of their IT infrastructure are indistinguishable—*e.g.*, Plaintiff alleges that machines reporting infringement are associated with the domain @syntronic.com and that representatives of all three defendants have email addresses at the domain @syntronic.com. (FAC ¶¶ 116-121).

There is no categorical rule against jointly referencing Defendants. Even the cases cited by Defendants explain that "lumping" is not "always improper in the alter ego context – *i.e.*, it is possible

---

[10] Defendants' reliance on the Declaration of Mr. Östlund (Brf. at 19-20) is improper in a Rule 12(b)(6) motion, but in any event, Mr. Östlund later "amended" his declaration and recanted his assertion that Syntronic's U.S.-based employees do not use Cadence Software. (*See generally* Dkt. No. 41). And to the extent there is any doubt, Cadence has submitted a declaration Mr. Alfaro further evidencing facts underlying Plaintiff's copyright infringement claims, including specific IP addresses in the United States. (Alfaro Decl. ¶ 18).

OPPOSITION TO MOTION TO DISMISS

that, in certain factual situations, lumping may be warranted." *MLC Intell. Prop.*, 2019 WL 4963253 at *12; *see also Blue Source.*, 125 F. Supp. 3d at 965 ("[A]lthough Adobe does . . . make infringement claims against 'Defendants' generally . . . Adobe defines the term "Defendants" to be 'inclusive' of [five defendants].  Put another way, the gravamen of Adobe's allegations in the instant lawsuit are that all the Defendants infringed on Adobe's trademarks and copyrights.").  Where "lumping" originates from the manner in which Defendants conduct themselves, it is entirely appropriate: "at this early stage in the proceedings, Plaintiffs have essentially been forced to lump the [defendants] because the . . . Defendants have chosen to operate in a specific way."  *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prod. Liab. Litig.*, 295 F. Supp. 3d 927, 990 (N.D. Cal. 2018).  Courts reject complaints about "shotgun pleadings" from closely affiliated defendants.  *Espinosa v. Bluemercury, Inc.*, No. 16-CV-07202-JST, 2017 WL 1079553, at *5 (N.D. Cal. Mar. 22, 2017).

To be sure, the facts here are a far cry from those at issue in the cases cited by Defendants.  For example, in *McHenry v. Renne*, 84 F.3d 1172 (9th Cir. 1996), the plaintiff's 53-page complaint "mixe[d] allegations of relevant facts, irrelevant facts, political argument, and legal argument in a confusing way" and failed to specify "which of the twenty named defendants or John Does is liable for which wrongs."  *Id.* at 1174-75.  Likewise, in *Affordable Aerial Photography, Inc. v. Mod. Living Real Est., LLC*, No. 19-CV-80488, 2019 WL 3716775 (S.D. Fla. Aug. 7, 2019), the plaintiff filed suit against two apparently unrelated entities and alleged that "Defendant" (singular and undefined) posted the offending conduct."  *Id.* at *2.  Here, by contrast, Plaintiff carefully defines Defendants and properly refers to them as they refer to themselves (or itself).  The other case law cited by Defendants is similarly off-point.[11]

Defendants' last-ditch arguments regarding Plaintiff's "lumped" breach of contract allegations far no better.  Indeed, Defendants' verbatim recycling of its prior motion fails to even

---

[11] *Lynwood Invs. Cy Ltd. v. Konovalov*, No. 20-CV-03778-LHK, 2021 WL 1164838, at *16 (N.D. Cal. Mar. 25, 2021) (plaintiff alleged 26 different claims against disparate set of 13 defendants); *Hemlock Hat Co., Inc. v. Diesel Power Gear, LLC*, No. 19-CV-02422-AJB-AHG, 2020 WL 7013585, at *6 (S.D. Cal. Nov. 25, 2020) (complaint "does not provide any specificity as to how [a secondary set of defendants] are implicated by the production and selling of the alleged infringing straw hats"); *Iglesia Ni Cristo v. Cayabyab*, No. 18-CV-00561-BLF, 2018 WL 4674603, at *7 (N.D. Cal. Sept. 26, 2018) (copyright claim filed against eleven former ministers, officers, and members of a church).

OPPOSITION TO MOTION TO DISMISS

1  account for Plaintiff's allegations in the FAC, arguing that Plaintiff "failed to allege who purportedly

2  accepted the terms of the SLMA or any other contract that this person or persons had authority, actual

3  or otherwise, to bind any of the Syntronic entities." (Brf. at 24). As discussed *supra*, Plaintiff

4  adequately alleges that Defendants' agents had actual and ostensible authority to enter the SLMAs

5  and Defendants later ratified those actions. (*See* FAC ¶¶ 199-211).

6    **D. Defendants Fail to Show the Court Should Order a More Definite Statement.**

7    Defendants also purport to seek a more definite statement, but they fail to address this

8  argument in their brief. That alone is a sufficient reason for rejecting Rule 12(e) relief. *See* L.R. 7-

9  4(a). But even if they had briefed this motion, it would still fail.

10    Rule 12(e) is reserved for unintelligible pleadings where the detail sought is not "obtainable

11  through discovery." *F.D.I.C. v. Cashman*, No. C 11-03334 SI, 2011 WL 6002611, at *2 (N.D. Cal.

12  Nov. 30, 2011) (citations omitted). "Motions for a more definite statement are viewed with disfavor

13  and are rarely granted because of the minimal pleading requirements of the Federal Rules." *Id.* (citing

14  *Bureerong v. Uvawas,* 922 F.Supp. 1450, 1461 (C.D.Cal.1996)). Here, Defendants do not argue they

15  are unable to prepare a response to Plaintiff's FAC, and fail to even show the basic requirements for

16  Rule 12(e) relief, *i.e* "point[ing] out the defects complained of and the details desired." The Court

17  should reject Defendant's half-baked Rule 12(e) request.

18    More fundamentally, well before filing this litigation Cadence sent Defendants an extensive

19  list of 64 different machines with device-specific MAC addresses, hostnames (*e.g.*, computer names),

20  and domains associated with those machines. (Ex. B). The letter is also referenced in the Complaint.

21  (*See* FAC ¶¶ 154). Although they feign ignorance here, Defendants already have significant factual

22  information to understand Cadence's allegations and how the offending machines fall within their

23  alleged corporate boundaries. (*See* Alfaro Decl. ¶¶ 22-24). To the extent they need more information,

24  Defendants fail to explain why that cannot be accomplished through normal discovery. In fact, nearly

25  seven weeks ago, Cadence invited Defendants to discuss starting discovery early. (Ex. R). Instead,

26  Defendants delayed the process and now refuse to participate in discovery.

27  **IV.   <u>CONCLUSION</u>**

28    For the foregoing reasons, Defendants' motion should be denied.

25

DATED:  August 25, 2021           By:      */s/ Steve Papazian*

Guy Ruttenberg
Steve Papazian
RUTTENBERG IP LAW, A PROFESSIONAL
CORPORATION
1801 Century Park East, Suite 1920
Los Angeles, CA 90067
Telephone: (310) 627-2270
Facsimile: (310) 627-2260
guy@ruttenbergiplaw.com
steve@ruttenbergiplaw.com

*Attorneys for Plaintiff*

OPPOSITION TO MOTION TO DISMISS