1   EDWARD P. SANGSTER, Bar No. 121041
    edward.sangster@klgates.com
2   JASON N. HAYCOCK, Bar No. 278983
    jason.haycock@klgates.com
3   **K&L GATES LLP**
    Four Embarcadero Center, Suite 1200
4   San Francisco, CA 94111
    Telephone: +1 415 882 8200
5   Facsimile: +1 415 882 8220

6   JEFFREY C. JOHNSON, *pro hac vice*
    jeff.johnson@klgates.com
7   PAUL J. BRUENE, *pro hac vice*
    paul.bruene@klgates.com
8   **K&L GATES LLP**
    925 Fourth Avenue, Suite 2900
9   Seattle, WA 98104
    Telephone: + 1 206 623 7580
10  Facsimile: + 1 206 623 7022

11  *Attorneys for Defendants Syntronic AB, Syntronic*
    *Research and Development USA Inc., and*
12  *Syntronic (Beijing) Technology R&D*
    *Center Co., LTD.*

13

14              IN THE UNITED STATES DISTRICT COURT

15                 NORTHERN DISTRICT OF CALIFORNIA

16                     SAN FRANCISCO DIVISION

17

18  CADENCE DESIGN SYSTEMS, INC., *a*          Case No.:  5:21-cv-3610-SI
    *Delaware Corporation*,
19                                             **DEFENDANTS' REPLY BRIEF IN**
                      Plaintiff,               **SUPPORT OF MOTION TO QUASH**
20                                             **SERVICE OF SUMMONS AND DISMISS**
    vs.                                        **FIRST AMENDED COMPLAINT FOR (1)**
21                                             **DEFECTIVE SERVICE; (2) LACK OF**
    SYNTRONIC AB, *a Publikt Aktiebolag*,      **PERSONAL JURISDICTION; AND (3)**
22  SYNTRONIC RESEARCH AND                     **FAILURE TO STATE A CLAIM;**
    DEVELOPMENT USA INC*., a California*        **ALTERNATIVELY, MOTION FOR**
23  *Corporation*, SYNTRONIC (BEIJING)         **MORE DEFINITE STATEMENT**
    TECHNOLOGY R&D CENTER CO., LTD*., a*
24  *Chinese Corporation*,                     Judge:  Hon. Susan Illston
                                               Hearing Date:   September 17, 2021
25                    Defendants.              Hearing Time:  10:00 a.m.
                                               San Francisco Courthouse, Courtroom 1, 17th
26                                             Floor

27

28

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ................................................................................................. 1

II.    ARGUMENT ...................................................................................................... 2

    A.     Cadence Failed to Effect Proper Service on Syntronic Beijing ............................. 2

    B.     Plaintiff Cannot Establish Personal Jurisdiction Over Syntronic AB and Syntronic Beijing ................................................................................................................... 3

        1.     Plaintiff's Purposeful Direction Theory of Jurisdiction Fails .................... 3

        2.     Plaintiff's Alter Ego Theory of Jurisdiction Fails ...................................... 6

            a.     Cadence's unity of interest allegations are insufficient ................. 7

                i.     Plaintiff's "global branding" allegations are insufficient.... 7

                ii.     Plaintiff's common ownership allegations are insufficient. 8

                iii.     Plaintiff's shared office space allegations are insufficient.. 9

                iv.     Plaintiff's commingling allegations are insufficient ........ 10

            b.     Plaintiff's "inequitable result" allegations are insufficient .......... 10

        3.     Plaintiff's Forum Selection Clause Theory of Jurisdiction Fails .............. 11

    C.     Cadence Failed to State Plausible Claims to Relief ............................................ 12

        1.     Plaintiff Failed to Plausibly Plead the Territoriality Requirement for Its Copyright Claims ................................................................................... 12

        2.     Plaintiff Improperly "Lumped" Defendants Together ............................. 13

    D.     The Court Should Order a More Definite Statement ........................................... 14

III.   PERSONAL JURISDICTION AND TERRITORIALITY ARE THRESHOLD ISSUES THE COURT SHOULD RESOLVE FIRST ......................................................... 14

IV.    CONCLUSION ................................................................................................. 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adobe Sys. Inc. v. Blue Source Group, Inc.,*
  125 F. Supp. 3d 945 (N.D. Cal. 2015) ................................................... 6

*Allarcom Pay Television, Ltd. v. Gen. Instrument Corp.,*
  69 F.3d 381 (9th Cir. 1995)................................................................. 13

*Alpine View Co. Ltd. v. Atlas Copco AB,*
  205 F.3d 208 (5th Cir.2000)................................................................. 10

*American Tel. & Tel. Co. v. Compagnie Bruxelles Lambert,*
  94 F.3d 586 (9th Cir.1996)............................................................... 8, 14

*Amini v. Pro Custom Solar LLC,*
  No. SACV172244JVSSKX, 2018 WL 6133632 (C.D. Cal. Aug. 13, 2018)........................ 6

*Apple Inc. v. Allan & Associates Limited,*
  445 F.Supp.3d 42 (N.D. Cal. 2020) ....................................................... 11

*Ashcroft v. Iqbal,*
  556 US 662 (2000)....................................................................... 12, 13

*Avaya Inc. v. Pearce,*
  Case No. 19-cv-00565-SI, 2019 WL 6311383 (N.D. Cal. Nov. 25, 2019)........................ 5, 6

*Axiom Foods, Inc. v. Acerchem International, Inc.,*
  874 F.3d 1064 (9th Cir. 2017)......................................................... 4, 5, 6

*BenQ Am. Corp. v. Forward Elec. Co., Ltd.,*
  2005 WL 3445629 (N.D. Cal. Dec. 15, 2005) ............................................... 7

*Browning-Ferris Industries of Illinois, Inc. v. Ter Maat,*
  195 F.3d 953 (7th Cir. 1999).............................................................. 11

*In re Century Aluminum Co. Securities Litigation,*
  729 F.3d 1104 (2013).................................................................... 13

*City and County of San Francisco v. Purdue Pharma L.P.,*
  491 F. Supp. 3d 610 (2020)............................................................. 8, 11

*Danjaq, S.A. v. MGM/UA Comms., Co.,*
  773 F. Supp. 194 (C.D. Cal. 1991)....................................................... 13

*Data Disc., Inc. v. Sys. Tech. Assocs., Inc.,*
  557 F.2d 1280 (9th Cir. 1977)....................................................... 7, 8, 12

*Doe v. Unocal Corp.*,
  248 F.3d 915 (9th Cir. 2001), *abrogated on other grounds by Williams v. Yamaha Motor Co.*, 851 F.3d 1015 (9th Cir. 2017) ............................................................................... 10

*Gerritsen v. Warner Bros. Entm't Inc*,
  116 F. Supp. 3d 1104 (C.D. Cal. 2015) .................................................................................. 9

*Hungerstation LLC v. Fast Choice LLC*,
  Fed.Appx., 2021 WL 1697886 (9th Cir. 2021)................................................................... 4, 6

*Khachatryan v. Toyota Motor Sales USA, Inc.*,
  578 F. Supp. 2d 1224 (C.D. Cal. 2008) ................................................................................. 4

*Litecubes, LLC v. Northern Light Products, Inc.*,
  523 F. 3d 1353 (Fed. Cir. 2008)........................................................................................... 12

*Moody v. Charming Shoppes of Delaware, Inc.*,
  2008 WL 2128955 (N.D. Cal. May 20, 2008) ....................................................................... 9

*New Name, Inc. v. Walt Disney Co.*,
  2007 WL 5061697 (C.D. Cal. Dec. 3, 2007) ....................................................................... 14

*Payoda, Inc. v. Photon Infotech, Inc.*,
  2015 WL 4593911 (N.D. Cal. July 30, 2015)................................................................. 10, 11

*Ranza v. Nike, Inc.*,
  793 F.3d 1059 (9th Cir. 2015)............................................................................................. 8, 9

*S.E.C. v. Homa*,
  No. 99 C 6895, 2006 WL 3267645 (N.D. Ill. Nov. 6, 2006) ................................................. 7

*Scott v. Breeland*,
  792 F.2d 925 (9th Cir. 1986)................................................................................................... 7

*Shropshire v. Canning*,
  2011 WL 90136 (N.D. Cal. Jan. 11, 2011) .......................................................................... 13

*Shropshire v. Canning*,
  809 F.Supp.2d 1139 (N.D. Cal. 2011) ................................................................................. 13

*Smith v. Bank of Am.*,
  2016 WL 7444879 (C.D. Cal. May 11, 2016) ...................................................................... 14

*Snukal v. Flightways Mfg. Inc.*,
  23 Cal. 4th 754 (2000) ......................................................................................................... 12

*Sound N Light Animatronics Co., LTD. v. Cloud b, Inc.*,
  2016 WL 7635950 (C.D. Cal. Nov. 10, 2016)...................................................................... 13

*Stewart v. Screen Gems-EMI Music, Inc.*,
  81 F. Supp. 3d 938 (N.D. Cal. 2015) ..................................................................................... 9

*Title Guarantee & Trust Co. v. Hammond Lumber Co.*,
    62 Cal. App. 245 (1923) ....................................................................................... 12

*UpdateMe Inc. v. Axel Springer SE*,
    No. 17-CV-05054-SI, 2018 WL 11352694, at *2 (N.D. Cal. Mar. 1, 2018) ........................... 3

*U.S. v. Pangang Group Co., Ltd.*,
    879 F. Supp. 2d 1052 (N.D. Cal. 2012) ................................................................. 9

*Uniloc 2017 LLC v. H&R Block, Inc.*,
    No. 19 Civ. 1149, 2019 WL 8219781 (C.D. Cal. Dec. 23, 2019) ........................................ 10

*Vander Music v. Azteca Int'l Corp.*,
    2011 WL 13177301 (C.D. Cal. Jan. 21, 2011) ......................................................... 13

*In re Western States Wholesale Natural Gas Litigation*,
    605 F.Supp.2d 1118 (D. Nev. 2009) ..................................................................... 11

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO QUASH, TO DISMISS, OR FOR MORE DEFINITE
STATEMENT; CASE NO. 21-CV-3610-SI

1

## I.     **INTRODUCTION**

2        Plaintiff's opposition makes clear what its two separate complaints sought to obscure—

3   Plaintiff is asking this Court to resolve a copyright dispute between Plaintiff and a Chinese company

4   based on alleged conduct in China through the alleged use of computers located in China.  That

5   dispute is not actionable in this Court.  In an attempt to avoid that obstacle, Plaintiff contrives alter

6   ego allegations – for which the overwhelming weight of authority deems deficient on their face –

7   against legally separate and distinct U.S. and Swedish companies in a bid to manufacture jurisdiction

8   over the Chinese company and create the appearance of a dispute actionable in this Court.  The Court

9   should grant Defendants' motion notwithstanding Plaintiff's arguments for the following reasons.

10        First, Plaintiff has not properly served Syntronic (Beijing) Technology R&D Center Co.,

11   LTD. ("Syntronic Beijing").  Although Plaintiff resorts to pejoratives, and accuses Syntronic Beijing

12   of "service games" and "litigating service *ad naseum* [sic]", Plaintiff does not dispute that Syntronic

13   Beijing has no designated agent in the U.S., that Syntronic Research and Development USA Inc.

14   ("Syntronic USA") is not Syntronic Beijing's subsidiary, and that no case has upheld service on a

15   sister corporation or other entity that was not acting as the foreign corporation's agent in California.

16        Second, Plaintiff has failed to establish personal jurisdiction over Syntronic AB and Syntronic

17   Beijing.  Plaintiff's purposeful direction theory fails because Plaintiff cannot establish Syntronic

18   AB's and Syntronic Beijing's contacts with the forum, and Ninth Circuit authority expressly rejects

19   Plaintiff's attempt to rely on its own forum contacts plus foreseeable harm.  Plaintiff's alter ego

20   theory fails because Defendants have submitted declarations demonstrating their legal separateness

21   and Plaintiff relies on nothing more than thin allegations that, even if true, simply fail to establish a

22   *prima facie* case as a matter of law.  Plaintiff's forum selection clause theory fails because its mere

23   allegations of "actual authority," "ratification," and "ostensible authority" cannot overcome

24   Defendants' declarations that they did not enter, authorize, or ratify any agreement with Plaintiff.

25        Third, Plaintiff failed to state plausible claims to relief as to any Defendant.  U.S. Copyright

26   law does not apply extraterritorially and territoriality is an essential element of Plaintiff's copyright

27   claims.  Despite alleged tracking technology that allows Plaintiff to know when and where its

28   software is purportedly used, Plaintiff relies on nothing more than a single, artful and conclusory

sentence devoid of factual support. That fails the plausibility standard. Additionally, Plaintiff offers no justification for why, despite its tracking technology, it continues to improperly lump all Defendants together without identifying which Defendant committed what act, when, and where.

Fourth, the Court should, in the alternative, require Plaintiff to provide a more definite statement and definitively and plausibly plead a completed act of a copyright violation in the United States and definitively plead which Defendant is purported to have committed which act and when.

Finally, the Court should reject Plaintiff's request to ignore defects in service, personal jurisdiction, and territoriality until a trial on the merits. There are serious questions whether this Court lacks jurisdiction over two of the defendants and whether Plaintiff can maintain an action in this Court. The Court should not force the defendants to proceed to a trial on the merits if Plaintiff cannot allege plausible facts at the pleading stage that, if true, would warrant such a trial.

## II.     ARGUMENT

### A.     Cadence Failed to Effect Proper Service on Syntronic Beijing

Plaintiff argues that it properly served Syntronic Beijing by delivering summonses to an individual at Syntronic USA and an individual at CT Corp. Plaintiff argues that those individuals are "representative[s] so integrated with the organization that they will know what to do with the papers." But the evidence establishes that neither individual is an agent for Syntronic Beijing, and neither is a representative or employee of Syntronic Beijing's "organization." Dkt. No. 35. Plaintiff has submitted no evidence to the contrary.

Plaintiff cites *Espinosa v. U.S. Aid Funds, Inc.*, 553 F.3d 1193, 1203 (9th Cir. 2008), apparently for the proposition that a summons need not be properly served as long as a defendant receives actual notice of a pending action. Plaintiff's reliance on *Espinosa* is misplaced. *Espinosa* was a bankruptcy case in which a student loan creditor *was* properly served with the debtor's Chapter 13 petition and the proposed plan, which warned the creditor that its rights might be impaired if it failed to object to the plan. *Id.* at 1200, 1200 n.4 ("the creditor in our case (as in those other cases) *did get proper notice* of the proposed Chapter 13 plan, and so knew perfectly well that if the plan were approved and satisfied, the debtor would be granted a discharge of the student debt listed in the plan.") (emphasis added). The creditor failed to object.

2

Years following approval of the plan and discharge of the debtor, and after accepting the payments during the plan's life, the creditor "acted as if the whole thing never happened." *Id.* at 1201. The creditor attempted to set aside the final judgment of discharge based on the debtor's failure to commence and serve a required adversary proceeding. The question was whether, notwithstanding the failure to commence and serve an adversary proceeding, proper service of the Chapter 13 petition and plan were sufficient to put the creditor on notice of the discharge. The Ninth Circuit held that it was and that it satisfied due process. *Espinosa* did not address whether a summons was properly served. It certainly did not hold that service of a summons was unnecessary, and, unsurprisingly, it did not sweep away Rule 4's requirements for service of a summons.

Next, Plaintiff argues that *Khachatryan v. Toyota Motor Sales USA, Inc.*, 578 F. Supp. 2d 1224 (C.D. Cal. 2008) stands for the proposition that service is proper on an undesignated agent. It does not. It stands for, at most, the proposition that service on a parent company may be effected through a subsidiary. Syntronic USA is not Syntronic Beijing's subsidiary.

Finally, Plaintiff argues service was proper because Defendants are alter egos of one another. Plaintiff merely assumes the truth of its allegations. The Court has made no such finding, Defendants are not alter egos of one another, and Plaintiff cannot not even plead a *prima facie* case that they are.

### B.    Plaintiff Cannot Establish Personal Jurisdiction Over Syntronic AB and Syntronic Beijing

#### 1.    Plaintiff's Purposeful Direction Theory of Jurisdiction Fails

Plaintiff's attempt to sweep aside *Axiom Foods, Inc. v. Acerchem International, Inc.*, 874 F.3d 1064 (9th Cir. 2017) is unavailing. After reciting the facts in that case, Plaintiff baldly asserts that it "alleges (and submits evidence showing) much more than the fortuitous distribution of a single email to California recipients." Dkt. No. 43 (Opp.), 14:19-20. But reviewing Plaintiff's evidence reveals just the opposite—that Plaintiff relies on contacts *even more* fortuitous and tenuous than the contacts in *Axiom Foods* that were held insufficient.

Plaintiff could muster no more than *two* computers that purportedly accessed *two* IP addresses that, according to "research" by Plaintiff's Director of License Compliance, "pertain" or "correspond" to Long Beach, California. Dkt. No. 43-1, ¶ 18. Of the sixty-four computers at issue,

3

only two of them are alleged to have had any contact with California whatsoever, and the only purported contact was some unclear, transitory connection to a California IP address. *Id.* Similarly, in *Axiom Foods*, ten of the newsletter's 343 recipients were located in California. *Axiom Foods*, 874 F.3d at 1070. That is a nearly identical proportion of contacts as was at issue in *Axiom Foods* – approximately 3%[1] – which the Ninth Circuit held to be too fortuitous to satisfy the purposeful direction test as a matter of law. *Id.* at 1070-71.

But Plaintiff's evidence is even weaker than the evidence in *Axiom Foods*. The two California IP addresses are proxy/VPN servers assigned to a web hosting company, not the type of IP address that would indicate that the user was operating a computer physically located in California, such as an IP address with a commercial or residential Internet service provider. Declaration of Michael Andrew in Support of Reply ("Andrew Decl."), ¶¶ 10-12, 15. This means that *neither* California IP address reflects the point of origin of the data flow – *i.e.*, the location of the computer from which Plaintiff's tracking technology "phoned home" upon use of the software – and instead reflects only a mere transfer point in that data flow. *Id.* at . ¶¶ 10, 15 16. Under these circumstances, it is almost certain that the computers Mr. Alfaro identified were never physically located in California and were instead physically located *outside of* the United States communicating data that only passed through a server in California in a transitory manner. *Id.* at ¶¶ 17-19. Moreover, the user(s) of those two computers would typically have no way of knowing that they went through a proxy/VPN IP address in California, *id.* at ¶ 17, so they could not have purposefully directed activity there. The two computer's transient and intermediary contact with a California IP address on a proxy/VPN server is the very definition of "random, fortuitous, and attenuated." *See Hungerstation LLC v. Fast Choice LLC*, -- Fed. Appx. ---, 2021 WL 1697886, *2 (9th Cir. Apr. 29, 2021) ("Our circuit has never decided that personal jurisdiction is proper over a private foreign entity solely

---

[1] It is unclear whether the number of California contacts at issue in *Axiom Foods* was ten, or fourteen, or fifty-five. *See Axiom Foods*, 874 F.3d at 1070 ("No more than ten of the newsletter's recipients were physically located in California."), (newsletter sent to "[a]t least 55 recipients with companies in California, including 14 recipients with locations within Los Angeles County."). Assuming the lowest number, ten, those ten contacts with California represented 2.9% of the 343 recipients of the copyrighted works. Here, the two computers identified by Plaintiff as temporarily contacting California-based IP addresses similarly represent just 3.1% of the sixty-four computers at issue.

4

because that entity engaged in tortious conduct from a location outside of the United States by remotely accessing servers located in the United States.").

Attempting to avoid *Axiom Foods* and its application to these facts, Plaintiff directs the Court to three district court cases. But those cases either support Defendants or are distinguishable. First, Plaintiff relies on this Court's decision in *Avaya Inc. v. Pearce*, Case No. 19-cv-00565-SI, 2019 WL 6311383 (N.D. Cal. Nov. 25, 2019). That decision is consistent with *Axiom Foods* and supports Defendants. In *Avaya*, this Court found specific jurisdiction based on purposeful direction because the defendants (who resided in New Jersey, not outside of the U.S.) were not only former business partners with the California plaintiff, they were actively "*selling stolen licenses to California customers* while knowing [plaintiff ] was a resident of this District." *Id.* at *8 (emphasis). That is, consistent with *Axiom Foods's* instruction to look to "the defendant's 'own contacts' with the forum, not to the defendant's knowledge of a plaintiff's connections to a forum[,]" this Court relied on the sales of stolen licenses *specifically directed* to California customers. *Id.* Here, by contrast, the only evidence Plaintiff cites of Syntronic AB's and Syntronic Beijing's "*own contacts* with the forum" is some sort of transient and temporary connection to two proxy IP addresses located in California. Dkt. No. 43-1, ¶ 18. *Avaya*, like *Axiom Foods*, requires more.

Next, Plaintiff cites *Amini v. Pro Custom Solar LLC*, No. SACV172244JVSSKX, 2018 WL 6133632 (C.D. Cal. Aug. 13, 2018). That case also supports Defendants. Like *Avaya*, and unlike this case, the *Amini* court relied on evidence that defendant "conducts business in California," "intentionally sought to generate a number of [sales] leads from . . . California[,]" and provided its marketing vendor "with a list of specific California zip codes to target" for sales leads. *Id.* at *4-5.

Finally, Plaintiff cites *Adobe Sys. Inc. v. Blue Source Group, Inc.*, 125 F. Supp. 3d 945, 961 (N.D. Cal. 2015). *Adobe* predates *Axiom Foods*, and to the extent it relied on "individualized targeting" alone – *i.e.*, plaintiff's forum contacts plus foreseeable harm in the forum – as a basis for jurisdiction, it is inconsistent with *Axiom Foods* and should be disregarded. *See Axiom Foods*, 874 F.3d at 1070 ("individualized targeting may remain relevant to the minimum contacts inquiry, [but] it will not, on its own, support the exercise of specific jurisdiction, absent compliance with what *Walden* requires[,]" which is evidence of Defendants' "own contacts with the forum.").

5

Regardless, as with *Avaya* and *Amini*, the *Adobe* court also looked to defendant's own contacts with the forum, which included sales of infringing products directly into the forum. *Adobe*, 125 F. Supp. 3d at 960. There are no such allegations here, and the fact that two of sixty-four computers purportedly had some transitory connection to two California IP addresses on proxy/VPN servers falls well short of establishing the purposeful direction necessary for specific jurisdiction. *Hungerstation LLC*, 2021 WL 1697886, *2.

Moreover, to the extent the alleged use of Plaintiff's software occurred entirely outside of the United States, Plaintiff cannot establish that its claims "arise out of or result from" forum-related activities both because activities outside of the forum are not "forum-related" and Plaintiff cannot maintain an action under U.S. Copyright law for extraterritorial conduct.

In any event, it would be unreasonable and would not comport with notions of fair play and substantial justice to assert jurisdiction over Syntronic AB and Syntronic Beijing in this case. Both Defendants submitted uncontroverted evidence that they conduct no business in the U.S., sell no services or goods here, hold no property, have no bank accounts, have never initiated any lawsuits in any U.S. court, and are not even registered to conduct business in any one of the United States. *See BenQ Am. Corp. v. Forward Elec. Co., Ltd.*, 2005 WL 3445629, at *7-9 (N.D. Cal. Dec. 15, 2005) (personal jurisdiction "would not comport with fair play and substantial justice" over foreign defendants with highly attenuated connections to the United States).

### 2. Plaintiff's Alter Ego Theory of Jurisdiction Fails

Plaintiff makes two preliminary arguments. First, citing *S.E.C. v. Homa*, No. 99 C 6895, 2006 WL 3267645, at *8 (N.D. Ill. Nov. 6, 2006), Plaintiff argues that "jurisdiction of Syntronic US operates as jurisdiction over Syntronic Beijing and Syntronic AB" because Cadence alleges that "all Defendants operate as a single entity and are otherwise alter egos." Plaintiff merely begs the question. Although Cadence *alleges* an alter ego relationship between Defendants, unlike in *Homa*, the Court has not yet made any such finding. *Homa*, 2006 WL 3267645, at *8. Until and unless the Court makes such a finding, *Homa* is inapplicable.

Second, Plaintiff argues that it need not establish every alter ego factor and that Defendant's attack on its alter ego allegations is "structurally flawed." Dkt. No. 43 (Opp.), 17:11-18, 20:13-21.

6

Plaintiff is mistaken and misses the point. The point is that Defendants have submitted evidence controverting Plaintiff's alter ego allegations,[2] and Plaintiff was required to "come forward with facts, by affidavit or otherwise, supporting" its alter ego theory of personal jurisdiction. *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (citation omitted); *see also Data Disc., Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977) ("we may not assume the truth of allegations in a pleading which are contradicted by affidavit"). Plaintiff failed to meet that burden and instead rests on allegations that are not only controverted by Defendants' declaration, but are insufficient as a matter of law – individually and collectively – to establish alter ego.

a.    <u>Cadence's unity of interest allegations are insufficient</u>

i.    *Plaintiff's "global branding" allegations are insufficient*

Plaintiff cites its myriad allegations that Defendants market themselves as a single, global brand, arguing that these allegations are sufficient to demonstrate alter ego. Dkt. No. 43 (Opp.), 17:24-18:7. They are not. *See* Dkt. No. 32 (Mot.), 12:14-13:9.

Plaintiff cites a lone case in support of its position, *City and County of San Francisco v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610 (N.D. Cal. 2020). That case is inapplicable for at least two reasons. First, although the court acknowledged the parent's marketing as "[o]ne global brand," the court found that evidence indicative of alter ego *only* when considered "*in conjunction*" with substantial evidence of the parent company's control over the subsidiaries' "day-to-day activities" and the parent's "complete[] control[] [over] its subsidiaries' finances." *Id.* at 636-37 (emphasis added). That makes sense, as pervasive parental control over a subsidiaries' day-to-day activities is one of the primary indicia of alter ego. *See, e.g., Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015) (explaining that the alter ego "test envisions pervasive control over the subsidiary, such as when a parent corporation "dictates every facet of the subsidiary's business—from broad policy decisions to routine matters of day-to-day operation."). But there are no such allegations here. *See* Dkt. No. 26 (FAC), generally (no allegations of parental control over "day-to-day" activities), ¶ 48

---

[2] Plaintiff attempts to create the impression that its various allegations are undisputed by merely using some version of the word "uncontroverted" approximately eighteen times. Plaintiff's rote repetition does not make it so. Clearly, to the extent Plaintiff's allegations are inconsistent with Defendants' supporting declarations, those allegations *are* controverted. *Data Disc, Inc.*, 557 F.2d at 1284.

7

(only finance-related allegation that Defendants "submit financial statements and pay taxes on a consolidated basis.").  In fact, the only evidence on that point is that Defendants do *not* control one another's day-to-day activities or finances.  Dkt. Nos. 33-35, 41.  That evidence is uncontroverted.

Second, to the extent that *Purdue Pharma* stands for the proposition that marketing separate affiliated companies as one global brand is indicative of alter ego, it is an outlier against the vast weight of authority, and Defendants request that the Court view it accordingly.  *See* Dkt. No. 32 (Mot.), 12:14-13:9 (collecting and citing cases).

Finally, the legal landscape on this issue is no surprise to Plaintiff, as it organizes and markets itself in a nearly identical way.  For example, Plaintiff represents to the United States government that it "conduct[s] a *substantial portion* of [its] operations through [its] subsidiaries," but that "[e]ach subsidiary is a *distinct legal entity*[.]"  Declaration of Jason N. Haycock in Support of Reply ("Haycock, Decl."), Ex. 1 (Cadence SEC 10-Q), p.45 of 10-Q pagination (emphasis added).  Yet, to the consuming public, Cadence portrays itself as "*One* Cadence-*One* Team," that was "founded in 1988," is "Headquartered in San Jose," while "operating in 21 countries [with] 26 global R&D centers," and is made up of "9,000 employees."  *Id.* at Exs. 2-4 (highlighted portions of Cadence Marketing Materials) (emphasis added).  Irony aside, as the weight of authority makes clear, courts overwhelmingly reject alter ego allegations based on marketing as a single brand, and Plaintiff's arguments to the contrary ring hollow and are without merit.

                        *ii.*     *Plaintiff's common ownership allegations are insufficient*

Next, Plaintiff cites a hodgepodge of allegations that purportedly demonstrate that Syntronic AB controls Syntronic Beijing and Syntronic USA.  Dkt. No. 43 (Opp.), 18:8-17.  Plaintiff fails to cite a single case that these allegations are indicative of an alter ego relationship because they are not. *See Stewart v. Screen Gems-EMI Music, Inc.*, 81 F. Supp. 3d 938, 956 (N.D. Cal. 2015) ("it is well-settled that common ownership is not dispositive[,]" and granting motion to dismiss in part upon finding that common equitable ownership, even when coupled with two other factors that weighed in favor of alter ego, was insufficient); *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1074 (9th Cir. 2015) (common human resource polices not indicative of alter ego and finding that although "[s]ome employees and management personnel move between the entities, [] that does not undermine the

entities' formal separation."); *U.S. v. Pangang Group Co., Ltd.*, 879 F. Supp. 2d 1052, 1067 (N.D. Cal. 2012) (the fact that a subsidiary's board of directors included representatives from parent companies "is not sufficient to establish the requisite control to establish an alter-ego relationship"); *Gerritsen v. Warner Bros. Entm't Inc*, 116 F. Supp. 3d 1104, 1140 (C.D. Cal. 2015) ("the fact that a parent and subsidiary share the same office location, or the same website and telephone number, does not necessarily reflect an abuse of the corporate form and existence of an alter ego relationship.").

And despite the fact that Plaintiff submits consolidated financial statements to the Securities and Exchange Commission, Haycock Decl., Ex. 1 (Cadence SEC 10-Q, highlighted headings of consolidated financial statements), Plaintiff argues that if Defendants do the same, it somehow demonstrates excessive control and an alter ego relationship. Dkt. No. 43 (Opp.), 18:16-17. As Plaintiff is well aware, it does not. *See American Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 591 (9th Cir. 1996) (finding no alter ego and explaining that consolidated tax returns "hardly demonstrates" domination of subsidiary by parent); *Uniloc 2017 LLC v. H&R Block, Inc.*, No. 19 Civ. 1149, 2019 WL 8219781, at *2 (C.D. Cal. Dec. 23, 2019) ("courts in this District have concluded that consolidated financial statements are insufficient to satisfy the alter ego test").

### iii. Plaintiff's shared office space allegations are insufficient

Plaintiff next relies on various printouts from a Syntronic website and allegations in its First Amended Complaint regarding shared offices spaces, statements about Syntronic Beijing offering a "[r]elaxed Nordic working environment" and about Syntronic USA and Syntronic Beijing being "branches" of Syntronic AB. Dkt. No. 43 (Opp.), 18:18-26. Plaintiff fails to cite a single case that these allegations are indicative of an alter ego relationship. They are not. *See, e.g.*, *Moody v. Charming Shoppes of Delaware, Inc*., 2008 WL 2128955, at *3 (N.D. Cal. May 20, 2008) ("[g]eneric language on [a company's] website and in its press releases simply do not rise to the day-to-day control required to impute the subsidiary's contacts to the parent"); *Payoda, Inc. v. Photon Infotech, Inc.*, 2015 WL 4593911, at *3 (N.D. Cal. July 30, 2015) (website "marketing puffery carries no weight in establishing whether a parent and its subsidiary are in fact alter egos"); *Doe v. Unocal Corp.*, 248 F.3d 915, 928 (9th Cir. 2001), *abrogated on other grounds by Williams v. Yamaha Motor*

*Co.*, 851 F.3d 1015 (9th Cir. 2017), ("references . . . to subsidiaries . . . as divisions of the parent company do not establish the existence of an alter ego relationship.").

*iv.    Plaintiff's commingling allegations are insufficient*

Plaintiff argues that Defendants commingle assets and responsibility for debts based on allegations that they share a website, have intercompany accounts, and Syntronic AB loaned Syntronic USA and Syntronic Beijing money.  Dkt. No. 43 (Opp.), 19:1-9.  Again, Plaintiff fails to cite a single case these allegations are indicative of an alter ego relationship.  They are not.  *See Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 219 (5th Cir.2000) ("[t]he existence of intercorporate loans does not establish the requisite dominance[.]"); *In re Western States Wholesale Natural Gas Litigation*, 605 F.Supp.2d 1118, 1133 (D. Nev. 2009) (a parent's documented financing to its subsidiaries is not indicative of an alter ego relationship).

b.    Plaintiff's "inequitable result" allegations are insufficient

Plaintiff failed to rebut Defendants' authority or their arguments.  Instead, Plaintiff pivots back to its marketing allegations, arguing that it would be inequitable and, apparently, "sanction a fraud," to respect Defendants' corporate separateness because they, like Plaintiff, market themselves as a single, global brand.  Dkt. No. 43 (Opp.), 21:1-7.  As outlined above, even if true, there is nothing improper about that fact, and Plaintiff fails to cite authority to the contrary.

Plaintiff's "shell game" allegation remains deficient.  *Id.* at 21:7-13.  As Plaintiff's own authority makes clear, a "shell game" occurs only where "an entity deflects liability on to *shell corporations* to avoid liability[.]" *Purdue Pharma L.P.*, 491 F. Supp. 3d at 635 (emphasis added).  Plaintiff does not allege, nor could it, that a single one of the Defendants is a "shell corporation."  The evidence demonstrates they are not.  Dkt Nos. 33-35, 41.  Rather, they are well-established going concerns and Plaintiff failed to show that any liable Defendant cannot answer Plaintiff's claims or pay a judgment.  *Apple Inc. v. Allan & Associates Limited*, 445 F.Supp.3d 42, 56 (N.D. Cal. 2020).

1    Finally, Plaintiff's allegations that Syntronic USA and Syntronic Beijing are undercapitalized

2    are false and directly controverted by Defendants' declarations.[3]  Dkt. Nos. 33-35, 41.

3                  **3.    Plaintiff's Forum Selection Clause Theory of Jurisdiction Fails**

4         Defendants submitted evidence that they did not enter, authorize, or ratify any Software

5    License Management Agreement with Plaintiff.  Dkt. Nos. 41 (Östlund Decl.), ¶¶ 18-20; 34 (Jansson

6    Decl.), ¶¶ 21-23; (Zhao Decl.), ¶¶ 21-23.  Thus, no Defendant agreed to any forum selection clause.

7    *Id.*  Plaintiff's mere allegations and attorney argument regarding "actual authority," "ratification,"

8    and "ostensible authority" cannot overcome Defendants' evidence.  *Data Disc., Inc.*, 557 F.2d at

9    1284 ("we may not assume the truth of allegations in a pleading which are contradicted by

10   affidavit").  And to the extent Mr. Alfaro purports to offer testimony on whether any Defendant

11   authorized or ratified agreement to an SLMA, he does not claim to have personal knowledge on that

12   issue (nor could he) and he offers nothing more than speculation.  Dkt. No. 43-1 (Alfaro Decl.), ¶ 14.

13        The fact is, Plaintiff has adopted a business model that casually permits anonymous

14   individuals to accept contract terms, without Plaintiff conducting any diligence or confirmation as to

15   who the contracting party is, whether that individual is acting on behalf of another entity, or whether

16   it is authorized to bind anyone other than the person who "clicks" on the accept button.  Having

17   elected to contract with, and make its products available to, anonymous individuals after conducting

18   zero investigation as to who they are, or who they represent, Plaintiff cannot skip over the

19   fundamental requirement to prove that a person purporting to contract on behalf of a corporation was

20   authorized to do so.  *Snukal v. Flightways Mfg. Inc.*, 23 Cal. 4th 754, 779 (2000); *Title Guarantee &*

21   *Trust Co. v. Hammond Lumber Co.*, 62 Cal. App. 245, 254-55 (1923).

---

[3] Moreover, it is a questionable proposition that California has ever actually held or currently holds the position that "undercapitalization alone" is sufficient to pierce the veil, and such a position would be inconsistent with the long standing principals underlying the various piercing doctrines. *See* Presser, Stephen B., Piercing the Corp. Veil § 2:5 (2020 Ed.) (providing detailed analysis and compelling arguments as to why such interpretations of California law are incorrect); *see also Browning-Ferris Industries of Illinois, Inc. v. Ter Maat*, 195 F.3d 953, 961 (7th Cir. 1999) ("Undercapitalization is rarely if ever the sole factor in a decision to pierce the corporate veil . . . and we think is best regarded simply as a factor helpful in identifying a corporation as a pure shell[.]") (citing William P. Hackney & Tracey G. Benson, "Shareholder Liability for Inadequate Capital," 43 U. Pitt. L. Rev. 837, 885–87 (1982)).  In any event, California law will not exclusively apply to any substantive evaluation of Plaintiff's alter ego claims.

11

**C.    Cadence Failed to State Plausible Claims to Relief**

**1.    Plaintiff Failed to Plausibly Plead the Territoriality Requirement for Its Copyright Claims**

Plaintiff's primary argument is that "notice" pleading does not require it to plead factual content, such as the IP addresses, in support of its claim.  Dkt. No. 43 (Opp.), 1:25-27, 22:6.  Plaintiff is mistaken.  Plaintiff must do more than merely provide "notice" of its claim.  It must provide "notice" of a claim that has "*facial plausibility*," which requires *factual specificity* in support of that claim.  *Ashcroft v. Iqbal*, 556 US 662, 678 (2000) (emphasis added).

"The level of factual specificity needed to" demonstrate facial plausibility "will vary depending on the context."  *In re Century Aluminum Co. Securities Litigation*, 729 F.3d 1104 (2013) (discussing the contextual requirements in a securities case) (citing  *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir.2008)).  In this context, territoriality is treated as an element of Plaintiff's claim.  *Litecubes, LLC v. Northern Light Products, Inc.*, 523 F. 3d 1353, 1368 (Fed. Cir. 2008); *Shropshire v. Canning*, 809 F.Supp.2d 1139, 1144 (N.D. Cal. 2011).  Thus, Plaintiff must plead territoriality with enough factual support to satisfy the plausibility standard.  Plaintiff failed to do that.  In fact, Plaintiff's opposition now appears to concede that the alleged copyright violations at issue in this case occurred only extraterritorially.  Dkt. No. 43 (Opp.), 21:5-7 (accusing Defendants of attempting to insulate "infringement in China"); Dkt. No. 43-1 (Alfaro Decl.), ¶ 18 (identifying only two computers as having had any contact with the United States and only via proxy IP addresses).

Regardless, Plaintiff cannot rely on a single, vague and ambiguous, threadbare, conclusory statement that computers "used, accessed, *and/or* copied" Cadence Software in California.  Dkt. No. 26 (FAC), ¶¶ 116, 117; *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (quoting *Twombly*, 550 U.S. at 555).  Until and unless Plaintiff can plead a completed act of a copyright violation – either infringement or circumvention[4] – within the United States that is *supported with enough factual*

---

[4] Cadence wrongly asserts that Defendants "do not challenge Plaintiff's allegations regarding its DMCA claim."  Dkt. No. 43 (Opp.), 22:22-23.  Of course they do.  As the motion to dismiss makes clear, Defendants challenge any and all allegations of "copyright violations," whether via copyright infringement or circumvention of copyright protection systems.  *E.g.*, Dkt. No. 32 (Mot.), 19:12-20,

*matter* to nudge its claim "across the line from conceivable to plausible[,]" *id.* at 680, Plaintiff cannot

state claims to relief under U.S. copyright law and those claims should be dismissed. *Allarcom Pay*

*Television, Ltd. v. Gen. Instrument Corp.*, 69 F.3d 381, 387 (9th Cir. 1995); *Shropshire v. Canning*,

2011 WL 90136, at *3-4 (N.D. Cal. Jan. 11, 2011); *Sound N Light Animatronics Co., LTD. v. Cloud*

*b, Inc.*, 2016 WL 7635950, at *5 (C.D. Cal. Nov. 10, 2016); *Danjaq, S.A. v. MGM/UA Comms., Co.*,

773 F. Supp. 194, 202-03 (C.D. Cal. 1991); *Vander Music v. Azteca Int'l Corp.*, 2011 WL 13177301,

at *3-4 (C.D. Cal. Jan. 21, 2011); *New Name, Inc. v. Walt Disney Co.*, 2007 WL 5061697, at *2-4

(C.D. Cal. Dec. 3, 2007).

### 2.    Plaintiff Improperly "Lumped" Defendants Together

Plaintiff does not dispute, nor could it, that its allegations merely state that "Syntronic" did

this or "Sytronic" did that without specifying which Syntronic entity actually committed which act.

Dkt. No. 26 (FAC), ¶¶ 137, 177, 181, 125, 198, 213.

First, Plaintiff attempts to "eliminate all doubt" by "clarify[ying]" that "each Count is asserted

'Against All Defendants.'"  Dkt. No. 43 (Opp.), 23:14-15.  Plaintiff's mere shift in semantics offers

no clarity and does not change the fact that Plaintiff still alleges that "all Defendants did everything"

while failing to identify which Defendant committed what act and when.  *See Smith v. Bank of Am.*,

2016 WL 7444879, at *2, *2 n.3 (C.D. Cal. May 11, 2016) (dismissing entire complaint because "the

allegations in the Complaint state that 'Defendants' committed the allegedly improper acts, but the

Complaint does not clearly delineate which Defendants committed which act[,]" and rejecting

plaintiff's argument that such pleading was necessary because all defendants were liable via

conspiracy allegations).

Second, Plaintiff cites a number of cases in effort to justify its improper lumping by arguing

that there is "no categorical rule against jointly referencing Defendants."  *Id.* at 23:23.  The difference

with those cases, of course, is that Plaintiff here has alleged the use of its tracking technology that,

purportedly, allows it to identify which Defendant purportedly used its software, when, and where.

---

19 n.6, 20:20-23, 21:8-10 (citing territoriality requirements for U.S. Copyright law and arguing that
Cadence failed to plausibly allege any type of "copyright violation").

Dkt. No 26 (FAC), ¶¶ 111-113, 138-145.  Plaintiff cannot rely on its tracking technology to advance its claims and suddenly plead ignorance when challenged to comply with federal pleading standards.

### D.    The Court Should Order a More Definite Statement

As outlined above, Plaintiff knows which Defendant committed which act, when, and where. Plaintiff attempts to distract from that fact by accusing Defendants of "feign[ing] ignorance" because Plaintiff provided them information on the sixty-four purportedly "offending" machines.  Dkt. No. 43 (Opp.), 25:21-23.  The problem is that Plaintiff sat on its hands for four years before raising this issue with Defendants, making it exceedingly difficult to discern what Plaintiff alleges happened and when. Dkt. No. 43-10 (September 21, 2020 letter alleging infringement since 2016).  Plaintiff has that information in its possession and it should plead it to put Defendants on proper notice.  It is curious that Plaintiff refuses to do so.

### III.    PERSONAL JURISDICTION AND TERRITORIALITY ARE THRESHOLD ISSUES THE COURT SHOULD RESOLVE FIRST

In two separate complaints now, Plaintiff has artfully pled its case to avoid explicit allegations of copyright violations within the United States.  Dkt. No. 1 (Compl.), ¶ 34; Dkt. No. 26 (FAC), ¶ 116.  Plaintiff's opposition finally makes clear why—there have been none.  And although it is treated as an element of Plaintiff's claims at this stage, territoriality, along with personal jurisdiction, has serious implications as to whether Plaintiff's action can be maintained in this Court.

When challenged to come forward with evidence supporting its claims of copyright violations within the United States and on the foreign Defendants' contacts with the forum, Plaintiff could muster no more than *two* computers that purportedly accessed *two* IP addresses that, according to "research" by Plaintiff's Director of License Compliance, "pertain to" or "correspond to" Long Beach, California.  Dkt. No. 43-1 (Alfaro Decl.), ¶ 18.  Apparently, the remaining sixty-two computers that are alleged to have used Plaintiff's software over the last five years have no connection at all to the forum or to the United States.  And even the two identified computers were almost certainly located outside of the United States as well.  Andrew Decl., ¶¶ 16-19.  Thus, not only is there no basis for personal jurisdiction over the foreign Defendants, there appears to be no basis for Plaintiff to bring an action in this Court for conduct as much as five years old that occurred

14

1    entirely outside of the United States.  Indeed, Plaintiff's opposition appears to tacitly concede that.

2    Dkt. No. 43 (Opp.), 21:5-7 (accusing Defendants of trying to insulate "infringement in China").

3            In an effort to avoid these issues, Plaintiff appeals to the merits in an attempt to establish

4    quasi-personal jurisdiction through its artful pleading and a request to delay resolution of personal

5    jurisdiction until trial.  Dkt. No. 43 (Opp.), 7:8-13, 22:3-9.  That is improper, and the Court should

6    not allow Plaintiff to conflate unproven liability with personal jurisdiction.[5]  *See Compagnie*

7    *Bruxelles Lambert*, 94 F.3d at 590-91 ("Even if [defendant] would be liable . . . [plaintiff] may not

8    use liability as a substitute for personal jurisdiction.  Even if the requirement of personal jurisdiction

9    allows a parent corporation to avoid liability [and thus under cut federal policy] . . . liability is not to

10   be conflated with amenability to suit in a particular forum.").  And as this Court has recognized, "the

11   Federal Rules of Civil Procedure strongly suggest jurisdictional questions be resolved pre-trial…"

12   *UpdateMe Inc. v. Axel Springer SE*, No. 17-CV-05054-SI, 2018 WL 11352694, at *2 (N.D. Cal. Mar.

13   1, 2018).

14           Plaintiff's opposition and evidence suggests that this is a dispute between a Delaware

15   corporation, Plaintiff, and a Chinese corporation and that it centers on conduct that occurred outside

16   of the United States.  The only contact with this forum is the location of that Delaware corporation's

17   headquarters.  That is not enough.  Defendants request that, before proceeding further, the Court first

18   require Plaintiff to establish the territoriality requirement under U.S. copyright law and personal

19   jurisdiction over the foreign defendants.

20   **IV.    CONCLUSION**

21           Defendants respectfully request that the Court quash service as to Syntronic Beijing, dismiss

22   Syntronic AB and Syntronic Beijing for lack of personal jurisdiction, and dismiss the entire First

23   Amended Complaint against all Defendants for failure to state a claim.

24

25

26

27

28   [5] To be clear, while Defendants are not yet required to answer Plaintiff's allegations, they dispute and
     deny any wrongdoing.

15

1

2

Dated:  September 1, 2021              By:  */s/ Jason N. Haycock*

3

4                                            Edward P. Sangster
                                             edward.sangster@klgates.com
                                             Jason N. Haycock
5                                            jason.haycock@klgates.com
                                             **K&L GATES LLP**
6                                            4 Embarcadero Center, Suite 1200
                                             San Francisco, CA 94111-5994
7                                            jason.haycock@klgates.com
                                             415.882.8200 t
8                                            415.882.8220 f

9                                            Jeffrey C. Johnson
                                             jeff.johnson@klgates.com
10                                           Paul J. Bruene
                                             paul.bruene@klgates.com
11                                           **K&L GATES LLP**
12                                           925 Fourth Avenue, Suite 2900
                                             Seattle, WA 98104-1158
13                                           206.623.7580 t
                                             206.623.7022 f
14                                           (*pro hac vice*)

15
                                             *Attorneys for Defendants Syntronic AB,*
16                                           *Syntronic Research and Development USA Inc.,*
                                             *and Syntronic (Beijing) Technology R&D*
17                                           *Center Co., LTD.*

18

19

20

21

22

23

24

25

26

27

28

16