UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CADENCE DESIGN SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> SYNTRONIC AB, et al., <br><br> Defendants. | Case No. 21-cv-03610-SI <br><br> **ORDER GRANTING PLAINTIFF'S MOTION FOR ALTERNATIVE SERVICE, AND DENYING DEFENDANTS' MOTION TO QUASH AND MOTION TO DISMISS FIRST AMENDED COMPLAINT** <br><br> Re: Dkt. Nos. 22, 32 |

On July 19, 2021, plaintiff filed a Motion for Alternative Service for foreign defendant, Syntronic (Beijing) Technology R&D Center Co., Ltd. (Syntronic Beijing), pursuant to Federal Rule of Civil Procedure 4(f)(3). Dkt. No. 22. Syntronic Beijing opposes the motion. Dkt. No. 29.

On August 11, 2021, defendants filed a Motion to Quash Service of Summons and Dismiss the First Amended Complaint ("FAC") arguing: (1) defective service with respect to Syntronic Beijing under 12(b)(5); (2) lack of personal jurisdiction with respect to Syntronic Beijing and Syntronic Sweden under 12(b)(2); and (3) the FAC fails to state a claim under 12(b)(6). Dkt. No. 32.

Pursuant to Civil Local Rule 7-1, the Court finds this matter appropriate for resolution without oral argument and VACATES the hearing set for September 17, 2021. After considering the parties' arguments and materials, the Court GRANTS the plaintiff's motion for alternative service, DENIES defendant Syntronic Beijing's motion to quash, ORDERS the parties to conduct jurisdictional discovery, and DENIES defendants' motion to dismiss the first amended complaint. **The Case Management Conference scheduled for September 17, 2021 at 2:30 pm remains on calendar.**

# BACKGROUND

## I. Plaintiff's Motion for Alternate Service & Syntronic Beijing's Motion to Quash

On May 13, 2021, plaintiff Cadence Design Systems, Inc. ("Cadence") filed this action for federal copyright infringement, circumvention of copyright protection systems, and breach of contract against three defendants: Syntronic AB[1] ("Syntronic Sweden"), Syntronic Research and Development USA Inc. ("Syntronic USA"), and Syntronic Beijing (collectively, "Syntronic"). Complaint (Dkt. No. 1); *see also* FAC (Dkt. No. 26). Several of Syntronic Sweden's directors also serve on the board for Syntronic USA and Syntronic Beijing. *Id.* ¶ 8.

The FAC alleges all three defendants are alter egos, act as a single enterprise, have overlapping officers and employees, commingle their assets through intercompany accounts, and are represented by the same counsel. FAC at ¶¶ 6-26; Dkt. No. 22-1 (Mot. for Alternative Service); Dkt. No. 31. Syntronic Beijing states that its principal place of business is in Beijing, China, that it has no office in the United States, and that the Syntronic entities maintain separate financials. Dkt. No. 35 at ¶ 3 (Decl. of Zinser Zhao, Syntronic Beijing's General Manager); Dkt. No. 33 at ¶ 16. However, Syntronic's website references a unified "one Syntronic" and Björn Jansson as a "Group CEO." Dkt. Nos. 22-1, 22-11, 22-12, 22-13. Plaintiff alleges the "@syntronic.com" domain is used by Syntronic Sweden, Syntronic Beijing, and Syntronic USA. FAC at ¶¶ 116-118.

Before filing this action, plaintiff communicated with all three Syntronic entities regarding its claims. FAC ¶¶ 148-168. At that time, Syntronic Sweden CEO Björn Jansson allegedly "insisted [plaintiff] communicate directly with Syntronic Beijing." FAC ¶ 158. On September 24, 2020 plaintiff's counsel provided notice of a draft complaint to all defendants, including Syntronic Beijing and their U.S.-based counsel at K&L Gates who represent all three entities. FAC ¶¶ 56, 62, 163; Dkt. No. 22-2 at ¶¶ 2-5, 7-9 (Decl. of Steve Papazian[2]); Dkt. Nos. 29, 32. On May 13, 2021, plaintiff filed the original complaint. Dkt. No. 1. Plaintiff filed a proof of service of Cadence's Complaint

---

[1] Syntronic Sweden maintains its principal place of business at Utmarksvagen 33C, 802 919 Gavle, Sweden and is the parent company of Syntronic USA and Syntronic Beijing. Dkt. No. 34 ¶¶ 3,7 (Decl. of Björn Jansson).

[2] Attorney for Plaintiff.

and Summons on Syntronic Beijing at Syntronic USA's principal place of business, 5201 Great American Parkway, Suite 320, Santa Clara, CA 95054. Dkt. No. 22-4 (Ex. B to Papazian Decl.); Dkt. No. 33 ¶ 3 (Declaration of Björn Östlund). On June 4, 2021, attorneys from both sides conferred on a joint stipulation order for extension of time for all defendants, including Syntronic Beijing, to respond to the initial complaint which was ultimately filed with the Court on June 7, 2021. Dkt. Nos. 10, 22-3 (Ex. A to Papazian Decl.).

Plaintiff argues service upon Syntronic Beijing was completed when plaintiff served Syntronic USA. Dkt. No. 22-3 at *5[3] (Ex. A to Papazian Decl.). Further, Syntronic Beijing has actual knowledge of the litigation having appeared and filed various documents in the case. As noted, Syntronic's Beijing's General Manager submitted a declaration in support of defendants' collective motion to dismiss through its U.S.-based counsel.[4] Dkt. Nos. 15, 35.

Plaintiff requests an order authorizing it to serve the complaint to Syntronic Beijing through its U.S.-based counsel at K&L Gates pursuant to Fed. R. Civ. P. 4(f)(3).

## II.    Defendants' Motion to Dismiss for Lack of Personal Jurisdiction

Defendants Syntronic Sweden and Syntronic Beijing moved for dismissal based on lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(5), alleging neither entity has sufficient contacts with the forum and plaintiff's theories of personal jurisdiction fail. Dkt. No. 32 at *15-26. Plaintiff alleges defendants Syntronic Sweden and Syntronic Beijing are subject to jurisdiction for three reasons: (1) as alter egos of Syntronic USA, (2) by express consent through click-wrap licenses they allegedly executed when installing Cadence software, and (3) through their targeted actions of using Cadence software. Dkt. No. 43 at *8.

**Facts re Alter Ego.** Plaintiff alleges defendants Syntronic Sweden and Syntronic Beijing

---

[3] For ease of reference, page number citations refer to the ECF branded number in the upper right corner of the page.

[4] Defendant claims their U.S. counsel was retained for the limited purpose of quashing service and contesting jurisdiction, and therefore Syntronic Beijing's "special appearance" does not constitute a waiver of service. Dkt. No. 29 at *5. Because the Court finds alternative service is appropriate, it need not reach this question.

3

are subject to jurisdiction as alter egos of Syntronic USA. Dkt. No. 43 at *8, 14-28. Plaintiff alleges all three defendants act as a single enterprise, have overlapping officers and employees, commingle their assets through intercompany accounts, and are represented by the same counsel. FAC at ¶¶ 6-26; Dkt. No. 22-1 (Mot. for Alternative Service); Dkt. No. 31. Syntronic's website shows Syntronic Sweden refers to Syntronic Beijing as one of its "branches" in China and lists Syntronic Beijing as part of its "expansion strategy." Dkt. No. 43-18. Syntronic's website states "Syntronic has operations in Sweden, USA…China." Dkt. No. 43-19. Plaintiff alleges the "@syntronic.com" domain is used by Syntronic Sweden, Syntronic Beijing, and Syntronic USA. FAC at ¶¶ 116-118. Further, the FAC alleges computers associated with that domain have used, accessed, and/or copied ("cracked") Cadence software at multiple IP addresses in California, including after Cadence provided notice to defendants of their allegedly unauthorized use of Cadence software. FAC at ¶¶ 116-118. Defendants dispute whether they are alter egos and argue plaintiff failed to meet its prima facie burden to show otherwise. Dkt. No. 32 at *18-20.

**Facts re Click-Wrap and Express Consent.** Plaintiff alleges defendants Syntronic Sweden and Syntronic Beijing expressly consented to jurisdiction in this forum through click-wrap Software License and Maintenance Agreements ("SLMA") they allegedly executed when installing Cadence software. FAC ¶¶ 97-113; Dkt. Nos. 26-1, 26-2. Plaintiff states every person who installs Cadence software must execute the SLMA and if a user does not accept the terms, they cannot install Cadence software. FAC ¶¶ 97-110; Dkt. No. 43-1 at ¶¶ 3-9 (Declaration of Brian Alfaro[5]). Plaintiff argues that when defendants installed the Cadence software using counterfeit license files and used the software without authorization, defendants breached the terms of the agreed upon SLMAs. FAC ¶¶ 133. Plaintiff states each of the SLMAs contained a forum selection clause consenting to jurisdiction in California. FAC ¶ 59; Dkt. Nos. 26-1, 26-2. The SLMA reads in part:

> GOVERNING LAW. You agree to submit to exclusive jurisdiction in the federal and state courts of California, U.S.A. in the event of a dispute. This Agreement will be governed by the procedural and substantive laws of the State of California, U.S.A., without regards to its conflicts of laws principles.

---

[5] Director of License Compliance at Cadence

4

Dkt. No. 26-1 at *6.

Defendants dispute they entered any SLMAs consenting to jurisdiction. Dkt. No. 45 at *16; Dkt. No. 41 at ¶¶ 18-20 (Östlund Decl.); Dkt. No. 34 at ¶¶ 21-23 (Jansson Decl.); Dkt. No. 35 at ¶¶ 21-23 (Zhao Decl.).

**Purposeful Direction.** Plaintiff alleges defendants Syntronic Sweden and Syntronic Beijing purposefully directed their actions to this forum when they used Cadence software without a license. FAC ¶¶ 114-145; Dkt. No. 43 at *8. Specifically, plaintiff allegedly detected unauthorized use of its software on at least 64 Syntronic machines. FAC ¶¶ 138, 154; Dkt. No. 43-1 at ¶¶ 12, 18. Thus, plaintiff argues, Syntronic Beijing and Syntronic Sweden willfully infringed its copyrights and circumvented its copyright protection mechanisms knowing plaintiff is located in California. FAC ¶¶ 123-24; Dkt. No. 43 at *20. The FAC quotes "Group CEO" Bjorn Jansson as saying Syntronic Beijing "work[s] with Cadence software in projects performed on behalf of main customer," despite Cadence alleging defendants have never been provided a valid license to do so. FAC at ¶¶ 123, 158. Plaintiff alleges defendants willfully infringed their IP rights and the harm was foreseeable in California. FAC ¶¶ 114-147.

## LEGAL STANDARD

### I.  Alternate Service of Process on a Foreign Business Entity

A federal court has jurisdiction over a defendant only if the defendant has been properly served under Fed. R. Civ. P. 4. *Direct Mail Specialists, Inc. v. Eclat Computerized Technologies, Inc.*, 840 F.2d 685, 688 (9th Cir. 1988); *see also Long v. McAfee*, No. 19-cv-00898, 2019 U.S. Dist. LEXIS 185432, at *4 (E.D. Cal. Oct. 25, 2019). "Mere notice that a lawsuit is pending is not sufficient." *Razavi v. Regis Corp.*, 2016 U.S. Dist. LEXIS 2499, at *4 (N.D. Cal. Jan. 8, 2016). However, "Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint." *Direct Mail Specialists*, 840 F.2d at 688 (*quoting United Food & Commercial Workers Union v. Alpha Beta Co.*, 736 F.2d 1371, 1382 (9th Cir. 1984)).

Under Rule 12(b)(5), a defendant may challenge a plaintiff's attempted method of service. Fed. R. Civ. P. 12(b)(5). A district court has discretion to either dismiss the action or quash service.

1  *S.J. v. Issaquah Sch. Dist. No. 411*, 470 F.3d 1288, 1293 (9th Cir. 2006).

2  Fed. R. Civ. P. 4(f) governing service of a summons on an individual in a foreign country, provides:

> Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served at a place not within any judicial district of the United States:
>
> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention[6]...;
>
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:... or
>
> (3) by other means not prohibited by international agreement, as the court orders.

FED. R. CIV. P. 4(f).[7]

## II. Personal Jurisdiction

Defendants Syntronic Beijing and Syntronic Sweden argue the Court lacks personal jurisdiction over them. Dkt. No. 32 at *15-26. A defendant may seek dismissal of the complaint for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). The plaintiff bears the burden of demonstrating the Court has jurisdiction over the defendant. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). In determining whether a plaintiff has met its burden, a district court may consider evidence contained in affidavits and discovery materials. *Data Disc, Inc. v. Sys. Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). However, when a district court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the plaintiff need only make "a *prima facie* showing of jurisdictional facts to withstand the motion to dismiss." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). Where undisputed, a district court must take as true the plaintiff's version of the facts. *Am. Tel. & Tel. Co. v. Compagnie Bruxelles*

---

[6] *See* Hague Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil or commercial Matters, 20 U.S.T. 361, T.I.A.S. 6638 (1969) ("Hague Convention").

[7] Fed. R. Civ. P. 4(h)(2) authorizes service of process on a foreign business entity in any manner prescribed by Rule 4(f) for individuals.

6

*Lambert*, 94 F.3d 586, 588 (9th Cir. 1996) (citations omitted). Conversely, "conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor for purposes of deciding whether a *prima facie* case for personal jurisdiction exists." *Id.*

Where there is no applicable federal statute that governs personal jurisdiction, a district court may exercise personal jurisdiction over a defendant if it is permitted by the state's long-arm statute and "'if the exercise of jurisdiction does not violate federal due process.'" *Autodesk, Inc. v. Kobayashi + Zedda Architects, Ltd.*, 191 F. Supp. 3d 1007, 1013 (N.D. Cal. 2016) (quoting *Pebble Beach Co.*, 453 F.3d at 1154). California's long-arm statute allows the exercise of personal jurisdiction to the fullest extent permissible under the U.S. Constitution. *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). Therefore, a district court need only determine whether the exercise of jurisdiction comports with federal due process requirements. *Id.*

A court's personal jurisdiction over a particular defendant is proper either as "general" or "specific" personal jurisdiction. *Id.* at 122. General jurisdiction over out of state corporate defendants attaches only if their "affiliations with the State are so continuous and systemic as to render it essentially at home in the forum State." *Id.* at 119 (internal quotations and alterations omitted); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011).

**DISCUSSION**

**I.      Motion for Alternative Service/Motion to Quash**

The Ninth Circuit has found Rule 4(f) provides three independent and equally permissible grounds for serving foreign defendants. *See Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002). "Rule 4(f)(3) is merely one means among several which enables service of process on an international defendant." *Id.* Rule 4(f) should not be read to create a hierarchy where Rule 4(f)(3) is seen as either as last resort or extraordinary relief. *Id.* at 1015. Service under Rule 4(f)(3) must be: "(1) directed by the Court and (2) not prohibited by international agreement such as the Hague Convention." *Cheetah Mobile, Inc. v. APUS Grp.*, No. 15-CV-02363-HSG, 2016 WL 4036098, at *3 (N.D. Cal. July 28, 2016) (citing *Rio Props.*, 284 F.3d at 1014). Whether to authorize service under Rule 4(f)(3) is left to the "sound discretion" of the trial court, when it

7

determines that the "particularities and necessities of a given case" require alternative service. *Id.*

The parties dispute whether plaintiff must attempt service on Syntronic Beijing through the Hague Convention, of which the United States and China are both signatories, and whether plaintiff may serve the complaint on Syntronic Beijing's US counsel. China has filed an objection under Article 10 of the Hague Convention, declaring,[8] "[p]rovided the State of destination does not object, the present Convention shall not interfere with...the freedom to send judicial documents, by postal channels, directly to persons abroad...." *Cheetah Mobile, Inc. v. APUS Grp.*, No. 15-CV-02363-HSG, 2016 WL 4036098, at *2 (N.D. Cal. July 28, 2016). "Service upon a foreign defendant's U.S.-based counsel is a common form of service ordered under Rule 4(f)(3)." *Richmond Techs., Inc. v. Aumtech Bus. Sols.*, No. 11-CV-02460-LHK, 2011 WL 2607158, at *13 (N.D. Cal. July 1, 2011). This form of service on a Chinese defendant is not prohibited under the Hague Convention. See *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 27 F. Supp. 3d 1002, 1010 (N.D. Cal. 2014).

Noting China's objection, Syntronic argues plaintiff must attempt service through the Hague Convention. However, there is no "hierarchy of preferred methods of service of process." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014–15 (9th Cir. 2002). Service of process under Rule 4(f)(3) is one means among several which enables service of process on an international defendant. *Id.* Moreover, "numerous courts have authorized alternative service under Rule 4(f)(3) even where the Hague Convention applies. This is true even in cases involving countries that . . . have objected to the alternative forms of service permitted under Article 10 of the Hague Convention." *Richmond Techs., Inc. v. Aumtech Bus. Sols.*, No. 11-CV-02460-LHK, 2011 WL 2607158, at *12 (N.D. Cal. July 1, 2011); *see Updateme Inc. v. Axel Springer SE*, No. 17-CV-05054-SI, 2018 WL 306682, at *3 (N.D. Cal. Jan. 5, 2018). "Service upon a foreign defendant's U.S.-based counsel is a common form of service ordered under Rule 4(f)(3)" and "[n]othing in the Hague

---

[8] Article 10 of the Hague Convention provides: "Provided the State of destination does not object, the present Convention shall not interfere with—a) the freedom to send judicial documents, by postal channels, directly to persons abroad, b) the freedom of judicial officers, officials or other competent persons of the State of origin to effect the service of judicial documents directly through the judicial officers, officials, or other competent persons of the State of destination, c) the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination."

Convention prohibits such service." *Richmond Techs., Inc. v. Aumtech Bus. Sols.*, No. 11-CV-02460-LHK, 2011 WL 2607158, at *13.

California Civil Procedure Code § 416.10 provides that "a summons may be served on a corporation by delivering a copy of the summons and the complaint to a . . . general manager." "Service through a subsidiary as general manager requires a sufficiently close connection with the parent. This depends upon the frequency and quality of contact between the parent and the subsidiary, the benefits in California that the parent derives from the subsidiary, and the overall likelihood that service upon the subsidiary will provide actual notice to the parent." *U.S. ex rel. Miller v. Pub. Warehousing Co. KSC*, 636 F. App'x 947, 949 (9th Cir. 2016). Because the Court finds alternative service is appropriate, it need not determine if Syntronic USA is sufficiently a "general manager" for the purposes of serving Syntronic Beijing.

Syntronic Beijing has actual notice of this litigation, shares counsel with the already-served defendants, and according to plaintiff, is one of three related entities. The Court finds service on Syntronic Beijing through its U.S. counsel comports with due process and is "reasonably calculated, under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Rio Props.*, 284 F.3d at 1016-17 (internal citation and quotation marks omitted). As Syntronic Beijing is currently being represented by its U.S. counsel, service on its U.S. counsel will provide the requisite notice of the pending action and an opportunity for Syntronic Beijing to respond. Overall, these factors warrant authorization of service on Syntronic Beijing's U.S.-based counsel under Rule 4(f)(3). Plaintiff must do so on or before September 20, 2021.[9]

## II.     Motion to Dismiss Based on Lack of Personal Jurisdiction

The parties dispute whether general and specific jurisdiction exist with respect to Syntronic Beijing and Syntronic Sweden. Dkt. No. 43 at *8; Dkt. No. 32 at *15-26.

---

[9] Accordingly, defendant's motion to quash service on Syntronic Beijing is DENIED. The Court finds good cause to extend the deadline by which plaintiffs must serve the complaint in accordance with the Court's ruling in this order.

9

**General Jurisdiction**. Plaintiff seeks to establish general jurisdiction over Syntronic Beijing and Syntronic Sweden based on an alter ego theory – arguing Syntronic USA's general jurisdiction extends to them. Dkt. No. 43 at *8, 14-28. As the facts presently exist, plaintiff can only establish general jurisdiction under an alter ego theory. The alter ego inquiry is fact specific. *Las Palmas Assocs. v. Las Palmas Ctr. Assocs.*, 235 Cal. App. 3d 1220, 1248 (1991) at 1248. To prove an alter ego relationship exists, a plaintiff must show: (1) such unity of interest and ownership that the two entities' separate personalities no longer exist and (2) failure to disregard their separate identities results in fraud or injustice. *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001) (alterations omitted).[10]

As noted above, plaintiff alleges all three defendants act as a single enterprise, have overlapping officers and employees, commingle their assets through intercompany accounts, and are represented by the same counsel. FAC at ¶¶ 6-26; Dkt. No. 22-1 (Mot. for Alternative Service); Dkt. No. 31. Syntronic's website shows Syntronic Sweden refers to Syntronic Beijing as one of its "branches" in China and "Syntronic has operations in Sweden, USA…China." Dkt. Nos. 43-18, 43-19. Several of Syntronic Sweden's directors serve on the board for Syntronic USA and Syntronic Beijing and Björn Jansson is identified as a "Group CEO." FAC at ¶ 8, Dkt. Nos. 22-1, 22-11, 22-12, 22-13. Plaintiff alleges the "@syntronic.com" domain is used by Syntronic Sweden, Syntronic Beijing, and Syntronic USA. FAC at ¶¶ 116-118.

While these facts are not determinative of plaintiff's alter ego theory, they raise serious questions about how the defendants are related. The Court finds plaintiff has raised enough of a question regarding whether defendants Syntronic Beijing, Syntronic Sweden, and Syntronic USA are alter egos to warrant further discovery. Therefore, the Court grants plaintiff's request for

---

[10] In "assessing whether there is unity of interest for the purposes of alter ego liability," courts typically consider the following nine factors: [1] [T]he commingling of funds and other assets of the entities, [2] the holding out by one entity that it is liable for the debts of the other, [3] identical equitable ownership of the entities, [4] use of the same offices and employees, [5] use of one as a mere shell or conduit for the affairs of the other, [6] inadequate capitalization, [7] disregard of corporate formalities, [8] lack of segregation of corporate records, and [9] identical directors and officers. *Stewart v. Screen Gems-EMI Music, Inc*., 81 F. Supp. 3d 938, 954 (N.D. Cal. 2015). In determining whether a unity of interest exists, a court need not find that every factor is present. *Johnson v. Serenity Transportation, Inc.*, 141 F. Supp. 3d 974, 985 (N.D. Cal. 2015); *Updateme Inc. v. Axel Springer SE*, No. 17-CV-05054-SI, 2018 WL 1184797, at *9–10 (N.D. Cal. Mar. 7, 2018).

1    jurisdictional discovery on the issue of alter ego and to determine if the Court has general
2    jurisdiction over defendants Syntronic Beijing and Syntronic Sweden.

3    **Specific Jurisdiction**.   Specific jurisdiction exists where the defendant has "certain
4    minimum contacts with [the forum state] such that the maintenance of the suit does not offend
5    'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310,
6    316 (1945).  For copyright infringement actions, the Ninth Circuit requires a showing of purposeful
7    direction. *Adobe Sys. Inc. v. Blue Source Grp., Inc.*, 125 F. Supp. 3d 945, 960 (N.D. Cal. 2015)
8    (citing *Nissan Motor Co. v. Nissan Computer Corp.*, 246 F.3d 675, 675 (9th Cir. 2000)).   A
9    defendant purposefully directs activity at the forum state when the defendant "(1) [has] committed
10   an intentional act, (2) expressly aimed at the forum state, (3) causing harm the defendant knows is
11   likely to be suffered in the forum state."  *Dole Foods Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th
12   Cir. 2002) (citing *Bancroft*, 223 F.3d at 1087); *Avaya Inc. v. Pearce*, No. 19-CV-00565-SI, 2019
13   WL 6311383, at *6–7 (N.D. Cal. Nov. 25, 2019).

14   Plaintiff argues specific jurisdiction exists for three primary reasons.  First, plaintiff argues
15   defendants contractually consented to jurisdiction when they allegedly clicked the "I accept" button
16   when installing Cadence software's License Manager and the software itself.  FAC at ¶¶ 106-113.
17   Plaintiff states "[i]f the user does not select the 'I accept' option, or if the user selects 'I do not
18   accept the terms of the license agreement,' the user cannot proceed with installation." *Id.* at ¶¶ 107,
19   110.   Click-wrap agreements, which require users to click on an "I agree" button after being
20   presented with a list of terms and conditions, are routinely upheld by courts. *Nguyen v. Barnes &*
21   *Noble Inc.*, 763 F.3d 1171 1175–76 (9th Cir. 2014); *I.C. v. Zynga, Inc.*, No. 20-CV-01539-YGR,
22   2021 WL 3271187, at *1 (N.D. Cal. July 30, 2021).  Syntronic USA admits they used Cadence
23   software but defendants have yet to acknowledge which employee(s) from which entity has used
24   Cadence software in their employment.  Dkt. No. 41 at *1.

25   Second, plaintiff argues defendants purposefully targeted their misconduct at this forum.
26   Plaintiff alleges defendants repeatedly "obtained, copied and used the Cadence Software without
27   authorization." FAC at ¶ 115.  Plaintiff alleges the "@syntronic.com" domain is used by Syntronic
28   Sweden, Syntronic Beijing, and Syntronic USA and that computers associated with that domain

United States District Court
Northern District of California

11

have used, accessed, and/or "cracked" Cadence software at multiple IP addresses in California, including after Cadence provided notice to defendants of their allegedly unauthorized use of Cadence software. *Id.* at ¶¶ 116-118. Syntronic USA admits they used Cadence software but defendants Syntronic Beijing and Syntronic Sweden dispute they entered any SLMAs consenting to jurisdiction. Dkt. No. 41 at *1; Dkt. No. 45 at *16; Dkt. No. 41 at ¶¶ 18-20 (Östlund Decl.); Dkt. No. 34 at ¶¶ 21-23 (Jansson Decl.); Dkt. No. 35 at ¶¶ 21-23 (Zhao Decl.).

Plaintiff alleges its phone-home technology detected unauthorized use of its software on at least 64 different machines associated with Syntronic, including IP addresses located in California and China, which "strongly indicates widespread, organizational use." FAC ¶ 138; Dkt. No. 43 at *10; Dkt. No. 43-1 at ¶¶ 14, 18. Defendants state their analysis of two IP addresses indicates "the almost certain use of a proxy server and/or the use of a virtual private network, or a VPN[11]." Dkt. No. 46 at ¶¶ 9-12. Defendants do not admit the computers identified by plaintiff were under their control, and, based on the information currently in plaintiff's possession, one cannot determine which IP addresses belong to which defendant. Dkt. No. 43-1 at ¶¶ 20-25.

Third, as discussed above, plaintiff argues Syntronic Beijing and Syntronic Sweden are alter egos of Syntronic USA, and therefore specific jurisdiction exists. Dkt. No. 43 at *14-28.

Presently, there are insufficient facts to determine if the Court has specific jurisdiction over defendants Syntronic Beijing and Syntronic Sweden. However, plaintiff has raised enough questions regarding whether defendants Syntronic Beijing and Syntronic Sweden consented to the forum or otherwise have sufficient minimal contacts to warrant further discovery. Therefore, the Court GRANTS plaintiff's request for jurisdictional discovery regarding specific jurisdiction as to defendants Syntronic Beijing and Syntronic Sweden.

### III.   Motion to Dismiss for Failure to State a Claim

Defendants argue the FAC fails to state a claim because plaintiff cannot plausibly and

---

[11] A VPN is an encrypted connection over the Internet from a device to another network, allowing a user to access a network elsewhere including in another country. Dkt. No. 46 at ¶ 12.

1  definitively allege copyright violations within the United States, the allegations are fatally
2  ambiguous, and plaintiff fails to identify which defendant violated the Copyright Act and breached
3  a valid contract.  Dkt. No. 32 at *27-33.  Plaintiff claims the question of personal jurisdiction is
4  "intertwined with the merits" of the case and asks the Court to defer deciding the issue until trial.
5  Dkt. No. 43 at *29.  The Court agrees with plaintiff that the merits arguments are intertwined with
6  the question of the Court's jurisdiction.  Discovery concerning the relationship of defendants and
7  contacts made to the forum will both assist with the merits of the case and will determine whether
8  the Court has jurisdiction over defendants Syntronic Sweden and Syntronic Beijing.  The Court
9  therefore DENIES defendants' 12(b)(6) motion without prejudice to the motion being renewed once
10 the jurisdiction questions are resolved.

## CONCLUSION

For the foregoing reasons, the Court GRANTS the plaintiff's motion for alternative service and DENIES defendant Syntronic Beijing's motion to quash.  Further, the Court ORDERS parties to conduct jurisdictional discovery and DENIES WITHOUT PREJUDICE defendants' motion to dismiss the first amended complaint.  **The Case Management Conference set for Friday, September 18, 2021 at 2:30 pm, remains on calendar.**

**IT IS SO ORDERED**.

Dated: September 16, 2021

_____
SUSAN ILLSTON
United States District Judge