EDWARD P. SANGSTER, Bar No. 121041
edward.sangster@klgates.com
JASON N. HAYCOCK, Bar No. 278983
jason.haycock@klgates.com
**K&L GATES LLP**
Four Embarcadero Center, Suite 1200
San Francisco, CA 94111
Telephone: +1 415 882 8200
Facsimile: +1 415 882 8220

JEFFREY C. JOHNSON, *pro hac vice*
jeff.johnson@klgates.com
PAUL J. BRUENE, *pro hac vice*
paul.bruene@klgates.com
**K&L GATES LLP**
925 Fourth Avenue, Suite 2900
Seattle, WA 98104
Telephone: + 1 206 623 7580
Facsimile: + 1 206 623 7022

*Attorneys for Defendants Syntronic AB, Syntronic Research and Development USA Inc., and Syntronic (Beijing) Technology R&D Center Co., LTD.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CADENCE DESIGN SYSTEMS, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>SYNTRONIC AB, a Publikt Aktiebolag, SYNTRONIC RESEARCH AND DEVELOPMENT USA INC., a California corporation, SYNTRONIC (BEIJING) TECHNOLOGY R&D CENTER CO., LTD., a Chinese Corporation,<br><br>Defendants. | Case No. 3:21-cv-03610-SI (JCS)<br><br>**MOTION FOR RECONSIDERATION OF MAGISTRATE JUDGE SPERO'S APRIL 15, 2022 ORDER (ECF NO. 117)** |

## I. INTRODUCTION

On April 15, 2022, the Court ordered Syntronic Beijing to deliver 24 computers from China to the U.S. (ECF No. 117, the "Order"). Syntronic Beijing immediately started complying and consulted its Chinese attorney on its compliance requirements. Article 39 of China's Personal Information Protection Law ("PIPL") requires Syntronic Beijing—before shipping the computers to the U.S.—to obtain individual consent from each computer's user to the extent such computers contain personal information. As set forth in Ms. Xueming Chen's declaration (¶¶ 8-13), these computers contain sensitive, private, and confidential personal information, such as the user/employee's name, date of birth, citizen ID card numbers (equivalent to social security numbers in the U.S.), pay stubs, performance reviews, insurance claims, as well as personal whereabouts as part of China's COVID tracking protocol. Shipping the computers across borders without individual consent would open Syntronic Beijing to punishment under PIPL.

Cognizant of the PIPL, Syntronic Beijing promptly sought the necessary permissions from current and even former employees. As outlined below, Syntronic Beijing went to considerable lengths. Despite its best efforts, all affected users declined to consent. *See* Chen Decl. Ex. A (Consent Form with each employee's signature). Thus, Syntronic Beijing's compliance with the portion of the Order directing that inspection occur within the United States—absent the required individual consents—would be contrary to Chinese law and would subject Syntronic Beijing to demonstrable harm. To be clear, Syntronic Beijing is ***not*** objecting to producing the computers for inspection and, subject to the Court's approval, will make them promptly available in China.

The Court should order the computers to be inspected in China. First, Syntronic Beijing timely objected to inspection based on Chinese law on October 19, 2021. Syntronic Beijing respectfully requests that the Court reconsider that objection in light of the additional evidence provided concurrently with this motion.

Second, there is no undue burden on Plaintiff in ordering inspection in China, and the balancing of equities favors inspection in China. Plaintiff has affiliates in Beijing, Shanghai, Chengdu, and Shenzhen. Plaintiff's Beijing affiliate is roughly 7 miles from Syntronic Beijing and Plaintiff's Chinese affiliate has previously been in contact with Syntronic Beijing. Weighing

-1-

the respective burdens, reconsideration favors ordering the inspection to occur in China.

Third, where, as here, an order on a discovery matter is contrary to law, reconsideration is proper.  28 U.S.C. §636(b)(1)(A); *Rockwell Int'l, Inc. v. Pos-A-Traction Indus., Inc.*, 712 F.2d 1324, 1325 (9th Cir. 1983).  As outlined below, the Order directing the computers be shipped to the United States conflicts with contrary Chinese law.

Ultimately, Syntronic Beijing is in the untenable position of having conflicting legal obligations under U.S. and Chinese law.  Despite considerable efforts, it has been unable to obtain the consent necessary that would allow it to comply with both bodies of law.  It respectfully requests that the Court reconsider its prior Order to impose a practical solution that allows Syntronic Beijing to comply with its home country's laws and still allows Plaintiff access to discovery without undue burden.

## II.     SYNTRONIC BEIJING MADE GOOD FAITH EFFORTS TO COMPLY WITH BOTH THE COURT'S ORDER AND CHINESE LAW

### A.     Chinese Law Requires Individuals' Separate Consent for Cross-Border Transmission of Personal Information

Upon learning of the Court's April 15 Order, Syntronic Beijing immediately started complying with the Order and consulted its Chinese attorney on its compliance requirements.  Chen Decl. ¶¶ 3-4.  Article 39 of China's PIPL provides that: "To provide the personal information of an individual to an overseas recipient outside the territory of the People's Republic of China, the personal information processor [Syntronic Beijing] shall inform the individual of such matters as the name of the overseas recipient, contact information, purpose and method of processing, type of personal information and the method and procedure for the individual to exercise the rights stipulated herein against the overseas recipient, and ***shall obtain the individual's separate consent***."  Liu Decl. ¶ 10.  If the 24 computers contain "personal information" under PIPL, then Syntronic Beijing must obtain each affected individual's separate consent before shipping them to the U.S.  *Id.* ¶¶ 5-6, 20.

The 24 computers contain (or may contain)[1] sensitive, private, and confidential personal

---

[1] Ten of the 24 computers were returned by users, subsequently reformatted before December 2020, and placed into storage. Chen Decl. ¶ 16.  These 10 computers do not have data, but it is

-2-

information of Syntronic Beijing's current or former employees. Such personal information includes the user/employee's name, date of birth, citizen ID card numbers (similar to U.S. social security numbers), pay stubs, performance reviews, insurance claims with self and dependent medical records and history, as well as personal whereabouts as part of China's COVID tracking protocol. Chen Decl. ¶¶ 8-13. For example, an employee who claims insurance reimbursement needs to fill out a form using the work computer with the claimant's name, doctor visit information, and required medical record information. *Id*. at ¶ 11. Employees will also receive their pay stubs and performance reviews via work emails. *Id*. at ¶ 10. Furthermore, Syntronic Beijing has been ordered to collect its employees' whereabouts information multiple times since February 2020, to comply with China's contact tracing mandates due to COVID. *Id*. at ¶ 12.

### B. Syntronic Beijing Diligently Sought Consent from Each and Every Affected Individual

To comply with both this Court's Order and PIPL, Syntronic Beijing prepared a consent form and worked diligently to seek consent from all users of these computers. Chen Decl. Ex. A (Consent Form). The Consent Form explained the purpose of the inspection, the recipient of personal information, and the confidentiality restrictions under the Court's Protective Order that protects any personal information. *Id.* Syntronic Beijing then sought consent from each and every current or former employee. *Id*. This was not a simple task because one computer could have multiple users and some affected individuals have departed the company.

<u>The 14 previously active computers.</u> Fourteen of the 24 computers were previously in use,[2] and they have been used by 25 different users, including 14 current employees and 11 former employees. Chen Decl. ¶ 17. After reviewing the Consent Form, all 14 current employees decided to not consent to transmitting their former work computers to the U.S., though most of them agreed to provide their names and specific job titles. *Id*. Syntronic Beijing was able to contact 8 of the 11 former employees, but none of them are willing to cooperate. *Id.*

---

Syntronic Beijing's understanding that data may be recovered from these reformatted computers. *Id*.

[2] The computers have since been placed in a locked storage.

-3-

<u>The 10 reformatted computers.</u>  The remaining 10 of 24 computers were all reformatted and placed in storage when they were returned by users at various points prior to December 2020.[3]  *Id.* at ¶ 16.  Four users are still current employees, and after reviewing the Consent Form, all four decided to not consent.  *Id.*  Syntronic Beijing could not locate the users associated with the remaining 6 computers, and believes they are no longer employed by the company.  *Id.*  Because they cannot be found, they cannot provide consent.  Thus, none of the 10 reformatted computers have the prerequisite consent under PIPL.

Syntronic Beijing declares under the penalty of perjury that it never influenced the individuals' decisions; it truthfully followed Chinese law by locating each affected individual and seeking their consent.  *Id.* at ¶ 19.

## III.   THE COURT SHOULD ORDER THE COMPUTERS BE INSPECTED IN CHINA

Syntronic Beijing timely objected to any inspection that would violate Chinese law.  See Declaration of Jason N. Haycock, Ex. A, 2:19-3:3.

Where civil discovery conflicts with foreign law, courts consider the *Aerospatiale* factors, which include: (1) the importance to the litigation of the documents or other information requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; and (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine the important interests of the state where the information is located.  *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 539-40, 544 n.29 (1987).

Here, factors 1 and 2 are neutral because Syntronic Beijing never refused to make the computers available for inspection; it merely requests the inspection be done in China.  Factors 3, 4, and 5 all tip in Syntronic Beijing's favor.  As to factor 3, the computers are assets of a Chinese company.  There is no dispute that the data in the computers originated outside of the United States, was generated by Chinese citizens, is stored in China, and all conduct at issue occurred in

---

[3] Although the computers have been reformatted, data, including the users' personal information, may be recovered from the computers, making them subject to PIPL.  Chen Decl. ¶ 16.

China. As to factor 4, Syntronic Beijing is willing to accommodate the inspection in China and, in light of the 7 mile distance between Syntronic Beijing and Cadence's Chinese affiliate, there is a fair and reasonable alternative means of securing the discovery. As to factor 5, because Syntronic Beijing is willing to make the computers available for inspection in China, Cadence will get the substantive discovery it seeks and there is no issue of substantive noncompliance that would undermine important interests of the United States. In contrast, forcing Syntronic Beijing to violate PIPL would undermine China's strong interests in ensuring that its corporations and citizens comply with its laws. Moreover, whatever infringement by the 24 computers Plaintiff alleges to have occurred, it occurred in China. So, even if those allegations are true, the U.S. does not have an important interest to adjudicate foreign infringing conduct. *Yount v. Acuff Rose-Opryland*, 103 F.3d 830, 835 (9th Cir. 1996) ("It is axiomatic that United States copyright law does not apply extraterritorially."). Additionally, many courts, such as the Ninth Circuit, also consider the hardship that the producing party will face, including the likelihood that enforcement action will be taken as a result of non-compliance with the foreign law. *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1475 (9th Cir. 1992). Here, shipping the computers across borders without individual consent would expose Syntronic Beijing to enforcement actions under PIPL. Liu Decl. ¶¶ 13, 17 (discussing a variety of enforcement measures under Article 66 of PIPL and Article 48 of the Data Security Law of P.R.C.).

## IV. CONCLUSION

Syntronic Beijing respectfully requests that the Court reconsider its April 15, 2022 Order (ECF No. 117) and order that the 24 computers be inspected in China.

| | | |
|---|---|---|
| 1 | Dated:  April 29, 2022 | **K&L GATES LLP** |
| 2 | | |
| 3 | | By: */s/ Jason N. Haycock* |
| 4 | | Edward P. Sangster |
| | | edward.sangster@klgates.com |
| 5 | | Jason N. Haycock |
| | | jason.haycock@klgates.com |
| 6 | | **K&L GATES LLP** |
| 7 | | 4 Embarcadero Center, Suite 1200 |
| | | San Francisco, CA 94111-5994 |
| 8 | | jason.haycock@klgates.com |
| | | 415.882.8200 t |
| 9 | | 415.882.8220 f |
| 10 | | |
| | | Jeffrey C. Johnson |
| 11 | | jeff.johnson@klgates.com |
| | | Paul J. Bruene |
| 12 | | paul.bruene@klgates.com |
| 13 | | **K&L GATES LLP** |
| | | 925 Fourth Avenue, Suite 2900 |
| 14 | | Seattle, WA 98104-1158 |
| | | 206.623.7580 t |
| 15 | | 206.623.7022 f |
| | | (*pro hac vice*) |
| 16 | | |
| 17 | | *Attorneys for Defendants Syntronic AB, Syntronic Research and Development USA Inc., and Syntronic (Beijing) Technology R&D Center Co., LTD.* |
| 18 | | |
| 19 | | |