UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CADENCE DESIGN SYSTEMS, INC., | Case No. 21-cv-03610-SI   (JCS) |
| Plaintiff, | |
| v. | **ORDER DENYING MOTION FOR RECONSIDERATION** |
| SYNTRONIC AB, et al., | Re: Dkt. No. 137 |
| Defendants. | |

## I.  INTRODUCTION

Defendants (collectively, "Syntronic") move for reconsideration of the Court's prior order requiring Defendant Syntronic (Beijing) Technology R&D Center Co., Ltd. ("Syntronic Beijing") to produce computers for inspection in the United States, arguing that China's Personal Information Protection Law (the "PIPL") prohibits transfer of the computers across international borders without the consent of current and former employees, who have declined to so agree.  The Court held a hearing on June 24, 2022.  For the reasons discussed below, the PIPL does not bar compliance with the Court's previous order, and the motion for reconsideration is DENIED.

## II.  BACKGROUND

Plaintiff Cadence Design Systems, Inc. ("Cadence") brought this action against Syntronic alleging unlicensed use of Cadence software.  The Honorable Susan Illston referred the case to the undersigned magistrate judge for resolution of discovery disputes.  Dkt. 81.

The Court previously ordered Syntronic to complete certain searches of its computers and answer certain interrogatories.  The parties disputed whether Syntronic had adequately complied with those orders.  On April 15, 2022, the Court ordered as follows:

> As to the 24 computers that were identified in the phone home reports
> and which are in the custody of defendants in China, defendants shall
> comply with the Court's prior orders and those computers shall be

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

> delivered to the United States and produced for inspection no later
> than April 29, 2022.

Apr. 15, 2022 Civil Minute Order (dkt. 117).  At the hearing that precipitated that order, the Court

rejected Syntronic's objections based on Chinese data privacy law, holding that despite numerous

opportunities to do so, Syntronic had neither identified any particular provision of Chinese law

affecting its ability to meet its discovery obligations nor provided the sort of expert opinion

evidence necessary for this Court to consider foreign law, and therefore waived any such

argument.  *See* Apr. 15, 2022 Hr'g Tr. (dkt. 123) at 13:22–18:3.

Syntronic sought leave to file a motion for reconsideration addressing particular provisions

of a Chinese data privacy law enacted in 2021, the Personal Information Protection Law ("PIPL"),

and seeking to modify the previous order to permit production of the computers at issue for

inspection in China rather than in the United States.  Mot. for Leave (dkt. 127).  The Court granted

Syntronic leave to file its motion for reconsideration.  *See* dkt. 136.

Relying a declaration by its Chinese legal expert Dandan "Catherine" Liu, Syntronic

asserts that Article 39 of the PIPL requires consent from an individual before that individual's

personal information may be transferred outside of China.  Mot. for Reconsideration (dkt. 137) at

2.  Syntronic asserts that the computers at issue contain (or in the case of computers that have been

reformatted and from which data might or might not be recoverable, may contain) protected

personal information of the Syntronic employees and former employees who used those

computers.  *Id.* at 2–3.  Those individual users declined to consent to the transfer of their data, or

in some cases could not be located.  *Id.* at 3–4 (citing Chen Decl. (dkt. 139) ¶¶ 16–17).  Based on

the comity factors set forth in *Societe Nationale Industrielle Aerospatiale v. U.S. District Court*,

482 U.S. 522, 544 n.28 (1987), Syntronic contends that this Court should not require Syntronic

Beijing to violate Chinese law.  Mot. for Reconsideration at 4–5.

Cadence contends that Syntronic waived its objection based on the PIPL by failing to raise

that argument with any specificity before its motion for reconsideration.  Opp'n (dkt. 147) at 2.

Cadence also notes that the PIPL was not yet effective when Cadence first requested inspection of

these computers, and asserts that Syntronic's inaccurate initial representation that it did not have

the computers was an intentional effort to run the clock until it could invoke the protection of the

PIPL to avoid producing them. *Id.* at 3.  Turning to the merits, Cadence relies on its Chinese legal expert Xiaodong "Vincent" Wang's assessment that the PIPL includes an applicable exemption for compliance with a legal obligation. *Id.* at 4–5.  In Wang's view, the PIPL does not distinguish between obligations under Chinese or foreign law, and therefore does not prevent Syntronic from complying with its discovery obligations in this case, including the Court's previous order. *Id.* at 5 (citing Wang Decl. (dkt. 147-1) ¶ 26).  Cadence also asserts that exceptions for information collected as needed to manage human resources or respond to public health incidents apply here to exempt any personal information that might be on the computers at issue from the scope of the PIPL. *Id.* at 5–6 (citing Wang Decl. ¶ 14).  While Cadence contends that the Court need not reach a comity analysis since there is no conflict between Chinese and U.S. law, it argues that the relevant factors favor ordering production of the computers in the United States despite any such conflict, and that conducting an inspection in China would be impractical and would not resolve Syntronic's objections. *Id.* at 7–10.

Syntronic argues in its reply that the exemption for compliance with a legal obligation does not apply to international transfers of data because it appears in a different chapter of the PIPL, Reply (dkt. 149) at 4, and that foreign court orders are not cognizable as legal obligations under the PIPL unless recognized by a Chinese court through a procedure similar to the U.S. process for enforcing a foreign judgment, *id.* at 2–3.  Syntronic contends that the consequences for violating the PIPL could be significant and reiterates its view that the comity factors weigh in favor of modifying the Court's previous order to comport with Chinese law and allow for inspection in China. *Id.* at 4–8.  Syntronic also argues that it properly preserved its objection by asserting in an October 2021 discovery response that "China's Personal Information Protection Law (PIPL) restricts cross-border transfers of certain personal information and requires approval from Chinese authorities before providing such information to foreign judicial or law enforcement authorities,"[1] Haycock Decl. (dkt. 140) Ex. A at 2, and that transferring the computers to the United States after

---

[1] Syntronic has not pursued an argument that the transfer would require approval from "Chinese authorities," as opposed to consent from the individuals at issue.

the PIPL was enacted[2] in August of 2021 but before it took effect in November of 2021 would have improperly circumvented Chinese law and exposed Syntronic to potential sanctions.  Reply at 8.

The Court authorized Cadence to file a surreply and supplemental declaration by Wang, in which Cadence responds to Syntronic's arguments regarding, among other issues, the purported requirement for Chinese courts to recognize foreign court orders before they can be cognizable legal obligations, and the applicability of the legal obligation exception to international data transfers.  *See generally* Surreply (dkt. 157); Wang Supp'l Decl. (dkt. 157-1).

## III.    ANALYSIS

### A.    Syntronic Has Not Satisfied Local Rule 7-9(b)

Under this Court's local rules, a motion for leave to file a motion for reconsideration "must specifically show reasonable diligence in bringing the motion and one of the following:"

> (1) That at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought. The party also must show that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order; or
>
> (2) The emergence of new material facts or a change of law occurring after the time of such order; or
>
> (3) A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order.

Civ. L.R. 7-9(b).

Syntronic invoked the first two prongs of that rule here, arguing that "[u]pon the Court's Order, Syntronic Beijing immediately started complying and consulted its Chinese attorney on its compliance requirements," which required consent that Syntronic Beijing was unable to obtain from its current and former employees.  Mot. for Leave (dkt. 127) at 2.  But Syntronic represented at the April 15, 2022 hearing that it had *already* been advised by its Chinese counsel that "there's some GDPR equivalent in China that prevents the computers from coming the U.S."  Apr. 15,

---

[2] Or perhaps made available for comment.  *See* Wang Decl. ¶ 21.

2022 Hr'g Tr. at 14:4–8; *see also id.* at 17:3–8.  Syntronic was unprepared to address the specifics of that law or how it applied to this case—either to the Court at that hearing, or in the parties' joint letter brief, or apparently in any previous communications with Cadence regarding the dispute. Accordingly, either Syntronic (but apparently not its U.S. counsel) *did* "know such . . . law at the time of the interlocutory order" and simply failed to present it to the Court, or its lack of knowledge stemmed from a failure to "exercise . . . reasonable diligence." *Cf.* Civ. L.R. 7-9(b)(1). Nor has Syntronic shown any "emergence of new material facts or a change of law occurring after the time of such order." *Cf.* Civ. L.R. 7-9(b)(2).  The only possible new fact is the employees' decisions not to consent to the transfer of personal information, but Syntronic's failure to determine earlier whether its employees would consent to such transfer, at the same time it was vaguely asserting the PIPL as a defense to its discovery obligations, also represents a lack of reasonable diligence.

Although the Court in an abundance of caution granted Syntronic leave to file its present motion for reconsideration, and holds for the reasons discussed below that the PIPL provides no reason to alter the previous discovery order, Syntronic's failure to meet the standard for reconsideration under Local Rule 7-9(b) is itself sufficient reason to deny this motion.  *See generally, e.g.*, *Iglesia Ni Cristo v. Cayabyab*, No. 18-cv-00561-BLF, 2020 WL 3833281 (N.D. Cal. July 8, 2020) (relying in part on a party's failure to satisfy that local rule to deny a motion for reconsideration for which leave to file had previously been granted).

### B.    The PIPL Does Not Prohibit Compliance with a Court Order

"A party relying on foreign law has the burden of showing that such law bars compliance with a court order," and failure to meet that burden is sufficient to dispose of any international comity objection without reaching other potentially relevant factors.  *In re Grand Jury Proc.*, 873 F.2d 238, 239–40 (9th Cir. 1989).

The PIPL is a recently enacted law that does not appear to have yet been subject to significant judicial or otherwise authoritative interpretation.  Neither party has cited any case, whether in the United States, China, or any other jurisdiction, addressing the provisions at issue here.  *See* Liu Reply Decl. (dkt. 149-1) ¶ 19 ("[G]iven that the PIPL has just been enacted, there

has not been any case involving penalty of cross-border transmission of personal data upon the orders of a foreign court."); Wang Decl. ¶ 33 ("We also did not find any announcements of a PIPL violation in the context of a the cross-border transfer of employee personal information, much less pursuant to a court order.").

Article 39 of the PIPL provides as follows:

> To provide the personal information of an individual to an overseas recipient outside the territory of the People's Republic of China, the personal information processor shall inform the individual of such matters as the name of the overseas recipient, contact information, purpose and method of processing, type of personal information and the method and procedure for the individual to exercise the rights stipulated herein against the overseas recipient, *and shall obtain the individual's separate consent.*

Liu Decl. (dkt. 138) ¶ 10 (quoting the PIPL) (emphasis added).[3]

Article 13 of the PIPL more generally addresses handling of personal information, and includes alternatives to obtaining individual consent. As translated by a Stanford University website attached as an exhibit to Liu's reply declaration, that article reads as follows:

> Personal information handlers may only handle personal information where they conform to one of the following circumstances:
>
> 1. Obtaining individuals' consent;
>
> 2. Where necessary to conclude or fulfill a contract in which the individual is an interested party, or where necessary to conduct human resources management according to lawfully formulated labor rules and structures and lawfully concluded collective contracts;
>
> 3. Where necessary to fulfill statutory duties and responsibilities or statutory obligations;
>
> 4. Where necessary to respond to sudden public health incidents or protect natural persons' lives and health, or the security of their property, under emergency conditions;

---

[3] Cadence's translation of this article is somewhat different, but does not differ in substance for the purpose of this dispute: "Where a personal information processor provides personal information outside the borders of the People's Republic of China, they shall notify the individuals about the foreign recipient's name or personal name, contact method, processing purpose, processing methods, and personal information categories, as well as the ways and procedures for the individuals to exercise the rights provided by this Law with the foreign recipient, and etc., and obtain individuals' separate consents." Wang Decl. ¶ 15. Another translation, which again does not differ materially for the purpose of the present dispute, is included in Exhibit A to Liu's reply declaration.

> 5.  Handling personal information within a reasonable scope to implement news reporting, public opinion supervision, and other such activities for the public interest;
>
> 6.  When handling personal information disclosed by persons themselves or otherwise already lawfully disclosed, within a reasonable scope in accordance with the provisions of this Law.
>
> 7.  Other circumstances provided in laws and administrative regulations.
>
> In accordance with other relevant provisions of this Law, when handling personal information, individual consent shall be obtained. However, obtaining individual consent is not required under conditions in items 2 through 7 above.

Liu Reply Decl. Ex. A at 5.

Wang persuasively asserts that the third item in that list should be translated as referring to "obligations provided by law" rather than "statutory" duties or obligations. Wang Supp'l Decl. ¶ 6 & n.1. Liu does not specifically address the translation of "statutory" or "provided by law," and while Syntronic argues that foreign court orders are not cognizable unless recognized by Chinese courts, it does not specifically argue that a legal obligation must be "statutory" to fall within the exception. The Court accepts Wang's translation of that provision. Wang's translation of the final paragraph of Article 13 also differs somewhat, although neither party has argued that those differences between translations are material:

> If, in accordance with other relevant provisions of this Law, processing personal information is otherwise subject to the consent of the individual, no such otherwise consent [sic] shall be necessary when such processing falls into one of the circumstances provided in Item 2 through Item 7 above.

Wang Decl. ¶ 14.

The Court assumes without deciding that Syntronic has made a sufficient showing that the computers at issue contain protected personal information. The relevant questions, then, are whether Article 13 applies as an exception to Article 39, and whether Syntronic's discovery obligations in this case create a cognizable legal duty for the purpose of Article 13.

Liu contends that Article 13 does not modify Article 39 because they appear in different chapters of the PIPL, and because Article 39 refers to "separate consent" rather than merely "consent." Liu Reply Decl. ¶¶ 15, 17. Wang contends that Article 13 does not distinguish

between different chapters of the law, and that the titles of the chapter ("Principles of Personal Information Processing") and section ("General Provisions") in which Article 13 appears indicate that it applies broadly to the PIPL as a whole.  Wang Supp'l Decl. ¶¶ 13–14.  Wang also notes that a February 2022 publication edited by Heqing Yang (a senior official in the Chinese congressional commission responsible for drafting legislation) and "written by experts participating in drafting the PIPL under the leadership of Mr. Yang" states that "'[i]n accordance with Article 13, if providing personal information abroad is based on another non-consent basis, no individual consent should be required'" under Article 39.  Wang Decl. ¶¶ 24–25 (quoting Wang Decl. Ex. B, a translated excerpt of *Interpretation of the Personal Information Protection Law of the People's Republic of China* addressing Article 39).  Liu responds that the publication is not an authoritative interpretation issued by the Chinese government and is best understood only as "academic opinion."  Liu Reply Decl. ¶ 16.  Wang contends that the publication is "the most authoritative interpretation of the PIPL" currently available, but he does not assert that it is formally binding.  *See* Wang Supp'l Decl. ¶ 15.

Wang's interpretation of these provisions is more persuasive than Liu's.  All of the translations in the record agree that the final paragraph of Article 13 refers broadly to "other relevant provisions of this Law," and does not explicitly limit its reach to provisions of the same chapter or section.  As Wang notes, the chapter and section titles under which Article 13 appears—"Principles of Personal Information Processing" and "General Provisions"—suggest that they contain overarching principles for the law as a whole.  While Liu is correct that Article 39 refers to "separate consent" rather than merely "consent," the Court understands that distinction as indicating that an individual's mere consent to collection of information does not also serve as consent to its transfer out of the country, not as precluding the other non-consent grounds for handling personal information set forth in Article 13, which the final paragraph of Article 13 makes clear are intended to serve as exceptions to all other requirements to obtain consent found elsewhere in the law.  Yang's publication, while not an official interpretation by the Chinese government, is also persuasive authority because—as the parties do not appear to dispute—it was written by experts involved in drafting the PIPL.  Liu and Syntronic identify no other published

interpretation supporting their view of the law.  The Court holds that the exceptions in Article 13 apply to the consent requirement of Article 39.

The next question is whether Syntronic Beijing's U.S. discovery obligations, including this Court's previous order to produce the computers for inspection in the United States, is a cognizable legal duty within the meaning of the third item listed in Article 13.  Liu asserts that "[o]bviously, 'statutory duties and responsibilities or statutory obligations'[4] thereunder cannot be interpreted to include foreign laws or orders of foreign courts," Liu Reply Decl. ¶ 7, but there is nothing "obviously" limiting this provision to obligations under Chinese law.  At least one court has rejected a similar ipse dixit expert opinion that a foreign data privacy statute's reference to obligations "under law" was limited to the laws of that country.  *NML Cap., Ltd. v. Republic of Argentina*, No. 03 CIV. 8845 TPG, 2013 WL 491522, at *4 (S.D.N.Y. Feb. 8, 2013).  Here, as with the Spanish law at issue in that case, nothing in the PIPL itself indicates that the exception is limited to Chinese law.  And as noted by Wang, inclusion of foreign legal obligations in the exception makes sense when at least some portions of the PIPL can apply extraterritorially to foreign companies outside of China, which would be subject to potentially contradictory duties under foreign law.  Wang Supp'l Decl. ¶ 9.  The Court declines to limit Article 13's legal obligation exception to obligations under Chinese law.

The Court is also not persuaded that Syntronic's discovery obligations must be confirmed by a Chinese court before they can serve as a predicate for that exception.  Liu refers to provisions of Chinese law addressing the enforcement of foreign orders and judgments in Chinese courts.  Liu Reply Decl. ¶¶ 8–10 (addressing Articles 288 and 289 of the Civil Procedure Law of China).  But Cadence is not seeking to enforce the Court's order through the Chinese courts.  *See* Wang Supp'l Decl. ¶ 8 & n.2.  Syntronic Beijing is obligated to follow U.S. discovery rules and orders of this Court by virtue of its status as a party to this case, without need for enforcement in China.

---

[4] While Liu translates this provision as using the term "statutory," the Court does not understand her position to be that it is limited to obligations under *statutes* specifically rather than other forms of law.  Her reference to "foreign laws or orders of foreign courts" indicates that the distinction on which she is focused is between foreign versus domestic Chinese legal obligations.  In any event, the Court finds Wang's translation of "obligations provided by law" more persuasive than translations that use the word "statutory."

United States District Court
Northern District of California

Accordingly, the Court's order to produce computers for inspection in the United States creates a legal obligation sufficient to invoke the exception of Article 13 and proceed without the individual employees' consent under Article 39. There is thus no conflict between that order and Chinese law, and the Court need not reach the parties' remaining arguments regarding waiver, comity, and other exceptions in Article 13.

Syntronic suggests in its reply that ordering compliance is inappropriate because Syntronic Beijing intends to renew its motion to dismiss for lack of personal jurisdiction. Reply at 2. But Judge Illston has specifically authorized jurisdictional discovery to address, among other matters, whether Syntronic Beijing entered "click-wrap" license agreements for Cadence software that included consent to jurisdiction, *see* Order re Mot. to Dismiss (dkt. 52) at 11–12,[5] an issue for which a forensic examination of the Syntronic computers at issue in Beijing is highly relevant. "A federal court always has jurisdiction to determine its own jurisdiction." *In re Bunyan*, 354 F.3d 1149, 1152 (9th Cir. 2004). District courts have compelled jurisdictional discovery over objections based on foreign law. *E.g.*, *Inventus Power v. Shenzhen Ace Battery*, 339 F.R.D. 487 (N.D. Ill. 2021) (ordering jurisdictional discovery despite finding that it was barred by Chinese law). The order to produce the computers is an appropriate exercise of the Court's authority to require jurisdictional discovery.

## IV.    CONCLUSION

For the reasons discussed above, Syntronic has not met its burden to show a true conflict between Chinese law and the Court's previous order, and the motion for reconsideration is DENIED. Syntronic is ORDERED to produce the computers at issue for inspection in the United States no later than July 15, 2022.

**IT IS SO ORDERED.**

Dated: June 24, 2022

JOSEPH C. SPERO
Chief Magistrate Judge

---

[5] *Cadence Design Sys., Inc. v. Syntronic AB*, No. 21-cv-03610-SI, 2021 WL 4222040, at *7–8 (N.D. Cal. Sept. 16, 2021).

United States District Court
Northern District of California